UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
EMILE MAZLOUM,                              )
                                            )
          Plaintiff,                        )    Civil Action No. 1:06 CV 00002
                                            )    (JDB)
     v.                                     )
                                            )
DISTRICT OF COLUMBIA                        )
METROPOLITAN POLICE                         )
DEPARTMENT, *et al.*,                       )
                                            )
          Defendants.                       )
_____)


**OPPOSITION TO MOTION OF DISTRICT OF COLUMBIA TO STAY PROCEEDINGS**

Plaintiff Emile Mazloum ("Mazloum"), by his undersigned attorneys, in response to the Motion of Defendant District of Columbia (the "District") seeking to stay these proceedings or, in the alternative, for a protective order staying discovery among the parties, until a resolution of the criminal investigation of the incident underlying this lawsuit, respectfully states as follows:

**PRELIMINARY STATEMENT**

The District's motion asks for relief that is wholly unwarranted at this early stage in the lawsuit. It cannot be assumed the investigation referenced in the District's motion will result in any criminal proceedings. Moreover, even if criminal charges are brought as a result of the investigation, it is far from certain which of the defendants will be implicated (although it seems most likely any criminal charges would be leveled against the individual police officers involved). And, in any event, it seems likely that the investigation will be completed before the end of March.[1] Discovery

---
1 The District's own motion states that the U.S. Attorney's office has advised them the investigation is likely to be

would probably not be underway before such a date, given that (i) the District has until February 28, 2006 to answer, and (ii) other defendants in the case are likely to appear in the near future and, in so doing, likely to seek additional time to respond.[2]

In light of the above, there is no need to grant the District's motion. And even if there were, the District's Motion does not make out a sufficient case for either granting a stay of either the entire case or merely discovery. This case should be permitted to go forward until such time as there is an actual likelihood of the parade of horribles feared by the District.

## ARGUMENT

**I.  AN ORDER STAYING THE PROCEEDINGS IS NOT WARRANTED.**

As a threshold matter, it should be noted that nothing in the Constitution, the Federal Rules of Civil Procedure, or common law *requires* a stay of civil proceedings pending the outcome of parallel criminal proceedings. *See Barry Farm Resident Council, Inc. v. U.S. Dep't of the Navy*, Civ. Nos. 96-01450 (HHG), 96-01700 (HHG), 1997 WL 118412, at *1 (D.D.C. Feb. 18, 1997)(refusing to stay proceedings where the civil action posed no threat of significant interference with a related criminal investigation) (*citing SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)). Rather, as the D.C. Circuit stated in *Dresser,* "[i]n the absence of **substantial prejudice** to the rights of the parties involved, such parallel proceeding are unobjectionable under our jurisprudence." *Dresser*, 628 F.2d at 1374 (emphasis added) (affirming trial court's order requiring obedience to

---

concluded within a month's time. This is consistent with representations made to Plaintiff's counsel by the AUSA in charge of the investigation.

2 Plaintiff has obtained defaults against defendants Night and Day Management LLC and Michael Rehman. However, the insurance company that will be indemnifying those defendants herein recently contacted counsel for the Plaintiff and indicated that it was in the process of retaining counsel to represent those two defaulting defendants. Plaintiff accordingly anticipates that counsel for those defendants will shortly appear and seek a date by which to answer – likely some time in March.

SEC subpoena issued in connection with civil proceeding, notwithstanding existence of parallel criminal investigation); *see also Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp.2d 573, 575 (S.D.N.Y. 2001) ("parties who claim to have been victimized by frauds or other crimes are entitled to pursue their civil remedies, and it would be perverse if plaintiffs who claim to be the victims of criminal activity were to receive slower justice than other plaintiffs because the behavior they allege is sufficiently egregious to have attracted the attention of the criminal authorities").

As recently noted in a D.C. District Court case, "the mere relationship between criminal and civil proceedings, and the resulting prospect that discovery in the civil case could prejudice the criminal proceedings, does not establish the requisite good cause for a stay." *Horn v. District of Columbia*, 210 F.R.D. 13, 15 (D.D.C. 2002)(denying the government's motion for a 90-day limited stay of discovery in light of an ongoing criminal investigation because the government failed to establish good cause) (citation omitted). Rather, the burden is on the moving party to establish such "good cause." *Horn*, 210 F.R.D. at 16, n.7. In particular, the moving party must:

> (1) make a clear showing, by direct or indirect proof, that the issues in the civil action are "related" as well as "substantially similar" to the issues in the criminal investigation;
>
> (2) make a clear showing of hardship or inequality if required to go forward with the civil case while the criminal investigation is pending; and
>
> (3) must establish that the duration of the requested stay is not immoderate or unreasonable.

*Horn*, 210 F.R.D. at 15.

### A. The District cannot make a clear showing of hardship.

The District's motion particularly founders on the second prong of the *Horn* test, since it cannot clearly demonstrate hardship. Notably, the District does not appear to be the target of the criminal investigation being conducted by the U.S. Attorney's office. *See Dellinger v. Mitchell*, 442

F.2d 782, 787 (D.C. Cir. 1971) (reversing stay order in part because it applied to persons who were not criminal defendants); *cf. Volmar Distributors, Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (noting in granting stay that every moving defendant but one was facing criminal charges involving same activity as alleged in the civil complaint). Thus, the District cannot establish prejudice to itself directly resulting from any concurrent criminal proceeding. This is especially the case given that the civil action is being brought by a private individual, under which circumstances concerns about concurrent criminal and civil proceedings are diminished. *U.S. v. Kordel*, 397 U.S. 1, 11-12 (1970) ("We do not deal here with a case where the Government has brought a civil action solely to obtain evidence for its criminal prosecution or has failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution"); *Sterling*, F. Supp.2d at 579 ("[t]here is no reason to assume that [plaintiff's] civil case is simply a stalking horse for the government's inquiry" where plaintiff is a private individual).

Moreover, the threat cited by the District - a criminal prosecution – is mere conjecture at this point. No indictments have been issued. Although the District cites several cases in its motion for the proposition that pre-indictment stays are warranted, it is well-established that the burden on the moving party is much higher where no indictment has been returned. *See Barry Farm*, 1997 WL 118412, at *1 ("[t]he case for staying civil proceedings is a far weaker one when as here no indictment has been returned") (internal citations and quotations omitted); *cf. Dresser* 628 F.2d at 1376 (SEC subpoena in civil investigation properly enforced where no indictment in criminal proceeding had been returned). In fact, many jurisdictions adhere to this approach. S*ee, e.g., Sterling,* 175 F. Supp.2d at 576 ("district courts in this Circuit 'generally grant the extraordinary remedy of a stay only after the defendant seeking a stay has been indicted'") (citation omitted); *In re*

4

*Homestore.com, Inc. Sec. Litig.*, 347 F. Supp.2d 814, 820 (C.D. Cal. 2004) (mere possibility that defendant would be indicted was not sufficient grounds for staying civil litigation).

By contrast, in almost every case cited by the District in its motion, courts granted stays only where the defendants had already been indicted or charged. *See Doe v. City of Chicago*, 360 F. Supp.2d 880 (N.D. Ill. 2005)*; Cruz v. County of DuPage*, No. 96 C 7170, 1997 WL 370194 (N.D. Ill. June 27, 1997); *Volmar Distributors, Inc. v. The New York Post Co., Inc.,* 152 F.R.D. 36 (S.D.N.Y. 1993); *Twenty First Century Corp. v. LaBianca*, 801 F.Supp. 1007 (E.D.N.Y. 1992) (criminal case at advanced stage). Thus, the premature nature of the District's motion counsels against granting it.

In addition to the generalized threat posed by a criminal investigation, the District makes several specific arguments about harm that certain defendants, or it, will suffer absent a stay. None are persuasive. First, the District asserts that "[p]roceeding immediately with this civil action ... would force the several defendant officers into the difficult choice of waiving their Fifth Amendment privileges or effectively forfeiting the civil suit." District's Motion at 6. But forcing a defendant to make this choice is not constitutionally proscribed. *Barry Farm*, 1997 WL 118412, at *3 ("[t]here is no violation of due process where a party is faced with the choice of testifying or invoking the Fifth Amendment ... Any witness in a civil or criminal trial who is himself under investigation or indictment is confronted with the dilemma of choosing to testify or to invoke his privilege against self-incrimination") (*quoting SEC v. Grossman*, 121 F.R.D. 207, 210 (S.D.N.Y. 1987); *see also Sterling*, 175 F.Supp.2d at 578 ("[F]orcing a defendant to choose between waiving his Fifth Amendment privilege or suffering the adverse inference which results in the civil case from invoking his privilege does not violate due process") (*citing Kordel*, 397 U.S. at 9-10).

Second, the District asserts that, even though the investigation appears targeted only at individual officers, the District "cannot mount an effective defense without its officers' testimony"

5

but will, presumably, lose access to such testimony if a criminal proceeding is pending. District's Motion at 6. This contention is, however, wholly conclusory – and speculative as well, given the present lack of criminal indictments. *Barry Farm*, 1997 WL 118412, at *3 ("[i]f and when criminal indictments are filed, and Fifth Amendment issues arise, there will be time enough to deal with the problems they might cause"). The District fails to specifically set forth how it would be prejudiced if any defendant officers invoked their Fifth Amendment rights. The District cannot claim that there is no one to verify its responses to interrogatories without the possibility of self-incrimination. *See Kordel*, 397 U.S. at 8-9 (corporation "never even asserted, let alone demonstrated, that there was no authorized person who could answer the interrogatories without the possibility of self-incrimination"). Given that a defendant's blanket assertion that exercising his Fifth Amendment rights will somehow prejudice <u>him</u> is not an adequate basis for issuance of a stay (*Barry Farm*, 1997 WL 118412, at *3, citing *United States v. Lot 5*, 23 F.3d 359, 364 (11th Cir. 1994)), it cannot be the case that the more attenuated risk that an individual officer may invoke his or her Fifth Amendment rights, thereby harming a different defendant, is sufficient grounds to grant a stay.

There are no other persuasive grounds asserted by the District as justifying granting of a stay of this matter. Thus, the District asserts that the existing civil action may interfere with the criminal investigation, by (for example) discouraging reluctant witnesses to testify. Yet the case law cited in support of this principal is inapposite. *Tuite v. Henry*, 98 F.3d 1411 (D.C. Cir. 1996) and *Jones v. City of Indianapolis*, 216 F.R.D. 440 (S.D. Ind. 2003) both concern application of the law enforcement investigatory privilege – not the effect concurrent civil actions would have on a criminal prosecution, or even investigation. Indeed, the District never once cites in its brief any concerns the U.S. Attorney's office has about the pending civil suit and its impact of a criminal action.[3]

---

3  In fact, the U.S. Attorney's Office is getting full and complete cooperation in its investigation from the most

The same goes for the District's argument that, under the terms of its 2001 Memorandum of Agreement with the U.S. Department of Justice, it cannot require a police officer to speak about an incident until the U.S. Attorney's office has issued a written declination, and, accordingly, that it "cannot interview its officers and complete its own internal investigation of the officers' alleged misconduct until at least the conclusion of the criminal investigation." District's Motion at 6. Such an assertion flies in the face of the fact, as alleged in the underlying complaint, that Plaintiff initiated an investigation at the MPD *the day after* he was assaulted at the FUR Nightclub. That investigation produced a written report, access to which has to date been denied the Plaintiff, but which likely includes statements and other factual summations of the assault at issue. It also appears that the MPD conducted enough of an investigation to have taken some form of disciplinary action against defendant Ramirez, who presently is not active with the MPD and appears to be residing in another state. It seems highly unlikely, if not impossible, that the District (through its agent MPD) has not already done some preliminary investigation of this matter, even before the lawsuit or the criminal investigation were underway.

### B. Mr. Mazloum would be prejudiced by a stay.

While the District cannot meet its burden of establishing sufficient prejudice to justify a stay of these proceedings, Plaintiff Emile Mazloum stands to be greatly prejudiced if the civil action is not permitted to go forward. First, and as noted in Plaintiff's motion for expedited discovery, a stay poses the risk that Plaintiff will be unable to identify certain John Doe defendants before the one-year limitations period expires on certain of his claims. Plaintiff is not aware of, nor has he located, any case law standing for the proposition that entry of a stay would toll the limitations periods for the affected claims. This is because the fundamental issue posed by a limitations period – whether a

---

important witness - the plaintiff himself, who will be submitting himself to interview this week by the relevant

John Doe defendant has sufficient notice of the claim before the limitations period runs – would remain a problem even with a stay. Plaintiff simply cannot take comfort that entry of a stay would defeat later arguments by a subsequently identified John Doe defendant herein that the limitations period barred certain claims.

Second, the nature of the stay suggested by the District is of indeterminate length, and thus could become self-perpetuating, ultimately depriving Plaintiff of his day in court to adjudicate the torts and violations of federal law asserted in his complaint. Certainly the District has not shown that the requested duration of the stay "is not immoderate or unreasonable," one of the three prongs it must satisfy to prove entitlement to a stay. *Horn*, 210 F.R.D. at 15. In fact, the District concedes that the stay might continue for much longer than one month, or might require occasional extensions depending upon the vagaries of the criminal investigation and/or any fall-out from it (such as completion of the District's own investigation independent from the U.S. Attorney's Office). *See* District's Motion at 7 (admitting that a stay necessarily would be continued following the U.S. Attorney's investigation so that the MPD can complete its own internal investigation, "which must occur within ninety days" of any letter of declination issued by the U.S. Attorney). Accordingly, there is no telling how Mr. Mazloum's case might be prejudiced if a stay was permitted, as the passage of time could result in the loss of valuable witness testimony. *Cf. Dresser*, 628 F.2d at 1377 (noting that it was necessary that the SEC be able to investigate possible violations simultaneous with the Justice Department's investigation, since "witnesses may die or move away, [and] memories may fade").

---

AUSA.

## II. AN ORDER STAYING DISCOVERY IS NOT WARRANTED.

In the alternative, the District contends that a stay of discovery is warranted even if a total stay of the action is not permitted. The District, however, requests what amounts to an "*extraordinary remedy appropriate for extraordinary circumstances.*" *Weil v. Markowitz*, 829 F.2d 166, 174 n.17 (D.C. Cir. 1987) (emphasis added). The District cannot make out such extraordinary circumstances, however, for the reasons discussed above. The status of the criminal investigation and its likely results are simply too vague and inchoate at this point to justify freezing the case's progress at such an early juncture. Nor is it likely, in any event, that significant discovery will be taken in the case in the immediate coming weeks.

The District cites *Gordon v. Fed. Deposit Ins. Corp.,* 427 F.2d 578 (D.C. Cir. 1970) for support or its discovery stay request, but the case is factually distinguishable. In *Gordon,* the government had brought <u>both</u> the civil and criminal actions, and both actions were directed against the same individual. Neither of those facts, however, which were critical to *Gordon's* discussion of the propriety of staying discovery, exist here – and hence the concerns about overlapping civil and criminal matters, and the use of discovery obtained in the civil case as grounds for action in the criminal proceeding, simply are not tenable here. *Gordon*, 427 F.2d at 580. In any event, *Gordon* is of little help to the District, since in that case the D.C. Circuit remanded the case to permit the district court to clarify its reasons for **denying** the defendant's motion for a protective order against discovery sought by the government. 427 F.2d at 581.

## **CONCLUSION**

      Accordingly, Plaintiff asks that the District's Motion be denied in its entirety.

Dated:  February 21, 2006          /s/
        Brian H. Corcoran (Bar No. 456976)
        Katten Muchin Rosenman LLP
        1025 Thomas Jefferson St., NW
        Suite 700 East Lobby
        Washington, D.C.  20007
        Ph: (202) 625-3500
        Fax: (202) 298-7570
        Brian.Corcoran@kattenlaw.com

        Susan Huhta (Bar No. 453478)
        Warren R. Kaplan (Bar No. 034470)
        Washington Lawyers' Committee for
        Civil Rights and Urban Affairs
        11 Dupont Circle, NW
        Suite 400
        Washington, D.C.  20036
        Ph: (202) 319-1000
        Fax: (202) 319-1010
        Sue_Huhta@washlaw.org
        Warren_Kaplan@washlaw.org

        Attorneys for Plaintiff
        Emile Mazloum

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of February, 2006, I caused a true copy of the foregoing OPPOSITION TO MOTION OF DISTRICT OF COLUMBIA TO STAY PROCEEDINGS to be served by ECF notice upon the following:

        Robert J. Spagnoletti, Esq.
        Attorney General for the District of Columbia

        George C. Valentine, Esq.
        Deputy Attorney General
        Civil Litigation Division

        Nicole L. Lynch, Esq.
        Section Chief
        General Litigation § II

        E. Louise R. Phillips, Esq.
        Assistant Attorney General
        441 4th Street, N.W., sixth Floor South
        Washington, D.C. 20001
        (202) 724-6519, (202) 724-6669

        Counsel for Defendant District of Columbia

        /s/_____
        Brian H. Corcoran