IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMILE MAZLOUM,<br><br>        Plaintiff,<br><br>    v.<br><br>DISTRICT OF COLUMBIA<br>METROPOLITAN POLICE<br>DEPARTMENT ET AL.,<br><br>        Defendants. | Case No. 1:06-cv-00002-JDB |

**MOTION TO VACATE DEFAULT**

Defendants Michael Rehman and Night And Day Management, LLC (together, the "N&D Defendants"), by and through their undersigned counsel and pursuant to Rule 55(c) of the Federal Rules of Civil Procedure and the inherent powers of this Court, move the Court to vacate the defaults entered against them respectively in this suit and accept as filed their "Answer" filed herewith. In support of this motion, the N&D Defendants also file herewith a memorandum of points and authorities.

<div style="margin-left: 3em;">

Respectfully submitted,

/s/ Thomas S. Schaufelberger
_____
Thomas S. Schaufelberger, Bar No. 71934
Paul A. Fitzsimmons, Bar No. 444829
WRIGHT, ROBINSON, OSTHIMER & TATUM
5335 Wisconsin Avenue
Suite 920
Washington, D.C. 20015-2030
(202) 244-4668
Counsel for
Night & Day Management, LLC,
t/a The Fur Factory,
and Michael Rehman

</div>

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a copy of the foregoing is being served this 28th day of February, 2006 either by Notice of Electronic Filing or first-class United States mail, postage prepaid upon:

      Brian H. Corcoran, Esq.
      Katten Muchin Rosenman, LLP
      1025 Thomas Jefferson Street, NW
      Suite 700 East Lobby
      Washington, DC  20007
      *Co-Counsel for Plaintiff Emile Mazloum*

      Washington Lawyers' Committee for Civil Rights and Urban Affairs
      Susan Huhta, Esq.
      Warren R. Kaplan, Esq.
      11 Dupont Circle, NW
      Suite 400
      Washington, DC  20036
      *Co-Counsel for Plaintiff Emile Mazloum*

      District of Columbia Metropolitan Police Department
      300 Indiana Avenue, NW
      6th Floor
      Washington, DC  20001

      Robert J. Spagnoletti, Esq.
      Attorney General for the District of Columbia
      441 Fourth Street, NW
      6th Floor South
      Washington, DC  20001
      *Co-Counsel for Defendant District of Columbia*

      George C. Valentine, Esq.
      Deputy Attorney General
      Civil Litigation Division
      441 Fourth Street, NW
      6th Floor South
      Washington, DC  20001
      *Co-Counsel for Defendant District of Columbia*

Nicole L. Lynch, Esq.
Section Chief
General Litigation § II
441 Fourth Street, NW
6th Floor South
Washington, DC  20001
*Co-Counsel for Defendant District of Columbia*

E. Louise R. Phillips, Esq.
Assistant Attorney General
441 Fourth Street, NW
6th Floor South
Washington, DC  20001
*Co-Counsel for Defendant District of Columbia*

Officer Anthony Ramirez
c/o District of Columbia Metropolitan Police Department
First District Station
415 Fourth Street, SW
Washington, DC  20024

                    /s/ Paul A. Fitzsimmons
                    _____
                    Paul A. Fitzsimmons

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EMILE MAZLOUM, <br><br> Plaintiff, <br><br> v. <br><br> DISTRICT OF COLUMBIA METROPOLITAN POLICE DEPARTMENT ET AL., <br><br> Defendants. | Case No. 1:06-cv-00002-JDB |

**MEMORANDUM IN SUPPORT OF
MOTION TO VACATE DEFAULT**

Defendants Night & Day Management, LLC t/a The Fur Factory ("N&D"), incorrectly identified as Night and Day Management, LLC d/b/a Fur Nightclub, and Michael Rehman ("Rehman") (together, the "N&D Defendants"), by and through their undersigned counsel and pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, submit this memorandum in support of their Motion to Vacate Default.

**I.    INTRODUCTION AND BACKGROUND**

   **A.    Delay In Receipt And Response To Complaint**

The Court's docket shows that Rehman and N&D, who operate a nightclub located in Washington, D.C., were served with process in this action on, respectively, January 14, 2006 and January 5, 2006. Answers or other responses were, thus, due on, respectively, February 3, 2006 and January 25, 2006. However, due to unintended delays occasioned in transmitting the respective summonses from (i) the agent for service of process for N&D to (ii) N&D Defendants' personal counsel (who was out of the country

during more than two weeks of this period (*see* the attached February 27, 2006 Certification of Michael Rehman (the "Rehman Cert."), at ¶ 5) who sent the documents to (iii) their insurance broker, which forwarded them on to (iv) their insurance carrier, those defendants were late in responding to Plaintiff Emile Mazloum's Complaint herein. On February 3, 2006—one week after Rehman's response was due—Plaintiff filed affidavits in support of an entry of default as to Rehman and N&D. The Clerk entered defaults as to each of the N&D Defendants on February 13, 2006.

On February 21, 2006—the day after the Presidents Day holiday—the undersigned received a copy of the Complaint herein. Immediately upon receipt of the Complaint, counsel called one of the counsel for plaintiff, Warren Kaplan, Esq. When the undersigned inquired as to when service was effected, he was informed that the N&D Defendants were already in default. Counsel then asked Mr. Kaplan if his client would consent to a motion to set aside the default as to the N&D Defendants, but Mr. Kaplan declined.

      **B.    The Complaint's Allegations Avoid Describing What Actually Occurred**

Plaintiff brings suit against the N&D Defendants and various parties associated with the District of Columbia Metropolitan Police Department ("MPD"). He asserts that he was beaten in connection with his removal from the "Fur Nightclub" (the "Nightclub") in the early morning hours of March 12, 2005. The majority of his Complaint's allegations appear to be addressed to MPD officers.

Regarding the Nightclub's alleged liability here, the Complaint describes Mr. Mazloum's contact with one of the Nightclub's "bouncers" (in fact, N&D employee Mr. Michael Persons) on a stage there. Purportedly, Mr. Mazloum was with two friends,

Marwan Abi-Aad and Imad Alkadi, who were assisting "security" in determining who could have access to the stage. (Complaint, ¶ 17.) Ostensibly because of their relationship to Mr. Mazloum, "Mr. Mazloum could easily move on or off stage." (*Id*., ¶ 18.) Mr. Mazloum does actually not claim, however, that the Nightclub permitted him to go onstage, as he was not so permitted, a fact which he was reminded of more than once that night by N&D employee Mr. Persons:

> AT ONE POINT I TOLD THE PATRON [Mr. Mazloum] TO GET OFF THE STAGE THAT HE WAS STANDING ON. THE STAGE IS A VIP AREA AND HE WAS NOT ALLOWED TO BE ON STAGE. WHEN I ASKED HIM TO GET OFF THE STAGE HE PUSHED ME IN THE CHEST. I WAS APPROACHED BY A POLICE OFFICER IN PLAIN CLOTHES THAT ASKED IF I WAS ALRIGHT. HE HAD SEEN THE PATRON PUSH ME MOMENTS EARLIER. I TOLD HIM I WAS ALRIGHT. THE PATRON LEFT THE STAGE AREA. ABOUT TWENTY-FIVE MINUTES LATER THE PATRON CLIMBED BACK ONTO THE STAGE. I APPROACHED THE PATRON AND AGAIN ASKED HIM TO GET OFF THE [ST]AGE. AT THIS TIME THE PATRON STATED FUCK YOU YOU DON'T KNOW WHO YOU ARE FUCKING WITH. I TOLD HIM THAT HE WOULD STILL HAVE TO GET OFF THE STAGE.

(April 25, 2005 Metropolitan Police Department STATEMENT of Michael Persons ("Persons Statement"), attached as "Exhibit 1" to the Rehman Cert., at 1 of 5.)

Mr. Mazloum's Complaint also avoids describing his role in attacking the above-referenced bouncer. When the latter sought to escort Mr. Mazloum off the stage, the altercation started by Mr. Mazloum is referred to only obliquely in the Complaint: "Mr. Mazloum had no idea who had grabbed him, and tried to turn around to see." (Complaint, ¶ 19.) In fact, Mr. Mazloum was very well aware of who was seeking to have him quit the stage, and he chose to resist that effort violently, as Mr. Persons described:

> WHEN HE[ Mr. Mazloum] GOT TO THE STEPS LEADING DOWN FROM THE STAGE HE STOPPED AND I TOLD HIM TO KEEP GOING. THEN HE

{D0057509.2 }3

> TURNED AROUND AND LURCHED TOWARDS ME WITH HIS HANDS RAISED AND BALLED UP INTO FISTS AS IF HE WAS GOING TO HIT ME. I GRABBED BOTH OF HIS HANDS AND TOLD HIM TO CALM DOWN.

(Persons Statement at 1-2 of 5.)  The Complaint seeks to blame Mr. Alkadi, rather than Mr. Mazloum, for knocking to the floor "John Doe #1" (again, N&D employee Mr. Persons):  "As John Doe #1 was taking Mr. Mazloum down the stairs from the stage, Mr. Alkadi and John Doe #1 bumped into each other and all three fell to the floor." (*Id.*, ¶ 20.)  In fact, though, a three-man attack, which included both Mr. Mazloum and Mr. Alkadi, knocked Mr. Persons to the ground:

> [After ]I GRABBED BOTH OF HIS HANDS AND TOLD HIM TO CALM DOWN[,] THEN HIS TWO FRIENDS SAID WE GOT HIM AND I LET GO. THEN HE LURCHED AT ME AGAIN AND TACKLED ME ON THE STEPS. I FELL BACKWARDS ONTO THE STEPS.  WHILE I WAS GETTING UP I THEN GRABBED HIM AND PULLED HIM UP THE STEPS ONTO THE STAGE AND PINNED[ HIM] TO THE WALL ATTEMPTING TO GET HIM UNDER CONTROL, AND HE THEN PUNCHED ME IN THE FACE.  HIS TWO FRIENDS CAME UP THE STEPS AND ALSO GRABBED ME. DURING THE TUSSLE I WAS DRAGGED TO THE GROUND.  THE MAIN AGGRESSOR GRABBED MY SUIT JACKET AND PULLED IT OVER MY HEAD.  WHILE I WAS ATTEMPTING TO GET OUT OF MY JACKET ALL THREE OF THE INDIVIDUALS WERE HITTING ME WHILE I WAS ON THE FLOOR.

(Persons Statement at 1-2 of 5.)

The other conduct ascribed to John Doe #1 is, again, carefully pled allegation that "[MPD Officer ]Ramirez, in conjunction with John Doe #1" began hitting Mr. Mazloum. (Complaint, ¶ 23.)   That assertion is, however, simply false.

> Q) DID YOU SEE ANY OFFICERS STRIKE THE PATRON EITHER BEFORE OR AFTER HE WAS HANDCUFFED?
>
> A) NO.
>
> Q) HOW DO YOU THINK THE PATRON WAS INJURED?

>   A) FROM THE TUSSLE WE HAD ON THE STAGE, AND[ AS A RESULT OF HIS LATER] BREAKING FREE[ FROM MPD CUSTODY, BEFORE HE WAS HANDCUFFED,] ON THE STEPS AND NEAR THE TUN[N]EL.
>
>   Q) WAS THERE ANY TIME WHEN YOU DID NOT OR COULD NOT SEE THE OFFICERS AND WHAT WAS GOING ON WITH THE PATRON?
>
>   A) THE ONLY THING I DID NOT SEE WAS WHO PUT THE HANDCUFFS ON HIM.
>
>   Q) IS THAT BECAUSE YOU WERE NOT THERE OR BECAUSE THERE WERE SO MANY PEOPLE ATTEMPTING TO GET THIS VIOLENT INDIVIDUAL UNDER CONTROL?
>
>   A) ONLY BECAUSE I WAS HOLDING THE PATRON[']S LEGS AND TRYING TO KEEP OTHER PEOPLE FROM JUMPING IN IT.

(Persons Statement at 3-4 of 5.)

As indicated by these official statements given by Mr. Persons under penalty of perjury, Plaintiff's cleverly drafted pleading cannot, in the end, conceal what actually occurred that night: Mr. Mazloum, apparently inebriated, became belligerent and, along with his two friends, attacked Mr. Persons. At that point, several off-duty MPD officers subdued Mr. Mazloum and removed him from the Nightclub, according to an official statement given by MPD Officer Anthony Ramirez:

>   [From the dance floor,] I observed officers Modlin and Phillips attempting to restrain a violent Caucasian male who from here on will be referred to as the suspect. …
>
>   As I approached the officers the suspect went into a rage and resist[ed] the officers in an even more aggressive manner. I observed officers Modlin and Phillips bring the suspect to the ground in a manner consistent with police academy training on the bottom part of a staircase leading out of the club in an effort to stop the suspect's violent attack. At that time, I heard officers Modlin and Phillips identifying themselves to the suspect in loud and commanding voices as off-duty police officers. The suspect continued to violently resist. As I reached officers Modlin and Phillips, I removed a pair of handcuffs from a case attached to my belt and concealed in the small of my back. I carry these handcuffs with me at all times when off-duty and in the District of Columbia. At that time, I observed blood on the facial area of the suspect. THE ENTIRE TIME

> WE WERE TRYING TO PLACE THE DEFENDANT IN HANDCUFFS, OFFICERS MODLIN, PHILLIPS AND I WERE CONTINUALLY ORDERING THE SUSPECT WITH LOUD VERBAL COMMANDS TO STOP RESISTING BUT HE WOULD NOT COMPLY WITH OUR ORDERS. With the help of Officers Modlin and Phillips I was finally able to place a handcuff on the suspect's right wrist. The suspect continued to violently resist and several seconds elapsed before the suspect was completely handcuffed and taken under control. Officer Schneider had arrived and assisted in securing the suspect[']s left wrist as it was placed in handcuffs. It should be noted that the suspect's unusual high level of strength and aggressiveness was consistent with that of a person under the influence of narcotics. At that time, Officers Modlin and Schneider escorted the suspect outside. I followed Officers Modlin and Schneider shortly thereafter.

(July 25, 2005 Metropolitan Police Department STATEMENT of MPD Officer Anthony Ramirez ("Ramirez Statement"), attached as "Exhibit 2" to the Rehman Cert., at page 1 of 4.)

In short, Mr. Mazloum's version of even these initial events could not be more in dispute.

Mr. Mazloum's next allegations against the N&D Defendants claim that, in removing this belligerent patron who attacked one of the Nightclub's employees, all defendants were discriminating against Mr. Mazloum on the basis of his "Arab ethnicity." (*See Complaint*, Counts IV and V.) However, there is simply no pled factual basis for these allegations as to the N&D Defendants. Moreover, none of the other people of Arab ethnicity present—including not least Mr. Mazloum's two friends, Marwan Abi-Aad and Imad Alkadi—was escorted from the bar, only the one who attacked a member of the Nightclub's staff.

Mr. Mazloum sets forth similar conclusory allegations in an unfounded attempt to assert conspiracy counts against the N&D Defendants (*id*., Counts III and VI) and a "Spoliation of Evidence" count (*id*., Count VIII). Not only are there mere conclusory

allegations attempting to support these counts (*see*, *e.g.*, *id.* at ¶ 94 ("on information and belief")), but they are all derivative of Mr. Mazloum's false claim that an employee of the N&D Defendants wrongfully assaulted him.

## II.     ARGUMENT

The general policy in federal courts favors trials on the merits over default judgments.  *Jackson v. Beech*, 205 U.S. App. D.C. 84, 636 F.2d 831, 835 (D.C.Cir. 1980) ("*Jackson*"); *Keegel v. Key West & Caribbean Trading Co.*, 200 U.S.App.D.C. 319, 627 F.2d 372, 373 (D.C.Cir. 1980) ("modern federal procedure favors trials on the merits").

Towards that end of resolving disputes on their merits, an entry of default may be set aside, under Federal Rule of Civil Procedure 55(c), for "good cause."[1]  A court determines whether such good cause exists based upon a balancing of equities and, more specifically, upon a weighing of the following factors: (a) whether the default was willful, (b) whether setting aside the default would prejudice the opposing party, and (c) whether the defendant has a meritorious defense to the lawsuit.  *Jackson*, 205 U.S.App.D.C. at 89, 636 F.2d at 836.  The decision on vacating the Clerk's entry of default—which decision is done more liberally in favor of the defendant where, as here, no default judgment has yet been entered (*see Jackson*, 205 U.S.App.D.C. at 88, 636 F.2d at 835 (standard to set aside a default judgment is more stringent than is the standard to set aside the entry of default))—is within the sound discretion of the Court.  However, "an abuse of discretion in denying such a motion '"need not be glaring to justify reversal,"'" *Jackson*, 205 U.S.App.D.C. at 88, 636 F.2d at 835, *quoting Keegel v. Key*

---

[1] Rule 55(c) reads in full: "Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."  As the record reflects here, no default judgment against the N&D Defendants has been entered in this action.

*West & Caribbean Trading Co.*, 200 U.S.App.D.C. 319, 321, 627 F.2d 372, 374 (1980) (additional citation omitted).

Each of the three relevant factors—willfulness of the default, prejudice to the Plaintiff, and merit of the N&D Defendants' defense—strongly favors this Court's vacating the entry of default here.

### A. The Default Of The N&D Defendants, Which Is Yet Merely Weeks Old, Was Unintentional

Personal counsel for the N&D Defendants, H. Mark Rabin, Esq., notified those defendants' insurance agent, Hornberg Ins. Services, of the lawsuit on or about January 31, 2006, six days after N&D fell into default, due to his having been out of the country. (Rehman Cert. at ¶ 5.) Those notices did not reach the N&D Defendants' insurance carrier, Essex Insurance Company ("Essex"), until February 6, 2006, three days after Rehman had also fallen into default. Essex then took steps to investigate the matter expeditiously and to provide defense counsel for the N&D Defendants.

The N&D Defendants' having fallen into default was, thus, merely the result of ministerial and logistical difficulties encountered after service of process here. In no way whatsoever did the N&D Defendants intentionally seek to ignore or delay this Court's proceedings. (Rehman Cert. at ¶ 5.)

For these reasons, the above-stated "willfulness" factor concerning the N&D Defendants' Motion to Vacate Default, *see Jackson*, 205 U.S.App.D.C. at 89, 636 F.2d at 836, must be regarded as supporting their request.

### B. Mazloum Would Not Be Prejudiced By Having His Case—Whose Summons And Complaint He Served Upon The N&D Defendants Less Than Two Months Ago—Adjudicated On The Merits

Where a plaintiff has speedily obtained an entry of default against a defendant, and where that plaintiff has rejected that defendant's request—made within weeks of the time a response to plaintiff's complaint was otherwise due—to stipulate to a motion to vacate the default, the burden must and does rest with that plaintiff to establish that he has been so prejudiced by the defendant's failure to answer during that brief intervening period that he has been thereby irremediably injured. *See*, *e.g.*, *Barber v. Turberville*, 94 U.S.App.D.C. 335, 337, 218 F.2d 34, 36 (D.C.Cir. 1954) (reversing *default judgment* where "no intervening equities are alleged which would cause hardship in the event the default were vacated"); *cf*. *Bibeau v. Northeast Airlines, Inc.*, 139 U.S.App.D.C. 28, 29, 429 F.2d 212, 213 (D.C.Cir. 1970) (reversing dismissal where "appellee makes no factually supported claim of prejudice from the delay"). To deny a defendant an opportunity to present a defense to a case brought against him requires no less.

However, as revealed by his Complaint, plaintiff Mazloum is seeking money damages related to injuries allegedly received in conjunction with his patronizing a bar. From those facts alone, it is plain that the N&D Defendants' brief delay in answering that Complaint would not prejudice Mazloum in any material due-process respect whatsoever. *See*, *e.g.*, *Jackson*, 205 U.S.App.D.C. at 90, 636 F.2d at 837 (reversing default *judgment* where "the delay of twenty-four days would not have injured the plaintiff in any way"); *cf*. *Jackson v. Washington Monthly Co.*, 186 U.S.App.D.C. 288, 292, 569 F.2d 119, 123 (D.C.Cir. 1977) (alternatives to dismissal should be explored where "opponent in the litigation has not been harmed").

In sum, unless Mazloum can definitively establish at this stage substantial prejudice to him relating to the N&D Defendants now answering his Complaint against them—an onerous task given the brief delay in responding to his bar-incident allegations—those defendants' due process rights must be vindicated here by recognizing that, in terms of the several factors pertaining to those defendants' Motion to Vacate Default, this "prejudice" factor weighs heavily in their favor.

### C. The N&D Defendants Have A Substantial, Meritorious Defense To Present Regarding Plaintiff's Removal From The Nightclub

As merely foreshadowed by the two witness statements discussed *supra*, the N&D Defendants would present at trial substantial, competent evidence that at issue here is not any supposed violation of Mr. Mazloum's civil rights of but, instead, his attempt to use the power of this Court wrongfully to obtain damages for any injuries he suffered in attacking an employee of the Nightclub and in thereafter being removed therefrom. Given these circumstances, it is plain that the N&D Defendants have a substantial and indeed strong defense to Mr. Mazloum's allegations. Accordingly, justice would be denied were they not allowed to present that defense.

**IV.     CONCLUSION**

Because the defaults here of Michael Rehman and Night And Day Management, LLC were, as detailed above, neither willful nor prejudicial to the Plaintiff and because those Defendants have substantial defenses to present against Plaintiff Emile Mazloum's case against them, the defaults entered by the Clerk of this Court against these Defendants should be vacated and the matter heard on the merits.  Furthermore, pursuant to this Court's February 21, 2006 Order, N&D has responded to Plaintiff's expedited discovery requests.

WHEREFORE, for the above stated reasons, Michael Rehman and Night And Day Management, LLC respectfully request that the Court vacate the Clerk's entry of default against them and receive as filed their Answer, submitted herewith.

Respectfully submitted,

/s/ Thomas S. Schaufelberger
_____
Thomas S. Schaufelberger, Bar No. 71934
Paul A. Fitzsimmons, Bar No. 444829
WRIGHT, ROBINSON, OSTHIMER & TATUM
5335 Wisconsin Avenue
Suite 920
Washington, D.C.  20015-2030
(202) 244-4668
Counsel for
Night & Day Management, LLC
t/a The Fur Factory ("N&D"),
and Michael Rehman

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing is being served this 28th day of February, 2006 either by Notice of Electronic Filing or first-class United States mail, postage prepaid upon:

Brian H. Corcoran, Esq.
Katten Muchin Rosenman, LLP
1025 Thomas Jefferson Street, NW
Suite 700 East Lobby
Washington, DC  20007
*Co-Counsel for Plaintiff Emile Mazloum*

Washington Lawyers' Committee for Civil Rights and Urban Affairs
Susan Huhta, Esq.
Warren R. Kaplan, Esq.
11 Dupont Circle, NW
Suite 400
Washington, DC  20036
*Co-Counsel for Plaintiff Emile Mazloum*

District of Columbia Metropolitan Police Department
300 Indiana Avenue, NW
6th Floor
Washington, DC  20001

Robert J. Spagnoletti, Esq.
Attorney General for the District of Columbia
441 Fourth Street, NW
6th Floor South
Washington, DC  20001
*Co-Counsel for Defendant District of Columbia*

George C. Valentine, Esq.
Deputy Attorney General
Civil Litigation Division
441 Fourth Street, NW
6th Floor South
Washington, DC  20001
*Co-Counsel for Defendant District of Columbia*

Nicole L. Lynch, Esq.
Section Chief
General Litigation § II
441 Fourth Street, NW
6th Floor South
Washington, DC 20001
*Co-Counsel for Defendant District of Columbia*

E. Louise R. Phillips, Esq.
Assistant Attorney General
441 Fourth Street, NW
6th Floor South
Washington, DC 20001
*Co-Counsel for Defendant District of Columbia*

Officer Anthony Ramirez
c/o District of Columbia Metropolitan Police Department
First District Station
415 Fourth Street, SW
Washington, DC 20024

/s/ Paul A. Fitzsimmons
_____
Paul A. Fitzsimmons