IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EMILE MAZLOUM,

    Plaintiff,

    v.

DISTRICT OF COLUMBIA
METROPOLITAN POLICE
DEPARTMENT ET AL.,

    Defendants.

Case No. 1:06-cv-00002-JDB

## CERTIFICATION OF MICHAEL REHMAN

I, Michael Rehman, certify the following as true and correct:

1. I am over eighteen years of age, am competent to make this affidavit, am authorized to do so, and have knowledge of the statements made herein.

2. I am the manager of Night And Day Management, LLC ("N&D"), a corporation incorporated and existing under the laws of the District of Columbia. N&D and I are defendants in this action.

3. Attached as "Exhibit 1" hereto is a true and correct copy of an April 25, 2005 Metropolitan Police Department STATEMENT of Michael Persons.

4. Attached as "Exhibit 2" hereto is a true and correct copy of a July 25, 2005 Metropolitan Police Department STATEMENT of MPD Officer Anthony Ramirez.

5. Neither N&D nor I ever intentionally sought to ignore or delay this Court's proceedings. We understand that there was an unintended delay of some weeks between the time of our receipt of the summonses in this case and their being transmitted through our insurance broker to our insurance carrier; that delay is due in part to the fact

that our personal counsel was out of the country for more than two weeks after we received this process. N&D and I want very much to contest the unfounded charges made against us by Mr. Mazloum.

Pursuant to 18 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 27, 2006.

_____
Michael Rehman

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing is being served this 28th day of February, 2006 either by Notice of Electronic Filing or first-class United States mail, postage prepaid upon:

Brian H. Corcoran, Esq.
Katten Muchin Rosenman, LLP
1025 Thomas Jefferson Street, NW
Suite 700 East Lobby
Washington, DC 20007
*Co-Counsel for Plaintiff Emile Mazloum*

Washington Lawyers' Committee for Civil Rights and Urban Affairs
Susan Huhta, Esq.
Warren R. Kaplan, Esq.
11 Dupont Circle, NW
Suite 400
Washington, DC 20036
*Co-Counsel for Plaintiff Emile Mazloum*

District of Columbia Metropolitan Police Department
300 Indiana Avenue, NW
6th Floor
Washington, DC 20001

Robert J. Spagnoletti, Esq.
Attorney General for the District of Columbia
441 Fourth Street, NW
6th Floor South
Washington, DC 20001
*Co-Counsel for Defendant District of Columbia*

George C. Valentine, Esq.
Deputy Attorney General
Civil Litigation Division
441 Fourth Street, NW
6th Floor South
Washington, DC 20001
*Co-Counsel for Defendant District of Columbia*

Nicole L. Lynch, Esq.
Section Chief
General Litigation § II
441 Fourth Street, NW
6th Floor South
Washington, DC 20001
*Co-Counsel for Defendant District of Columbia*

E. Louise R. Phillips, Esq.
Assistant Attorney General
441 Fourth Street, NW
6th Floor South
Washington, DC 20001
*Co-Counsel for Defendant District of Columbia*

Officer Anthony Ramirez
c/o District of Columbia Metropolitan Police Department
First District Station
415 Fourth Street, SW
Washington, DC 20024

_____
Paul A. Fitzsimmons

Exhibit 1

# METROPOLITAN POLICE DEPARTMENT
## WASHINGTON, D.C.

P.D. 119 Rev.

| | |
|---|---|
| 1. COMPLAINT NO. | |
| 2. NATURE OF INVESTIGATION: EXCESSIVE FORCE COMPLAINT | 3. UNIT FILE NO. |
| 4. STATEMENT OF: (Last, First, Middle) PERSONS, MICHAEL | 5. DOB 06-22-79 / 6. SEX M |
| 7. HOME ADDRESS: 2602 BRINKLEY ROAD APT 410 FORT WASHINGTON MARYLAND 20744 | 8. HOME PHONE 301-793-2827 |
| 9. EMPLOYMENT (Occupation and Location): FUR NIGHTCLUB | 10. BUSINESS PHONE NA |
| 11. LOCATION STATEMENT TAKEN: FIRST DISTRICT | |
| 12. NAME OF OFFICER TAKING STATEMENT: SERGEANT RICHARD MOATS | 13. DATE/TIME STARTED 04-25-05 2135 HRS |

**14. STATEMENT**

Q) WERE YOU WORKING AT THE FUR NIGHT CLUB ON 3-12-05 AT APPROXIMATELY 0200 HOURS?

A) YES.

Q) WERE YOU INVOLVED IN AN INCIDENT WITH A PATRON THAT ESCALATED TO THE POINT WHERE YOU WERE ASSAULTED, AND OFF-DUTY POLICE OFFICERS BECAME INVOLVED? IF SO COULD YOU TELL ME WHAT HAPPENED?

A) YES. AT ONE POINT I TOLD THE PATRON TO GET OFF THE STAGE THAT HE WAS STANDING ON. THE STAGE IS A VIP AREA AND HE WAS NOT ALLOWED TO BE ON THE STAGE. WHEN I ASKED HIM TO GET OFF THE STAGE HE PUSHED ME IN THE CHEST. I WAS APPROACHED BY A POLICE OFFICER IN PLAINCLOTHES THAT ASKED IF I WAS ALRIGHT. HE HAD SEEN THE PATRON PUSH ME MOMENTS EARLIER. I TOLD HIM I WAS ALRIGHT. THE PATRON HAD LEFT THE STAGE AREA. ABOUT TWENTY-FIVE MINUTES LATER THE PATRON CLIMBED BACK ONTO THE STAGE. I APPROACHED THE PATRON AGAIN AND ASKED HIM TO GET OFF THE PAGE. AT THIS TIME THE PATRON STATED FUCK YOU YOU DON'T KNOW WHO YOU ARE FUCKING WITH. I TOLD HIM THAT HE WOULD STILL HAVE TO GET OFF THE STAGE. WHEN HE GOT TO THE STEPS LEADING DOWN FROM THE STAGE HE STOPPED AND I TOLD HIM TO KEEP GOING. THEN HE TURNED AROUND AND LURCHED TOWARDS ME WITH HIS HANDS RAISED AND BALLED UP INTO FISTS AS IF HE WAS GOING TO HIT ME.

**15.** I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. ("I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES. D.C.

16. DATE / TIME ENDED: 4-25-05 - 2330

17. PAGE 1 OF 5 PAGE

Signature of Person Giving Statement

18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15: [signature]

19. PERSON WITNESSING THE SIGNATURE IN BLOCK 15: [signature]

(Name and Signature)

## METROPOLITAN POLICE DEPARTMENT
### WASHINGTON, D.C.

P.D. 119 Rev.

| | |
|---|---|
| NATURE OF INVESTIGATION<br>EXCESSIVE FORCE COMPLAINT | 1. COMPLAINT NO.<br><br>3. UNIT FILE NO. |

| 4. STATEMENT OF: (Last, First, Middle)<br>PERSONS, MICHAEL | 5. DOB<br>06-22-79 | 6. SEX<br>M |
|---|---|---|

| 7. HOME ADDRESS<br>2602 BRINKLEY ROAD APT 410  FORT WASHINGTON MARYLAND 20744 | 8. HOME PHONE<br>301-793-2827 |
|---|---|
| 9. EMPLOYMENT (Occupation and Location)<br>FUR NIGHTCLUB | 10. BUSINESS PHONE<br>NA |
| 11. LOCATION STATEMENT TAKEN<br>FIRST DISTRICT | |
| 12. NAME OF OFFICER TAKING STATEMENT (If other than block 18 include signature)<br>SERGEANT RICHARD MOATS | 13. DATE /TIME STARTED<br>04-25-05  2135 HRS |

**14. STATEMENT**

I GRABBED BOTH OF HIS HANDS AND TOLD HIM TO CALM DOWN. THEN HIS TWO FRIENDS SAID WE GOT HIM AND I LET HIS HANDS GO. THEN HE LURCHED AT ME AGAIN AND TACKLED ME ON THE STEPS. I FELL BACKWARDS ONTO THE STEPS. WHILE I WAS GETTING UP I THEN GRABBED HIM AND PULLED HIM UP THE STEPS ONTO THE STAGE AND PINNED TO THE WALL ATTEMPTING TO GET HIM UNDER CONTROL, AND HE THEN PUNCHED ME IN THE FACE. HIS TWO FRIENDS CAME UP THE STEPS AND ALSO GRABBED ME. DURING THE TUSSLE I WAS DRAGGED TO THE GROUND. THE MAIN AGGRESSOR GRABBED MY SUIT JACKET AND PULLED IT OVER MY HEAD. WHILE I WAS ATTEMPTING TO GET OUT OF MY JACKET ALL THREE OF THE INDIVIDUALS WERE HITTING ME WHILE I WAS ON THE FLOOR. ONCE I GOT OUT OF THE JACKET THREE OR FOUR OFF-DUTY OFFICERS ALL IDENTIFIED THEMSELVES AS MPD OFFICERS BY DISPLAYING THEIR BADGES. THE MAIN AGGRESSOR LUNGED TOWARDS OFFICER MODLIN AND TRIED TO GRAB HIM AND THE OTHER THREE OFFICERS INTERVENED AND PLACED THE MAIN AGGRESSOR ON THE GROUND AND HELD HIM DOWN. I ESCORTED THE OTHER TWO FRIENDS OF THE PATRON'S OFF THE STAGE. THEN THEY WERE BRINGING HIM DOWN THE STEPS AND I FOLLOWED TO MAKE SURE NO ONE ELSE GOT INVOLVED. AS THEY WERE BRINGING HIM DOWN THE STAIRS I SAW THAT THE PAYTRON WAS VERY BLOODY ON THE FACE AND I HAD BLOOD ON MY JACKET. WHEN WE GOT TO THE STEPS WHEN I SAW OFFICER RAMIREZ COME THROUGH THE CROWD AND I OBSERVED HIS BADGE. SOME HOW THE GUY BROKE FREE AND STARTED SWINGING WILDLY AND KICKING. ON THE FIRST ATTEMPT WE HAD HIM PINNED AT THE BOTTOM OF THE STEPS.

15. I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. ("I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES. D.C.

_[signature]_ Signature of Person Giving Statement

16. DATE / TIME ENDED  4-25-05 - 2330
17. PAGE 2 OF 5 PAGE

18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

19. PERSON WITNESSING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

# METROPOLITAN POLICE DEPARTMENT
## WASHINGTON, D.C.

P.D. 119 Rev.

| Field | Value |
|---|---|
| 1. COMPLAINT NO. | |
| 2. NATURE OF INVESTIGATION | EXCESSIVE FORCE COMPLAINT |
| 3. UNIT FILE NO. | |
| 4. STATEMENT OF: (Last, First, Middle) | PERSONS, MICHAEL |
| 5. DOB | 06-22-79 |
| 6. SEX | M |
| 7. HOME ADDRESS | 2602 BRINKLEY ROAD APT 410 FORT WASHINGTON MARYLAND 20744 |
| 8. HOME PHONE | 301-793-2827 |
| 9. EMPLOYMENT (Occupation and Location) | FUR NIGHTCLUB |
| 10. BUSINESS PHONE | NA |
| 11. LOCATION STATEMENT TAKEN | FIRST DISTRICT |
| 12. NAME OF OFFICER TAKING STATEMENT (If other than block 18 include signature) | SERGEANT RICHARD MOATS |
| 13. DATE/TIME STARTED | 04-25-05  2135 HRS |

**14. STATEMENT**

HE SOME HOW BROKE FREE AGAIN AND WHEN HE DID HE SLID DOWN THE STEPS. HE WAS SURROUNDED BY THE FUR SECURITY AND THE MPD OFFICERS. ONCE HE LANDED AT THE BOTTOM OF THE STAIRS HE WAS GRABBED BY EVERYBODY AND HE WAS PLACED IN HANDCUFFS. I DO NOT KNOW WHO PUT THE HANDCUFFS ON THE PATRON. ONCE HE WAS IN HANDCUFFS HE WAS ESCORTED OUT OF THE CLUB BY MPD AND MYSELF. HE WAS TAKEN OUTSIDE ACROSS THE STREET AND HE WAS CUSSING AND STILL TRYING TO KICK THE OFFICERS AND MYSELF, AND TRIED TO HEAD BUTT OFFICER MODLIN. WHILE THE PATRON WAS OUTSIDE HE THREATENED TO FUCK OFFICER RAMIREZ UP.

Q) DID YOU SEE ANY OFFICERS STRIKE THE PATRON EITHER BEFORE OR AFTER HE WAS HANDCUFFED?

A) NO.

Q) HOW DO YOU THINK THE PATRON WAS INJURED?

A) FROM THE TUSSLE WE HAD ON THE STAGE, AND BREAKING FREE ON THE STEPS AND NEAR THE TUNEL.

Q) WAS THERE ANY TIME WHEN YOU DID NOT OR COULD NOT SEE THE OFFICERS AND WHAT WAS GOING ON WITH PATRON?

**15.** I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. ("I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES. D.C.

**16. DATE / TIME ENDED** 4-25-05  2330

**17. PAGE** 3 **OF** 5 **PAGE**

**18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15:**
(Name and Signature)

**19. PERSON WITNESSING THE SIGNATURE IN BLOCK 15:**
(Name and Signature)

# METROPOLITAN POLICE DEPARTMENT
## WASHINGTON, D.C.

P.D. 119 Rev.

| Field | Value |
|---|---|
| 1. COMPLAINT NO. | |
| NATURE OF INVESTIGATION | EXCESSIVE FORCE COMPLAINT |
| 3. UNIT FILE NO. | |
| 4. STATEMENT OF: (Last, First, Middle) | PERSONS, MICHAEL |
| 5. DOB | 06-22-79 |
| 6. SEX | M |
| 7. HOME ADDRESS | 2602 BRINKLEY ROAD APT 410  FORT WASHINGTON MARYLAND 20744 |
| 8. HOME PHONE | 301-793-2827 |
| 9. EMPLOYMENT (Occupation and Location) | FUR NIGHTCLUB |
| 10. BUSINESS PHONE | NA |
| 11. LOCATION STATEMENT TAKEN | FIRST DISTRICT |
| 12. NAME OF OFFICER TAKING STATEMENT | SERGEANT RICHARD MOATS |
| 13. DATE /TIME STARTED | 04-25-05  2135 HRS |

**14. STATEMENT**

A) THE ONLY THING I DID NOT SEE WAS WHO PUT THE HANDCUFFS ON HIM.

Q) IS THAT BECAUSE YOU WERE NOT THERE OR BECAUSE THERE WERE SO MANY PEOPLE ATTEMPTING TO GET THIS VIOLENT INDIVIDUAL UNDER CONTROL?

A) ONLY BECAUSE I WAS HOLDING THE PATRONS LEGS AND TRYING TO KEEP OTHER PEOPLE FROM JUMPING IN IT.

Q) DID THERE COME A TIME WHEN YOU SPOKE WITH A UNIFORMED OFFICER THAT ARRIVED ON THE SCENE?

A) YES. A WHITE GUY WITH A BALD HEAD AND A BDU UNIFORM ASKED ME WHAT HAPPENED. I BEGAN TO TELL HIM AND HE CUT ME OFF AND REPLIED WHAT DID THE OFFICERS DO. I SAID WHAT DO YOU MEAN, AND HE SAID DID THE OFFICERS BEAT HIS ASS. I SAID NO THE OFFICERS DID WHAT THEY WERE SUPPOSED TO DO. THEN HE SAID IT LOOKS LIKE YOU WERE THE AGGRESSOR AND SAID "THIS IS YOUR ONLY TWO OPTIONS. YOU CAN CHARGE HIM OR BAR HIM FROM THE CLUB. IF YOU DECIDE TO CHARGE HIM I WILL PLACE YOU UNDER ARREST." I SAID FUCK THAT HE'S BARRED. HE SAID OK GIVE ME A SECOND. I WALKED OVER TO LT. ALLMON'S CAR AND ASKED HIM FOR A ICE PACK OUT OF HIS FIRST AID KIT AND HE GAVE ME ONE. LT ALMON ASKED IF I WAS OK AND SAID DON'T WORRY BECAUSE THE GUY WAS GOING TO JAIL.

15. I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. ("I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES. D.C.

*Signature of Person Giving Statement*

16. DATE / TIME ENDED: 4-25-05 - 2330

17. PAGE 4 OF 5 PAGE

18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15: (Name and Signature)

19. PERSON WITNESSING THE SIGNATURE IN BLOCK 15: (Name and Signature)

# METROPOLITAN POLICE DEPARTMENT
## WASHINGTON, D.C.

P.D. 119 Rev.

| Field | Value |
|---|---|
| 1. COMPLAINT NO. | |
| 2. NATURE OF INVESTIGATION | EXCESSIVE FORCE COMPLAINT |
| 3. UNIT FILE NO. | |
| 4. STATEMENT OF: (Last, First, Middle) | PERSONS, MICHAEL |
| 5. DOB | 06-22-79 |
| 6. SEX | M |
| 7. HOME ADDRESS | 2602 BRINKLEY ROAD APT 410 FORT WASHINGTON MARYLAND 20744 |
| 8. HOME PHONE | 301-793-2827 |
| 9. EMPLOYMENT (Occupation and Location) | FUR NIGHTCLUB |
| 10. BUSINESS PHONE | NA |
| 11. LOCATION STATEMENT TAKEN | FIRST DISTRICT |
| 12. NAME OF OFFICER TAKING STATEMENT | SERGEANT RICHARD MOATS |
| 13. DATE/TIME STARTED | 04-25-05  2135 HRS |

**14. STATEMENT**

I WALKED AWAY AND MET UP WITH THE BALD HEAD UNIFORMED OFFICER AND TOLD HIM YOU CAN BAR HIM BECAUSE I'M NOT GOING TO JAIL FOR HIM.

Q) DID YOU HAVE A CONVERSATION WITH THE VIOLENT PATRONS FRIEND LATER THAT DAY.

A) YES. ABOUT 9:30 OR 10:00 SATURDAY NIGHT. HE TOLD ME HE WASN'T IN THE WRONG. HE SAID HE WAS TRYING TO HELP ME. HE SAID HE WAS PRESSING CHARGES AGINST THE OFFICER THAT WAS OUTSIDE BECAUSE WHAT HE DID WAS WRONG. HE TOLD ME HE SAW OFFICER RAMIREZ KICK OR STRIKE HIS FRIEND WHILE HE WAS IN HANDCUFFS ON THE GROUND OUTSIDE FUR CLUB. THIS COULD NOT HAVE HAPPENED BECAUSE I WAS WITH OFFICER RAMIREZ THE WHOLE TIME HE WAS OUTSIDE WITH THE HANDCUFFED PATRON.

Q) DID YOU SEE ANYONE HIT OR KICK THE PATRON?

A) NO

15. I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. ("I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES. D.C.

Signature of Person Giving Statement

16. DATE / TIME ENDED: 4-25-05 - 2330

17. PAGE 5 OF 5 PAGE

18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15: (Name and Signature)

19. PERSON WITNESSING THE SIGNATURE IN BLOCK 15: (Name and Signature)

**METROPOLITAN POLICE DEPARTMENT**
**WASHINGTON, D.C.**

**COMPLAINANT / SUSPECT STATEMENT**

P.D. 119 Rev. 7/74

| | |
|---|---|
| 1. COMPLAINT NO. | |
| 2. NATURE OF INVESTIGATION: Excessive Use of Force Complaint | 3. UNIT FILE NO. |
| 4. STATEMENT OF: (Last, First, Middle) Ramirez, Anthony | 5. DOB 11/24/69  6. SEX MALE |
| 7. HOME ADDRESS | 8. HOME PHONE (202) 607-8514 |
| 9. EMPLOYMENT (Occupation and Location) MPD Officer assigned to First District | 10. BUSINESS PHONE (202) 698-0068 |
| 11. LOCATION STATEMENT TAKEN | |
| 12. NAME OF OFFICER TAKING STATEMENT (If other than block 18 include signature) Mr. Skip Coburn (a citizen), Chairman, First District Citizens Advisory Council | 13. DATE /TIME STARTED 7/25/05 - 1400 |

**14. STATEMENT**

The event occurred on March 12, 2005 at approximately 0200 hours at the Fur Nightclub located at 33 Patterson St. NE. Officers Thaddeus Modlin, Richmond Phillips, Louis Schneider and I met at the club when we got off work at approximately 2300 hours to unwind and relax. I did not have my firearm in my possession as I had left it secured in my locker at the station per general orders. Officer Schneider and I were on the "stage" dance floor dancing with two females when I noticed a group of people below me and to my left moving away from the area very quickly. I observed officers Modlin and Phillips attempting to restrain a violent Caucasian male who from here on will be referred to as the suspect. They were approximately fifteen yards from where I was standing and I was not sure what they were dealing with but they appeared to be in need of assistance with the violent suspect. I immediately made my way through the crowd toward the direction in which they were moving. I ran off so quickly Officer Schneider was unaware that I had left but followed shortly thereafter when the females we were dancing with advised him that "his friends" might need his help.

As I approached the officers the suspect went into a rage and began to attack and resist the officers in an even more aggressive manner. I observed officers Modlin and Phillips bring the suspect to the ground in a manner consistent with police academy training on the bottom part of a staircase leading out of the club in an effort to stop the suspect's violent attack. At that time, I heard officers Modlin and Phillips identifying themselves to the suspect in loud and commanding voices as off-duty police officers. The suspect continued to violently resist. As I reached officers Modlin and Phillips, I removed a pair of handcuffs from a case attached to my belt and concealed in the small of my back. I carry these handcuffs with me at all times when off-duty and in the District of Columbia. At that time, I observed blood on the facial area of the suspect. THE ENTIRE TIME WE WERE TRYING TO PLACE THE DEFENDANT IN HANDCUFFS, OFFICER'S MODLIN, PHILLIPS AND I WERE CONTINUALLY ORDERING THE SUSPECT WITH LOUD VERBAL COMMANDS TO STOP RESISTING BUT HE WOULD NOT COMPLY WITH OUR ORDERS. With the help of Officers Modlin and Phillips I was finally able to place a handcuff on the suspect's right wrist. The suspect continued to violently resist and several seconds elapsed before the suspect was completely handcuffed and taken under control. Officer Schneider had arrived and assisted in securing the suspects left wrist as it was placed in handcuffs. It should be noted that the suspect's unusual high level of strength and aggressiveness was consistent with that of a person under the influence of narcotics. At that time, Officer's Modlin and Schneider escorted the suspect outside. I followed Officers Modlin and Schneider shortly thereafter.

**15.** I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. ("I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES. D.C. CODE SECTION 22-2514)

SIGNATURE OF PERSON GIVING STATEMENT

| | |
|---|---|
| 16. DATE / TIME ENDED 7/25/05 - 1500 | |
| 17. PAGE 1 OF 4 PAGES | |

**18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15:**
Mr. Skip Coburn (a citizen), Chairman, First District CAC
(Name and Signature)

**19. PERSON WITNESSING THE SIGNATURE IN BLOCK 15:**
(Name and Signature)

Exhibit 2

**METROPOLITAN POLICE DEPARTMENT**
**WASHINGTON, D.C.**

**COMPLAINANT / SUSPECT STATEMENT**

P.D. 119 Rev. 7/74

| | |
|---|---|
| 2. NATURE OF INVESTIGATION<br>Excessive Use of Force Complaint | 3. UNIT FILE NO. |
| 4. STATEMENT OF: (Last, First, Middle)<br>Ramirez, Anthony | 5. DOB  11/24/69    6. SEX  MALE |
| 7. HOME ADDRESS | 8. HOME PHONE |
| 9. EMPLOYMENT (Occupation and Location)<br>MPD Officer assigned to First District | 10. BUSINESS PHONE<br>(202) 698-0068 |
| 11. LOCATION STATEMENT TAKEN | |
| 12. NAME OF OFFICER TAKING STATEMENT (If other than block 18 include signature)<br>Mr. Skip Coburn (a citizen), Chairman, First District Citizens Advisory Council | 13. DATE /TIME STARTED<br>7/25/05 - 1400 |

1. COMPLAINT NO.

**14. STATEMENT**

When I got outside officer Modlin advised me that he and officer Phillips had observed the suspect and two other individuals perpetrating an aggravated assault, a felony in the District of Columbia, on one of the clubs security personnel. At that time, Officers Modlin and Phillips came to the aid of the victim, stopped the felonious assault and attempted to restrain the most aggressive suspect. I observed that officers Modlin and Phillips were in need of assistance and responded to assist them and that is how the situation began. After advising me of what had happened officer Modlin noticed that his new cellphone was missing. He and officer Schneider went back inside the club to look for his cellphone which had fallen off his belt when taking police action.

Officer Phillips and I remained outside with the suspect to await on-duty officers. While awaiting the on-duty officers, the suspect, who was highly intoxicated was yelling and screaming racial slurs ( The suspect was making negative referrences about my hispanic culture while calling me "El Salvador" and stating how incompetent and stupid hispanics are.) and screaming that we should take the handcuffs off and let him go and that he was going to "sue all of our asses". At that time, the suspect went into another rage, yelling and screaming unintelligibly. The suspect rushed officer Phillips and myself and attempted to kick and bump us. Officer Phillips and I took control of the suspect and sat him on the ground to prevent him from injuring himself and others. At that time, the suspect threw his upper body backward and began to thrash around on the ground. While he was doing this he was yelling that he was going to get a lawyer and sue us and continued to hurl racial insults.

Shortly thereafter, a club employee, Mr. John Christopher responded outside with towels to provide first aid to the suspect who had a bloody nose and scratches on his face apparently inflicted on him by the victim when the victim was defending himself and when he (the suspect) was throwing himself around on the ground. I acknowledged the gesture by Mr. Christopher but felt that given the suspects high level of violent behavior and intoxication, first aid would better be rendered by a first responder. I took the towels from Mr. Christopher and rendered first aid to the suspect, who had calmed down, in a manner consistent with training obtained at the Metropolitan Police Department's Institute of Police Science.

15. I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. ("I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES. D.C. CODE SECTION 22-2514)

SIGNATURE OF PERSON GIVING STATEMENT

16. DATE / TIME ENDED
7/25/05 - 1500

17. PAGE 2 OF 4 PAGES

18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15:
Mr. Skip Coburn (a citizen), Chairman, First District CAC
(Name and Signature)

19. PERSON WITNESSING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

Automated by Egray, 7D, 4/97

**METROPOLITAN POLICE DEPARTMENT**
**WASHINGTON, D.C.**

P.D. 119 Rev. 7/74

## COMPLAINANT / SUSPECT STATEMENT

| 1. COMPLAINT NO. | |
|---|---|
| **2. NATURE OF INVESTIGATION** Excessive Use of Force Complaint | **3. UNIT FILE NO.** |
| **4. STATEMENT OF: (Last, First, Middle)** Ramirez, Anthony | **5. DOB** 11/24/69 — **6. SEX** MALE |
| **7. HOME ADDRESS** | **8. HOME PHONE** |
| **9. EMPLOYMENT (Occupation and Location)** MPD Officer assigned to First District | **10. BUSINESS PHONE** (202) 698-0068 |
| **11. LOCATION STATEMENT TAKEN** | |
| **12. NAME OF OFFICER TAKING STATEMENT** (If other than block 18 include signature) Mr. Skip Coburn (a citizen), Chairman, First District Citizens Advisory Council | **13. DATE /TIME STARTED** 7/25/05 - 1400 |

**14. STATEMENT**

On-duty midnight shift officers arrived on the scene. The Watch Commander of the First District, Lt. Francis Alman was also on the scene. In accordance with general orders, Lt. Alman was advised by Officer Phillips and myself of the criminal act that had occurred and that a suspect had been taken into custody for aggravated assault. At that time, Lt. Alman thanked us for our assistance and advised us that the situation would be handled by on-duty midnight shift officers. I again asked Lt. Alman if there was anything else that he needed from us and he once again released us and instructed officer Phillips and myself to try to enjoy the rest of our evening. At that time, my handcuffs were returned to me and I then went back into the club with officer Phillips. I am unaware of what transpired outside the establishment after we returned inside.

The following afternoon at approximately 1730 hours I had just completed processing an arrest at the first district headquarters and was preparing to enter my patrol car when I observed the suspect from the night before standing outside the station. I immediately recognized him as he was wearing the same attire that he was wearing the night before. At that time I stated, "Didn't they arrest you last night?" He stated something to the effect of "No they did not and I would like your badge number". At that time, the suspect was approximately three feet away from me and he reeked of the smell of alcohol and he was obviously still under its effects. I advised him that I would be happy to provide my name and badge number for him but that he would need to respond inside the station and that I would be in shortly. I placed my belongings inside the patrol car and responded back inside the station. The watch commander on-duty, Lt. Taylor was advised by station personnel that the suspect was in the station and would like to make a complaint. I went back into service shortly thereafter when it was apparent that the suspect had been provided with the information he requested.

Officer's Modlin and Phillips were acting in accordance with DCMR 6A, 200.4 which reads: "Members of the force shall be held to always be on duty, although periodically relieved from the routine performance of it; shall always be subject to orders from the proper authorities and to call from citizens; and the fact that they may be technically off duty shall not be held as relieving them from the responsibility of taking proper police action in any matter coming to their attention requiring that action."

**15.** I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. ("I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES. D.C. CODE SECTION 22-2514)

SIGNATURE OF PERSON GIVING STATEMENT

| **16. DATE / TIME ENDED** 7/25/05 - 1500 |
| **17. PAGE** 3 **OF** 4 **PAGES** |

**18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15:**
Mr. Skip Coburn (a citizen), Chairman, First District CAC
(Name and Signature)

**19. PERSON WITNESSING THE SIGNATURE IN BLOCK 15:**
(Name and Signature)    Automated by Egray, 7D, 4/97

**METROPOLITAN POLICE DEPARTMENT**
**WASHINGTON, D.C.**

P.D. 119 Rev. 7/74

**COMPLAINANT / SUSPECT STATEMENT**

| | |
|---|---|
| 1. COMPLAINT NO. | |
| 2. NATURE OF INVESTIGATION<br>Excessive Use of Force Complaint | 3. UNIT FILE NO. |
| 4. STATEMENT OF: (Last, First, Middle)<br>Ramirez, Anthony | 5. DOB: 11/24/69    6. SEX: MALE |
| 7. HOME ADDRESS | 8. HOME PHONE |
| 9. EMPLOYMENT (Occupation and Location)<br>MPD Officer assigned to First District | 10. BUSINESS PHONE<br>(202) 698-0068 |
| 11. LOCATION STATEMENT TAKEN | |
| 12. NAME OF OFFICER TAKING STATEMENT (If other than block 18 include signature)<br>Mr. Skip Coburn (a citizen), Chairman, First District Citizens Advisory Council | 13. DATE /TIME STARTED<br>7/25/05 - 1400 |

**14. STATEMENT**

Officer Schneider and I acted in accordance with DCMR 6A, 200.7 which reads: " Members of the force shall display coolness and firmness at all times and shall act in concert and protect each other in times of peril. Any shrinking from responsibility or danger shall be deemed gross neglect of duty, for which penalty is removal from the force." Officers Modlin, Phillips, Schneider and I had a statutory obligation to come to the aid of the citizen and one another. To act in any other manner would have been a dereliction of duty.

I am unsure why on-duty midnight officers did not place the suspect under arrest on the evening in question given the seriousness of the offense. However, the decision of the suspect to take advantage of the fact that he was not placed under arrest by making a false statement is a crime under D.C. Code 22-2514 and that statement in no way truthfully represents what actually occurred on the evening in question. The suspect, his friends, citizens who witnessed the event and club personnel had every opportunity when the event occurred to report any unprofessional activity to officials and officers on the scene. They did not do so because there was nothing to report. It should be noted that while awaiting on-duty officers, we were standing in front of the location in plain view of customers and club staff. The clubs sound and lighting manager Mr. John Fiorito observed the entire event and was outside the entire time. When on-duty officials and officers arrived on the scene, no one, including the suspect, his friends, staff or non-involved wittnesses made any allegations of improper treatment of the suspect by any of the off-duty officers on the scene both inside and outside the establishment.

OFFICER'S MODLIN, PHILLIPS, SCHNEIDER AND I USED THE MINIMAL AND REASONABLE AMOUNT OF DEPARTMENTAL APPROVED RESTRAINT TECHNIQUES NECESSARY TO AFFECT THE ARREST OF A VIOLENT FELON. ANY INJURIES THE SUSPECT INCURRED WERE INFLICTED BY THE VICTIM IN SELF-DEFENSE AND BY HIS (THE SUSPECT) ALCOHOL/DRUG INDUCED WRITHING ON THE GROUND AND NOT DUE TO ANY IMPROPER TRAINING OR TECHNIQUES USED ON OUR PART. THE FELON WAS APPREHENDED AND HANDED OVER TO ON-DUTY OFFICERS IN ACCORDANCE WITH DEPARTMENT POLICY, DCMR 6A AND ON THE ORDERS OF THE FIRST DISTRICT WATCH COMMANDER. (End of Statement)

15. I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. ("I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES. D.C. CODE SECTION 22-2514)

SIGNATURE OF PERSON GIVING STATEMENT

16. DATE / TIME ENDED: 7/25/05 - 1500
17. PAGE 4 OF 4 PAGES

18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15:
Mr. Skip Coburn (a citizen), Chairman, First District CAC
(Name and Signature)

19. PERSON WITNESSING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

Automated by Egray, 7D, 4/97