**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EMILE MAZLOUM<br><br>    Plaintiff,<br><br>    v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>    Defendants. | C.A. No. 06-00002 (JDB) |

**DEFENDANT DISTRICT OF COLUMBIA'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF STAY ORDER AND IMPOSITION OF SANCTIONS**

**I. BRIEF STATEMENT OF PROCEDURE**

Plaintiff has filed a motion for reconsideration of stay order and for the imposition of sanctions based on two statements that were attached to co-defendant's motion to vacate default. Neither of these statements, however, are part of any official Metropolitan Police Department (MPD) investigation. The first statement was taken of MPD Officer Anthony Ramirez by Mr. Skip Coburn, who clearly identifies himself on that statement as a citizen. The second statement was taken of Michael Persons, an employee of Fur Nightclub, by MPD Sergeant Richard Moats without MPD authorization. The District of Columbia (the District) opposes Plaintiff's motion to lift the stay and to impose sanctions because, even if these statements were part of an official investigation into the use of excessive force as alleged by Plaintiff, the District's attorneys still could not speak to the MPD officers named during the pendency of a criminal investigation and, thus, could not adequately defend the District. In addition, per the Court's Order dated March 15, 2006, the District is providing the information requested.

## II. STATEMENT OF FACTS

The following description of events has been provided by Mr. Ronald B. Harris, MPD Deputy General Counsel and Inspector Matthew Klein, Director of MPD's Internal Affairs Division. In addition, undersigned counsel contacted Jeffrey R. Ragsdale, Chief, Federal Major Crimes Section at the U.S. Attorney's Office and learned that a determination was made not to prosecute the matter on March 27, 2006. Mr. Ragsdale indicated that a declination letter will be sent to MPD as soon as practicable. Finally, the District incorporates by reference the attached declaration of co-Defendant John Fiorito, who is affiliated with Defendant Night & Day Management, LLC t/a the Fur Factory.

**A. Timeline of the Metropolitan Police Department and the Federal Investigations**

This action arises from an incident that occurred on March 11, 2005. On March 12, 2005, the MPD's First District received a citizen complaint from Plaintiff. Specifically, Plaintiff spoke with Lieutenant Pamela Taylor, who handed Plaintiff a Citizen Complaint Form (PD 99) and requested that a Crime Scene Search Officer respond to the First District to take photographs of Plaintiff's injuries. Also, witness statements were provided to Lieutenant Taylor by civilians Imad Alkadi and Abi Marwan, who had accompanied Plaintiff to the First District.

The matter was referred to the MPD's Force Investigation Team (FIT Team) on March 16, 2005. Over the next two weeks, the FIT Team reviewed the matter and interviewed certain witnesses. Specifically, the FIT Team interviewed Lieutenant Frank Allman of the First District on March 25, 2005 and took statements from MPD Officers David Smith and Jose Acosta on March 19, 2005. Officers Smith and Acosta were not identified in Plaintiff's citizen complaint as subjects of the excessive force complaints.

On March 25, 2005, the FIT Team first notified the U.S. Attorney's Office that a preliminary report of an excessive force complaint would be forwarded. On March 30, 2005, Inspector Matthew Klein provided the FIT Team's Preliminary Report to the Executive Assistant Chief of Police thru his superior, the Assistant Chief of Police in charge of the Office of Professional Responsibility. On March 31, 2005, the FIT Team presented the case to Assistant United States Attorney (AUSA) Judith Kidwell for a prosecutorial review and learned that the Federal Bureau of Investigation (FBI) was investigating the facts and circumstances of the incident.

On April 5, 2005, AUSA Judith Kidwell confirmed that the FBI was investigating the incident, that she was aware of the incident prior to hearing from MPD on March 31, 2005 because a witness to the incident reported it directly to the United States Attorney's Office, and that the FIT Team should not take any additional investigative steps. While AUSA Judith Kidwell confirmed that the federal investigation began before March 31, 2005, MPD does not know the exact date on which the federal investigation began. Since referring this case to the United States Attorney's Office on March 31, 2005, MPD's Internal Affairs Division has not conducted any further official investigation into this matter.

**B. Statements Taken By MPD Sergeant Richard Moats Without MPD Authority**

Sergeant Richard Moats is employed by MPD's First District. Unbeknownst to the FIT Team, Sergeant Moats took three witness statements in April 2005, after the case had been referred to the U.S. Attorney's Office. Sergeant Moats claims that he took these statements when he became concerned that these witnesses might not be easily located with the passage of time. Sergeant Moats took statements from Fur Nightclub employees Mr. John Paglianite on

April 13, 2005 and Mr. Michael Persons on April 25, 2005.[1]  Sergeant Moats also took a statement from Mr. William Hamm, who was at the club on the night in question, on April 25, 2005.  Sergeant Moats did not interview any MPD employees.

Sergeant Moats reports that he was not acting at the request of anyone at MPD, nor did he provide the written statements to anyone else at MPD.  Sergeant Moats does acknowledge, however, that he provided these statements to civilian Mr. Skip Coburn.[2]

### C. Civilian Skip Coburn's Unofficial Investigation

Upon information and belief, Skip Coburn is a civilian that volunteers as the Chairman of the First District Citizens Advisory Council.  That Council is comprised of civilians and is not affiliated with MPD.  Mr. Coburn apparently conducted his own investigation as to what happened on the night in question.  His investigation was not sanctioned by MPD, nor is it recognized as an official investigation by MPD.

As part of Mr. Coburn's unofficial and unauthorized investigation, he took statements from various witnesses and MPD employees.  According to his report, he took statements from the following MPD employees: Lieutenant Frank Allman, Officer Anthony Ramirez, Officer Richmond Phillips, Officer Louis Schneider, Officer Thadius Modlin, Officer Charles Abbington, Officer Rodney Anderson, and Officer Steven Greene.  Mr. Coburn also took statements from the following civilians: Mr. David McLeod, Mr. John Fiorito, Mr. Michael Persons, and Mr. Derek Simms

Mr. Coburn's report also incorporated the three civilian statements taken by Sergeant Moats, as described above.  It also incorporated a statement of Mr. Sean Jones and identifies

---

[1] Mr. Persons' statement was attached to co-defendant's Motion to Vacate.
[2] According to the attached declaration of John Fiorito, neither MPD nor the District provided witness statements to co-defendants associated with Fur Nightclub.  Such statements were provided to Mr. Fiorito by civilian Skip Coburn.

such a statement has having been taken by Sergeant Moats. Finally, Mr. Coburn's report incorporates a statement of Mr. Imad Alkadi taken by Mr. John Fiorito, as well as two statements supposedly provided by Mr. Fiorito to Agent Kimberly Alaniz of the FBI.

Mr. Coburn has delivered copies of his unofficial investigative report to several members of MPD and MPD believes that Mr. Coburn has presented his report to the FBI. Because Mr. Coburn was acting as a citizen in conducting his own unofficial investigation and a federal investigation was pending, however, the unofficial report was not reviewed by MPD until its assistance was required in response to Plaintiff's motion for reconsideration.

### III.  RESPONSE TO THE COURT'S REQUEST FOR CERTAIN INFORMATION

In its Minute Order dated March 15, 2006, the Court requested certain information from the District of Columbia. The District's responses, which are based on the above description of facts, are identified below in their briefest form.

**(1) The names of Metropolitan Police Department (MPD) employees who have been interviewed to obtain information related to the police misconduct alleged by plaintiff:** MPD's FIT Team interviewed Lieutenant Francis Allman and took statements from Officer David Smith and Officer Jose Acosta. The District of Columbia also understands that Mr. Skip Coburn interviewed Lieutenant Francis Allman, Officer Anthony Ramirez, Officer Richmond Phillips, Officer Louis Schneider, Officer Thadius Modlin, Officer Charles Abbington, Officer Rodney Anderson, and Officer Steven Greene. The District of Columbia cannot be certain that Mr. Coburn did not interview other MPD employees nor does the District of Columbia know which MPD employees were interviewed in connection with the federal investigation.

**(2) The dates of those interviews:** MPD interviewed Lieutenant Francis Allman on March 25, 2005 and took statements from Officer David Smith and Officer Jose Acosta on March 19, 2005.

Mr. Coburn interviewed Lieutenant Frank Allman on August 4, 2005, Officer Anthony Ramirez on July 25, 2005, Officer Richmond Phillips on August 6, 2006, Officer Louis Schneider on August 6, 2005, Officer Thadius Modlin on August 8, 2005, Officer Charles Abbington on January 12, 2006, Officer Rodney Anderson on January 12, 2006, and Officer Steven Greene on January 12, 2006.

**(3) The date the U.S. Attorney's Office and/or the Federal Bureau of Investigation commenced the criminal investigation into police misconduct alleged by plaintiff:** The District of Columbia understands that the U.S. Attorney's Office knew about the incident prior to MPD contacting it, but is not certain the exact date on which the criminal investigation commenced. MPD first contacted the U.S. Attorney's Office on March 25, 2005, and formally presented the case to the U.S. Attorney's Office on March 31, 2005. On April 5, 2005, MPD learned that the FBI was taking the lead on the case and that MPD should cease investigative activities.

**(4) The status of that investigation:** Undersigned counsel contacted Jeffrey R. Ragsdale, Chief, Federal Major Crimes Section at the U.S. Attorney's Office and learned that a determination has been made not to prosecute the matter. A declination letter will be sent to MPD, thus officially concluding the federal investigation. Mr. Ragsdale can be reached at (202) 514-8321.

**(5) The date that MPD commenced the internal investigation into police misconduct alleged by plaintiff:** MPD commenced its internal investigation shortly after Plaintiff filed a citizen complaint at the First District on March 12, 2005. On March 16, 2005, the matter was assigned to an MPD FIT Team.

**(6) The status of the MPD internal investigation:** MPD's investigation was suspended upon being informed that a federal criminal investigation had been initiated. MPD's investigation will

remain suspended until the federal investigation has been officially completed.  Upon receipt of a letter of declination, MPD may determine to pursue its own internal investigation.

**(7) Whether, during the pendency of the federal criminal investigation, defendants Ramirez, Modlin, Phillips, Schneider, Acosta, and Smith have participated in the MPD internal investigation or the District of Columbia's response to this civil action on a voluntary basis and, if so, in what way:** The District of Columbia cannot be certain of the date upon which the federal criminal investigation commenced.  As described above, MPD took statements from Officers David Smith and Jose Acosta, who were not clearly implicated by Plaintiff's citizen complaint, on March 19, 2005, but stayed its investigation upon being told of the federal criminal investigation by the U.S. Attorney's Office on April 5, 2005.  With respect to the District of Columbia's response to this civil action, Officer Ramirez was contacted by MPD's General Counsel Office to identify the officers who arrived on the scene in response to Plaintiff's expedited interrogatories.  No other defendant officer has participated in the District's response to this civil lawsuit in any way.

## IV. ARGUMENT

### A.  This Matter Should Be Stayed Until the Federal Investigation is Complete.

Plaintiff's motion for Reconsideration argues that the stay should be lifted because the District has already completed its investigation into this matter.  Plaintiff, in short, appears to believe that the District has represented to the Court that the stay was necessary because the District could not defend itself without having conducted an investigation.  Even if Plaintiff's conclusion that the District has conducted an investigation was accurate, however, a stay would still be appropriate because (a) the participants should not be forced to waive their Fifth Amendment rights by responding to Plaintiff's allegations in a civil lawsuit or assisting the

District's counsel in defense of the District while a criminal or administrative investigation is pending and (b) counsel for the District must have access to the participants in order to properly defend allegation contained in a civil complaint.

Plaintiff assumes, based on two statements, that the District has collected sufficient information to mount a defense. As evident by the above facts provided by MPD, Plaintiff jumps to many faulty conclusions premised upon those two statements. First, the District has not "already" interviewed the police officers. While civilian Skip Coburn has taken statements from the officers involved, the District has only interviewed Lieutenant Francis Allman and has only taken statements from Officers David Smith and Jose Acosta. The two statements of Officers Smith and Acosta total fourteen sentences. Certainly, contrary to Plaintiff's assumption, it is clear that the District has not "*already* extensively investigated the case and taken statements from those primarily involved."

Of utmost importance, moreover, the District's assertion that it cannot interview the officers is not "plainly disingenuous." Based on a Memorandum of Agreement between the U.S. Attorney's Office and the District of Columbia, neither the District nor its counsel can interview the involved officers as long as the federal investigation is pending. *See* 2001 Memorandum of Agreement §§ 60, 71. There is no exception to this Memorandum of Agreement that would allow the District to conduct such interviews merely because a civilian has conducted such interviews. Regardless of the statements that have been taken or interviews that have been conducted, neither the District nor its counsel can, in good-faith, interview the police officers involved in this incident until the federal investigation, and any subsequent investigation conducted by MPD, is complete.

8

As stated above, there are two primary reasons why the stay was requested and why it should remain in place until the federal criminal investigation is resolved. Plaintiff's focus on the statements previously taken is irrelevant to the true underlying rationale. "It is well-established that a district court has discretionary authority to stay a civil proceeding pending the outcome of a parallel criminal case when the interests of justice so require." *Estate of Gaither v. D.C.*, 2005 U.S. Dist. LEXIS 35426, *6 (D.D.C. December 2, 2005) (citations omitted). The denial of such a stay "could impair a party's Fifth Amendment privilege against self-incrimination" and otherwise prejudice the criminal investigation. *Id* at *7. While Courts are not required to issue such a stay, "courts within this Circuit have customarily weighed the following factors: (1) the interests of the plaintiff in proceeding with the civil litigation as balanced against the prejudice to them if it is delayed; (2) the public interest in the pending civil and criminal investigation; (3) the interests of and burdens on the defendant; (4) the interest of persons not parties to the civil litigation; and (5) the convenience of the court in the management of its cases and the efficient use of judicial resources." *Id*. at *8-9.

In *Estate of Gaither*, an inmate was murdered in a District of Columbia prison on December 15, 2002. The deceased inmate's estate filed a civil action against the District and various prison officials on July 1, 2003, but the parties consented shortly thereafter to stay the proceedings until the criminal investigation was completed. After the court, sua sponte, requested a status report in July 2005, the plaintiff argued that the stay should be lifted given that almost three years had elapsed since the incident and discovery would, accordingly, prove difficult is they stay remained in place. The court, however, concluding that each of the five factors above favored the defendants, ordered that the stay remain in place. Because the criminal

trial was scheduled for February 2006, the court ordered that the parties file a status report at the end of February.

Like the *Estate of Gaither* matter, the Plaintiff here will not be prejudiced by staying the case until the authorities have completed their investigation. In fact, Plaintiff would benefit in having prosecutors determine his case and whether to press charges criminally against those he claims attacked him. As an alleged victim of a crime, one would think Plaintiff would support any type of investigation into the incident.

Plaintiff's ability to take discovery will not be prejudiced by staying these proceedings for a limited duration of time. Once the federal authorities formally conclude its investigation by forwarding a letter of declination, the stay could be lifted after MPD has determined whether to conduct an internal investigation. Until such a determination is made, the primary justification for a stay is the substantial burden that the Defendant Officers and the District would be forced to bear.

The Defendant Officers have a Fifth Amendment right not to incriminate themselves with respect to the ongoing federal criminal investigation and they should not be forced to provide statements while an administrative investigation is pending. To mount a defense and to respond to discovery requests in this matter would require those officers to make statements about the incident in question – the very incident that is under federal and potentially administrative investigation. Undoubtedly, the officers will be confronted with requests for information in connection with this civil litigation. Should such a request solicit incriminating information, the officers should not be forced to choose between waiving their Fifth Amendment rights or being held in contempt. Although some of the officers have provided statements to people outside of the federal investigation, they have not waived their Fifth Amendment rights

with respect to future questions relating to this incident. *See, e.g.*, *In re Interbanque, Inc.*, 1996 Bankr. LEXIS 1714, *16-17 (Bankr. D.C. 1996) (concluding that privilege was not waived where an individual, not a court-room witness, had not disclosed information that would incriminate him) (citing *McCarthy v. Arndstein*, 262 U.S. 355 (1923)).

     Like the Defendant Officers, the District of Columbia cannot adequately defend itself until the federal and administrative investigations have been completed. First, the District, which is sued here as the employer of the Defendant Officers, cannot solicit information from the officers involved without asking them to waive their Fifth Amendment rights. As long as the federal investigation is pending, the officers should not be forced to assist the District to mount a defense that could have the effect of incriminating such officers. Just as Plaintiff should not be allowed to put the officers in that situation, neither should the District. Once the federal investigation has been completed, the District should be afforded a reasonable amount of time to complete any necessary internal investigation before defending itself before this Court.

     In addition to potentially requiring the officers to waive their Fifth Amendment rights, lifting the stay would require the District of Columbia to violate its Memorandum of Agreement with the U.S. Attorney's Office. Specifically, the District of Columbia has agreed not to investigate matters involving police officers that also are subject to a federal investigation. If the District of Columbia is required to defend itself in this action while the federal investigation is pending, the District would be forced to defend itself without the benefit of discussing the matter with the involved officers or to violate its Memorandum of Agreement with the U.S. Attorney's Office.

     Plaintiff argues that the District can mount a defense based on the assumption that the District has already completed its investigation. As discussed above, the District has not already

conducted an extensive investigation, let alone completed its investigation. Regardless, however, the stay is required so that the District's attorneys may adequately inquire of the involved officers. Even if the District is deemed to have asked some questions of the involved officers, its counsel should not be confined to relying solely upon a few handful of questions that were asked in connection with an administrative investigation. This matter alleges civil liability and the District's attorneys should not have to rely solely upon the beginnings of an administrative investigation. Nor should the District's attorneys be required to rely upon information solicited in connection with Mr. Coburn's unofficial and unauthorized investigation as a private citizen. Such an investigation was not sanctioned by MPD or the District. Defense counsel should not be forced to rely upon an unofficial and unauthorized investigation conducted by a private citizen.

### B. This Matter Does Not Warrant Sanctions.

Plaintiff has stated that "sanctions should be imposed commensurate with the gravity of the offense." Pl.'s M. for Recons. at 4. Plaintiff has not, however, described the sanctions or type of sanctions that he is seeking. To obtain an "issue-related sanction," Plaintiff must demonstrate that the District of Columbia has, by a preponderance of the evidence, tainted the evidentiary resolution of an issue. *Shepherd v. ABC*, 62 F.3d 1469, 1478 (D.C. Cir. 1995). To obtain a more drastic sanction, such as dismissal, Plaintiff must demonstrate, by clear and convincing evidence, that the District of Columbia has engaged in misconduct and that lesser sanctions, such as fines, attorneys' fees, or adverse evidentiary rulings, should be rejected. *Id*. at 1478-79.

Here, there is *no* evidence that the District of Columbia has engaged in misconduct. The District of Columbia moved for a stay in these proceedings so that it could solicit the assistance

of the involved officers without requiring those officers to waive their Fifth Amendment rights. The fact that a civilian has interviewed involved officers does not alter the District of Columbia's obligation to its officers and to the U.S. Attorney's Office not to discuss matters being investigated by federal authorities with the officers involved in those matters. In short, there is no basis for Plaintiff's allegation that the District has perpetrated a fraud upon the court. Nor is there any evidence that the District has engaged in any misconduct. Therefore, the Court must deny Plaintiff's motion for sanctions.

## V. CONCLUSION

In addition to the foregoing, the stay should remain in place until a letter of declination is received from the federal authorities and until MPD has determined whether or not it will proceed administratively against the officers. As explained above, the District has not engaged in misconduct during the course of these proceedings. The District sought a stay on the basis that its counsel could not contact the involved officers until the federal investigation was complete. Even in light of unofficial interviews and statements, the District's counsel should be allowed to speak directly with the participants and not be forced to rely upon questions asked of witnesses during unofficial and unauthorized investigations.

                Respectfully submitted,

                ROBERT J. SPAGNOLETTI
                Attorney General for the District of Columbia

                GEORGE C. VALENTINE
                Deputy Attorney General
                Civil Litigation Division

      /s/ Nadine C. Wilburn (on behalf of)
NICOLE L. LYNCH [471953]
Section Chief
General Litigation § II

BY: __/s/_____
E. LOUISE R. PHILLIPS [422074]
Assistant Attorney General
GEORGE A. GASPER [488988]
Special Assistant Attorney General
441 4th Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6519, (202) 724-6669

## CERTIFICATE OF SERVICE

     I hereby certify that on this _27th_ day of March, 2006, I mailed via first class postage a copy of the foregoing Defendant District of Columbia's Opposition to Plaintiff's Motion for Reconsideration of Stay Order and Imposition of Sanctions to Officer Anthony Ramirez, 15801 S 48th Street, Apt 1166 South, Phoenix, AZ 85048. Electronic copies will be provided by ECF upon the following: Brian H. Crorcoran, Esq., Susan Huhta, Esq., Warren R. Kaplan, Esq., Thomas S. Schaufelberger, Esq., Paul A. Fitzsimmons, Esq.

      __/s/_____
E. Louise R. Phillips
Assistant Attorney General