UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMILE MAZLOUM,<br><br>    Plaintiff,<br><br>    v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>    Defendants. | Civil Action No. 06-0002 (JDB) |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS
ACOSTA AND SMITH'S MOTION TO DISMISS**

Plaintiff Emile Mazloum ("Mazloum"), by his undersigned counsel, for his response to the motion of defendants Jose Acosta and David Smith to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), hereby states as follows:

**PRELIMINARY STATEMENT**

Defendants Acosta and Smith are the two officers who arrived at FUR Nightclub and initially investigated why Mazloum was standing beaten, handcuffed, and shivering in the cold March night outside the nightclub. They promptly assessed the truth: Mazloum had done absolutely nothing wrong and was the victim of police brutality perpetrated upon him by several off-duty police officers. Yet, despite this, these two defendants opted to participate in, and compound, the wrongful conduct of that evening by attempting to impede and dissuade Mazloum from filing a complaint of police misconduct, all in the hope of "covering up" the matter and thereby protecting their fellow officers. And indeed, as a result of their conduct, Mazloum's efforts were thwarted, and critical evidence that

would establish the truth of Mazloum's allegations (such as videotaped evidence of the beating) was permitted to be destroyed by co-defendant FUR the very next day.

This is the basis of the claims asserted against Acosta and Smith. Given the relevant liberal "notice pleadings" standards, and given these defendants' inability to establish any other legal deficiencies in the claims asserted against them, Acosta and Smith's motion to dismiss should be denied.

## ARGUMENT

Under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff need only provide "a short and plain statement of [his or her] claim" that will give the defendant fair notice of the claim and the basis upon which it rests. Fed. R. Civ. P. 8(a)(2); *Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C. Cir. 1983). "Notice pleading" is sufficient. *Sinclair*, 711 F.2d at 293 (citing *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957)).

Based upon this liberal pleading standard, a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove ***no*** set of facts in support of his claim which would entitle him to relief." *Sinclair*, 711 F.2d at 293 (emphasis added) (quoting *Conley*, 355 U.S. at 45-46). The issue is not whether the plaintiff will ultimately prevail on the merits of his or her claim, but whether the claimant should be permitted to offer evidence to support his or her claims. *See Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003) (citations omitted). To that end, the allegations contained in the complaint must be construed in favor of the plaintiff, and the plaintiff must be given "the benefit of all inferences that can be derived from the facts alleged." *Id.* at 1215 (citation omitted). "If a complaint's factual allegations, and the reasonable inferences derived from them, would support a legal theory entitling the plaintiff to some relief, a Rule 12(b)(6) motion should be denied." *ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991).

I. **Acosta and Smith Have Not Established Any Legal Basis For Dismissal Of Plaintiff's Civil Rights Act-Based Claims (Counts I and III).**

   A. **Plaintiff has adequately pled that Defendants Acosta and Smith violated Plaintiff's constitutional rights.**

Defendants Acosta and Smith maintain that the fact that they were not directly involved in the assault upon Mazloum absolves them of any liability for the deprivation of Mazloum's constitutional rights. At most, they assert, they refused to take a statement from Mazloum, which they contend alone does not rise to a constitutional violation. This argument defines too narrowly and self-servingly what Mazloum alleges to have occurred at the FUR Nightclub in March 2005.

   1. *The Section 1983 Claim* – Plaintiff's first federally-based cause of action against Acosta and Smith alleges a violation of his rights under U.S.C. Section 1983. A Section 1983 claim must allege facts showing "a deprivation of a right, privilege or immunity secured by the Constitution or federal law, by one acting under color of state law." *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998).

Acts which are intended to obstruct or preclude an individual's right of access to a judicial forum can serve as the basis for a Section 1983 claim. *See, e.g.*, *Delew,* 143 F.3d at 1222 ("[t]he Delews have indeed alleged a constitutional violation, namely, that the defendants violated the Delews' right of meaningful access to the courts by covering up the true facts surrounding Erin Rae Delew's death."); *Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997) ("Swekel alleges that the police covered-up proof against one of their own, destroyed critical evidence, and delayed Swekel's own investigation. These allegations, if true, would substantially prejudice Swekel's ability to recover in state court."); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1262 (7th Cir. 1984) ("[T]he constitutional 'duty' imposed in this case is simply the requirement that municipal employees involved in the investigation of a wrong perpetrated by a co-employee under color of state

3

law not conceal the perpetration of that wrong.").

As alleged in the First Amended Complaint (the "Complaint"), defendants Acosta and Smith purposely acted to compromise Mazloum's ability to seek legal redress for the wrongs committed by Ramirez and the other defendants. Such conduct goes beyond simply failing to take a statement. Acosta and Smith came upon the scene in the early hours of March 12, 2005 and saw that Mazloum, although handcuffed, had been badly beaten and was the only identifiable "victim" of any criminal conduct. (Am. Compl. ¶¶ 27-30.) The record unambiguously demonstrates that, after talking with everyone involved (specifically including officer Ramirez, the principal assailant), Acosta and Smith concluded that Mazloum had done nothing wrong and should be released. (Am. Compl. ¶ 30.) But they rejected Mazloum's entreaties to be taken to the precinct station in order to make a complaint. (Am. Compl. ¶ 31.)

These allegations (which, for purposes of this motion, must be presumed true) form the basis of the "cover-up" alleged by Mazloum in his Complaint. Defendants Acosta and Smith did not merely fail to take Mazloum's statement. As alleged in the Complaint, they assessed the situation, spoke privately with the police officers involved as well as the bouncer who instigated the incident, and then determined to walk away from it. Indeed, these two defendants tried to discourage Mazloum from proceeding with this action – first by refusing to take his complaint, then by threatening him with arrest if he insisted on going to the station house, then ordering him simply to go home, and finally physically placing Mazloum in his own car to be taken home. (Am. Compl. ¶¶ 28, 31.) Of course, such conduct is completely inconsistent with behavior aimed at determining whether Mazloum's rights had been violated (i.e., questioning witnesses on the scene, taking contemporaneous statements, and securing evidence). It has also impeded the investigation of the incident; as Mazloum alleges, FUR management destroyed the security camera videotape evidence

4

of the beating sometime after it occurred, but might not have been able to do so had the police immediately investigated the assault. Thus, Acosta and Smith's dereliction of their duty to respond adequately to this incident, along with their active discouragement of Mazloum from filing a complaint, harmed Mazloum's constitutional right of access.

Defendants purport to attack the legal sufficiency of this Section 1983-based claim by asserting that all Mazloum "really" alleges is that Acosta and Smith failed to take a formal statement from Mazloum at the time of the assault. Of course, this assertion misstates what is actually alleged in the Complaint. Moreover, their conclusory argument that such a failure does not constitute a harm remedial under Section 1983 is unsupported by case law. The single case cited by defendants in connection with this proposition, *Hullett v. Smiedendorf*, 52 F. Supp.2d 817, 823-24 (W.D. Mich. 1999) does not hold as defendants assert. The plaintiff in *Hullett* did not even allege that he was denied the constitutional right of access; rather, he merely alleged emotional distress, stemming from a delayed investigation and from defamatory information contained in falsified reports. *Id.* at 824. Here, by contrast, Mazloum alleges that Acosta and Smith acted to deprive him of his very right of access to redress the improper conduct of the MPD officers, not merely by refusing to take a statement, but rather (and after assessing the situation thoroughly) by doing all they could to stop Mazloum from filing his complaint and by taking no action to preserve the videotaped evidence that would implicate their fellow officers. This is completely inapposite to the claim in the *Hullett* case.

2.   *The Section 1985 Claim* - Section 1985(3) provides a right of action to the injured party wherever "two or more persons in any State or Territory . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons...the equal

5

protection of the laws." 42 U.S.C. § 1985(3). The specific elements of a claim under Section 1985(3) are (i) a conspiracy, (ii) for purposes of depriving the plaintiff, directly or indirectly, of equal protection of the laws, (iii) acts in furtherance of the conspiracy, and (iv) injury to the plaintiff. *Knight v. City of New York*, 303 F. Supp.2d 485, 501 (S.D.N.Y. 2004).

The same allegations cited above as supporting the Section 1983 claim apply, with even greater force, in support of the Section 1985 claim. Plaintiff alleges that Smith and Acosta came upon the scene, saw that he had been badly beaten, and concluded after talking to numerous witnesses that he had apparently done nothing unlawful and should be released. Their decision to release him so quickly was motivated by a desire to cover up the facts to protect their brother officers; their efforts to discourage Mazloum from filing a complaint confirm this inference.

Defendants argue that because they came upon the scene <u>after</u> the beating, they cannot be liable. But this assertion ignores the whole concept of a conspiracy and these two defendants' contribution to it. A Section 1985 conspiracy can plainly involve individuals who did not take direct part in the primary violation, but have voluntarily taken subsequent action to help cover it up (thereby depriving a plaintiff of the ability to seek redress effectively for the underlying wrongdoing). In so doing, they have made themselves complicit in the violation, and have, at the very least, conspired to cover up the wrong and protect the primary wrongdoer. *Dickerson v. U.S. Steel Corp.*, 439 F. Supp. 55, 67 (E.D. Pa. 1977) (explaining that if a party has the potential to stop illegal activity but fails to act to do so and instead sits idly by, then that party may be said to have impliedly conspired in such illegalities). Accordingly, the Section 1985 claim should survive defendants' motion to dismiss.

### B. Defendants Acosta and Smith are not entitled to qualified immunity.

Defendants' qualified immunity argument (which, importantly, concedes for sake of argument that Mazloum has adequately pled a constitutional violation of his rights) is based on an incorrect assumption that such immunity is available under the circumstances. In fact, an officer who participates in a cover-up of the sort alleged herein has **no** qualified immunity defense.

Federal case law confirms that a police officer is not entitled to a qualified immunity defense if the officer's conduct violated a clearly established constitutional right. *See Barham v. Ramsey*, 434 F.3d 565, 572 (D.C. Cir. 2006). "The 'relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' " *Id*. at 572 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). To a reasonable law enforcement officer, it should be crystal clear that refusing to collect or preserve evidence at the scene of a crime, for the purpose of protecting a guilty party, is a constitutional violation. *See Delew*, 143 F.3d at 1221 (police at scene of accident involving fellow officer's wife deliberately refrained from performing blood alcohol test and from preserving physical evidence such as skid marks); *Swekel*, 119 F.3d at 1260 (police intentionally refused to perform forensic tests and investigate accident involving son of high-ranking officer).

A reasonable officer responding to the incident at FUR Nightclub would have known that assisting fellow officers in covering up their vicious assault and battery was a constitutional violation. Nevertheless, defendants Acosta and Smith (1) refused to allow the victim to file a complaint; (2) discouraged him from pursuing the matter, by threatening arrest if he chose to go directly to the police precinct headquarters to file a complaint; and (3) failed to interview other witnesses or secure evidence at the time of Mazloum's beating. In determining this motion, the Court must accept the truth of the allegations as pled and assume that all of these actions were done

deliberately, for the purpose of aiding their fellow officers in covering up their crimes. As alleged in Mazloum's Complaint, defendants Acosta and Smith's actions were willful, wanton, and in reckless disregard of Plaintiff's constitutional rights. (Am. Compl. ¶ 47.) Accordingly, because of the nature of the alleged underlying constitutional violations, Acosta and Smith are not entitled to a qualified immunity defense.

## II. Plaintiff Has Properly Pled Claims Against Defendants Acosta and Smith Under the D.C. Human Rights Act.

The D.C. Human Rights Act (the "DCHRA") makes it unlawful to deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation wholly or partially for a discriminatory reason based on actual or perceived race, religion, national origin, or personal appearance. D.C. Code § 2-1402.31 (2006). Moreover, the DCHRA expressly prohibits any "District government agency or office" from "limit[ing] or refus[ing] to provide any ... service ... or benefit to any individual" on the basis of actual or perceived race, religion, national origin, or personal appearance. D.C. Code § 2-1402.73 (2006). In addition, the DCHRA prohibits "interfere[nce] with any person in the exercise or enjoyment of ... any right granted or protected under [the DCHRA]," or interference with a "person [who] has opposed any practice made unlawful by [the DCHRA]." D.C. Code § 2-1402.61 (2006).

Plaintiff alleges in his Complaint that defendants Acosta and Smith interfered with his rights under the DCHRA by blocking his "efforts on the night of March 11-12 to file a formal police report" after he was beaten by co-defendants Ramirez, Persons, Modlin, Phillips and Schneider. (Am. Compl. ¶ 77.) The conduct of Acosta and Smith in refusing to take a complaint from Mazloum amounted to blatant "interference" with his right to "oppose" the beating he suffered because of his

race, appearance, perceived religion and national origin (and, as Mazloum alleges, his ethnicity was a basis for the assault and was even derogated by defendant Ramirez who referred to him as a "f---ing Al-Qaeda" (Am. Compl. ¶ 76)). As stated in the Complaint, "Mr. Mazloum's efforts to file a complaint and thus initiate an investigation through the MPD's complaint process were protected activity as a matter of D.C. law." (Am. Compl. ¶ 78.)

Defendants conclusorily assert that their failure to take a complaint from Mazloum "violates no duty under the DCHRA." *See* Motion to Dismiss at 4. This argument, however, finds no support in case law, or even in the text of the DCHRA itself. Instead, it reflects an impermissibly narrow reading of the DCHRA and the relief it affords victims of unlawful discrimination. In fact, the DCHRA is "a broad remedial statute, and it is to be generously construed." *George Washington Univ. v. Dist. of Columbia Bd. of Zoning Adjustment*, 831 A.2d 921, 939 (D.C. 2003) (describing the DCHRA as a "powerful, flexible and far-reaching prohibition against discrimination of many kinds") (quoting *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 732 (D.C. 2000)). Based upon the foregoing analysis, it is readily apparent that Count V meets the "notice pleading" requirements of the Federal Rules.

### III. Plaintiff Has Properly Pled a Claim for Common Law Conspiracy Involving Defendants Acosta and Smith.

There are no grounds for dismissal of the common law conspiracy claim against defendants Acosta and Smith (Count VI). Under District of Columbia law, civil conspiracy requires "an agreement to take part in an unlawful action or a lawful action in an unlawful manner, and an overt tortious act in furtherance of the agreement that causes injury." *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983). "Proof of a tacit, as opposed to explicit, understanding is sufficient to show agreement." *Id*. at 477.

Here, Plaintiff has properly pled the existence of a conspiracy involving Acosta and Smith to frustrate Mazloum's efforts to obtain legal redress for the beating inflicted upon him. Plaintiff alleges in the Complaint that "Defendants Ramirez, Persons, Acosta, Smith, Fiorito and Rehman/Romeo entered into an actual or tacit agreement that they would take steps to 'cover up' the beating of Mazloum that occurred at the Nightclub on March 11-12, 2005, and to block or impede any efforts by Mazloum to obtain legal redress for that beating." (Am. Compl. ¶ 82.) Plaintiff further alleges that Acosta and Smith played a critical role in this "cover up" by refusing to take a complaint from Mazloum when they arrived at the FUR Nightclub or to drive him to the police station so that he could file a report himself, and by refusing to collect evidence that would implicate their fellow officers. (Am. Compl. ¶ 31.) Clearly, these allegations satisfy the liberal "notice pleading" requirements of the Federal Rules.

Nevertheless, Acosta and Smith assert that they cannot be liable for conspiracy because they did not participate in any underlying tortious conduct. *See* Motion to Dismiss at 4-5. Defendants argue that because they did not take part in Mazloum's beating—which, they contend, is the "only possible underlying tort" in question—there is no cognizable conspiracy claim against them. It is true, as Acosta and Smith assert, that there is no independent tort action for conspiracy, and that the "gist of a civil conspiracy . . . is not the agreement . . . , but the civil wrong . . . done pursuant to the agreement." *Halberstam,* 705 F.2d at 479 (quoting *Blankenship v. Boyle*, 329 F. Supp. 1089, 1099 (D.D.C. 1971)). In this case, however, the "gist" of Mazloum's conspiracy claim as it applies to Acosta and Smith is not the beating itself, *but rather the tortious activity that occurred after the beating – i.e.,* the cover up. It was the cover up that Acosta and Smith were actively involved in and which formed the basis of the conspiracy among them and their co-defendants Ramirez, Persons,

Fiorito and Rehman/Romeo. Accordingly, Mazloum properly pled claims against Acosta and Smith for common law conspiracy.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the motion of defendants Acosta and Smith be denied in its entirety.

Dated: May 24, 2006                              /s/
                                                   Brian H. Corcoran (Bar No. 456976)
Katten Muchin Rosenman LLP
1025 Thomas Jefferson St., NW
Suite 700 East Lobby
Washington, D.C. 20007
Ph: (202) 625-3500
Fax: (202) 298-7570
Brian.Corcoran@kattenlaw.com

Susan Huhta (Bar No. 453478)
Warren R. Kaplan (Bar No. 034470)
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, D.C. 20036
Ph: (202) 319-1000
Fax: (202) 319-1010
Sue_Huhta@washlaw.org
Warren_Kaplan@washlaw.org

Attorneys for Plaintiff
Emile Mazloum