UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| EMILE MAZLOUM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-0002 (JDB) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS JOSE ACOSTA AND DAVID SMITH'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

In his opposition, plaintiff concedes that defendants Acosta and Smith cannot be held liable for the alleged assault, in which they were not involved and which occurred before they even arrived on the scene. Contending instead that defendants violated plaintiff's constitutional right of access to the courts, plaintiff fails to state a right of access claim because the underlying claim for assault is being prosecuted in this action. Defendants are also entitled to qualified immunity on the constitutional claims because plaintiff's opposition fails to muster authority clearly establishing that defendants' alleged conduct otherwise violated plaintiff's constitutional rights. In addition, plaintiff's opposition cannot salvage the remaining counts of his complaint under the D.C. Human Rights Act (DCHRA) and "common law conspiracy," neither of which state a claim against defendants Acosta and Smith.

I.    ARGUMENT

    A.    <u>Plaintiff Fails to Allege that Defendants Acosta and Smith Violated His Constitutional Rights (Counts I, III)</u>.

Plaintiff's opposition unsuccessfully attempts to state a constitutional violation by defendants Acosta and Smith. In his opposition, plaintiff now claims that the defendants' alleged conduct violated his constitutional right of access to the courts. While citing a few cases from other Circuits discussing such a constitutional right, plaintiff ignores Supreme Court precedent that disposes of his right of access claim on the facts alleged in this case. Under this precedent, plaintiff has no constitutional right of access claim because his underlying cause of action has not been lost but is being actively pursued in this lawsuit.

The Supreme Court recently re-affirmed that a right of access claim must specify "relief obtainable in no other suit." <u>Christopher v. Harbury</u>, 536 U.S. 403, 414 (2002). As the Court explained, the constitutional right of access "is ancillary to the underlying claim, without which plaintiff cannot have suffered injury by being shut out of court." <u>Id.</u> at 415. Because the right of access is ancillary to the underlying claim, a right of access claim "must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." <u>Id.</u> The Supreme Court reasoned that there is "no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." <u>Id.</u>

In <u>Harbury</u>, the Supreme Court particularly aimed to prevent the situation where, as here, a plaintiff seeks to try the underlying claim along with the access claim. "Characteristically, the action underlying [the] right of access claim will not be tried independently, a fact that enhances the natural temptation on the part of plaintiffs to claim too much, by alleging more than might be shown in a full

trial focused solely on the details of the predicate action." Id. at 416. Requiring an access claim to identify a remedy unobtainable on the underlying claim is a safeguard "against the risk that an access claim be tried all the way through, only to find that the court can award no remedy that the plaintiff could not have been awarded on a presently existing claim." Id. The Supreme Court also noted that "the right of a defendant in [an] access suit to obtain early dismissal of a hopelessly incomplete claim for relief coincides with the obligation of the Judicial Branch to avoid deciding constitutional issues needlessly." Id. at 417.

In the present case, the plaintiff "claims too much" by impermissibly joining a right of access claim with his underlying cause of action. With respect to his access claim, plaintiff asserts that the defendant officers' failure to take an immediate, formal complaint of assault "compromised" his ability to seek legal redress for the alleged assault. (Opp. 4). In fact, though, plaintiff is actively litigating his assault claim in this lawsuit. Because plaintiff may obtain relief on his assault claim in this suit, he cannot identify any relief available on the access claim that is "not otherwise available" on the underlying assault claim. Id. at 415. There is "no point in spending time and money to establish the facts constituting denial of access" when plaintiff may still recover on his assault claim. Id. Since plaintiff has not lost his underlying cause of action for assault, he has not stated a claim for denial of access.[1]

---

[1] Even the cases upon which plaintiff relies, and which pre-date the Harbury decision, required dismissal of a right of access claim because the claim did not seek a remedy unobtainable in any other suit. See Delew v. Wagner, 143 F.3d 1219, 1223 (9th Cir. 1998) (dismissing complaint unless plaintiff could show that "in fact the defendants' alleged cover-up actually rendered all state court remedies ineffective"); Swekel v. City of River Rouge, 199 F.3d 1259, 1264 (6th Cir. 1997) (affirming summary judgment absent "evidence that the defendants' actions actually rendered any available state court remedy ineffective").

B.  In the Alternative, Defendants Are Entitled to Qualified Immunity on Plaintiff's Constitutional Claims (Counts I, III).

Even assuming <u>arguendo</u> that the complaint states a constitutional claim against defendants Acosta and Smith for denial of access to the courts, plaintiff fails to overcome defendants' qualified immunity defense. In his opposition, plaintiff cannot show that it was clearly established in a particularized sense that the defendant officers were violating this constitutional right in the situation they confronted.

While plaintiff claims that the defendants' alleged conduct "goes beyond simply failing to take a statement," (Opp. 4), this is really the entire substance of the complaint against these two defendants. After interviewing both sides of the alleged assault, the defendant officers allegedly did not take a complaint from either side, refused to take plaintiff to the police station and told him to go home. (Compl. ¶ 27-31). Although plaintiff might characterize this as "active discouragement" of him from filing a police report, (Opp. 5), he acknowledges that he filed a police report that following afternoon at the police station. (Compl. ¶ 35). Going beyond the allegations in the complaint, plaintiff's opposition also contends that the nightclub management "might not have been able" to destroy the security camera videotape "had the police immediately investigated the assault." (Opp. 4-5). The complaint itself, however, contains no allegation that defendants' failure to "adequately" investigate this incident caused, even incidentally, the videotape's alleged destruction.

To show the law "clearly established" that defendants' conduct violated his right of access, plaintiff relies on two cases from other Circuits involving different facts and no constitutional violations. (Opp. 7). In both cases, the courts found no constitutional denial of access because defendants' conduct had not "actually rendered all state court remedies

4

ineffective." Delew v. Wagner, 143 F.3d 1219, 1223 (9th Cir. 1998); accord Swekel v. City of River Rouge, 199 F.3d 1259, 1264 (6th Cir. 1997). In addition, those two cases involved much greater "culpability" than just failing to take an immediate report. See Delew, 143 F.3d at 1221 (where car killed bicyclist, the police deliberately failed to test driver for intoxication, failed to preserve physical evidence such as skid marks, and permitted driver to leave scene of accident); Swekel, 199 F.3d at 1260-61 (where car killed pedestrian, police ignored responding officer's report that two cars were involved, told responding officer not to attend the preliminary hearing, and refused to investigate the second driver). Moreover, both Delew and Swekel were wrongful death actions, where the representative might not be aware of a potential claim, while here the plaintiff was quite aware of his claim and capable of pursuing it himself.

Even if the two cases upon which plaintiff relies had found constitutional violations, none of them "squarely governs" the factual situation in this case. Brosseau v. Haugen, 543 U.S. 194, 201 (2004). Plaintiff cannot show that it was clearly established that defendants Acosta and Smith violated plaintiff's right of access under the facts alleged in the complaint and under the law of this Circuit. Accordingly, defendants are entitled to qualified immunity.

    C.    Plaintiff Fails to Allege that Defendants Acosta and Smith Violated Plaintiff's Rights under the D.C. Human Rights Act (Count V).

While plaintiff now argues that defendants' failure to take a police report interfered with his right to oppose an unlawful practice under the DCHRA, the complaint still fails to state a claim against these defendants. The complaint only alleges that plaintiff sought to file a police report with defendants Acosta and Smith "against the off-duty officers who had assaulted him." (Compl. ¶ 31). The complaint does not allege that plaintiff told the officers he wanted to file a

5

report of discrimination. Unless the plaintiff informed the defendant officers of specific charges of discrimination, they cannot have violated the DCHRA just for failing to take a report of an assault. See Howard Univ. v. Green, 652 A.2d 41, 48 (D.C. 1994) (holding in a DCHRA employment case that "the onus is on the [plaintiff] to clearly voice her opposition to receive the protections provided by the Act.") Moreover, the DCHRA does not mandate that a police complaint, even if alleging specific discrimination, be received in any form or manner that a complainant might desire. Defendants contend it is sufficient to permit plaintiff to file his report at the police station, which he did that afternoon.

Accordingly, defendants Acosta and Smith are entitled to dismissal of any claims against them under the DCHRA.

### D. Plaintiff's Claim of Common Law Conspiracy (Count VI) Should Also Be Dismissed Because It Is Not an Independent Tort.

Plaintiff acknowledges that "there is no independent tort action for conspiracy." (Opp. 10). To maintain a "common law conspiracy" claim, though, plaintiff argues that the "gist" of the conspiracy claim against Acosta and Smith is not the beating but the "cover-up." (Id.) The use of the term "cover-up" hardly clarifies plaintiff's underlying claim any more than the term "conspiracy" does. The complaint itself contains no factual allegations that shed any further light on the subject. Nowhere in his opposition does plaintiff identify an underlying tort. There is certainly no cognizable tort of "cover-up." Since plaintiff concedes that common law conspiracy is not an independent tort but fails to identify any other cognizable tort, this count should also be dismissed.

6

II.     CONCLUSION

For the reasons stated in defendant's motion and this reply, this Court should dismiss the complaint against defendants Jose Acosta and David Smith.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

NADINE C. WILBURN
Assistant Deputy Attorney General
Civil Litigation Division


/s/ Holly M. Johnson /s/
HOLLY M. JOHNSON [476331]
Chief, General Litigation Section III


/s/ Carl J. Schifferle /s/
CARL J. SCHIFFERLE [463491]
Assistant Attorney General
Suite 600S
441 Fourth Street, N.W.
Washington, D.C. 20001
(202) 724-6624
(202) 727-3625 (fax)
Email:  carl.schifferle@dc.gov