UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EMILE MAZLOUM,

    Plaintiff,

    v.

DISTRICT OF COLUMBIA, et al.,

    Defendants.

Civil Action No. 06-0002 (JDB)

## MEMORANDUM OPINION

In this civil rights action, plaintiff seeks recovery against the District of Columbia, several individual officers of the Metropolitan Police Department ("MPD"), and certain employees and owners of the Fur Nightclub, alleging that he was the victim of a beating carried out by off-duty police officers in conjunction with the nightclub's employees, and that all defendants then participated in a cover-up of the incident. Before the Court is the motion of two police officers, defendants Acosta and Smith, to dismiss all claims pending against them pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Acosta and Smith contend that the facts alleged in the amended complaint fail to support the claim that they violated plaintiff's rights under the U.S. Constitution or the D.C. Human Rights Act, and furthermore, that in the absence of such a violation the claims of conspiracy under 42 U.S.C. § 1985(3) and District of Columbia common law cannot survive. The Court concludes that the amended complaint states a claim for relief against Acosta and Smith under the D.C. Human Rights Act, but that the claims against Acosta and Smith must be dismissed in all other respects. Furthermore, the legal deficiencies warranting dismissal of the two conspiracy claims (Counts III and VI) are present in the conspiracy claims as pled against all defendants, and those claims are thus dismissed in their entirety.

## BACKGROUND

The following facts are alleged in plaintiff's amended complaint and taken as true at this stage of the litigation. Plaintiff, a permanent legal resident of the United States and a Lebanese citizen, was at the Fur Nightclub in the District of Columbia on the night of March 11-12, 2005, with two friends, Imad Alkadi and Marwan Abi-Aad. Am. Compl. ¶¶ 15-16. Plaintiff's friends worked at the nightclub in an unidentified security capacity for a party promoter referred to as Massoud. Id. ¶ 16. In the early morning hours of March 12, plaintiff was descending a flight of stairs from a special access area of the club when defendant Persons, a nightclub security guard, grabbed him. Id. ¶ 18. Plaintiff's friend, Alkadi, attempted to intercede on his behalf, and shortly thereafter, the three of them fell to the floor. Id. ¶¶ 18-19. Four off-duty police officers at the nightclub -- defendants Ramirez, Modlin, Phillips, and Schneider -- responded to the incident and identified themselves as police officers. Id. ¶¶ 20-21. Ramirez then handcuffed plaintiff's arms behind his back, and both he and Persons began hitting plaintiff from behind. Id. ¶¶ 21-22. Ramirez, Persons, and one or more of the other off-duty officers then dragged plaintiff out of the nightclub and dropped him on his back. Id. ¶¶ 23-24. Ramirez continued to kick and beat plaintiff, referring to him as "Al-Qaeda." Id. ¶ 24. Alkadi had, by this time, come out of the nightclub and witnessed the beating. Id. ¶ 25.

An undisclosed time later, an MPD squad car appeared on the scene. Id. ¶ 27. Defendants Acosta and Smith (the "on-duty officers") exited the vehicle as plaintiff was sitting on the ground. Id. They first consulted in private with Ramirez and Persons. Id. Persons expressed a desire to file a complaint against plaintiff, but was discouraged from doing so by one of the on-duty officers who was concerned about plaintiff's battered appearance and the possibility of an investigation into the incident. Id. ¶ 28. Acosta and Smith then returned to the scene, requested identification from plaintiff, and took him aside for questioning, whereupon

plaintiff explained the entire incident. Id. ¶ 29. One of the on-duty officers then removed the handcuffs, and returned plaintiff's identification to him. Id. ¶ 30. Plaintiff sought to immediately file a complaint against the off-duty officers, but Acosta and Smith rebuffed his efforts. Id. ¶ 31. Plaintiff describes his attempts and the officers' refusal as follows:

> The officer told Mr. Mazloum that if he wanted to file a complaint, he would have to be arrested and taken to the police station to make a report. However, when Mr. Mazloum indicated that he still wished to make a report, and was prepared to be arrested, the uniformed police officers refused to take him to the station, or to take any complaint from him, and told him simply to go home. When Mr. Mazloum then got into the back seat of the police cruiser in order to be arrested and taken to the station, so that he could report the misconduct of the off-duty officers, he was physically removed by Officers Acosta and Smith and physically placed inside his own car.

Id.

Plaintiff was then driven back to his apartment in Virginia by Alkadi, and thereafter continued on to the Inova Alexandria Hospital to obtain treatment. Id. ¶ 32. Plaintiff had a broken nose, a bloody left eye, swelling around his neck and knee, and an assortment of cuts, scrapes, deep bruises, and bumps on his head. Id. Two police officers from the Alexandria Police Department interviewed plaintiff at the hospital, and called D.C. MPD to request that D.C. officers come to the hospital to take a report. Id. ¶ 33-34. No one was sent. Id. ¶ 34.

On the afternoon of March 12, 2005, plaintiff and his two friends traveled to the First District station in D.C. to file a formal complaint about the arrest and beating. Id. ¶ 35. There, they encountered Ramirez, and had a discussion about the events of the prior evening and plaintiff's intent to file a formal complaint with MPD. Id. ¶¶ 35-36. Plaintiff was questioned by Ramirez and later interviewed by another officer, and submitted a written complaint that afternoon. Id. ¶¶ 36-37. Afterwards, Ramirez allegedly called defendants Rehman and Fiorito, the owner/managers of the Fur Nightclub, told them what had transpired, and discussed with them the importance of destroying the security camera films which would show the beating. Id. ¶

41. That evening, plaintiff's friend, Alkadi, was called into a meeting with Rehman, Fiorito, Persons, and the head of security. Id. ¶¶ 42-43. Those defendants told Alkadi that plaintiff would be "burned" if he pursued the claim and also told Alkadi that the security camera films were "gone." Id. ¶ 44.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987). All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 346 (2005) (quoting Conley, 355 U.S. at 47). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

Under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, the court does not accept "'inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint' nor

'legal conclusions cast in the form of factual allegations.'" Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

**DISCUSSION**

**I.    § 1983 Claims Against Acosta and Smith**

Defendants Acosta and Smith move to dismiss plaintiff's claim that they violated his constitutional rights in violation of 42 U.S.C. § 1983.  They contend, first, that plaintiff's constitutional claims against them based on the allegations of unlawful arrest and excessive force fail to state a claim because plaintiff admits that they did not arrive at the nightclub until after the alleged arrest and use of force had already occurred.  They also contend, in response to plaintiff's recent clarification of the constitutional claims, that the alleged cover-up fails to state a claim for unconstitutional denial of access to a judicial forum.  In response, plaintiff does not contest that the § 1983 claims for unlawful arrest and excessive force do not lie against Acosta and Smith. Instead, he contends that they are liable under § 1983 because their refusal to accept his complaint and the destruction of key videotape evidence that he attributes to the investigative delay obstructed his constitutional right of access to a judicial forum.

As a threshold matter, the Court considers whether the amended complaint states a claim against Acosta and Smith based on unlawful arrest or use of excessive force.  Although plaintiff does not directly dispute this, he also has not conceded the matter, and the amended complaint appears to raise this claim against Acosta and Smith.[1]  Because plaintiff admits that Acosta and Smith did not participate in the beating, Acosta and Smith may only be held liable for unlawful

---

[1] In the paragraphs alleging a § 1983 violation, the amended complaint states: "Defendants Acosta and Smith participated in the denial of plaintiff's rights by their tacit acquiescence in the beating plaintiff endured as evidenced by their refusal to take plaintiff's complaint, or to take him to the police station where he could make such a complaint."  Am. Compl. ¶ 56.

arrest and excessive force under § 1983 based on a theory of bystander liability. See Fernandors v. District of Columbia, 382 F. Supp. 2d 63, 72 (D.D.C. 2005). "Under the bystander theory of liability an officer is held responsible for a constitutional violation if he: (1) knows that a fellow officer is violating an individual's constitutional right; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Id. at 72. Plaintiff alleges that Acosta and Smith arrived at the nightclub "while [plaintiff] was sitting on the ground," after the events giving rise to the alleged unlawful arrest and use of force had passed. Am. Compl. ¶ 27. They had no opportunity to prevent events that, by plaintiff's own account, had already occurred before their arrival, and thus cannot be held liable for the alleged arrest or use of excessive force on a theory of bystander liability. Accordingly, the § 1983 claim for unlawful arrest and use of excessive force against Acosta and Smith is dismissed for failure to state a claim upon which relief can be granted.

The Court next considers whether plaintiff's claim of unconstitutional deprivation of access to a judicial forum is viable. Plaintiff is correct that the constitutional right of access to courts may be violated where the government covers up evidence and thereby renders a plaintiff's judicial remedy ineffective. See Christopher v. Harbury, 536 U.S. 403, 413-15 & n.12 (2002) (describing scope of the right of access to courts and its derivation from several provisions of the Constitution, including the Due Process Clause of the Fifth and Fourteenth Amendments, the Equal Protection Clause, the Privileges and Immunities Clause, and the First Amendment Petition Clause). However, plaintiff fails to recognize that the Supreme Court has established specific pleading requirements for this type of access claim, to address the fact that access claims "are ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." Id. at 415. The Court has thus stated that the following two elements must be identified in the complaint: (1) the underlying cause of action, that is, one that has been lost or

-6-

whose loss is anticipated; and (2) "a remedy that may be awarded as recompense *but not otherwise available* in some suit that may yet be brought." Id. at 415-16 (emphasis added); see also Vogrin v. Swartswelder, 2004 WL 2905328 (D.C. Cir. 2004) (applying Harbury, and concluding as follows: "[T]he district court properly dismissed appellants' Fifth Amendment access to courts claim. Appellants did not identify with particularity the underlying cause of action supposedly lost, or the remedy being sought independently of relief that might be available on the other counts in the complaint.").

     Plaintiff's amended complaint does not identify the underlying cause of action that has been rendered ineffective -- indeed, his § 1983 claim does not refer explicitly to a deprivation of access claim in the first instance. Moreover, plaintiff is presently pursuing nine counts under federal and District of Columbia law against the other defendants, and by plaintiff's account, has significant other evidence to present in support of his claims, including the eyewitness testimony of his friend. In other words, the amended complaint not only fails to meet Harbury's threshold pleading requirement of identifying the underlying cause of action rendered ineffective, but also indicates that plaintiff is actively pursuing several causes of action. For this reason alone, plaintiff fails to state a claim for unconstitutional deprivation of access to a judicial forum.

     But to complete the Harbury analysis, the Court assumes for the moment that plaintiff can clear this threshold hurdle, and that the amended complaint should be liberally construed to allege that the claims rendered ineffective by the alleged cover-up by Acosta and Smith are the § 1983 claims against the off-duty officers for unlawful arrest and use of excessive force, and the common law claims of assault and battery – the claims most clearly affected by the videotape evidence that is now alleged to be missing. Plaintiff's access claim nonetheless fails to state a cognizable legal claim because he fails to identify a "lost remedy" -- one "that could not be

obtained on an existing claim." See Harbury, 536 U.S. at 421.  He does not plead this in his amended complaint, as required by Harbury, and it is not otherwise apparent to the Court what the lost remedy would be.  Plaintiff requests an award of compensatory and punitive damages on all counts as to all defendants, and injunctive relief against defendant District of Columbia.[2]  But even if the access claim is dismissed, the very same remedies are fully available under the other counts.

In his sur-reply, plaintiff attempts to save his deprivation of access claim by arguing that "the basis for punitive damages sought from these defendants [Acosta and Smith] . . . varies from the rationale for similar damages from [the other] police officers."  Sur-Reply at 1-2 (emphasis added).  However, differences in legal theories for the same remedy cannot save a deprivation of access claim in light of Harbury's requirement that the remedy on an access claim be "not otherwise available."  Harbury, 536 U.S. at 415.  The Supreme Court left no doubt as to the meaning of this requirement, stating that the remedy must be  "presently unique" to the access claim, "a remedy that could not be obtained on an existing claim."  Id. at 417-18, 421. Moreover, allowing a plaintiff to pursue a deprivation of access claim seeking the same damages remedy as is available through other claims, based simply on the use of a different legal theory, would vitiate the "lost remedy" requirement.

The application of these standards to the facts presented in Harbury is instructive, where the cover-up alleged was far more egregious than the alleged one-day delay at issue here.  In that case, plaintiff alleged that various federal officials, over the course of three years, intentionally provided her with false information about her husband, who had been captured and murdered

---

[2] Plaintiff requests an order directing the District of Columbia to enforce its existing regulations on the use of force, and to take disciplinary action against the police officer defendants.  Am. Compl., Prayer for Relief, at 28.

abroad. Id. at 406-08. She brought several claims against the government, including claims under the Federal Tort Claims Act and a claim that the deceptions by federal officials had unconstitutionally impeded her right of access to the courts. Id. at 418. The Supreme Court agreed that the district court had properly dismissed plaintiff's claim of unconstitutional deprivation of access because relief was available under other claims that remained pending:

> She has not explained, and it is not otherwise apparent, that she can get any relief on the access claim that she cannot obtain on her other tort claims, *i.e.*, those that remain pending in the District Court. And it is just because the access claim cannot address any injury she has suffered in a way the presently surviving [tort] claims cannot that [plaintiff] is not entitled to maintain the access claim as a substitute, backward-looking action.

Id. at 422 (footnotes omitted). Precisely the same situation is at hand here. The amended complaint fails to identify a remedy unique to the access claim, one that is not otherwise available. Accordingly, the Court grants the motion of Acosta and Smith to dismiss the § 1983 claim against them for failure to state a claim upon which relief can be granted.[3]

## II.   Section 1985(3) Conspiracy Claim

Section 1985(3) provides a right of action where a conspiracy to interfere with a constitutionally or federally protected right is motivated by racial or otherwise class-based invidiously discriminatory animus. See Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971); see also Barbour v. Merrill, 48 F.3d 1270, 1280 (D.C. Cir. 1995) (§ 1985(3) is violated whenever two or more persons conspire "to deprive [a person] of the equal protection of the laws or of equal

---

[3] Plaintiff does not bring the § 1983 deprivation of access claim against defendants Ramirez, Modlin, Phillips, Schneider, and the District of Columbia. The § 1983 claim against those defendants is based on the alleged unlawful arrest and use of excessive force. See Am. Compl. ¶¶ 49-55. However, plaintiff does allege that those defendants are involved in the alleged deprivation of access pursuant to his separate federal and common law conspiracy claims (Counts III and VI). Id. ¶¶ 65-68, 81-84. As discussed below, those claims also will be dismissed for failure to state a claim upon which relief can be granted.

privileges and immunities under the laws"), cert. dismissed, 516 U.S. 1155 (1996). "Section 1985(3) provides no rights itself; it merely provides a remedy for violations of the rights it designates." Great American Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 372 (1979).

Acosta and Smith move to dismiss the federal conspiracy claim against them on the ground that, once the § 1983 constitutional claims against them are dismissed, the alleged conspiracy to deprive plaintiff of those constitutional rights also must be dismissed. Focusing on the excessive force claim under § 1983, plaintiff responds that the § 1985(3) claim is still actionable because a conspiracy can involve individuals who did not take part in the primary violation, and concludes, based on that principle, that Acosta and Smith are nonetheless liable because, in the words of the amended complaint, they were part of a conspiracy "to cover up the beating. . . and to block or impede any efforts by Mr. Mazloum to obtain legal redress for that beating."[4] Am. Compl. ¶ 66(a); Pl.'s Opp. at 6.

The Court recognizes the general principle that a defendant may be liable under § 1985(3) for conspiracy to violate a constitutional right, even though he does not directly commit the underlying violation. This is evident in the prima facie elements of a § 1985(3) claim, which require: (1) a conspiracy, that is, an agreement, among two or more persons; (2) for the purpose

---

[4] The amended complaint describes the conspiracy generally as follows: "In different combinations, the Defendants entered into agreements which had, as their ultimate objective, the deprivation of Mr. Mazloum's due process and equal protection rights as guaranteed by the U.S. Constitution." Am. Compl. ¶ 66. The subsequent subparagraphs make clear that the references to due process and equal protection are in relation to the cover-up and interference with his efforts to obtain legal redress. Id. ¶ 66(a) (describing agreement to cover up beating and interfere with efforts to obtain legal redress, and then stating "[t]his conspiracy was entered into in order to deprive [plaintiff] of his due process and equal protection rights -- by impeding his filing a complaint with the Metropolitan Police Department, and then by making it impossible for him to provide direct photographic evidence [of the beating]"); see also id. ¶¶ 66(b)-(c), 67 (describing other defendants' involvement in the conspiracy); Pl.'s Opp. at 10. Substantially the same factual allegations are made in support of the common law conspiracy (Count VI). Id. ¶¶ 82-83.

of depriving any person of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an overt act by a conspirator in furtherance of the object of the conspiracy; and (4) a resulting injury to one's person or property, or deprivation of rights or privileges. Great American Fed. Sav. & Loan Ass'n, 442 U.S. at 372 (citing Griffin, 403 U.S. at 102-03); Brown v. Sim, No. 03-2655, 2005 WL 3276190, *3 (D.D.C. Sept. 30, 2005).

In this case, however, there are two fatal flaws in the § 1985(3) claim as pled by plaintiff in the amended complaint. First, as plaintiff acknowledges, the conspiracy alleged by plaintiff is not one to unlawfully arrest and beat plaintiff, but rather a conspiracy with the purpose of covering up the beating and impeding his efforts to obtain legal redress. See Am. Compl. ¶ 66(a) ("Ramirez, Persons, Acosta, Smith, Fiorito and Rehman/Romeo entered into an actual or tacit agreement that they would take steps to 'cover up' the beating . . . and to block or impede any efforts by Mr. Mazloum to obtain legal redress for that beating"). However, the Court has already held that the facts alleged fail to state a claim for unconstitutional deprivation of access to the judicial process, based on plaintiff's failure to identify an underlying cause of action rendered ineffective and a remedy unique to that cause of action. Since plaintiff's cover-up allegations fail to implicate a constitutional right, a conspiracy that has as its purpose the very same non-cognizable cover-up also fails to state a legal claim. See Wiggins v. Phillip Morris, Inc., 853 F. Supp. 458, 467 (D.D.C. 1994) (dismissing § 1985(3) claim where plaintiff failed to allege underlying violation of federal law); Holmes v. Finney, 631 F.2d 150, 154 (10th Cir. 1980) (conspiracy must concern "infringement of some federally protected right independent of § 1985(3) . . . for a violation of the conspiracy statute to be demonstrated"). In other words, the second element of the prima facie case -- the purpose of violating a federally protected right -- has not been pled, because the Supreme Court has not recognized a boundless constitutional right

of access to a judicial forum untethered to the loss of any particular claim and remedy. This deficiency is fatal to the viability of the § 1985(3) claim as to all defendants, not only Acosta and Smith, and thus the Court will dismiss the § 1985(3) claim in its entirety.

Plaintiff also suggests that Acosta and Smith are liable for the alleged beating because their after-the-fact conduct made them "complicit in the [excessive force] violation." Pl.'s Opp. at 6. The Court disagrees. The case law has generally recognized in excessive force cases that, to support liability based on conspiracy, the plaintiff must allege facts supporting an inference that the defendants reached an agreement prior to the use of force. See Moss v. Perkins, 682 F. Supp. 395, 396 (N.D. Ill. 1988) (dismissing § 1985(3) claim in a case in which co-officer failed to intervene in an assault where plaintiff "fail[ed] to present any facts which would indicate that either of the officers had previously devised a plan" to assault plaintiff) (emphasis added); Parker v. Grand Hyatt Hotel, 124 F. Supp. 2d 79, 88 (D.D.C. 2000) (dismissing conspiracy claim pled under § 1983 where plaintiff failed to allege facts indicating that private actor and police officers "reached a prior agreement or understanding to use excessive force"). Here, the amended complaint does not remotely suggest that Acosta or Smith had made even a tacit agreement relating to the alleged beating prior to its occurrence. Accordingly, plaintiff's conspiracy claim under § 1985(3) will be dismissed.[5]

---

[5] There is also a serious question as to whether plaintiff satisfies the requirement to plead that the conspiracy was motivated by "racial, or perhaps otherwise class-based, invidiously discriminatory animus." Griffin, 403 U.S. at 102. Although he is Middle Eastern, Lebanese, and Arab, he does not plead that Acosta and Smith discriminated against him on the basis of race or ethnicity -- only that they engaged in a cover-up to hide the alleged beating in order to protect other officers and to interfere with plaintiff's right to oppose the assault. See Am. Compl. ¶ 66(a).

**III.   Common Law Conspiracy**

It is well-established under District of Columbia law that a common law "civil conspiracy depends on the performance of some underlying tortious act," and is thus not an independent action, but instead "a means for establishing vicarious liability for the underlying tort."  See Weishapl v. Sowers, 771 A.2d 1014, 1023 (D.C. 2001); see Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983).  Acosta and Smith move to dismiss the common law conspiracy claim on the ground that plaintiff has not stated an underlying tort against them, pointing out once again that plaintiff does not allege that they were involved in the assault upon him.

Mirroring his § 1985(3) conspiracy claim, plaintiff contends that the underlying tortious activity is the involvement of Acosta and Smith in the alleged cover-up, citing their alleged refusal to accept his complaint, to drive him to the police station, and to collect evidence.  Am. Compl. ¶¶ 82-83.  However, as the Court has discussed above, plaintiff fails to state a claim for the constitutional tort of deprivation of access to a judicial forum as to any defendant.  Plaintiff has not identified another tort that the alleged cover-up can support.[6]  Like the deficiency in the federal conspiracy claim, this failing is fatal to the viability of the common law conspiracy claim as to all defendants, not just Acosta and Smith, and thus the Court will dismiss the common law conspiracy claim in its entirety.

---

[6] The Court does not construe plaintiff's common law conspiracy claim to allege a conspiracy to violate the DCHRA because it makes no reference to that statute.  See Am. Compl. ¶ 82.  The District of Columbia Court of Appeals has, moreover, expressed some skepticism as to whether a common law conspiracy claim can be based on a violation of the DCHRA because these statutory rights did not exist at common law.  See Executive Sandwich Shoppe v. Carr Realty Corp., 749 A.2d 724, 739 (D.C. 2000) ("we note authority which suggests that a claim of civil conspiracy does not lie for violation of a statute such as the DCHRA," citing rejection of comparable civil conspiracy claim in Monsanto v. Electronic Data Sys. Corp., 529 N.Y.S.2d 512 (N.Y. App. Div.1988), but declining to resolve the issue).

## IV.    D.C. Human Rights Act

Finally, defendants Acosta and Smith move to dismiss plaintiff's D.C. Human Rights Act ("DCHRA") claim on the ground that the only conduct alleged as to Acosta and Smith -- their refusal to take an immediate formal complaint about the alleged assault -- violates no duty under the DCHRA. In response, plaintiff makes reference to three separate DCHRA provisions -- those prohibiting discrimination with respect to: (1) public accommodations (D.C. Code § 2-1402.31); (2) services provided by the District of Columbia government (id. § 2-1402.73); and (3) retaliation for, or interference with, the exercise of rights under the DCHRA (id. § 2-1402.61). However, both plaintiff's amended complaint and his opposition brief describe only the factual allegations supporting a retaliation or interference claim as to Acosta and Smith, and the Court will thus focus its analysis on whether plaintiff states a claim for retaliation or interference under the DCHRA.[7]

The DCHRA provides that "[i]t shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on

---

[7] The amended complaint does not allege any facts in support of a claim that Acosta and Smith -- as opposed to the off-duty officers and the nightclub employees -- denied plaintiff the enjoyment of services at an area of "public accommodation" (that is, the nightclub). See Am. Compl. ¶¶ 74-80. As discussed in the background section, plaintiff already had been removed from the nightclub by the time Acosta and Smith had arrived.
  As to discrimination in denying plaintiff public services, one might infer from plaintiff's opposition brief that he intended to make a claim that Acosta and Smith discriminated against him in the provision of police department services on the basis of his Middle Eastern ethnicity and appearance, or his perceived religion (Muslim), in violation of the DCHRA public services provision. See D.C. Code § 2-1402.73 ("it shall be an unlawful discriminatory practice for a District government agency or office to limit or refuse to provide any . . . service . . . to any individual on the basis of an individual's actual or perceived: race, color, religion [or] national origin . . ."). However, the amended complaint, as currently drafted, does not make such a claim, and plaintiff cannot further amend his complaint through an opposition brief. See, e.g., Arbitraje Case de Cambio, S.A. de C.V. v. United States Postal Serv., 297 F. Supp. 2d 165, 170 (D.D.C. 2003).

-14-

account of having exercised or enjoyed, . . . any right granted or protected under this chapter." D.C. Code § 2-1402.61(a).  To establish a prima facie case of retaliation or interference, a plaintiff must allege that: (1) he engaged in activity protected under the DCHRA, or opposed practices made unlawful under the DCHRA; (2) he was subjected to adverse action; and (3) there is a causal nexus between the two.  See Carter-Obayuwana v. Howard Univ., 764 A.2d 779, 790 (D.C. 2001).  The D.C. Court of Appeals also has emphasized that a defendant's "awareness that the [plaintiff] engaged in protected activity is . . . essential to making out a prima facie case."  Howard Univ. v. Green, 652 A.2d 41, 46 (D.C. 1994).  To establish such awareness, a plaintiff must show that she "voice[d] her complaint about . . . the allegedly unlawful activity."  Id. at 46; Carter-Obayuwana , 764 A.2d at 791.

   The issue here is whether plaintiff's factual allegations support the inference that he voiced his complaint about the alleged unlawful activity -- that is, the alleged discriminatory removal from the nightclub and subsequent beating.  Defendants contend that plaintiff fails to state a claim for retaliation or interference under the DCHRA because he has not alleged that he informed Acosta and Smith of specific charges of discrimination -- that is, that he believed he had been removed from the nightclub and beaten because of his race, religion, national original, or appearance -- which defendant contends is required by Howard Univ. v. Green.  See 652 A.2d at 46.  Plaintiff responds that Green is inapposite because it is an employment discrimination and retaliation case different in kind from a case involving police misconduct; plaintiff suggests, in the alternative, that the level of specificity demanded by defendants is unreasonable and the plaintiff's oral complaint here sufficed.

   The Court concludes that the requirement that a plaintiff voice his complaint about the alleged unlawful discriminatory activity applies with equal force in non-employment settings.  It

is true that the requirement has been developed and applied primarily in employment discrimination and retaliation settings, where the courts are concerned about otherwise subjecting virtually all employment decisions to a retaliation challenge based on a vague charge of discrimination.  See, e.g., Green, 652 A.2d at 49-50 (emphasizing agreement with other courts that "'[o]therwise, every adverse employment decision by an employer would be subject to challenge under either state or federal civil rights legislation simply by an employee inserting a [vague] charge of discrimination [in an internal document] . . . [S]uch would constitute an intolerable intrusion into the workplace'") (quoting Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1313 (6th Cir. 1989)); Daka, Inc. v. McCrae, 839 A.2d 682, 690 (D.C. 2003) (noting that "general complaints about workplace favoritism" do not put the employer on notice of a DCHRA violation and thus are not actionable).

This requirement, however, has been applied in the non-employment context as well.  See Chandamuri v. Georgetown Univ., 274 F. Supp. 2d 71, 84 (D.D.C. 2003) (applying requirement that plaintiff must put defendant on notice that "his complaint was about alleged discriminatory conduct" in lawsuit by student against university alleging retaliatory discipline in violation of Title VI of the Civil Rights Act of 1964, citing Carter-Obayuwana, 764 A.2d at 790).  Indeed, this prerequisite flows logically from the requirements that a plaintiff allege protected activity and causation, for the protected activity (opposing discrimination) can have a causal connection to adverse action only if the defendant is aware that the plaintiff opposed such discrimination. See Chandamuri, 274 F. Supp. 2d at 85.

The burden on plaintiff, however, is not an onerous one, and the Court finds that plaintiff's factual allegations suffice here.  To alert the defendant that he is opposing discrimination, the "[plaintiff] need not . . . employ any 'magic words,' such as 'discrimination,'

for 'the communication of a complaint of unlawful discrimination . . . may be *inferred* or *implied*' from the surrounding facts." Carter-Obayuwana, 764 A.2d at 791 (emphasis in original) (quoting Green, 652 A.2d at 47). Here, one could infer that Acosta and Smith were aware that plaintiff's complaint concerned discriminatory conduct from the surrounding circumstances alleged -- plaintiff was Middle Eastern in appearance, plaintiff had earlier "explained the entire incident from the start" to them when they first arrived on the scene (Am. Compl. ¶ 29), and one may reasonably infer that his explanation included Ramirez's alleged derogatory reference to him as "Al-Qaeda."  The Court concludes that one could also draw the inference that Acosta and Smith knew that the formal complaint plaintiff sought to make would be about the same "entire incident," including Ramirez's "Al-Qaeda" reference.  Plaintiff's attempt to lodge a formal complaint thus sufficed to "voice his complaint" of discriminatory conduct.

Acosta and Smith contend that dismissal is nonetheless warranted because the DCHRA does not require police officers to accept citizen complaints in any particular time or manner; they emphasize that plaintiff succeeding in filing a formal complaint the day after the incident by going directly to the First District police station.  Defs.' Reply at 6 ("[T]he DCHRA does not mandate that a police complaint . . . be received in any form or manner that a complainant might desire . . . . [I]t is sufficient to permit plaintiff to file his report at the police station.").  The Court agrees that the DCHRA contains no specific mandate on the filing of police complaints, but that does not mean that the handling of police complaints is somehow excepted from the DCHRA. To the contrary, the statute's prohibition against retaliation and interference with protected rights is generally applicable, and makes no exception for the handling of police complaints.  Thus, the absence of a specific provision on the handling of police complaints does not support dismissal.

Plaintiff's ability to file a formal complaint the next business day is not, however, wholly irrelevant. It does appear to raise the question of whether plaintiff suffered an adverse action or sustained any damages from the alleged refusal of Acosta and Smith to accept his complaint, although defendants have not framed the issue as such. At this early stage of the proceedings, however, when the factual allegations must be construed in the light most favorable to plaintiff, the Court concludes that plaintiff has stated a claim under the DCHRA. The alleged refusal was clearly adverse to him, the ensuing delay in investigation -- as brief as it was -- allegedly resulted in the destruction of the videotape evidence, and plaintiff alleges damages, including pain and suffering, from the delay. Accordingly, the Court denies defendants' motion to dismiss the DCHRA claim against Acosta and Smith.

## **CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part the motion to dismiss of defendants Acosta and Smith. Plaintiff's claim against them under 42 U.S.C § 1983 alleging unconstitutional deprivation of access to a judicial forum is dismissed for failure to state a claim upon which relief can be granted. Plaintiff's claim under § 1983 alleging that Acosta and Smith are otherwise liable for the alleged unlawful arrest and use of excessive force by other defendants based on the alleged cover-up also is dismissed for failure to state a claim upon which relief can be granted. Plaintiff's claims alleging a conspiracy to deprive him of access to a judicial forum under 42 U.S.C. § 1985(3) and District of Columbia common law (Counts III and VI) are dismissed in their entirety as to all defendants. The only claim that remains pending against Acosta and Smith, then, is plaintiff's claim under the D.C. Human Rights Act (Count V),

alleging that they interfered with his right to oppose the alleged discriminatory removal from the nightclub and subsequent beating. A separate order will be issued herewith.

/s/
JOHN D. BATES
United States District Judge

Dated:  June 27, 2006

Copies to:

Brian H. Corcoran
Katten Muchin Rosenman, LLP
1025 Thomas Jefferson Street, NW
Suite 700 East Lobby
Washington, DC 20007
Email: Brian.Corcoran@kattenlaw.com
    *Counsel for Plaintiff Emile Mazloum*

E. Louise Phillips
Office of the Attorney General for the District of Columbia
441 Fourth Street, NW
6th Floor South
Washington, DC 20001
Email: louise.phillips@dc.gov
    *Counsel for Defendant District of Columbia*

Lauren Birnbaum
Office of the Attorney General for the District of Columbia
441 Fourth Street, NW
6th Floor South
Washington, DC 20001
Email: lauren.birnbaum@dc.gov
    *Counsel for Defendants Ramirez, Modlin, Phillips, and Schneider*

Carl James Schifferle
Office of the Attorney General for the District of Columbia
441 Fourth Street, NW
6th Floor South
Washington, DC 20001
Email: carl.schifferle@dc.gov
    *Counsel for Defendants Acosta and Smith*

Thomas S. Schaufelberger, Bar No. 71934
Paul A. Fitzsimmons, Bar No. 444829
WRIGHT, ROBINSON, OSTHIMER & TATUM
5335 Wisconsin Avenue, Suite 920
Washington, D.C. 20015-2030
Email: tschauf@wrightrobinson.com, pfitzsim@wrightrobinson.com
    *Counsel for Defendants Night & Day Management, LLC*
     *t/a The Fur Factory, Fiorito, and Michael Rehman*