UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
EMILE MAZLOUM,                     )
                                   )
            Plaintiff,             )   Civil Action No. 1:06 CV 00002
                                   )   (JDB)
      v.                           )
                                   )
DISTRICT OF COLUMBIA, *et al.*,    )
                                   )
            Defendants.            )
_____)

**PLAINTIFF'S COUNTER-STATEMENT OF MATERIAL FACTS IN DISPUTE**

Plaintiff Emile Mazloum ("Mazloum"), by his undersigned counsel, pursuant to Rules 7.1(h) and 56.1 of Local Rules of the United States District Court for the District of Columbia, hereby sets forth his counter-statement of material facts as to which there exists a genuine issue necessary to be litigated:

1. Early on the morning of March 12, 2005, Mazloum was dragged from the FUR Nightclub, 33 Patterson Street, NW, Washington, D.C. after being assaulted therein by Defendants Persons and off-duty MPD Officers Ramirez, Modlin, Phillips, and Schneider. *See* September 7, 2006 Affidavit of Emile Mazloum ("Mazloum Aff."), a true copy of which is attached as Exhibit 1, at ¶¶ 2-3; March 12, 2005 Citizen Complaint Report, a true copy of which is attached as Exhibit 2.

2. Imad Alkadi, a friend of Mazloum, had been present at the time of the assault and witnessed the event. He also later left the Nightclub after Mazloum had been handcuffed and forcibly ejected from the Nightclub, to see what had happened to Mazloum. *See* March 24, 2005

Federal Bureau of Investigation Interview of Imad Alkadi, a true copy of which is attached as Exhibit 3, at 2-4.

3. When he left the Nightclub to check on his friend, Mr. Alkadi saw Mazloum seated on the curb on the opposite side of the street. He remained handcuffed and looked badly beaten. Ex. 3 at 3.

4. Alkadi observed Defendants Acosta and Smith, uniformed police officers, arrive on the scene at the Nightclub in a patrol car and saw them communicating with Mazloum *Id.* at 3-4.

5. Mazloum observed Acosta and Smith speaking with some of the officers who were involved in the incident, as well as FUR personnel, after they had arrived on the scene. Mazloum Aff. (Ex. 1) at ¶¶ 6-7; Ex. 2 at 2.

6. Alkadi witnessed the two uniformed officers who had arrived on the scene (whom he identified in his statement to the FBI as "Officers 1 and 2") speaking with Ramirez and other defendant MPD officers alleged to have been involved in the assault. Ex. 3 at 3-4; *see also* March 12, 2005 MPD Complaint/Witness Statement of Imad Alkadi, a true copy of which is attached as Exhibit 4, at 2.

7. Alkadi also heard Defendants Acosta and/or Smith speaking with Defendant Michael Rehman and heard them discuss the "drama" that would result if Mazloum were arrested. Ex. 3 at 4.

8. Alkadi also heard Mazloum tell Acosta and/or Smith that he was very upset with how he had been treated and wished to go to the police station to make a statement. He heard the officers generally laugh in response and indicate to him that they would not do so. Ex. 3 at 4-5; Ex. 4 at 2.

9. Mazloum attempted to inform Acosta and Smith about the assault he had suffered. He intended to tell them all the details, including the fact that he had been called a "fucking Al-Qaeda" by Ramirez as well as his belief that he had been so severely beaten, both within the

2

nightclub and later outside of it, due to his Middle Eastern appearance. Mazloum Aff. (Ex. 1) at ¶¶ 8, 10; Ex. 2 at 2.

10. Acosta and Smith were not interested in permitting Mazloum to make such a statement. In fact, they tried to prevent him from going to the police station to do so. Initially, they warned him that if he chose to press forward with his desire to complain, he would have to be arrested, suggesting that "everyone" was better off if he simply dropped the matter. Then, when he indicated to them his willingness to be arrested in order to process a statement and climbed into the back of their patrol car, they ejected him from it and departed. Mazloum Aff. (Ex. 1) at ¶10; Ex. 2 at 2-3; Ex. 3 at 4-5; Ex. 4 at 2.

11. Mazloum filed a complaint at the First District station on the afternoon of March 12, 2005 – the same day he had interacted with Defendants Acosta and Smith. *See generally* Ex. 2. That complaint – which he was denied the opportunity to make to Acosta and Smith – specifically references the "Al-Qaeda" slur that was directed at him by Ramirez. Ex. 2 at 2.

12. In his deposition, Defendant Ramirez admitted that co-defendant Modlin was friends with defendant Acosta. *See* Excerpts from Deposition Transcript of Anthony Ramirez, dated August 8, 2006 (a true copy of which is attached as Exhibit 5) at 184:1 – 4. He also stated that, after the incident involving Mazloum, he phoned Acosta to discuss with him why Mazloum was not arrested, in spite of his expectation that this should have occurred. Ex. 5 at 168:12 – 169:14; 176:16 – 177:8

13. In contrast to Mazloum's recollection of his conversations with the uniformed officers, both Acosta and Smith, in their March 19, 2005 statements made to MPD representatives, deny Mazloum mentioned virtually any relevant facts about his assault – including the primary fact that he believed he had been assaulted by their fellow police officers. *See* March 19, 2005 Statement of David Smith, a true copy of which is attached hereto as Exhibit 6; March 19, 2005 Statement of

Jose Acosta, a true copy of which is attached hereto as Exhibit 7. They instead characterize him as drunk and unable to articulate any facts about who had assaulted him. They also make no mention of his having gotten into their patrol car or the fact that he asked to be given the opportunity to go to the precinct station to make a statement. *Compare* Exs. 6 and 7 *with* Ex. 2 at 2-3.

14. There are inconsistencies in the Acosta and Smith statements that cast doubt on their veracity. For example, Acosta's March 19th statement asserts that "a group of males" were fighting in front of the nightclub – when in fact, by the time they arrived, Mazloum had been restrained and was seated on the curb. *Compare* Ex. 7 *with* Ex. 2 at 2-3; Ex. 4 at 2. Acosta further misidentifies the address as "1010 VT St," suggesting that he may have confused this incident with a different one from the same night. Ex. 7. And he states that Mazloum "became violent with us and the other citizens around him," directly contrary to the statements of Mazloum and Alkadi. *Compare* Ex. 7 *with* Ex. 2 at 2-3, Ex. 3 at 3-5.

15. Bouncer Michael Persons, who first become involved in the altercation with Mazloum that resulted in the alleged assault, gave a statement in April of 2005 to Sergeant Richard Moats. *See* April 25, 2005 Statement of Michael Persons, a true copy of which is attached as Exhibit 8. In it, he confirms discussing the assault incident with "a white guy with a bald head and a BDU uniform" which describes Defendant Smith. Exhibit 8 at 4. He specifically states that Smith told him "it looks like you were the aggressor" in the incident. *Id.* Persons then states that he was told that if he wished to press charges against Mazloum, he would be arrested, and accordingly opted instead simply to bar Mazloum permanently from FUR. *Id.* Defendant Ramirez confirmed in his deposition that such statements were made to Persons. Ramirez Tr. (Ex. 5) at 180:19 – 182:19.

4

Dated: September 8, 2006         /s/ _____
Brian H. Corcoran (Bar No. 456976)
Katten Muchin Rosenman LLP
1025 Thomas Jefferson St., NW
Suite 700 East Lobby
Washington, D.C. 20007
Ph: (202) 625-3500
Fax: (202) 298-7570
Brian.Corcoran@kattenlaw.com

Susan Huhta (Bar No. 453478)
Warren R. Kaplan (Bar No. 034470)
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, D.C. 20036
Ph: (202) 319-1000
Fax: (202) 319-1010
Sue_Huhta@washlaw.org
Warren_Kaplan@washlaw.org

Attorneys for Plaintiff
Emile Mazloum