UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
EMILE MAZLOUM,                      )
                                    )
            Plaintiff,              )   Civil Action No. 1:06 CV 00002
                                    )   (JDB)
      v.                            )
                                    )
DISTRICT OF COLUMBIA, *et al.*,     )
                                    )
            Defendants.             )
_____ )

EMILE N. MAZLOUM, being duly sworn, deposes and says:

1.  I make this Affidavit in opposition to Defendants Acosta and Smith's motion for summary judgment as to the D.C. Human Rights Act claim. The facts set forth in this Affidavit are personally known to me.

2.  As I have alleged in my complaint, early on the morning of March 12, 2005, I was dragged from the FUR Nightclub, 33 Patterson Street, NW, Washington, D.C. (the "Nightclub") after being assaulted in the club by Defendants Persons and off-duty MPD Officers Ramirez, Modlin, Phillips, and Schneider.

3.  During the attack, I was handcuffed by Ramirez and I was taken by force out of the Nightclub. I was then taken across the street from the main entrance to the Nightclub where I was made to sit and where I remained handcuffed.

4.  I tried to speak to Ramirez to find out why I was being treated this way, but he simply said to me "Shut up you fucking al-Qaeda."

5. When I tried to get up from where I was sitting, Ramirez grabbed me by the hair and threw me back on the ground. He kept a hold of my hair and slammed my head on the pavement.

6. While I was still on the ground, Defendants Acosta and Smith, uniformed police officers, arrived on the scene at the Nightclub in a patrol car. One of the uniformed police officers gave Ramirez his set of handcuffs. Ramirez took his handcuffs off me and he put the handcuffs on that the uniformed police officer had given him.

7. I then saw Acosta and Smith speak with the Nightclub bouncers, with Ramirez and with some of the off-duty police officers that had taken part in the assault.

8. Acosta and Smith then came back to speak with me and they asked me for identification, which I gave them. The officers then asked me what had happened, but they never listened to me as I tried to tell them. I intended to tell Acosta and Smith about the assault I had suffered and that I wanted to file a police report about how I had been treated. I also intended to tell them about all the details surrounding the assault, including the fact that I was called a "fucking al-Qaeda" by Ramirez, as well as my belief that I had been so severely beaten, both within the nightclub and later outside of it, due to my Middle Eastern appearance. But, Acosta and Smith seemed to be more concerned with whether or not I had anyone with me that could take me home.

9. Imad Al-kadi, a friend of mine who had come to the Nightclub with me that night, went up to Acosta and Smith while they were speaking with me. One of them asked Imad to take me home. At that point, the officer took the handcuffs off and returned my identification.

10. I then again told Acosta and Smith that I wanted to file a police report. But they were unwilling to prepare one. In fact, they stated plainly that they were not going to give me a

report. They then turned away from me and got into the patrol car. I went up to the patrol car's window and insisted in filing a police report. They again stated that they were not going to give me a police report. I refused to leave the patrol car's side without a report, at which time the officers told me that if I wanted a police report, I would have to be arrested. When I heard them say that, I opened the rear door of the patrol car and got in. I asked them to take me to jail because I wanted to file a police report about what happened to me. But, the officers got out of the car, and dragged me out of the back seat. They took me to my vehicle and shoved me in it.

     11.    On the afternoon of March 12, 2005, I filed a statement at the First District police station describing what happened at the Nightclub and my conversations with Acosta and Smith (copy attached hereto as Exhibit A). That statement—which I was denied the opportunity to make to Acosta and Smith the night before—clearly mentions the "al-Qaeda" slur that Ramirez directed at me the night before.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 07, 2006

_____
EMILE N. MAZLOUM

Sworn to and subscribed before me
this 7th day of September, 2006.

BONNIE JOHNSON
Notary Public District of Columbia
My Commission Expires 01/14/11

_____
Notary Public

District of Columbia : SS
Subscribed and Sworn to before me, in my presence.
This 7th day of September
Bonnie John
Notary Public, D.C.
My commission expires January 14, 2011

4