UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
EMILE MAZLOUM,                          )
                                        )
                    Plaintiff,          )        Civil Action No. 1:06 CV 00002
                                        )        (JDB)
            v.                          )
                                        )
DISTRICT OF COLUMBIA, *et al*.,         )
                                        )
                    Defendants.         )
_____)

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS
ACOSTA AND SMITH'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Emile Mazloum ("Mazloum"), by his undersigned counsel, for his response to the

motion of Defendants Jose Acosta and David Smith for summary judgment pursuant to Fed. R. Civ.

P. 56, hereby states as follows:

**PRELIMINARY STATEMENT**

In his responses to Defendants Acosta and Smith's Requests for Admission, Mazloum has

admitted that he never used the "magic words" that Acosta and Smith believe are essential elements

of his claim arising under the District of Columbia's Human Rights Act, D.C. Code §§ 2-1401.01 *et*

*seq.* (the "DCHRA"). Yet this Court has already ruled that a DCHRA-based claim can be proved by

resort to circumstantial or other relevant proof indicating that the defendant was placed on notice of

claimant's desire to assert a claim – regardless of whether "magic words" were employed. *Mazloum*

*v. District of Columbia, et al.,* No. CIV.A.06-00002 (JDB), 2006 WL 1770500, at *10 (D.D.C. June

27, 2006). Such circumstantial proof exists here. In particular, substantial evidence already in the

record, or submitted herewith, is either probative of, or supports an inference, that (i) Acosta and Smith were more than aware of the circumstances under which Mazloum was assaulted, including the fact and relevance of his ethnic identity, and (ii) neither Acosta nor Smith permitted Mazloum a full opportunity to complain of how he was treated. Had he been so allowed, he would have specifically mentioned his concerns about the "Al-Qaeda" slur that was directed at him by one of the assaulting police officers, as well as his suspicions that the assault was racially motivated – as he did *later the very same day* in his March 12, 2005 police statement. Moreover, it is reasonable to infer that Acosta and Smith (who chose not to arrest Mazloum, in spite of the expectations of other Defendants) acted as they did because they wanted to protect their fellow MPD officers who were directly involved in the assault, and whom they likely knew would face severe disciplinary action for their reckless behavior.

Discovery has only just begun in this case. Neither Acosta nor Smith have been deposed, and the record contains only vague and incomplete statements from them regarding the incident. Because witness testimony will prove to be a large element of this lawsuit, credibility determinations will be extremely important – and it is already plain that Plaintiff and Defendants completely disagree as to the specific events that occurred at the FUR Nightclub on March 11-12, 2005. Accordingly, there are far too many material issues of fact to make summary judgment appropriate.

## ARGUMENT

Entry of summary judgment is proper where the non-movant can offer no evidence upon which a jury could reasonably find in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). The evidence offered in support of the non-movant's claim must be more than a "scintilla" but need only be sufficient to establish the existence of material triable facts. *Id.* at 249-50; *see also*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).  In reviewing Defendants Acosta and Smith's motion, this Court must assume the truth of Mazloum's factual allegations and must draw all evidentiary inferences in his favor.  *Anderson*, 477 U.S. at 255.  The Court must also "eschew making credibility determinations or weighing the evidence."  *U.S. v. Project on Gov't Oversight,* 454 F.3d 306, 308 (D.C. Cir. 2006)(citations omitted).

In cases like this one[1], where claims of discrimination and Title VII violations are alleged, "summary judgment should be approached with special caution" given the inherent difficulties of proving intent and other matters peculiar to such cases.  *Regan v. Grill Concepts-D.C., Inc.,* 338 F. Supp. 2d 131, 133 (D.D.C. 2004)(denying summary judgment on DCHRA-based claim).  And it is important to emphasize as well that the level of proof required of such a discrimination claimant is less at the summary judgment stage than at trial.  *See, e.g., Dey v. Colt Construction & Development Co.,* 28 F.3d 1446, 1458 (7th Cir. 1994)(Title VII plaintiff "need not prove by a preponderance of the evidence at the summary judgment stage" that defendant was aware of complaints, but instead need only "produce evidence that would support an inference" of such awareness).

## I.    This Court Has Previously Rejected Defendants' "Magic Words" Construction Of the Notice Element of a DCHRA Claim.

In its June 27, 2006 Memorandum Opinion addressing Acosta and Smith's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court set forth the elements for stating a claim under the DCHRA.  *Mazloum,* 2006 WL 1770500, at *8.  Here, Acosta and Smith challenge only Mazloum's ability to establish facts that he had "voice[d] his complaint about the alleged unlawful

---

[1] It is reasonable to consider cases construing the federal discrimination statutes, like Title VII, when evaluating claims asserted under the DCHRA, given the substantial similarity of those two statutes. *Arthur Young & Co. v. Sutherland,* 631 A.2d 354, 361 n.17 (D.C. 1993).

discriminatory activity" of these two defendants.  *Id.* at *9.[2]  Other courts have interpreted this element of a DCHRA claim to effectively be one requiring that the defendant be on notice (from the claimant or otherwise) that the claimant was involved in protected activity.  *See, e.g., Chandamuri v. Georgetown Univ.,* 274 F. Supp. 2d 71, 84 (D.D.C. 2003)(dismissing DCHRA claim where claimant could not show sufficient conduct that would have made defendant aware of his protected activity).

Acosta and Smith originally had argued, in their motion to dismiss, that Mazloum's DCHRA claim was deficient because he had failed to plead the specific "magic words" that would have informed them he objected to the discriminatory treatment he had received.  Yet that narrow reading of this particular element of a DCHRA claim was ***expressly rejected by this Court.***  *Mazloum,* 2006 WL 1770500, at *10 ("[t]o alert the defendant that he is opposing discrimination, the "[plaintiff] need not . . . employ any 'magic words' such as 'discrimination,' for 'the communication of a complaint of unlawful discrimination . . . may be *inferred or implied'* from the surrounding facts." *Carter-Obayuma,* 764 A.2d at 791 (emphasis in original)."  Since there is no requirement in *pleading* a claim under the DCHRA that the plaintiff have used "magic words" to support this notice element, there can similarly be no obligation that the plaintiff *prove* the use of such words.  Thus, Acosta and Smith's motion – which solely relies on Mazloum's failure to use certain "magic words" – cannot succeed if there are other material triable facts which suggest that these Defendants had notice of his desire to complain of discriminatory conduct.

---

[2]  Acosta and Smith have not challenged Mazloum's ability to present triable issues of fact with respect to any of the other elements of his DCHRA claim, and accordingly summary judgment cannot be granted on those elements, as these Defendants must be deemed for now to have conceded Mazloum's ability to provide support for them. *Carter-Obayuma v. Howard Univ.,* 764 A.2d 779, 780 (D.C. 2001)(elements of DCHRA claim are (i) proof that claimant engaged in protected activity under the DCHRA, (ii) proof that claimant was subject to adverse action, and (iii) proof of a causal

**II.    There is Substantial Evidence in the Record That Acosta and Smith Were On Notice of Mazloum's Desire to Complain of Discriminatory Treatment.**

Even though nearly four months of discovery remain, there is already abundant evidence (from which this Court must draw all reasonable inferences in favor of Mazloum) suggesting that Acosta and Smith were placed on notice of Mazloum's DCHRA claim.  What happened to Mazloum, and what the various MPD police officers did, once Mazloum had been forcibly and violently pulled from FUR – and, more to the point, what happened in the interaction between Acosta and Smith and (a) Mazloum, on the one hand, and (b) Ramirez, on the other hand, after Acosta and Smith had arrived at the scene - are matters that are very much in contention.  These include the following:

1.    <u>Mazloum's Efforts to Describe the Assault to Acosta and Smith</u>: Mazloum contends that he directly attempted to inform Acosta and Smith of the facts relating to the assault he had incurred from the off-duty MPD officers inside FUR, but that Acosta and Smith were not only not interested in aiding him but actively sought to discourage and thwart his efforts, first "warning" him that he would be arrested if he insisted on filing a complaint, then ejecting him from their squad car after he expressed a willingness to undergo arrest if that is what it took to make the complaint.  *See generally* Affidavit of Emile Mazloum, dated September 7, 2006, a true copy of which is attached to Plaintiff's Counter-Statement of Material Facts in Dispute ("Counter-Statement")  as Exhibit 1; Counter-Statement at ¶¶ 8-10.  By contrast, Acosta and Smith (judging solely from their brief written statements) deny completely that Mazloum said anything about police misconduct; instead, their "version" of events depicts an incoherent Mazloum.  Counter-Statement at ¶ 13.  Such a gulf between the parties' recollection of their interaction demonstrates the existence of disputed issues of fact, the resolution of which will depend on determinations of credibility.  But, drawing all inferences

---

nexus between the first two elements).

in favor of Mazloum, it is clear there exists sufficient circumstantial evidence to support Mazloum's claim. *See, e.g., Dey,* 28 F.3d at 1458-59; *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir. 1993)(defendant's awareness of the making of a protected statement, such as a complaint of discrimination, may be established by circumstantial evidence).

The very Requests for Admission responses relied upon exclusively by Acosta and Smith's motion also demonstrate the existence of disputed facts as to the notice element at issue. Despite Mazloum's admissions that he did not make certain pinpoint statements to Acosta and Smith (*i.e.,* he admits that he did not tell them that his religion had been discriminated against), Mazloum's responses also reveal that he generally "wanted to make a complaint of discrimination," to Acosta and Smith (*See* Exhibit 1 to Summary Judgment Motion at 1-2 (Response to Request No. 1)). In fact, as Mazloum asserts, he had intended to do so even if he did not specifically use the term "discrimination." However, his efforts to press his complaint were ignored or thwarted outright by these two Defendants. Mazloum Aff. at ¶¶ 8, 11 (Counter-Statement Ex. 1). Mazloum's allegation that, given the chance, he would have complained of the discriminatory treatment he received is independently corroborated by the very statement Mazloum made later on March 12th at the First Department. *See* Counter-Statement at ¶ 11. That statement specifically includes reference to the "Al-Qaeda" remark made by Defendant Ramirez to him. Ex. 2 to Counter-Statement.

2.    Acosta and Smith's Conduct at the Scene: It is undisputed that Acosta and Smith did not arrest Mazloum. The discovery record to date reveals considerable confusion and disagreement as to why these Defendants so acted. The only statements of these two individuals (made in March 2005) produced to date speak only of Mazloum's purported inability to articulate to them what had happened, making no mention of Mazloum as a criminal suspect. *See* Exhibits 6 and 7 to Counter-Statement. By contrast, co-defendant Ramirez (who was recently deposed) has testified that he and

other officers on the scene believed Mazloum should have been arrested. *See* Counter-Statement Ex. 5; *see also* Counter-Statement at ¶¶ 7, 12-15. Defendant Persons (the bouncer who Mazloum alleges to have initiated the assault) declined to file a complaint against Mazloum, even though he has asserted in statements that Mazloum initiated the incident – perhaps because (as his statements indicate), he understood that a police investigation of how Mazloum came to be so battered and bruised would not augur well for him, or the job security of Mazloum's assailants. *See* April 25, 2005 Statement of Michael Persons, attached to Counter-Statement as Exhibit 8, at 2-4.

Mazloum and Alkadi, however, have asserted that (i) the whole incident from the start was premised on a mistake: the erroneous assumption that Mazloum had done something wrong inside FUR, when he had not, and (ii) therefore there was no basis for arresting him. Counter-Statement at ¶¶ 1-8; Ex. 2 to Counter-Statement at 1-2; Ex. 4 at 1. The fact that the MPD chose not to arrest him is in fact consistent with Mazloum's version of events – that the MPD in fact *knew* Mazloum had done nothing wrong for which he could be charged with a crime. Indeed, Defendant Person's statement to an MPD officer from April 2005 confirms that he was told by Defendant Smith that it appeared that **Persons**, not Mazloum, was in fact the "aggressor" in the incident. Exhibit 8 to Counter-Statement at 4. Thus, Acosta and Smith's conduct in seeking to cut off their discussions with Mazloum once they had ascertained "the lay of the land" is consistent with the factual theory that they understood that their fellow MPD officers were at risk due to their unjustified assault on Mazloum – a risk they wanted to minimize.

3.    Evidence of Acosta/Smith Knowledge of Ramirez's Racist Motivation for Mazloum's Beating: Imad Alkadi, a friend of Mazloum who was present at the Nightclub during the incident and who witnessed the assault, observed Acosta and Smith consulting with the off-duty officers alleged to have been involved in the assault. Ex. 3 to Counter-Statement at 3-4; Ex. 4 to Counter-Statement

at 2.  In a hand-written witness statement given to the MPD on March 12, 2005 and made under the

penalty of perjury, Alkadi describes the fact that, upon their arrival, Acosta and Smith first spoke

with Defendant Ramirez about how the incident had evolved:

> "2 uniformd [sic] police officers came and started asking 'Mr. Ramirez'
> what happened and gave him his handcuffs back and put new handcuffs back
> on and told Mr. Mazloum to go home so he won't go to jail, but Mr. Mazloum
> refused he didn't want to go home he wanted to go to the police station so he can
> make a police report, but the police officers refused and told him to go away and
> didn't give him a police report,

 March 12, 2005 Statement of Imad Alkadi, a true copy of which is attached to the Counter-Statement

as Exhibit 4.

Since (as Plaintiff alleges) Ramirez had, shortly before speaking with Acosta and Smith,

angrily blasted Mazloum as a "fucking Al-Qaeda," it is reasonable to infer from Mr. Alkadi's

statement that Acosta and Smith may have learned, either directly or indirectly, from Ramirez his

views of Mazloum's perceived Muslim background and even possible terrorist affiliation.

Accordingly, there is further evidence that Acosta and Smith discovered the nature of, and motivation

for, the assault when they arrived on the scene and accordingly chose to squelch Mazloum's

desperate efforts to file a complaint.  In fact, as Ramirez admitted in his deposition, he phoned

defendant Acosta (with whom he was acquainted and who was in fact a friend of co-defendant

Modlin) on March 12, 2005 to find out why Mazloum had not been arrested (Deposition Transcript

of Anthony Ramirez, dated August 8, 2006, a true copy of which is attached to Counter-Statement as

Exhibit 5, at 168:18 – 169:14).  Such conduct is consistent with the notion that Ramirez was aware

he was guilty of wrongful conduct and wanted to minimize the damage by making sure their

"stories" were straight.

**III.    This Court May, in the Alternative, Defer Ruling on this Motion Until Discovery on Issues Relevant to the DCHRA Claim is Completed.**

Given the number of obvious fact questions relating to Acosta and Smith's interaction with the Plaintiff in March 2005 and the paucity of uncontested evidence relied upon by the motion, this Court should simply deny the Summary Judgment motion outright.  However, to the extent the Court finds any aspect of the motion persuasive, this Court should, in the alternative, continue and defer its ruling pursuant to Fed. R. Civ. P. 56(f) until after further discovery is taken.  At a bare minimum, the depositions of Acosta and Smith should be taken so that all relevant fact questions can be further explored.

Good cause exists under Rule 56(f) for so continuing the motion pending these depositions.  A plaintiff may obtain a continuance of a summary judgment motion where she can demonstrate, by affidavit or otherwise, what facts she "intend[s] to discover that would create a triable issue" and why she cannot yet produce them. *See Byrd v. United States EPA,* 174 F.3d 239, 248 n. 8 (D.C.Cir.1999)(citations omitted); *see also Williams v. Federal National Mort. Assoc.,* no. 05-1483 (JDB), 2006 WL 1774252 (D.D.C. June 26, 2006)(Bates, J.)(granting Rule 56(f) request to continue summary judgment motion pending discovery); *Gualandi v. Adams,* 385 F.3d 236, 244 (2d Cir.2004) (motion under Fed. R. Civ. P. 56(f) must set forth (1) the nature of the uncompleted discovery; (2) an explanation of how the facts sought are reasonably expected to create a genuine issue of material fact; (3) a showing that the plaintiff made efforts to obtain these facts by other means; and (4) why these efforts were not successful).[3]

---

[3] Although Rule 56(f) references the use of affidavits to establish grounds for a continuance, "[c]ourts, . . . do not always require a Rule 56(f) affidavit, and the nonmoving party's objections before the court may serve as the functional equivalent of such an affidavit." *Burlington Ins. Co. v. Okie Dokie, Inc.,* No. 03-2002 (RMU), 2006 WL 1982488, at *3 (July 17, 2006), *citing Harrods Ltd. V. Sixty Internet Domain Names,* 302 F.3d 214, 244-45 (4th Cir. 2002).  Here, Plaintiff's arguments – coupled with the self-evident fact that the movants themselves have yet to be deposed – should stand as the "functional equivalent" of a Rule 56(f) affidavit.  However, Plaintiff's counsel are prepared to submit such an

In this matter, only one fact witness, Defendant Ramirez, has been deposed. Plaintiff has been unable to depose Acosta or Smith to date[4]. This case very much turns on witness testimony, as the Defendants and Plaintiff fundamentally disagree about the events in dispute. Plaintiff asserts he tried, unsuccessfully, to persuade Acosta and Smith to allow him to formally record his complaint about the assault. In contrast, Acosta and Smith not only deny that Mazloum made any such efforts, but (along with the other officer Defendants) paint a picture of Plaintiff as being incoherent and unable to articulate his intent. Credibility determinations will be paramount in trying this matter, but a first step toward unraveling the facts will be simply to depose the relevant witnesses and parties in order to test their explanations for what occurred.

The depositions of Acosta and Smith will also permit the Plaintiff to further flesh out their respective roles in the events in dispute. Notably, and in contrast to the other Defendant officers (some of whom were interviewed multiple times in the formal and informal investigations of this matter), Acosta and Smith each gave only one-paragraph statements in March 2005. *See* Exs. 6 and 7 to Counter-Statement. These two statements, however, are not only devoid of detail, but also contain contradictions and inaccuracies that could be either inadvertent – or intentional. Counter-Statement at ¶¶ 13-14. And, as mentioned above, there is evidence that one of these officers (Acosta) was a friend of one of the off-duty officers alleged to have been responsible in part for Mazloum's injuries (Defendant Modlin) and thus has a motive for protecting him. *Id.* at ¶ 12. Finally, there is some indication from other witnesses who will also likely be deposed, such as Imad

---

affidavit (which would, in all likelihood, simply repeat the arguments contained herein) if the Court so wishes.

[4] During the last week of August, the parties had a brief telephone conversation and discussed the intent of Acosta and Smith to file this motion. Their counsel refused to make any effort to make either witness available for deposition in September, even though Plaintiff's counsel pointed out that such discovery would be necessary in order to explore whether the notice requirement was satisfied. Three party depositions are pending for the first week of October - the earliest date all counsel could agree upon for depositions.

Alkadi, that Acosta and Smith spoke not only to some of the defendant officers alleged to have taken

part in the assault, but also individuals associated with FUR – all of whom had reason to want the

matter kept quiet.  *Id.* at ¶¶ 5-8.  Discovery into these matters, obtained through depositions, will

reveal the extent to which certain MPD and FUR-related statements are false, self-serving, or both.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the motion of Defendants

Acosta and Smith for summary judgment be denied.


Dated:  September 8, 2006                              /s/ _____

                                                      Brian H. Corcoran (Bar No. 456976)
                                                      Katten Muchin Rosenman LLP
                                                      1025 Thomas Jefferson St., NW
                                                      Suite 700 East Lobby
                                                      Washington, D.C.  20007
                                                      Ph: (202) 625-3500
                                                      Fax: (202) 298-7570
                                                      Brian.Corcoran@kattenlaw.com

                                                      Susan Huhta (Bar No. 453478)
                                                      Warren R. Kaplan (Bar No. 034470)
                                                      Washington Lawyers' Committee for
                                                      Civil Rights and Urban Affairs
                                                      11 Dupont Circle, NW
                                                      Suite 400
                                                      Washington, D.C.  20036
                                                      Ph: (202) 319-1000
                                                      Fax: (202) 319-1010
                                                      Sue_Huhta@washlaw.org
                                                      Warren_Kaplan@washlaw.org

                                                      Attorneys for Plaintiff
                                                      Emile Mazloum