#24

## METROPOLITAN POLICE DEPARTMENT
### WASHINGTON, D.C.
### COMPLAINANT / SUSPECT STATEMENT

P.D. 119 Rev. 7/24

| | |
|---|---|
| **2. NATURE OF INVESTIGATION** Excessive Use of Force Complaint | **1. COMPLAINT NO.** |
| | **3. UNIT FILE NO.** |

| **4. STATEMENT OF: (Last, First, Middle)** Ramirez, Anthony | **5. DOB** 11/24/69 | **6. SEX** MALE |
|---|---|---|

| **7. HOME ADDRESS** | **8. HOME PHONE** (202) 607-8514 |
|---|---|

| **9. EMPLOYMENT (Occupation and Location)** MPD Officer assigned to First District | **10. BUSINESS PHONE** (202) 698-0068 |
|---|---|

**11. LOCATION STATEMENT TAKEN**

| **12. NAME OF OFFICER TAKING STATEMENT** (If other than block 18 include signature) Mr. Skip Coburn (a citizen), Chairman, First District Citizens Advisory Council | **13. DATE /TIME STARTED** 7/25/05 - 1400 |
|---|---|

**14. STATEMENT**

The event occurred on March 12, 2005 at approximately 0200 hours at the Fur Nightclub located at 33 Patterson St. NE. Officers Thaddeus Modlin, Richmond Phillips, Louis Schneider and I met at the club when we got off work at approximately 2300 hours to unwind and relax. I did not have my firearm in my possession as I had left it secured in my locker at the station per general orders. Officer Schneider and I were on the "stage" dance floor dancing with two females when I noticed a group of people below me and to my left moving away from the area very quickly. I observed officers Modlin and Phillips attempting to restrain a violent Caucasian male who from here on will be referred to as the suspect. They were approximately fifteen yards from where I was standing and I was not sure what they were dealing with but they appeared to be in need of assistance with the violent suspect. I immediately made my way through the crowd toward the direction in which they were moving. I ran off so quickly Officer Schneider was unaware that I had left but followed shortly thereafter when the females we were dancing with advised him that "his friends" might need his help.

As I approached the officers the suspect went into a rage and began to attack and resist the officers in an even more aggressive manner. I observed officers Modlin and Phillips bring the suspect to the ground in a manner consistent with police academy training on the bottom part of a staircase leading out of the club in an effort to stop the suspect's violent attack. At that time, I heard officers Modlin and Phillips identifying themselves to the suspect in loud and commanding voices as off-duty police officers. The suspect continued to violently resist. As I reached officers Modlin and Phillips, I removed a pair of handcuffs from a case attached to my belt and concealed in the small of my back. I carry these handcuffs with me at all times when off-duty and in the District of Columbia. At that time, I observed blood on the facial area of the suspect. THE ENTIRE TIME WE WERE TRYING TO PLACE THE DEFENDANT IN HANDCUFFS, OFFICER'S MODLIN, PHILLIPS AND I WERE CONTINUALLY ORDERING THE SUSPECT WITH LOUD VERBAL COMMANDS TO STOP RESISTING BUT HE WOULD NOT COMPLY WITH OUR ORDERS. With the help of Officers Modlin and Phillips I was finally able to place a handcuff on the suspect's right wrist. The suspect continued to violently resist and several seconds elapsed before the suspect was completely handcuffed and taken under control. Officer Schneider had arrived and assisted in securing the suspects left wrist as it was placed in handcuffs. It should be noted that the suspect's unusual high level of strength and aggressiveness was consistent with that of a person under the influence of narcotics. At that time, Officer's Modlin and Schneider escorted the suspect outside. I followed Officers Modlin and Schneider shortly thereafter.

| | |
|---|---|
| **15.** I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. ("I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES. D.C. CODE SECTION 22-2514) | |
| | **16. DATE / TIME ENDED** 7/25/05 - 1500 |
| SIGNATURE OF PERSON GIVING STATEMENT | **17.** PAGE **1** OF **4** PAGES |

| **18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15:** Mr. Skip Coburn (a citizen), Chairman, First District CAC (Name and Signature) | **19. PERSON WITNESSING THE SIGNATURE IN BLOCK 15:** (Name and Signature) |
|---|---|

Authorized by Egcry, 10, 6/97

COB0000067

METROPOLITAN POLICE DEPARTMENT
WASHINGTON, D.C.

P.D. 119 Rev.7/74

**COMPLAINANT / SUSPECT STATEMENT**

| | |
|---|---|
| NATURE OF INVESTIGATION<br>Excessive Use of Force Complaint | 1. COMPLAINT NO.<br><br>3. UNIT FILE NO. |

| 4. STATEMENT OF: (Last, First, Middle)<br>Ramirez, Anthony | 5. DOB<br>11/24/69 | 6. SEX<br>MALE |
|---|---|---|

| 7. HOME ADDRESS | 8. HOME PHONE |
|---|---|

| 9. EMPLOYMENT (Occupation and Location)<br>MPD Officer assigned to First District | 10. BUSINESS PHONE<br>(202) 698-0068 |
|---|---|

11. LOCATION STATEMENT TAKEN

| 12. NAME OF OFFICER TAKING STATEMENT *(If other than block 18 include signature)*<br>Mr. Skip Coburn (a citizen), Chairman, First District Citizens Advisory Council | 13. DATE /TIME STARTED<br>7/25/05 - 1400 |
|---|---|

14. STATEMENT

When I got outside officer Modlin advised me that he and officer Phillips had observed the suspect and two other individuals perpetrating an aggravated assault, a felony in the District of Columbia, on one of the clubs security personnel. At that time, Officers Modlin and Phillips came to the aid of the victim, stopped the felonious assault and attempted to restrain the most aggressive suspect. I observed that officers Modlin and Phillips were in need of assistance and responded to assist them and that is how the situation began. After advising me of what had happened officer Modlin noticed that his new cellphone was missing. He and officer Schneider went back inside the club to look for his cellphone which had fallen off his belt when taking police action.

Officer Phillips and I remained outside with the suspect to await on-duty officers. While awaiting the on-duty officers, the suspect, who was highly intoxicated was yelling and screaming racial slurs ( The suspect was making negative referrences about my hispanic culture while calling me "El Salvador" and stating how incompetent and stupid hispanics are.) and screaming that we should take the handcuffs off and let him go and that he was going to "sue all of our asses". At that time, the suspect went into another rage, yelling and screaming unintelligibly. The suspect rushed officer Phillips and myself and attempted to kick and bump us. Officer Phillips and I took control of the suspect and sat him on the ground to prevent him from injuring himself and others. At that time, the suspect threw his upper body backward and began to thrash around on the ground. While he was doing this he was yelling that he was going to get a lawyer and sue us and continued to hurl racial insults.

Shortly thereafter, a club employee, Mr. John Christopher responded outside with towels to provide first aid to the suspect who had a bloody nose and scratches on his face apparently inflicted on him by the victim when the victim was defending himself and when he (the suspect) was throwing himself around on the ground. I acknowledged the gesture by Mr. Christopher but felt that given the suspects high level of violent behavior and intoxication, first aid would better be rendered by a first responder. I took the towels from Mr. Christopher and rendered first aid to the suspect, who had calmed down, in a manner consistent with training obtained at the Metropolitan Police Department's Institute of Police Science.

15. I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. (*I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES. D.C. CODE SECTION 22-2514).

| | |
|---|---|
| SIGNATURE OF PERSON GIVING STATEMENT | 16. DATE / TIME ENDED<br>7/25/05 - 1500<br>17.<br>PAGE 2 OF 4 PAGES |

| OFFICER OBTAINING THE SIGNATURE IN BLOCK 15:<br>Mr. Skip Coburn (a citizen), Chairman, First District CAC<br>*(Name and Signature)* | 19. PERSON WITNESSING THE SIGNATURE IN BLOCK 15:<br><br>*(Name and Signature)* |
|---|---|

COB0000068

| METROPOLITAN POLICE DEPARTMENT WASHINGTON, D.C. | | P.D. 119 Rev. 7/74 |
|---|---|---|
| **COMPLAINANT / SUSPECT STATEMENT** | | 1. COMPLAINT NO. |

| ^ NATURE OF INVESTIGATION |  | 3. UNIT FILE NO. | |
|---|---|---|---|
| Excessive Use of Force Complaint |  | | |
| 4. STATEMENT OF: (Last, First, Middle) | | 5. DOB | 6. SEX |
| Ramirez, Anthony | | 11/24/69 | MALE |
| 7. HOME ADDRESS | | 8. HOME PHONE | |
| | | | |
| 9. EMPLOYMENT (Occupation and Location) | | 10. BUSINESS PHONE | |
| MPD Officer assigned to First District | | (202) 698-0068 | |
| 11. LOCATION STATEMENT TAKEN | | | |
| | | | |
| 12. NAME OF OFFICER TAKING STATEMENT (If other than block 18 include signature) | | 13. DATE /TIME STARTED | |
| Mr. Skip Coburn (a citizen), Chairman, First District Citizens Advisory Council | | 7/25/05 - 1400 | |

**14. STATEMENT**

On-duty midnight shift officers arrived on the scene. The Watch Commander of the First District, Lt. Francis Alman was also on the scene. In accordance with general orders, Lt. Alman was advised by Officer Phillips and myself of the criminal act that had occurred and that a suspect had been taken into custody for aggravated assault. At that time, Lt. Alman thanked us for our assistance and advised us that the situation would be handled by on-duty midnight shift officers. I again asked Lt. Alman if there was anything else that he needed from us and he once again released us and instructed officer Phillips and myself to try to enjoy the rest of our evening. At that time, my handcuffs were returned to me and I then went back into the club with officer Phillips. I am unaware of what transpired outside the establishment after we returned inside.

The following afternoon at approximately 1730 hours I had just completed processing an arrest at the first district headquarters and was preparing to enter my patrol car when I observed the suspect from the night before standing outside the station. I immediately recognized him as he was wearing the same attire that he was wearing the night before. At that time I stated, "Didn't they arrest you last night?" He stated something to the effect of "No they did not and I would like your badge number". At that time, the suspect was approximately three feet away from me and he reeked of the smell of alcohol and he was obviously still under its effects. I advised him that I would be happy to provide my name and badge number for him but that he would need to respond inside the station and that I would be in shortly. I placed my belongings inside the patrol car and responded back inside the station. The watch commander on-duty, Lt. Taylor was advised by station personnel that the suspect was in the station and would like to make a complaint. I went back into service shortly thereafter when it was apparent that the suspect had been provided with the information he requested.

Officer's Modlin and Phillips were acting in accordance with DCMR 6A, 200.4 which reads: "Members of the force shall be held to always be on duty, although periodically relieved from the routine performance of it; shall always be subject to orders from the proper authorities and to call from citizens; and the fact that they may be technically off duty shall not be held as relieving them from the responsibility of taking proper police action in any matter coming to their attention requiring that action."

| 15. I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. (*I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES, D.C. CODE SECTION 22-2514) | | |
|---|---|---|
| | **16. DATE / TIME ENDED** | |
| | 7/25/05 - 1500 | |
| *signature* | **17.** | |
| SIGNATURE OF PERSON GIVING STATEMENT | PAGE 3 OF 4 PAGES | |
| OFFICER OBTAINING THE SIGNATURE IN BLOCK 15: | 19. PERSON WITNESSING THE SIGNATURE IN BLOCK 15: | |
| Mr. Skip Coburn (a citizen), Chairman, First District CAC | | |
| (Name and Signature) | (Name and Signature) | Automated by Egovy, TD, 497 *...* |

COB0000069

METROPOLITAN POLICE DEPARTMENT
WASHINGTON, D.C.

**COMPLAINANT / SUSPECT STATEMENT**

P.D. 119 Rev. 7/74

| | |
|---|---|
| 2. NATURE OF INVESTIGATION<br>Excessive Use of Force Complaint | 1. COMPLAINT NO. |
| | 3. UNIT FILE NO. |

| 4. STATEMENT OF: (Last, First, Middle)<br>Ramirez, Anthony | 5. DOB<br>11/24/69 | 6. SEX<br>MALE |
|---|---|---|

| 7. HOME ADDRESS | 8. HOME PHONE |
|---|---|

| 9. EMPLOYMENT (Occupation and Location)<br>MPD Officer assigned to First District | 10. BUSINESS PHONE<br>(202) 698-0068 |
|---|---|

11. LOCATION STATEMENT TAKEN

| 12. NAME OF OFFICER TAKING STATEMENT (If other than block 18 include signature)<br>Mr. Skip Coburn (a citizen), Chairman, First District Citizens Advisory Council | 13. DATE /TIME STARTED<br>7/25/05 - 1400 |
|---|---|

14. STATEMENT

Officer Schneider and I acted in accordance with DCMR 6A, 200.7 which reads: " Members of the force shall display coolness and firmness at all times and shall act in concert and protect each other in times of peril. Any shrinking from responsibility or danger shall be deemed gross neglect of duty, for which penalty is removal from the force." Officers Modlin, Phillips, Schneider and I had a statutory obligation to come to the aid of the citizen and one another. To act in any other manner would have been a dereliction of duty.

I am unsure why on-duty midnight officers did not place the suspect under arrest on the evening in question given the seriousness of the offense. However, the decision of the suspect to take advantage of the fact that he was not placed under arrest by making a false statement is a crime under D.C. Code 22-2514 and that statement in no way truthfully represents what actually occurred on the evening in question. The suspect, his friends, citizens who witnessed the event and club personnel had every opportunity when the event occurred to report any unprofessional activity to officials and officers on the scene. They did not do so because there was nothing to report. It should be noted that while awaiting on-duty officers, we were standing in front of the location in plain view of customers and club staff, The clubs sound and lighting manager Mr. John Fiorilo observed the entire event and was outside the entire time. When on-duty officials and officers arrived on the scene, no one, including the suspect, his friends, staff or non-involved witnesses made any allegations of improper treatment of the suspect by any of the off-duty officers on the scene both inside and outside the establishment.

OFFICER'S MODLIN, PHILLIPS, SCHNEIDER AND I USED THE MINIMAL AND REASONABLE AMOUNT OF DEPARTMENTAL APPROVED RESTRAINT TECHNIQUES NECESSARY TO AFFECT THE ARREST OF A VIOLENT FELON. ANY INJURIES THE SUSPECT INCURRED WERE INFLICTED BY THE VICTIM IN SELF-DEFENSE AND BY HIS (THE SUSPECT) ALCOHOL/DRUG INDUCED WRITHING ON THE GROUND AND NOT DUE TO ANY IMPROPER TRAINING OR TECHNIQUES USED ON OUR PART. THE FELON WAS APPREHENDED AND HANDED OVER TO ON-DUTY OFFICERS IN ACCORDANCE WITH DEPARTMENT POLICY, DCMR 6A AND ON THE ORDERS OF THE FIRST DISTRICT WATCH COMMANDER. (End of Statement)

15. I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. ("I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES. D.C. CODE SECTION 22-2514)

SIGNATURE OF PERSON GIVING STATEMENT

| 16. DATE / TIME ENDED<br>7/25/05 - 1500 |
|---|
| 17.<br>PAGE 4 OF 4 PAGES |

| 18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15:<br>Mr. Skip Coburn (a citizen), Chairman, First District CAC<br>(Name and Signature) | 19. PERSON WITNESSING THE SIGNATURE IN BLOCK 15:<br><br>(Name and Signature) |
|---|---|