UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EMILE MAZLOUM, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:06 CV 00002 (JDB) |
| v. | ) ) | |
| DISTRICT OF COLUMBIA, *et al*., | ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE AND REPLY TO DEFENDANT RAMIREZ' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE**

Plaintiff Emile Mazloum ("Mazloum"), by his undersigned counsel, for his opposition to the motion *in limine* of Defendant Ramirez and in reply to the opposition of Defendant Ramirez to Plaintiff's Motion *In Limine*, hereby states as follows:

**ARGUMENT**

Plaintiff has previously articulated his basis for offering into evidence the finding of the Arizona Criminal Proceeding that defendant Ramirez left death threat messages for his ex-wife a single day before the events in dispute herein (*see* Motion *in Limine* at 6-8). When the admissibility of this evidence is evaluated in light of the standards set forth in *Gastineau Fleet Mortgage Corp.*, 133 F.3d 490, 494 (7th Cir. 1998), and in the manner in which such questions are analyzed in this Circuit,[1] it is plain that such evidence should be allowed at trial.

---

1 In D.C.this jurisdiction, the Rule 404(b) analysis is compressed into two steps. *U.S. v. Turner,* No. 06-0026 (CKK), 2006 WL 1980232, at *4 (D.D.C. July 12, 2006), *citing U.S. v. Miller,* 895 F.2d 1431, 1435 (D.C.Cir. 1990). The first consideration is whether the evidence offered is probative of some factor other than character, such that it would fit one

### 1. Evidence Concerning the Threatening Phone Messages Is Probative of Several Elements of Mazloum's Claims.

Contrary to Ramirez's assertions, Plaintiff's motion asks for admission of this proof, not to establish his propensity toward violence in general. Instead, this evidence will be offered in support of the intent element inherent in both the assault and battery claims and the Section 1983 claim. In this regard, intent is very different from propensity or "bad" character, despite Ramirez's attempts to conflate the two. A reasonable juror could infer from the vivid and anger-laden nature of the death threats that a person like Ramirez, who had expressed such uncontrolled rage a mere day before the issues in question, might have still been feeling some of that same anger and need to inflict harm (this time, on Mazloum), when he visited FUR the next evening.

Ramirez's state of mind at the time of the assault is also directly relevant to the claim for punitive damages. Plaintiff alleges that the assault he received was willful and wanton. *See* Amended Complaint at ¶¶ 47 and 62. On this issue, it is certainly probative to show that when Ramirez went to FUR on March 11th, he was already predisposed to vent his anger upon anyone he could. From his uncontrolled anger at his wife, as evidenced by the highly inappropriate messages he had left for her just a day earlier, a jury could readily find that Ramirez <u>deliberately</u> set about to hurt Mazloum (and in the process, abused his police powers) simply because he could. Mazloum became a convenient surrogate for the despised wife who was 3000 miles away and thus out of reach.

The death threat calls occurred sufficiently close in time to the event (and, as noted below, have been established as a matter of fact by a prior tribunal) to be probative of Ramirez's general state of mind as of the next night. It is hardly far-fetched to suggest to a reasonable juror that a man

---

of the exceptional categories on Rule 404(b); the second consideration involves a Rule 403 weighing of the evidence's probative value against its prejudicial nature. *Id.*

who could threaten his wife and children with death might, a day later, still be of a state of mind sufficient such that he might intend to engage in violence if and when the opportunity presented itself. And, as previously noted, Ramirez squarely disputes whether the level of force he used was excessive, thus putting this issue into play (Ex. F to Motion).

    **2.    There is No Basis at Law, Under FRE 404(b) or 403, for Excluding the Death Threat Messages.**

Based upon the above, applicable law permits use of such evidence for this limited purpose. Civil rights Plaintiffs should generally be permitted to marshal extrinsic evidence to prove intent, since it is unquestionably an element of a Title VII claim. *Lombardo v. Stone,* No. 99 CIV 4603 (SAS), 2002 WL 113913, at *6 (Jan. 29, 2002); *see also* Motion at 7. In this Circuit, Rule 404(b) is interpreted permissibly, as "a rule of inclusion rather than exclusion," and accordingly should be read to permit the introduction of evidence of prior acts for any use <u>other</u> than to establish propensity. *U.S. V. Bowie,* 232 F.3d 923, 930 (D.C. Cir. 2000) (admitting evidence of prior acts on issues of defendant's intent and knowledge). Federal courts have admitted prior acts proof in the context of Section 1983 cases involving use of excessive force by police, since evidence is probative of an "aggravated state of mind" at the time the disputed acts occurred. *Eng v. Scully,* 146 F.R.D. 74, 80 (S.D.N.Y. 1993) (permitting evidence of Rule 404(b) proof relating to allegations of excessive use of force by prison guards); *O'Neill v. Krzeminski,* 839 F.2d 9, 11, n.1 (2d Cir. 1988). Indeed, such evidence need not even establish the "aggravated" state of mind was substantiated in the form of actual conduct; as noted in *Eng*, "[w]here malicious, aggravated conduct is purportedly involved," prior acts evidence showing *mere reports* of violence can be admitted even if ultimately the defendant was not found to have committed the acts. *Eng,* 146 F.R.D. at 80 (emphasis added), *citing Huddleston v. U.S.,* 485 U.S. 681, 688 (1988).

Given the competency of the death threat evidence under Rule 404(b), its admission is proper when the basic Rule 403 balancing test is applied. Fed. R. Evid. 403; *U.S. v. Turner,* No. 06-0026 (CKK), 2006 WL 1980232, at *4 (D.D.C. July 12, 2006) (applying Rule 403 balancing test in Rule 404(b) context). As already noted, the probative value of the death threat messages is high, given its close temporal proximity to the date of the assault, veracity, and tendency to show intent and state of mind. By contrast, the prejudicial impact of this evidence is not so unfair as to justify exclusion. *Ismail v. Cohen,* 706 F. Supp. 243, 252 (S.D.N.Y. 1989) (since "all evidence" is to some degree "prejudicial" to a defendant, the Rule 403 test looks primarily for *unfair* prejudice). The messages are only offered for a limited purpose – a fact which a limiting instruction can easily establish to the jury. Ramirez has many tools at his disposal to counter suggestions that he was of a violent cast of mind the night of the incident, from cross-examination to his own testimony (in which he has consistently denied inappropriate conduct – or acting in violation of his police powers). Certainly, beyond conclusory statements about the prejudicial nature of the evidence, Ramirez has himself made no specific showing of how admission harms him or his defense.

    **3.**    **Principles of Collateral Estoppel Prohibit Ramirez from Challenging The Arizona Tribunal's Findings with Respect to the Date of the Threatening Phone Messages.**

Defendant Ramirez misapprehends the legal basis for Plaintiff's argument that the date the death threat messages were left has sufficient veracity for this Court to take judicial notice of that fact. Thus, Ramirez cites law relating to when a party is estopped from challenging the fact of a prior criminal conviction. Ramirez Opp. at 9. But Plaintiff is not seeking to admit the fact of Ramirez's conviction. Rather, he points to the fact that, in the course of a prior, completed legal action (the Arizona Criminal Proceeding), it was conclusively determined that the death threat

messages were <u>left</u> on March 10, 2005. (Motion at 3-5). It is that *fact* that Ramirez is collaterally estopped from challenging – not whether or not he was previously convicted of a crime.

Ramirez's opposition brief in no way rebuts the legal showing made in Plaintiff's initial motion as to why, as a matter of law, he should be precluded from challenging that issue, which has now been fully and completely litigated. Motion at 4-5. Ramirez does point to the fact that Ms. Wink, Ramirez's ex-wife, herself initially thought the messages were left on March 2nd (as evidenced by her initial Order of Protection) (*see* Ramirez Opp. at 9). Of course, this document was prepared in <u>June of 2005</u>. It matters not at all that Ms. Wink was mistaken about the date of the calls at that point. What does matter is that it was determined in the Arizona Criminal Proceeding, over a year later, that March 10th was the correct date. That determination was well-founded, given that both sides gave extensive testimony, put in evidence regarding the issue, and generally had the opportunity to litigate the matter.[2] Motion at 3-6. In short, Ramirez already had his day in court to challenge the correct date of the death threat messages – and he lost.

Because this Court is presented with no rationale not to give this determination of the Arizona Tribunal preclusive effect, it should rule that the date and fact of the death threat messages have been conclusively determined, and that this evidence is admissible as bearing upon Defendant Ramirez' state of mind at the time of his altercation with Mazloum.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that Plaintiff's Motion *In Limine* should be granted, and the Motion *In Limine* of Defendant Ramirez be denied.

---

2  In fact, two of Ramirez's co-defendants in this very lawsuit, Officers Modlin and Schneider, flew to Arizona and gave testimony intended to rebut Ms. Wink's assertion that the messages were left on March 10th.

Dated: December 11, 2006           /s/ _____

Brian H. Corcoran (Bar No. 456976)
Katten Muchin Rosenman LLP
1025 Thomas Jefferson St., NW
Suite 700 East Lobby
Washington, D.C.  20007
Ph: (202) 625-3500
Fax: (202) 298-7570
Brian.Corcoran@kattenlaw.com

Susan Huhta (Bar No. 453478)
Warren R. Kaplan (Bar No. 034470)
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, D.C.  20036
Ph: (202) 319-1000
Fax: (202) 319-1010
Sue_Huhta@washlaw.org
Warren_Kaplan@washlaw.org

Attorneys for Plaintiff
Emile Mazloum