UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EMILE MAZLOUM,** | |
| **Plaintiff,** | |
| **v.** | Civil Action No.  06-0002 (JDB) |
| **DISTRICT OF COLUMBIA** **METROPOLITAN POLICE** **DEPARTMENT, et al.,** | |
| **Defendants.** | |

## MEMORANDUM OPINION

In this civil rights action, plaintiff seeks recovery against the District of Columbia, several individual officers of the Metropolitan Police Department ("MPD"), and certain employees and owners of the Fur Nightclub, alleging that he was the victim of a beating carried out by off-duty police officers in collaboration with the nightclub's employees, and that defendants then participated in a cover-up of the incident.  Plaintiff brings claims pursuant to District of Columbia law governing tortious and discriminatory conduct and under 42 U.S.C. § 1983 for alleged violation of his rights under the Fourth and Fourteenth Amendments; he characterizes his constitutional claims as wrongful arrest, use of excessive force, and violation of his rights to due process and equal protection of the laws.  The factual background of this action is set forth more fully in Mazloum v. District of Columbia, 442 F. Supp. 2d 1 (D.D.C. 2006), and will not be repeated here.  Before the Court at this time are the motion of two police officers, defendants Acosta and Smith, for summary judgment on plaintiff's claim under the D.C. Human Rights Act ("DCHRA") and cross-motions in limine filed by plaintiff and defendant Ramirez regarding findings and evidence from a separate judicial proceeding concerning domestic violence.

I.      **Defendants' Motion for Summary Judgment**

Defendants Acosta and Smith move for summary judgment on plaintiff's claim that they retaliated or interfered with the exercise of plaintiff's rights under the DCHRA (Count V) by refusing to take a formal police report regarding the incident.  They contend that the undisputed facts establish that plaintiff did not voice a complaint of discrimination, which is necessary to establish a claim of retaliation under the DCHRA.  In response, plaintiff contends that other evidence indicates that Acosta and Smith were aware that plaintiff sought to file a complaint that the beating was motivated by his Arab background, and that this is sufficient to support his claim of retaliation.

In resolving the motion for summary judgment, the Court reviews the evidence to determine whether there is a "genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law," as set forth in Fed. R. Civ. P. 56(c).  The Court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The DCHRA provides that "[i]t shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, . . . any right granted or protected under this chapter."  D.C. Code § 2-1402.61(a).  As the Court explained in its earlier decision, to establish a prima

facie case of retaliation or interference, "a plaintiff must allege that: (1) he engaged in activity protected under the DCHRA, or opposed practices made unlawful under the DCHRA; (2) he was subjected to adverse action; and (3) there is a causal nexus between the two." See Mazloum, 442 F. Supp. 2d at 12 (citing Carter-Obayuwana v. Howard Univ., 764 A.2d 779, 790 (D.C. 2001)). To support a causal nexus between the protected activity and adverse action, the plaintiff must show that a defendant had some "awareness" of the protected activity. Id. at 12-13 (a defendant's "awareness that the [plaintiff] engaged in protected activity is . . . essential to making out a prima facie case") (quoting Howard Univ. v. Green, 652 A.2d 41, 46 (D.C. 1994)). "To establish such awareness, a plaintiff must show that she 'voice[d] her complaint about . . . the allegedly unlawful activity.'" Id. at 12 (quoting Howard, 652 A.2d at 46); Carter-Obayuwana , 764 A.2d at 791.

Defendants Acosta and Smith contend that the evidence developed to date establishes that plaintiff did not voice a complaint alleging discrimination on the night of the incident, and thus they are entitled to summary judgment on the retaliation claim. They rely on plaintiff's admissions during discovery that he did not tell them about Ramirez's alleged reference to him as "Al-Qaeda," and that he did not mention any discriminatory statements by any officers allegedly involved in the beating. See Defs.' Mem. at 3 (citing Pl.'s Response to Defendants Acosta and Smith's Requests for Admissions). Defendants Acosta and Smith further note that plaintiff did not tell them about his race, religion, or national origin, and they did not refer to his race, religion, or national origin. Id. Plaintiff responds that a plaintiff may prove by circumstantial evidence that a defendant was placed on notice of a person's opposition to discriminatory conduct, regardless of whether "magic words" were employed, and he offers evidence in support of his position that Acosta and Smith were aware that his attempt to file a complaint was in reference to discrimination. Pl.'s Opp. at 1-2, 5-8 & Exs. 1-8.

As the Court recognized in its prior decision, "[t]o alert the defendant that he is opposing discrimination, the [plaintiff] need not . . . employ any 'magic words,' such as 'discrimination,' for 'the communication of a complaint of unlawful discrimination . . . may be <u>inferred</u> or <u>implied</u>' from the surrounding facts." <u>Mazloum</u>, 442 F. Supp. 2d at 13 (quoting <u>Carter-Obayuwana</u> , 764 A.2d at 791) (emphasis in original).  Thus, defendant's submission of evidence indicating that plaintiff did not explicitly allege discrimination based on race, religion, or national origin is not dispositive. The Court has reviewed the evidence, and concludes that there is a genuine issue of material fact as to whether defendants Acosta and Smith were on notice that plaintiff's request to file a complaint was in opposition to discriminatory conduct.  That genuine issue precludes the entry of summary judgment sought by defendants through their motion.

Here, plaintiff has submitted evidence indicating that he made at least three requests to file a complaint with the police, and that Acosta and Smith refused to consider the requests and otherwise discouraged his efforts to file a complaint.  <u>See</u> Mazloum Affidavit dated Dec. 7, 2006 (Pl.'s Mot., Ex. 1); MPD Citizen Complaint Report signed by Mazloum on March 12, 2005 (Pl.'s Mot., Ex. 2).  Thus, a description of what plaintiff's allegations would have been is lacking.  But there is evidence from which a reasonable trier of fact could infer that Acosta and Smith were aware that plaintiff's attempts to file a complaint encompassed allegations of discriminatory conduct.  Plaintiff alleges that during the course of the alleged beating, he said, "I didn't do nothing.  Why are you doing that to me?"  <u>See</u> Mazloum's Citizen Complaint Report at 2. Ramirez allegedly responded "Shut up, you *** Al-Qaeda."  <u>Id.</u>  In response, plaintiff kept repeating "I'm not a terrorist . . . I'm not a terrorist."  <u>Id.</u>  Defendants Acosta and Smith arrived soon thereafter, and, before talking to plaintiff, they allegedly spoke to defendant Ramirez "for

-4-

about five minutes." See FBI Form FD-302, at 3 (Pl.'s Ex. 3) (summarizing statement of Imad Alkadi). They then declined the request of a Fur employee to arrest plaintiff, and allegedly explained that arresting plaintiff could result in "a lot of reports and drama." Id. at 4.

From this evidence, one could reasonably infer that, during the course of Acosta's and Smith's conversation with Ramirez, they learned of plaintiff's perceived Muslim background and became aware that discriminatory police conduct might have occurred, and that they further were aware that Mazloum's repeated requests to file a complaint on the heels of the incident encompassed a claim that Ramirez's conduct was discriminatory.[1] The Court is aware that Acosta, Smith, and other defendants have a different version of events, describing plaintiff as inebriated, violent, and refusing an opportunity to make a police report.[2] However, at this stage, construing the evidence in the light most favorable to the nonmovant, the Court finds that there is a genuine issue of material fact as to whether Acosta and Smith were aware that plaintiff's alleged request to file a police complaint encompassed opposition to discriminatory police conduct.

## II.    Cross-Motions in Limine Pertaining to Evidence of Threats Against Defendant Ramirez's Former Spouse

The parties have filed cross-motions in limine pertaining to evidence that defendant

---

[1] Plaintiff also discusses what he "intended" to tell defendants Acosta and Smith. Plaintiff's unexpressed intentions, however, are irrelevant. See Green, 652 A.2d at 48 ("[Defendant's] awareness that the [plaintiff] is engaged in protected activity is . . . essential to making out a prima facie case for retaliation") (emphasis added).

[2] See MPD Complaint/Witness Statement of Defendant Smith signed Mar. 19, 2005 (Pl.'s Ex. 6) (stating that plaintiff smelled of alcohol, was asked for information about suspects, and was offered a chance to file a police report for simple assault, but refused); MPD Complaint/Witness Statement of Defendant Acosta signed Mar. 19, 2005 (Pl.'s Ex. 7) (stating that plaintiff was "heavily intoxicated" and "violent" and that Acosta informed plaintiff a report would be made); Ramirez Depo. at 146-47 (Pl.'s Ex. 5) (stating that police involvement at Fur nightclub was in response to plaintiff's "beating" Fur security personnel).

Ramirez left enraged voicemail messages on his former wife's cellphone on March 10, 2005,

threatening to kill her and their children.   The evidence consists of factual findings made by an

Arizona municipal court and the transcript of the threats.   See Pl.'s Mot. at 2, Ex. A, B, and C.

Plaintiff seeks entry of an order declaring that the evidence is admissible "other crimes" evidence

under Fed. R. Evid. 404(b) that is relevant to his assault and battery claims and to his

constitutional tort claims under 42 U.S.C. § 1983.  Plaintiff further seeks an order to collaterally

estop Ramirez from contradicting the findings of the Arizona court as to the date of the messages.[3]

Defendant Ramirez contends that the evidence should be excluded under Fed. R. Evid. 403 as

irrelevant and unfairly prejudicial, and as improper character evidence under Fed. R. Evid. 404(a).

Rule 404(a) provides that "[e]vidence of a person's character or a trait of character is not

admissible for the purpose of proving action in conformity therewith on a particular occasion,"

with certain exceptions pertaining to criminal cases and the credibility of witnesses.  Fed. R.

Evid. 404(a).  Consistent therewith, Rule 404(b) excludes evidence of "other crimes, wrongs, or

acts" when such evidence is offered "for the sole purpose of proving that a person's actions

conformed to his or her character," but provides that such evidence is admissible if offered to

prove one of the legitimate purposes enumerated in the rule, including motive and intent.[4]  See

United States v. Long, 328 F.3d 655, 660-61 (D.C. Cir. 2003).  Thus, this Circuit has recognized

that "Rule 404(b) is a rule of inclusion, rather than exclusion" explaining that "[a]lthough the first

---

[3]  Ramirez admits leaving the messages, but contends the date of the messages is March 2, 2005.  See Def.'s Mot. in Limine at 8; Pl.'s Mot. in Limine, Ex. C (Tr. at 60).

[4]  Rule 404(b) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."

sentence of Rule 404(b) is framed restrictively, the rule itself is quite permissive, prohibiting the admission of other crimes evidence in but one circumstance -- for the purpose of proving that a person's actions conformed to his character." United States v. Bowie, 232 F.3d 923, 929-30 (D.C. Cir. 2000) (internal quotations omitted).   Hence, here, the Court first must consider whether the proffered evidence is relevant to one of the purposes enumerated in Rule 404(b), and if yes, then must consider whether, weighing its probative value against any unfair prejudice and other considerations, it is admissible under Rule 403.  Id. at 930.

Plaintiff contends that the threatening messages are relevant to the intent elements of his assault and battery and section 1983 claims because they are probative of Ramirez's "aggravated state of mind" and his motivation for committing a violent act less than 36 hours after the threats to his former wife.  See Pl.'s Mot. at 6-7; Pl.'s Opp. at 2-3.   Intent is, indeed, a well-established component of an assault and battery claim (see Etheredge v. District of Columbia, 635 A.2d 908, 916 (D.C. 1993), but it is not a component of a section 1983 claim concerning excessive force during an arrest.  See Graham v. Connor, 490 U.S. 386, 395, 397  (1989) ("Today we make explicit . . . that all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach," and "the 'reasonableness' inquiry in an excessive force case is an objective one . . . without regard to their underlying intent or motivation") (emphasis in original); see also Scott v. District of Columbia, 101 F.3d 748, 759 (D.C. Cir. 1996) ("Even where an officer's use of force is motivated by malice, a plaintiff cannot demonstrate excessive force if the mode of

arrest is one that a reasonable officer might have applied.").[5]   The Court thus considers only

whether the other crimes evidence is admissible regarding intent on the assault and battery claims.

Evidence of a similar act must meet a threshold level of similarity in order to be

admissible to prove intent.  Long, 328 F.3d at 661; see also Gastineau v. Fleet Mortgage Corp.,

137 F.3d 490, 494 (7th Cir. 1998) ("[t]he other act must be similar enough and close enough in

time to be relevant to the matter at issue").  Otherwise, the evidence would lack probative value

of intent, and instead would be more in the nature of propensity evidence.  See Long, 328 F.3d at

661 (recognizing that similarity is necessary to be "probative of intent rather than mere

propensity").  The other crimes need not be identical to the event at issue, so long as they are

_____

        [5]  Plaintiff's reliance on cases that characterize intent as lying at "the heart of the alleged
constitutional violation" is in error.  See Pl.'s Mot. at 7; Pl.'s Opp. at 3-4.  Those cases either pre-
date Graham v. Connor or address excessive force in non-arrest contexts which are analyzed
under different legal standards.  See Pl.'s Mot. at 7 (citing cases pre-dating 1989, including
Daniels v. Williams, 474 U.S. 327, 330 (1986); O'Neill v. Krzmenski, 839 F.3d 9, 10-11 (2d Cir.
1988); and Ladnier v. Murray, 769 F.2d 195, 199 n.4 (4th Cir. 1985)); see also Pl.'s Opp. at 3-4
(citing section 1983 cases involving nonarrest contexts in prisons and hospitals, including Eng v.
Scully, 146 F.R.D. 74, 80 (S.D.N.Y 1993) (excessive force by prison officers against prisoners);
Lombardo v. Stone, 2002 WL 113913, at *7 (S.D.N.Y. Jan. 29, 2002) (excessive force by state
mental hospital employees against patient)).  Indeed, most of those cases rely directly or indirectly
on Johnson v. Glick, 431 F.2d 1028 (2d Cir. 1973), which the Supreme Court explicitly rejected
as governing claims of excessive force during an arrest.  Graham, 490 U.S. at 397.
        Graham is emphatic that where excessive force during an arrest is alleged, an officer's
intent is irrelevant to determining whether the force used was reasonable.  Id. at 397 ("[A test]
which requires consideration of whether the individual officers acted in 'good faith' or 'maliciously
and sadistically for the very purpose of causing harm' is incompatible with a proper Fourth
Amendment analysis").  This Circuit has thus repeatedly recognized that an officer's subjective
intent is not relevant.  See Rogala v. District of Columbia, 161 F.3d 44, 54 (D.C. Cir. 1998);
DeGraff v. District of Columbia, 120 F.3d 298, 301 (D.C. Cir. 1997); Scott, 101 F.3d at 758-59;
Wardlaw v. Pickett, 1 F.3d 1297, 1303 (D.C. Cir. 1993); see also Martin v. Malhoyt, 830 F.2d
237, 261 & n.76 (D.C. Cir. 1987).
        It bears noting that Graham is instructive not only on the intent issue raised by plaintiff,
but also on whether plaintiff has a viable claim of unconstitutional excessive force based on the
Due Process Clause.  Graham appears to preclude such a claim, instructing that a plaintiff alleging
excessive force during a seizure may proceed only under the Fourth Amendment.  490 U.S. at
395.  The Court will, however, defer resolution of that issue until dispositive motions are filed.

"closely related" to the offense.  Id.

Plaintiff does not fully explain how Ramirez's threatening messages to his former wife on March 10, 2005 are similar to the alleged assault and battery on plaintiff on March 12. See Pl.'s Mot. at 6-7.  The Court infers from plaintiff's briefs that he believes that the incidents are sufficiently similar because each concerns Ramirez's intent to commit an act involving excessive force and, furthermore, that the probative value is heightened by the closeness in time of the incidents.  Id.  The crux of plaintiff's argument in support of the messages' probative value, however, is not based on the similarity of the crimes, but rather on the relevance to Ramirez's "predispos[ition]" to commit an act of violence on March 12, 2005.  Id. at 8 ("Given . . . the obvious tone of deeply felt rage in which the death threats were communicated, it would be logical and reasonable for a jury to conclude from these messages that Ramirez was strongly predisposed to commit an act of violence a mere day later.").  In response, Ramirez asserts that threatening phone messages stand in contrast to the acts of physical violence alleged in this case. Def.'s Mot. at 8.  He also argues that one's conduct toward a spouse in the midst of a troubled marriage has no relevance to a discriminatory beating of the kind alleged here.  Id.

The Court concludes that the two incidents lack sufficient similarity in several material respects.  The March 10th incident consisted of a purely verbal expression of threats, which is fundamentally different from the physical violence at issue in this case.  Moreover, that conduct occurred in Ramirez's domestic life at the time his marriage was dissolving, rather than during the line of duty as a police officer.   The text of the messages also is replete with expressions of jealousy over an alleged extramarital relationship, which appears to have motivated the threats. See Pl.'s Ex. A, at 1-2.  Such a motivation would, of course, be completely irrelevant outside of a

marital or other intimate relationship.  Here, plaintiff was a stranger to Ramirez before the incident at the Fur nightclub.

To be sufficiently similar, "other crimes" evidence in a lawsuit alleging excessive force by law enforcement officers must typically have at least some bearing on how an officer has treated other detainees while carrying out his duties; evidence describing an ill temper alone will not suffice.  <u>See</u> <u>Carson v. Polley</u>, 689 F.2d 562, 573-74 (5th Cir. 1982).[6]  Indeed, the cases cited by plaintiff each involved an officer's prior use of force against a detainee, in contrast to verbal threats in a personal relationship.  <u>See</u> <u>O'Neill</u>, 839 F.3d at 10-11 (affirming, by divided panel, admission of prior section 1983 judgments against officer that were based on his prior unlawful arrest and excessive force); <u>Eng</u>, 146 F.R.D. at 80 (admitting official incident reports documenting prison officer's use of excessive force on other occasions); <u>Lombardo</u>, 2002 WL 113913, at *7 (admitting disciplinary file of state mental hospital employee where it documented employee's failure to intervene in a patient's beating); <u>Ismail v. Cohen</u>, 706 F. Supp. 243, 253

---

[6]  The Fifth Circuit applied this distinction in <u>Carson</u> to determine whether two performance evaluations were admissible against prison officers under Rule 404(b) where excessive force against prisoners was alleged.  689 F.2d at 573-74.  In finding one admissible, and the other not, the court weighed whether the other crimes evidence concerned an officer's relationship with detainees:

> Loss of temper and consequent intentional hostility <u>towards other detainees</u> on earlier occasions made it more likely that a similar intent was present in [the first officer's] conduct toward [plaintiff]. . . . The report was recent <u>and specifically referred to [the officer's] relations with prisoners</u>. . . .
> We reach a different conclusion, however, as to the relevance of the [second] report . . . . The [second] report expressed only a general statement on [the officer's] temper.  It was recorded three years before plaintiff's arrest.  It referred only in most general terms to "public contact," <u>not solely with prisoners</u>.

<u>Id.</u>  (emphasis added).

(S.D.N.Y. 1989) (admitting evidence that police officer falsely arrested and beat another citizen),

aff'd, 899 F.2d 183 (2d Cir. 1990).

Threats of violence by a spouse during the dissolution of a marriage are serious matters and may, indeed, be indicative of future domestic violence, but the threats made by Ramirez here bear so little similarity to the events under review that they have little, if any, probative value. They are likely to convince the trier of fact that defendant Ramirez is a violent person, and that he may have been "predisposed" to act consistent with that character on the night of March 11-12, a point highlighted by plaintiff. See Pl.'s Mot. at 7. But that is the very purpose for which the proffered evidence may not be used.[7] See Fed. R. Evid. 404(a). Accordingly, the Court will not admit the other crimes evidence to prove motive, intent, or state of mind generally.[8] In light of this resolution, the Court finds no need to resolve the issue of whether Ramirez is collaterally estopped from litigating the date of the threatening voicemail messages.

---

[7] Even if the evidence were relevant to prove motive or intent under Rule 404(b), the Court would exclude the evidence under Rule 403 because its minimal probative value would be outweighed by the danger of unfair prejudice. Considering the graphic and inflammatory nature of the messages, and the extreme violence threatened by Ramirez -- killing his wife and children -- it is likely that Ramirez would suffer unfair prejudice arising from facts at best marginally relevant to this case.

[8] The Court reserves decision on whether, at trial, evidence pertaining to the threats could be used in a limited manner as impeachment evidence, depending on the substance of Ramirez's testimony. See, e.g., Carson, 689 F.2d at 574 (affirming district court's holding that other crimes evidence was inadmissible as substantive evidence but admissible to impeach officer's testimony after he testified "[i]t's impossible that I lost my temper."); see also Fed. R. Evid. 608(b), 609.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court will deny defendants Acosta's and Smith's motion for summary judgment.  As to the evidence pertaining to defendant Ramirez's threats against his former spouse, the Court will deny plaintiff's motion in limine and grant defendant Ramirez's motion in limine.  A separate order has been issued.


<div align="right" style="width:55%">

_____
/s/
JOHN D. BATES
United States District Judge
</div>

Dated:  <u> April 17, 2007 </u>