# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EMILE MAZLOUM,                    :
                               :

          Plaintiff,            :

                               :

       v.                    :        Civil Action No. 06-002 (JDB)

                               :

DISTRICT OF COLUMBIA, *et al.*,  :

                               :

          Defendants.           :

## DEFENDANTS RICHMOND PHILLIPS, THADDEUS MODLIN, AND LOUIS SCHNEIDER'S  MOTION FOR  SUMMARY JUDGMENT

Defendants Richmond Phillips ("Phillips"), Thaddeus Modlin ("Modlin"), and Louis

Schneider ("Schneider"), by and through counsel, move this Court for an order of summary

judgment pursuant to Fed. R Civ. P. 56(c), on the following grounds[1]:  1) Defendants Phillips,

Modlin and Schneider are entitled to qualified immunity as to Count I of plaintiff's second

amended complaint, 2) Plaintiff's remaining claims against these defendants fail because the

evidence does not support his claims, and 3) Plaintiff is not entitled to punitive damages against

these defendants.  Support for this motion is set forth in the accompanying memorandum of points

and authorities attached hereto and incorporated herein.

WHEREFORE, defendants pray this Court that judgment be entered in their favor.

                               Respectfully submitted,

                               LINDA SINGER
                               Attorney General for the District of Columbia

                               GEORGE C. VALENTINE
                               Deputy Attorney General
                               Civil Litigation Division

---

[1] The  allegations against these defendants are contained within Counts I, II, III, and IV.

_____\s_____
PATRICIA A. JONES [428132]
Chief, General Litigation Sec. IV


By:    _____\s_____
MICHAEL P. BRUCKHEIM [455192]
Assistant Attorney General
441 4TH Street, NW, 6th Floor-South
Washington, D.C.  20001
202-724-6649; 202-727-6295
E-mail:  Michael.bruckheim@dc.gov
Counsel for Defendants

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

EMILE MAZLOUM,                          :
                                        :
            Plaintiff,                  :
                                        :
      v.                                :          Civil Action No. 06-002 (JDB)
                                        :
DISTRICT OF COLUMBIA, *et al.*,   :
                                        :
            Defendants.                 :

**DEFENDANTS RICHMOND PHILLIPS, THADDEUS MODLIN, AND LOUIS**
**SCHNEIDER'S  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**THEIR MOTION FOR  SUMMARY JUDGMENT**

In support of their motion for summary judgment, defendants Phillips, Modlin, and

Schneider (hereinafter "defendants") state as follows:

**PRELIMINARY STATEMENT**

**I.       Statement of Relevant Facts.**

On May 18, 2007, plaintiff filed a second amended complaint against defendants

alleging, *inter alia,* constitutional and common law claims arising from a March 12, 2005,

incident at FUR night club in the District.  *See* Court Docket, #110.  Specifically, plaintiff alleges

that he was beaten by the defendants without provocation on his part inside the night club and

then dragged outside.  *Id.*.  Plaintiff alleges that he was accosted due to his Arab ethnicity.  *Id.*

Plaintiff testified that he was initially accosted by a security individual from the club.  Exhibit #1,

Deposition of Emile Mazloum, 100:8-103:11.  The following colloquy occurred at deposition:

A:      …somebody from behind, he grabbed me.

Exhibit 1, at 100:1-2.

Q:      And after the person did that, what did you do?

3

A:     I was trying to turn to see who is doing that to me.
Q:     Were you able to see who was doing that to you?
A.     No.
Q:     Were you ever able to see who that person was who grabbed you at the top of the steps?
A:     No.
Q:     After the person grabbed you, what happened then?
A:     I tried to lose.  …he just pushed me down to the floor.

Exhibit 1, at 101:3-17.

Q:     After you fell to the floor, what happened after that?
A:     He came after me.

Exhibit 1, at 103:6-9.

Q:     And what did he do?
A:     He was just trying to hold me down, put me on the floor….
Exhibit 1, at 103:12-14.

Q:     How were you trying to get up?
A:     I was trying to push up, to get up.  (Indicating.)  And he keep pushing me down.

Exhibit 1, at 103: 20-22, 104:1.

Q:     So you weren't able to swing your arms?
A:     …I was swinging all over the place to try to stand up.  And he keep pushing me down.
Q:     Did you use your feet to try to stand up?
A:     I used everything.  My feet, my arms, everything.

Exhibit 1, at 104:7-16.

Plaintiff testified that after he was accosted by the security individual, three or four individuals came over, but he was unable to see them.  Exhibit 1, at 105:1-15.  Plaintiff further testified that he was unable to specifically identify the defendants' role in the alleged subsequent assault and battery.  Exhibit 1, at 105:1-12; 108:1-5.  Plaintiff testified that he could not see who was allegedly dragging him across the floor.  *Id.*  Plaintiff further testified that he only saw Officer Ramirez strike him.  Exhibit 1, at 130: 16-22; 131: 1-3.  Plaintiff was unable to identify any other

defendants' alleged role in the incident other than Officer Ramirez. *Id.* Plaintiff also testified that he "did not know" if the defendants allegedly accosted him due to his Arab ethnicity. Exhibit #1, at 153:16-18; 154:6-11.

Defendant Phillips testified that he believed that plaintiff was assaulting the bouncer. Exhibit #2, Deposition of Richmond Phillips, at 66:18-22; 67:1-3. Phillips and defendant Modlin intervened, and defendant Modlin held plaintiff and escorted him out while Phillips cleared a path through the club. Exhibit #2, at, 63:3-22; 64:1-11. Defendant Phillips also believed that plaintiff was punching at defendant Modlin. Phillips assisted in handcuffing plaintiff's wrists. Exhibit #2, at 71:19-22-72: 1-10; 73:5-9. When plaintiff was handcuffed and outside of the club, he was seated on a curb and was trying to stand up. *Id.,* 92: 13-20. Phillips sat plaintiff down when he tried to stand up. Exhibit #2, at 93:10-13. Phillips never heard any of the officers use racial slurs against the plaintiff. Exhibit #2, at 139: 8-11.

Defendant Modlin testified that he first became aware of the incident when a female club patron fell against him while he was on the stage. Exhibit #3, Deposition of Thaddeus Modlin, 96: 18-22; 97:1-12. Modlin saw a bouncer and an individual later determined to be the plaintiff engaged in a struggle. *Id.* Modlin observed two more individuals jumping on the bouncer and saw hands and feet being used to strike the bouncer. *Id.* Modlin believed plaintiff was kicking the bouncer, and intervened. *Id.* 110: 7-15. Modlin sought out who he believed was the most aggressive individual, who in his view happened to be the plaintiff, and grabbed plaintiff's arm while Phillips grabbed his other arm. *Id.,* 101:7-22; 102:1. Modlin and Phillips were leading when plaintiff began to flail his arms. *Id.,* 126:13-22; 127:1-4. Plaintiff was handcuffed with defendant Ramirez's handcuffs. *Id.,* 130: 2-13. After plaintiff was handcuffed, he was led out of the club by defendants Modlin, Phillips, Ramirez, and Schneider. *Id.,* 140: 17-22; 141: 1-9.

Modlin testified that he perceived plaintiff as having done something "truly dangerous," and that he had perpetrated an aggravated assault. *Id.,* 142: 12-18. Modlin testified that he never heard the term "al quaeda" used during the incident, and as a Muslim, he would have been offended if he had heard such a term. *Id.,* 238:19-22; 239:1-15.

Defendant Schneider testified that he was told by a club patron that there was a fight and that Ramirez may be involved. Exhibit #4, Deposition of Louis Schneider, 88: 6-22; 89: 1-4. When Schneider got to the scene of the incident, he observed plaintiff on his side, punching and kicking, and officers Ramirez and Modlin trying to handcuff him. Schneider assisted in handcuffing plaintiff's wrist. *Id.,* 95: 6-22; 96: 1-5. Schneider never heard any racial slurs or the term "al quaeda" during the incident. *Id.,* 185: 2-12.

Plaintiff's second amended complaint against the defendants sets forth claims of civil rights violations under 42 U.S.C. § 1983 and § 1981, in addition to common law assault and battery, and the District of Columbia Human Rights Act (DCHRA). Defendants are entitled to qualified immunity with respect to plaintiff's constitutional claims under § 1983. As to plaintiff's remaining claims, defendants are entitled to summary judgment because plaintiff has failed to satisfy his burden of proof under those claims.

## **ARGUMENT**

### I.    **Standard of Review.**

Pursuant to the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

6

motion, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which the party will bear the burden of proof at

trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The mere existence of a factual

dispute will not preclude summary judgment. Only factual disputes that may determine the

outcome of a suit may effectively preclude the entry of summary judgment. *Anderson v. Liberty

Lobby, Inc.,* 477 U.S. 242 (1986).  To be a genuine fact, the assertion must be supported by

sufficiently admissible evidence and cannot be based on conclusory allegations, denials or

opinions. *Crenshaw v. Georgetown University,* 23 F. Supp. 2d. 11 (D.D.C. 1998).

## II.     Defendants Phillips, Modlin and Schneider are Protected by Qualified Immunity and Are Entitled to Summary Judgment

### A.     Plaintiff's Arrest Was Based on Probable Cause.

Defendants Phillips, Modlin and Schneider are entitled to summary judgment as to

plaintiff's Fourth Amendment claims under 42 U.S.C. § l983, because plaintiff's arrest[2] was

based on probable cause.  The undisputed facts show that defendants acted reasonably in

effectuating plaintiff's arrest, and did not violate any clearly established right.

A police officer making an arrest is generally shielded from personal liability for civil

damages with respect to constitutional claims brought under 42 U.S.C. § l983, by the doctrine of

qualified immunity insofar as his or her conduct does not violate clearly established rights of which

a reasonable person would have known.  *Hunter v. District of Columbia*, 943 F.2d 69, 75 (D.C. Cir.

l99l).  The purpose of qualified immunity is to protect governmental employees against

insubstantial lawsuits which have the following societal costs: l) expenses of litigation; 2) diversion

of official energy from pressing public issues; 3) deterrence of able citizens from acceptance of

---

[2] Although plaintiff was ultimately not charged with a criminal offense following the incident, he was under arrest during periods of these defendants' involvement in the incident that forms the basis of plaintiff's lawsuit.

7

public office; and 4) the possibility that the fear of being sued will dampen the ardor of all but the most resolute individuals. *Harlow v. Fitzgerald*, 457 U.S. 800, 8l4 (l982).

Qualified immunity shields an individual officer from liability as long as his action could reasonably have been thought to be consistent with the rights they are alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638 (l987). A police officer should prevail on the qualified immunity defense even if he is mistaken, if a reasonable officer could have believed that the action taken was not in violation of clearly established constitutional law. *Anderson*, 483 U.S. at 64l. *See also*, *District of Columbia v. Evans*, 644 A.2d l008, l0l5 (D.C. 1994). As noted by Justice Scalia in *Anderson*, *supra*, " ... it is inevitable that law enforcement officials will, in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials - like other officials who act in ways they reasonably believe to be lawful - should not be held personally liable." *Id.* at 641. Qualified immunity thus protects all but the plainly incompetent or those who knowingly violate the law.

In the case at bar, defendants did not violate plaintiff's Fourth Amendment rights, given the information they had. Plaintiff testified that he was initially accosted by a security individual from the club. Exhibit #1, Deposition of Emile Mazloum, 100:8-103:11. In response to the alleged assault, plaintiff concedes that he "was swinging all over the place to try to stand up." "…[He] used everything. My feet, my arms, everything [during the alleged assault]." Exhibit 1, at 104:7-16. Plaintiff further testified that he was unable to specifically identify the defendants' role in the alleged subsequent assault and battery, and. could not see who was allegedly dragging him across the floor. Other than Officer Ramirez, plaintiff testified that he was unable to identify any other defendant's alleged role in the incident. Exhibit #1, at 105: 1-12; 108: 1-

5. Plaintiff also said that he "did not know" if the defendants allegedly accosted him due to his Arab ethnicity. *Id.,* 153: 16-18; 154: 6-11.

To prevail on the federal claims, plaintiff must show that each defendant personally participated in the alleged arrest that forms a basis of the complaint. *Simpkins v. D.C. Government,* 108 F.3d 366, 369 (D.C. Cir. 1997). Based on the facts in a light most favorable to plaintiff, these defendants cannot be held liable for the alleged wrongful arrest. Having witnessed plaintiff engaged in a physical altercation, these defendants had a good faith believe that their actions were proper, and that the arrest was lawful. Defendants Phillips and Modlin testified that they did not get involved in the incident until they observed what they believed to be plaintiff assaulting the bouncer. Based on their own observations and their perception of the plaintiff as the aggressor, they intervened and sought to remove plaintiff from the premises. Defendant Schneider testified that he only got involved to the extent that he perceived his fellow officers requiring assistance to control a struggling suspect.

Police officers should not be hindered by the threat of civil liability from attempting to perform their duties to the best of their abilities, as long as they are not violating clearly established constitutional or statutory rights. *District of Columbia v. Evans,* 644 A.2d 1008, 1016 (D.C. Cir. 1994). In this instance, reasonable police officers could have reasonably believed that there was probable cause to arrest plaintiff for aggravated assault and/or disorderly conduct. Even if defendants were mistaken as to what their own observations told them, they still are entitled to qualified immunity because they nevertheless acted reasonably under the circumstances. *Anderson*, 483 U.S. at 64l. As set forth in *Anderson,* qualified immunity protects all but the plainly incompetent or those who knowingly violate

the law. *Id.* There is clearly no evidence on record that these defendants' actions were plainly incompetent or that they knowingly violated the law. Finally, plaintiff has not proffered any evidence as to what each defendant did at the scene. As plaintiff cannot dispute defendants' facts concerning their roles in the incident, defendants Phillips, Modlin and Schneider are entitled to qualified immunity for effectuating plaintiff's arrest.

**B.    Plaintiff's Excessive Force Claim Fails As A Matter of Law.**

Plaintiff seeks to hold these defendants liable under a theory of excessive force because he was allegedly assaulted and battered by them. *See* Second amended complaint, Court Docket, #110. However, as noted *supra,* plaintiff can only identify defendant Ramirez as an officer who allegedly struck him. Exhibit #1, Deposition of Emile Mazloum, at 130: 16-22; 131: 1-3. Just as a municipality cannot be held liable for the constitutional tort of its employees under a theory of *respondeat superior* liability, defendants Phillips, Modlin and Schneider cannot be held liable for the alleged constitutional misconduct of a fellow employee. *See Monell v. Dep't of Social Servs. of the City of New York.* 436 U.S. 658, 694 (1978). Plaintiff therefore must establish that the officers personally violated his constitutional rights. However, plaintiff has no evidence to support those claims, and summary judgment is appropriate. *See Simpkins v. D.C. Government,* 108 F.3d 366, 369 (D.C. Cir. 1997)

Excessive force claims arising out of arrests, investigatory stops, or other seizures of "free citizens" are properly analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 396 (1989). According to *Graham* "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Graham,* 490 U.S. at 396. The *Graham* Court opined that reasonableness is to be determined by the "facts and circumstances of each particular case, including the severity of the

10

crime at issue, whether the suspect poses an immediate threat to the safety of the officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

The facts of the case clearly show that defendants had a reasonable belief that plaintiff was perpetrating an assault upon the bouncer in violation of the laws of the District of Columbia, and that these defendants' subsequent actions were reasonable under *Saucier v. Katz,* 121 S. Ct. 2151 (2001), and *Graham, supra* . These defendants' actions in intervening and controlling the plaintiff based on their observations and perceptions were reasonable under *Saucier* and *Graham* because they reasonably believed that plaintiff's actions were unlawful.

In *Martin v. Malhoyt*, 830 F.2d 237, 261 (D.C. Cir. 1987), the Court held that the reasonableness test for excessive force claims is a balancing test that looks to the totality of the circumstances known to the officer at the time of the challenged conduct, and also accords a measure of respect to the officer's judgment about the amount of force called for in a quickly developing situation.  In this instance, the amount of force exacted by these defendants was only that which was necessary to break up the assault, and to arrest plaintiff.

Plaintiff could not testify as to what defendants Phillips, Modlin and Schneider did during the course of the incident that forms the basis of his lawsuit.  These defendants' testimony demonstrates that their perceptions and subsequent responses all were reasonable under the circumstances.  In *Stevens v. Stover*, 727 F. Supp. 668, 670 (D.D.C. 1990), the plaintiff filed a claim against defendant Stover under 42 U.S.C. § 1983, for allegedly using excessive force during the course of her arrest.  The Court examined the factual circumstances surrounding plaintiff's arrest; namely, that she resisted arrest, honked her car horn unnecessarily and almost struck an officer with her vehicle in trying to flee.  *Id.* at 671.  The Court acknowledged that defendant Stover did use some force against plaintiff that resulted in lacerations, bruises and internal problems requiring

medical treatment.  *Id.*  Nevertheless, the Court held that the mere use of excessive force "in and of itself" does not entitle plaintiff to recover on her constitutional claim.  *Id.*  As long as the officer did not violate a clearly established right of which a reasonable person would have known, he was entitled to immunity.  *Id.*  The Court concluded by noting that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  *Id.*, *quoting Anderson*, 483 U.S. at 640.  The Court then extended qualified immunity to defendant Stover and granted judgment in favor defendant Stover's favor.  *Id.* at 674.

This Court also confronted the issue of qualified immunity in *Richardson v. U.S. Department of Interior*, 740 F. Supp. 15 (D.D.C. 1990).  The plaintiff in this case was playing golf at a park under the jurisdiction of the National Park Service. Plaintiff went to use the rest room, but when he returned he found the gate to the course locked. The defendant police officer told plaintiff that the area was restricted and he should not re-enter.  Plaintiff then proceeded to climb over the fence near the locked gate, at which time the defendant officer approached the plaintiff and advised that he was under arrest for trespass.  Plaintiff was placed in handcuffs and as he was walking with the officer, he attempted to wrench away, prompting the officer to grab plaintiff's arm.  Both plaintiff and the officer fell into a parked golf cart.  Plaintiff was charged with trespass and disorderly conduct.  *Richardson*, 740 F. Supp. at 18.  Plaintiff subsequently sued for constitutional tort violations rooted in his Fourth Amendment rights.  *Id.* at 21.

In determining whether the *Richardson* defendant violated a clearly established right, this Court looked to the case of *Scheuer v. Rhodes*, 416 U.S. 232, 247-48 (1974).  The *Scheuer* Court held that police officers are entitled to a defense of "good faith and probable cause," even though an arrest might subsequently be proven to be unconstitutional.  *Id.* at 22.  The *Richardson* Court concluded that the defendant officer clearly had an honest belief that the plaintiff had violated the

12

law, and that this belief was reasonable in light of the facts available to him at the scene of the arrest. *Id.*

The *Richardson* case was similar to the instant case in many respects. Both cases involved officers who honestly and reasonably believed that they had probable cause to arrest the respective plaintiffs, and that their actions were necessary to effectuate the arrest. These defendants broke up the perceived assault, and led plaintiff out of the club. Plaintiff may argue that he was not the aggressor during the incident, but such a proffer is not relevant to this analysis. To assess whether defendants' actions were objectively reasonable, the Court must consider the facts as they would have been perceived by a reasonable officer on the scene, and not with the 20/20 vision that comes with knowledge of the full landscape of the facts. *Graham,* 490 U.S. at 396. Based upon the information available to the officers at the time of the incident, their actions were objectively reasonable under *Graham.*

Given the lack of any evidence as to exactly what acts were perpetrated by each of these defendants upon the plaintiff, and plaintiff's lack of specificity as to what was violative of his constitutional rights by defendants Phillips, Modlin and Schneider, these defendants are entitled to qualified immunity and summary judgment.

### C.    Plaintiff's Due Process Claim Against These Defendants Must Fail

Plaintiff has alleged that these defendants violated his Due Process rights under the Fourteenth Amendment. *See* Second amended complaint, Court Docket #110, ¶ 58. It is well settled that the District of Columbia is not a state and that the proscriptions of the Fourteenth Amendment, which govern "state action," do not apply to the District, nor its employees. *See Bolling v. Sharpe,* 347 U.S. 497 (1954); *Neild v. District of Columbia,* 110 F.2d 246, 251 (D.C. Ct. App. 1940); *Dano Resource Recovery Inc. v. District of Columbia,* 923 F. Supp. 1026, 1032

n.2 (D.D.C. 1983).  As it is undisputed that defendants were acting in the scope of employment

when they took police action, plaintiff's claim under the Fourteenth Amendment must be

dismissed.[3]

**III.    Plaintiff's Discrimination Claims Against Defendants Must Fail Under 42 U.S.C. §
1981, and the DC Human Rights Act (DCHRA).**

**A.    Claims Under § 1981 Fails as There Was No Contractual Relationship
Between Plaintiff and the Named Defendants.**

Any claim brought under § 1981 must initially identify an impaired contractual

relationship under which the plaintiff has rights.  *See Domino's, Inc. v. McDonald*, 126 S. Ct.

1249-50 (2006).  In his second amended complaint, plaintiff makes no allegation that he was

involved in a contractual relationship with any of the named defendants.  See Docket Entry #110.

Because plaintiff failed to identify the existence of any contractual relationship with defendants

Phillips, Modlin and/or Schneider, they are entitled to summary judgment.

**B.    Plaintiff Failed to Establish that these Defendants' Conduct Was Racially
Motivated in Violation of 42 U.S.C. § 1981, or the D.C. Human Rights Act.**

There is no evidence that these defendants'conduct was based upon or motivated by

plaintiff's Arab ethnicity, or that these defendants knew plaintiff's Arab ethnicity at the time of

the incident that forms the basis of this lawsuit.  At deposition, plaintiff testified that he "did not

know" if the defendants allegedly accosted him due to his Arab ethnicity.  Exhibit #1, at 153: 16-18;

154: 6-11.  There is no evidence that these named defendants made any racial slurs, or based any of

their actions upon their perception of plaintiff's ethnicity.  Because plaintiff testified that he did not

---

[3] Plaintiff did not plead a cause of action under the Fifth Amendment.  Even if plaintiff did
attempt to allege a Fifth Amendment Due Process violation, his claim also must fail under
*Graham v. Conner,* 490 U.S. 386 (1989), since .  "all claims that law enforcement officers have
used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other
'seizure' of a free citizen should be analyzed under the Fourth Amendment and its
'reasonableness' standard, rather than under a 'substantive due process' approach."  *Id.,* at 395.

know if defendants accosted him due to his Arab ethnicity, a jury would be forced to speculate as to whether these defendants' actions were motivated by racial animus against the plaintiff. Civil trials are not supposed to be about surprise, nor may a jury be allowed to speculate about a key element of a plaintiff's claim. *See Courtney v. Giant Food, Inc.*, 221 A.2d 92, 94 (D.C. 1966) (holding that a jury should never be permitted to guess as to a material element of the plaintiff's case). In this instance, the jury would clearly be guessing as to a material element of plaintiff's § 1981, and D.C. Human Rights Act ("DCHRA") claims. As there is no evidence that defendants' alleged actions were based upon plaintiff's race, the defendants are entitled to judgment as to the § 1981, and DCHRA claims.

**III.    Plaintiff's Common Law Assault and Battery Claims Fail as a Matter of Law**

Assault is defined as an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to another. *See Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993), *citing* Standardized Civil Jury Instructions for the District of Columbia, No. 4.06A (4th ed. 1993); *Jackson v. District of Columbia*, 412 A.2d 948, 955 n. 15 (D.C. 1979). "A battery is an intentional act that causes a harmful or offensive bodily contact." *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993), *Rogala v. District of Columbia,* 161 F.3d 44 (D.C. Cir. 1988).

There is no evidence that defendants Phillips, Modlin and Schneider had any improper contact with plaintiff. Plaintiff testified that he was unable to specifically identify the defendants' role in the alleged subsequent assault and battery. Exhibit #1, Deposition of Emile Mazloum, 105: 1-12; 108: 1-5. Plaintiff testified that he could not see who was allegedly dragging him across the floor. Plaintiff was unable to identify these defendants' alleged role in the incident. *Id.* In the course of making a lawful arrest, a police officer is privileged to use force so long as the means

employed are not in excess of those which [he] reasonably believes is necessary. *Etheridge,* 635 A.2d at 916; *Rogala,* 161 F.3d at 45. Since plaintiff cannot prove that defendants committed the alleged acts, or that their actions were not privileged, nor can plaintiff dispute defendants' reasonable impressions of the situation, they are entitled to summary judgment as to plaintiff's assault and battery claim.

**IV.    Plaintiff Cannot Maintain a Claim for Punitive Damages against these Defendants**

Plaintiff seeks punitive damages against defendants Phillips, Modlin and Schneider. *See* Second amended complaint, Court Docket #110, ¶ 97. Punitive damages are generally awardaed to punish tortfeasors and deter similar conduct, but only where the defendant's conduct was particularly outrageous, demonstrating reckless disregard for the rights of others. Mere inadvertence or even gross negligence is insufficient. *Rieser v. District of Columbia,* 563 F.2d 462, 481, n.10 (D.C. 1977). Plaintiff has failed to show that these defendants' acts rose to the level of the outrageousness necessary for him to maintain a claim for punitive damages against these defendants. Defendants' acts were supported by probable cause and there is no evidence that they used any excessive force to effect the arrest. No reasonable jury could find that these defendants' acts were outrageous or that they displayed a reckless disregard for plaintiff's rights. Accordingly, plaintiff's claim for punitive damages against these defendants must be dismissed with prejudice.

**VI.     Conclusion**.

WHEREFORE, defendants Phillips, Modlin and Schneider respectfully request this Court

to grant their motion for summary judgment for the reasons set forth above.

Respectfully submitted,

LINDA SINGER
Attorney General, D.C.

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


_____\s_____
PATRICIA A. JONES [428132]
Chief, General Litigation Sec. IV


By:     _____\s_____
MICHAEL P. BRUCKHEIM [455192]
Assistant Attorney General
441 4TH Street, NW, 6th Floor-South
Washington, D.C.  20001
202-724-6649; 202-727-6295
E-mail:  Michael.bruckheim@dc.gov
Counsel for Defendants

17

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EMILE MAZLOUM,            :
                                  :
          Plaintiff,        :
                                  :
      v.                  :        Civil Action No. 06-002 (JDB)
                                  :
DISTRICT OF COLUMBIA, *et al.*, :
                                  :
          Defendants.    :

### DEFENDANTS RICHMOND PHILLIPS, THADDEUS MODLIN, AND LOUIS SCHNEIDER'S STATEMENT OF MATERIAL FACTS WHICH ARE NOT IN DISUPUTE

Defendants Richmond Phillips, Thaddeus Modlin, and Louis Schneider, by and through counsel, hereby submit that the following material facts are not in dispute:

1.     Plaintiff testified that he was initially accosted by a security individual from the club. Exhibit #1, Deposition of Emile Mazloum, 100:8-103:11.

2.     Plaintiff testified that after he was accosted by the security individual, three or four individuals came over, but he was unable to see them.  Exhibit #1, Deposition of Emile Mazloum, 105: 1-15.

3.     Plaintiff testified that he was unable to specifically identify the defendants Richmond Phillips, Thaddeus Modlin, or Louis Schneider's role in the alleged subsequent assault and battery.  Exhibit #1, Deposition of Emile Mazloum, 105: 1-12; 108: 1-5.

4.     Plaintiff testified that he could not see who was allegedly dragging him across the floor. Exhibit #1, Deposition of Emile Mazloum, 105: 1-12; 108: 1-5.

5.     Plaintiff was unable to identify these defendants' alleged role in the incident.  Exhibit #1, Deposition of Emile Mazloum, 130: 16-22; 131: 1-3.

6.     Plaintiff testified that he "did not know" if the defendants allegedly accosted him due to his Arab ethnicity.  Exhibit #1, Deposition of Emile Mazloum, 153: 16-18; 154: 6-11.

8.     Defendant Phillips testified that plaintiff appeared to be assaulting the bouncer.  Exhibit #2, Deposition of Richmond Phillips, 66:18-22; 67:1-3.

10.     These defendants believed that plaintiff was punching at defendant Modlin and Phillips assisted in handcuffing plaintiff's wrists.   Exhibit #2, Deposition of Richmond Phillips, 71: 19-22-72: 1-10; 73: 5-9.

11.     Phillips never heard any of the officers use racial slurs against the plaintiff.  Exhibit #2, Deposition of Richmond Phillips, 139: 8-11.

12.     Defendant Modlin testified that he first became aware of the incident when a female club patron fell against him while he was on the stage.  Exhibit #3, Deposition of Thaddeus Modlin, 96: 18-22; 97: 1-12.

13.     Modlin saw a bouncer and an individual later determined to be the plaintiff engaged in a struggle. Exhibit #3, Deposition of Thaddeus Modlin, 96: 18-22; 97: 1-12.

14.     Modlin observed two more individuals jumping on the bouncer and saw hands and feet being used to strike the bouncer.  Exhibit #3, Deposition of Thaddeus Modlin, 96: 18-22; 97:1-12.

15.     Modlin observed plaintiff kicking and believed that he was intentionally kicking the bouncer.  Exhibit #3, Deposition of Thaddeus Modlin, 110: 7-15.

16.     Modlin sought out plaintiff, who he viewed to be the most aggressive individual, and proceeded to break up the perceived assault.  Exhibit #3, Deposition of Thaddeus Modlin, 101: 7-22; 102: 1.

17.    Modlin and Phillips were leading plaintiff out of the club when plaintiff began to become

violent and flail his arms.  Exhibit #3, Deposition of Thaddeus Modlin, 126: 13-22; 127: 1-

4.

18.    Modlin testified that he perceived plaintiff as having done something "truly dangerous," as

he was perpetrating an aggravated assault. Exhibit #3, Deposition of Thaddeus Modlin,

142: 12-18.

19.    Modlin testified that he never heard the term "al quaeda" used during the incident, and as a

Muslim, he would have been offended if he had heard such a term.  Exhibit #3, Deposition

of Thaddeus Modlin, 238: 19-22; 239: 1-15.

20.    Schneider was then told by a club patron that there was a fight and that Ramirez may be

involved.  Exhibit #4, Deposition of Louis Schneider, 88: 6-22; 89: 1-4.

21.    When Schneider got to the scene of the incident, he observed plaintiff on his side, punching

and kicking, and officers Ramirez and Modlin trying to handcuff him.  Exhibit #4,

Deposition of Louis Schneider, 95: 6-22; 96: 1-5.

22.    Schneider grabbed plaintiff's wrist, pulled it over and snapped the handcuff on it.  Exhibit

#4, Deposition of Louis Schneider, 95: 6-22; 96: 1-5.

23.    Schneider never heard any racial slurs or the term "al quaeda" during the incident.

Exhibit #4, Deposition of Louis Schneider, 185: 2-12.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

\s\
PATRICIA A. JONES [428132]
Chief, General Litigation Sec. IV

By:        \s\
MICHAEL P. BRUCKHEIM [455192]
Assistant Attorney General
441 4TH Street, NW, 6th Floor-South
Washington, D.C.  20001
202-724-6649; 202-727-6295
Counsel for defendants

21

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

EMILE MAZLOUM,                          :
                                        :
                Plaintiff,              :
                                        :
        v.                              :          Civil Action No. 06-002 (JDB)
                                        :
DISTRICT OF COLUMBIA, *et al.*,         :
                                        :
                Defendants.             :


**<u>ORDER</u>**

        Upon consideration of defendants Richmond Phillips, Thaddeus Modlin and Louis

Schneider's  Motion for Summary Judgment, the Memorandum of Points and Authorities in

support thereof, any opposition thereto, and the record herein, it is, this _____ day of _____,

2007;

        ORDERED; that defendants' Motion for Summary Judgment is hereby granted for the

reasons set forth in their motion; and it is

        FURTHER ORDERED; that judgment is hereby entered in favor of defendants

Richmond Phillips, Thaddeus Modlin and Louis Schneider.


                                        _____
                                        Judge John D. Bates
                                        United States District Court Judge


22