UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMILE MAZLOUM, | ) |
|       Plaintiff, | ) |
| v. | ) Civil Action No. 06-0002 (JDB) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
|       Defendants. | ) |

## DEFENDANTS JOSE ACOSTA AND DAVID SMITH'S RENEWED MOTION FOR SUMMARY JUDGMENT

Defendants Jose Acosta and David Smith, through counsel and pursuant to Fed. R. Civ. P. 56, respectfully move for summary judgment on plaintiff's remaining claim against them under the D.C. Human Rights Act. Defendants are entitled to summary judgment on this claim based on the following grounds:

1. Plaintiff did not engage in protected activity because he did not voice a complaint of discrimination.

2. Plaintiff did not suffer an adverse action because he filed a police report at the police station the same day.

3. The alleged adverse action was not causally connected to the alleged protected activity because defendants were not aware that plaintiff was opposing discrimination.

The grounds in support of this motion are fully set forth in the accompanying memorandum of points and authorities, which is attached hereto and incorporated by reference.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

NADINE C. WILBURN
Chief Counsel
Personnel, Labor and Employment Division

/s/ Phillip A. Lattimore, III /s/
PHILLIP A. LATTIMORE, III [422968]
Chief, General Litigation Section III

/s/ Carl J. Schifferle /s/
CARL J. SCHIFFERLE [463491]
Assistant Attorney General
Suite 600S
441 Fourth Street, N.W.
Washington, D.C. 20001
(202) 724-6624
(202) 727-3625 (fax)
Email:  carl.schifferle@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMILE MAZLOUM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-0002 (JDB) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT JOSE
ACOSTA AND DAVID SMITH'S RENEWED MOTION FOR SUMMARY JUDGMENT

I.  NATURE OF THE CASE

Plaintiff's complaint alleges that shortly after midnight on March 12, 2005, several individuals assaulted him while removing him from the FUR nightclub in the District of Columbia. In addition to suing the individuals allegedly involved in the assault, plaintiff also names as defendants Jose Acosta and David Smith. These two defendants did not participate in the alleged assault but were uniformed MPD officers who arrived at the club afterwards. The only remaining claim that plaintiff has against defendants Acosta and Smith is under the D.C. Human Rights Act, D.C. Code § 2-1402.61(a), for allegedly failing to take a formal police report that night regarding the incident.

The incident began when Michael Persons, a club security employee, allegedly grabbed plaintiff inside the FUR nightclub. (Compl. ¶ 19). Plaintiff's friend, Imad Alkadi, "entangled" himself in the situation, and all three individuals fell to the floor. (Compl. ¶ 21). At this point, several off-duty MPD officers, who were patronizing the club, came to the assistance of club security. (Compl. ¶ 22). Plaintiff claims that defendant Anthony Ramirez, one of the off-duty

officers, struck him in the face. (Compl. ¶ 26). Officer Ramirez assisted in handcuffing the plaintiff, who was carried out of the club and allegedly dropped to the ground. (Compl. ¶ 27-28). Officer Ramirez also allegedly kicked the plaintiff and said "Shut up, you fucking Al-Qaeda." (Compl. ¶ 29). Plaintiff then told Officer Ramirez, "You shut up, you fucking El Salvador." (Exh. D, Pl. Depo. 122).

    Defendants Acosta and Smith were among the uniformed officers who responded to a general call for assistance. In responding, the two officers had no information about what had occurred at the nightclub. When Officers Acosta and Smith later arrived at the club, MPD Lieutenant Frank Allman simply told Officer Acosta, "Here is your disorderly [person]," and pointed at the plaintiff. Defendant Ramirez was standing near the plaintiff, who was handcuffed. (Exh. E, Acosta Depo. 66-67). Ramirez took the handcuffs off the plaintiff and placed Officer Smith's handcuffs on the plaintiff. (Exh. D, Pl. Depo. 195-96). Officer Smith had a brief conversation with defendant Ramirez regarding the exchange of the handcuffs. (Exh. F, Smith Depo. 52-53). Neither Officer Smith nor Officer Acosta had any further conversation with Ramirez that night, or with any of the other off-duty officers allegedly involved in the assault. (Exh. F, Smith Depo. 53; Exhibit E, Acosta Depo. 93-94; Exh. D, Pl. Depo. 231).

    At this point, Officers Acosta and Smith still had no information about what had happened. (Exh. E, Acosta Depo. 76-77; Exh. F, Smith Depo. 54-56). They then spoke with the plaintiff to find out what had occurred. (Exh. E, Acosta Depo. 76-77; Exh. F, Smith Depo. 61-63; Exh. D, Pl. Depo. 198). Plaintiff told Officer Smith that he had been assaulted. (Exh. D, Pl. Depo. 199-209). Although at some point plaintiff requested the officers take a report, plaintiff did not tell Officers Acosta and Smith that he wanted to make a complaint of discrimination. (Exh. A, Resp. to Req. Adm.). Plaintiff did not tell Officers Acosta and Smith about an allegedly

derogatory reference to him as "Al-Qaeda." (Exh. A, Resp. to Req. No. 5-6). Plaintiff did not tell Officers Acosta and Smith about any statements referencing his race, national origin or religion. (Exh. A, Resp. to Req. No. 7-10). Plaintiff further admits that he did not tell Officers Acosta and Smith his race, national origin, or religion, nor did Officers Acosta or Smith refer to his race, national origin or religion. (Exh. A, Resp. to Req. No. 11-18).

At some point that night, Officer Smith spoke with Michael Persons, the club security employee who had initially been involved in the altercation with the plaintiff. (Exh. G, Alkadi Depo. 286-92). Plaintiff's friend, Mr. Alkadi, claims he overheard such conversation. According to Mr. Alkadi, Mr. Persons told Officer Smith that he wanted to sue the plaintiff because plaintiff had injured Mr. Persons' arm. (Id. at 286-87). According to Mr. Alkadi, Officer Smith told Mr. Persons to handle his injury instead through the club manager, Mike Rehman. (Id. at 286-87). Mr. Alkadi did not hear anything else said between Officer Smith and Mr. Persons. (Id. at 292 ln. 17-20). When Mr. Persons similarly told Mr. Alkadi he wanted to sue the plaintiff, Mr. Alkadi told Mr. Persons, "Come on, man . . . . Just relax. Nothing happened." (Id. at 288). Like Mr. Alkadi, Officer Smith was skeptical that Mr. Persons had suffered any significant injury. (Exh. F, Smith Depo. 103).

At no point that night did Officers Acosta and Smith ever learn about any alleged discriminatory treatment of the plaintiff, whether based on race, national origin or religion. (Exh. B, Acosta Decl. ¶ 4; Exh. C, Smith Decl. ¶ 4) Officers Acosta and Smith never learned that night about any alleged reference by anyone to plaintiff as "Al-Qaeda." (Exh. B, Acosta Decl. ¶ 5; Exh. C, Smith Decl. ¶ 5). They never learned about any alleged discriminatory statement by anyone about the plaintiff, whether based on race, national origin or religion. (Exh. B, Acosta Decl. ¶ 6; Exh. C, Smith Decl. ¶ 6).

Plaintiff went to the police station later the same day and made a full report. (Compl. ¶ 45-49). Officers Acosta and Smith never prevented the plaintiff from making a report on his own at the police station or told him that he could not do so. (Exh. D, Pl. Depo. 225). After investigating the plaintiff's complaint, the U.S. Attorney's Office declined to bring any charges against plaintiff's alleged assailants. (Compl. ¶ 49).

Defendants Acosta and Smith initially moved to dismiss the complaint against them, which this Court granted as to all counts except for the D.C. Human Rights Act claim (currently Count IV). (See Op. 6/27/06). At the beginning of discovery, and based just on plaintiff's responses to requests for admission, defendants Acosta and Smith filed a motion for summary judgment, which this Court denied. (See Op. 4/17/07). Since discovery has now concluded, defendants Acosta and Smith hereby file a renewed motion for summary judgment in accordance with the Court's scheduling order. Unlike the previous motion, this renewed motion for summary judgment considers all available evidence, now that discovery has been completed, and also raises additional bases for this Court to enter summary judgment.

II.   STANDARD OF REVIEW

A party against whom a claim is asserted "may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor." Fed. R. Civ. P. 56(b). Summary judgment should be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A moving party is 'entitled to judgment as a matter of law' against 'a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

4

which that party will bear the burden of proof at trial.'" Waterhouse v. District of Columbia, 298 F.3d 989, 992 (D.C. Cir. 2002), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

To survive summary judgment, an opposing party "may not rest upon the mere allegations or denials" of the pleadings but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "[I]t is well settled that conclusory allegations unsupported by factual data will not create a triable issue of fact." Carpenter v. Fannie Mae, 174 F.3d 231, 237 (D.C. Cir. 1999), quoting Exxon Corp. v. FTC, 663 F.2d 120, 126-27 (D.C. Cir. 1980). Evidence presented by plaintiff that is "merely colorable or not significantly probative" cannot create a genuine issue of material fact for trial. Haynes v. Williams, 392 F.3d 478, 485 (D.C. Cir. 2004), quoting Bragdon v. Abbott, 524 U.S. at 624, 653 (1998). Likewise, "[t]he possibility that a jury might speculate in the plaintiff's favor is insufficient to defeat summary judgment." Haynes, 392 F.3d at 485.

Applying these standards, this Court should grant defendants Acosta and Smith summary judgment for the reasons explained below.

III.    ARGUMENT

Plaintiff cannot establish any of the three elements of a retaliation claim under the D.C. Human Rights Act (DCHRA). To establish a prima facie claim of retaliation, plaintiff must prove that: (1) he was engaged in a protected activity, or opposed practices made unlawful by the DCHRA; (2) the defendant took an adverse action against him; and (3) a causal connection existed between the two. Howard University v. Green, 652 A.2d 41, 46 (D.C. 1994); (Op. 6/27/06 at 15). First, plaintiff did not engage in a protected activity because he did not voice a complaint of discrimination to defendants Acosta and Smith. Plaintiff also did not suffer an

5

adverse action in defendants' alleged failure to take a report since plaintiff later filed a report at the police station the same day as the incident. The third element of a prima facie case – a causal connection between the alleged protected activity and adverse action – also fails because defendants Acosta and Smith were unaware that plaintiff was the alleged victim of unlawful discrimination.

      A.      <u>Plaintiff Did Not Engage in Protected Activity Because He Did Not Voice a Complaint of Discrimination</u>.

Plaintiff's retaliation claim first fails because plaintiff did not engage in a protected activity. "Retaliation provisions such as the one in the DCHRA are designed to protect those who speak out against unlawful discriminatory activity." <u>Green</u>, 652 A.2d at 48. "To foster the underlying goal of human rights statutes - an end to discrimination - the burden is squarely on the [plaintiff] to adequately voice [his] opposition so that [defendant] is made aware of the alleged discrimination, and so that it can take appropriate steps to eliminate the offensive conduct." <u>Id.</u> at 49. "In short, the onus is on the [plaintiff] to clearly voice her opposition to receive the protections provided by the Act." <u>Id.</u> at 48. General complaints about poor treatment do not constitute a protected activity. "[A plaintiff] may not invoke not invoke the protections of the [anti-discrimination] laws by making a vague charge of discrimination." <u>Id.</u> at 49, quoting <u>Booker v. Brown & Williamson Tobacco Co.</u>, 879 F.2d 1304, 1312-13 (6th Cir. 1989); <u>accord</u> <u>EEOC v. Crown Zellerbach Corp.</u>, 720 F.2d 1008, 1013 (9th Cir. 1983) (holding that "a simple assertion that an employer is personally bigoted, without more, is not statutorily protected opposition to an unlawful employment practice").

In this case, plaintiff admittedly voiced no complaint of discrimination to defendants Acosta and Smith. While plaintiff told them that he was assaulted and allegedly asked for a report, plaintiff did not tell Officers Acosta and Smith that he wanted to make a complaint of discrimination. (Exh. B, Acosta Decl. ¶ 3; Exh. C, Smith Decl. ¶ 3; Exh. A, Resp. to Req. Adm.). Plaintiff did not tell Officers Acosta and Smith about a derogatory reference to him as "Al-Qaeda." (Exh. A, Resp. to Req. No. 5-6). Plaintiff did not tell Officers Acosta and Smith about any statements referencing his race, national origin or religion. (Exh. A, Resp. to Req. No. 7-10). Plaintiff further admits that he did not tell Officers Acosta and Smith his race, national origin, or religion, nor did Officers Acosta or Smith refer to his race, national origin or religion. (Exh. A, Resp. to Req. No. 11-18). Plaintiff did not even vaguely suggest discrimination, let alone make a specific charge of discrimination as required to invoke the anti-retaliation provisions of the DCHRA.

Plaintiff did not engage in protected activity regardless of whether defendants Acosta and Smith became aware through other sources that discriminatory conduct might have occurred. Whether defendants were aware of any possible discriminatory treatment is only relevant to the element of causation, which is addressed separately. (See infra at 9-12). Defendants' alleged awareness, through sources other than plaintiff's own protected activity, is not relevant to the antecedent question of whether plaintiff was actually engaged in a protected activity. A plaintiff who has been the victim of discrimination, but who does not adequately voice a specific complaint of discrimination, cannot satisfy the first element of a retaliation claim. Green, 652 A.2d 46-49. Again, the purpose of the anti-retaliation provisions of the DCHRA is to protect those who "speak out against unlawful discriminatory activity." Id. at 48. If plaintiff, for whatever reason, fails to speak out against discrimination, plaintiff has no protected activity on

7

which to base a retaliation claim.  Id. at 49 (rejecting retaliation claim by plaintiff who did not make a more specific complaint of discrimination allegedly due to fear of retaliation).

Because plaintiff did not engage in a protected activity, plaintiff's claim of retaliation against defendants Acosta and Smith fails.

B.   <u>Plaintiff Did Not Suffer an Adverse Action Because He Filed a Police Report at the Police Station the Same Day</u>.

Plaintiff's retaliation claim also fails because he did not suffer an adverse action.  Anti-discrimination statutes, like the DCHRA, do not protect a person from all retaliation, but only retaliation that constitutes a "materially adverse action."  <u>Northern and Santa Fe Railway Co. v. White</u>, 126 S. Ct.  2405 (2006).[1]  The Supreme Court has adopted the standard of "materially adverse action" because "it is important to separate significant from trivial harms."  Id. at 2415.  A materially adverse action therefore "means an action likely to deter a reasonable [person] from making a charge of discrimination."  Id.  By referring to a "reasonable" person, the Supreme Court set an objective standard for judging material adversity to avoid "the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings."  Id. at 2415-16.

In this case, plaintiff did not suffer an adverse action.  Although Officers Acosta and Smith allegedly failed to take a police report that night, plaintiff nevertheless filed a full police report later that same day at the police station.  (Compl. ¶ 45-49).  Defendants Acosta and Smith never prevented the plaintiff from making a report on his own at the police station or told him

---

[1] In applying the DCHRA, the D.C. Court of Appeals takes guidance from federal court decisions applying comparable provisions of Title VII.  <u>District of Columbia Housing Auth. v. District of Columbia Human Rights Comm'n</u>, 881 A.2d 600, 612 (D.C. 2005).

8

that he could not do so.  (Exh. D, Pl. Depo. 225).  Since plaintiff was not deterred from making a report at the police station that day, there was no materially adverse action.

        C.      <u>The Alleged Adverse Action Was Not Causally Connected to the Alleged Protected Activity Because Defendants Were Not Aware That Plaintiff Was Opposing Discrimination</u>.

Even assuming <u>arguendo</u> that plaintiff can show he engaged in a protected activity and suffered an adverse action, plaintiff cannot prove that the two were casually connected.  Plaintiff cannot prove such causal connection because plaintiff has no evidence that Officers Acosta and Smith learned that plaintiff was opposing discrimination or had allegedly suffered discriminatory treatment.

Plaintiff's allegation that Officers Acosta and Smith were aware of allegedly discriminatory conduct is not supported by the record.  In ruling on defendants' prior summary judgment motion, filed at the beginning of discovery, the Court determined at "this stage" the evidence might permit an inference that Acosta and Smith were aware of such discriminatory conduct.  (Op. 4/17/07 at 5).  In making this determination, the Court relied on an unsigned and unsworn statement by plaintiff's friend, Imad Alkadi, as summarized by the FBI.  (Op. 4/17/07 at 4-5, citing Pl. Exh. 3).  Although such an unsigned and unsworn statement indicated at the time what discovery might have shown, it is an insufficient basis to oppose summary judgment now that discovery has concluded.   Indeed, Mr. Alkadi's deposition testimony was in many respects inconsistent with the statement, and Mr. Alkadi himself has disputed the FBI's accuracy in summarizing his statement.  (Exh. G, Alkadi Depo. 240-48).

As a result of discovery, no evidence developed that Officers Acosta and Smith were aware of allegedly discriminatory conduct.  One previously alleged basis for inferring such

9

awareness, but now rejected by the record, was a conversation that night between the two officers and defendant Ramirez, one of plaintiff's alleged assailants. Depositions produced no evidence that defendant Ramirez disclosed in this conversation with Officers Acosta and Smith any discriminatory conduct. Neither plaintiff nor his friend, Mr. Alkadi, could hear what, if anything, was said between defendant Ramirez and the two officers. (Exh. D, Pl. Depo. 196; Exh. G, Alkadi Depo. 162-63). At most, then, the evidence shows that a brief conversation between the two officers and defendant Ramirez occurred. There is no evidence that such conversation touched on the topic of discrimination.

      Discovery has also refuted another previously alleged basis for inferring awareness of discrimination – involving a conversation that night between the two officers and defendant Persons, another of plaintiff's alleged assailants. Mr. Alkadi testified that he did overhear this conversation. According to Mr. Alkadi, Mr. Persons told Officer Smith that he wanted to sue the plaintiff because plaintiff had injured Mr. Persons' arm. (Exh. G, Alkadi Depo. 286-87). Officer Smith told Mr. Persons to handle his injury instead through the club manager, Mike Rehman. (Id. at 286-87). That was the extent of the conversation, according to Mr. Alkadi. (Id. at 292 ln.17-20). The conversation did not concern any alleged discrimination. Officer Smith simply sought to de-escalate the situation and resolve Mr. Persons' complaint through less drastic means, especially since Officer Smith was skeptical that Mr. Persons had suffered any significant injury. (Exh. F, Smith Depo. 103). Officer Smith's response was, in fact, no different than the reaction of Mr. Alkadi, who upon learning Mr. Persons' desire to sue the plaintiff, told Mr. Persons, "Come on, man . . . . Just relax. Nothing happened." (Exh. G, Alkadi Depo. 288).

      Moreover, the testimony of Officers Acosta and Smith establish that they had no awareness of any alleged discriminatory conduct. As they have affirmed, Officers Acosta and

10

Smith did not learn that night about any alleged discriminatory treatment by anyone of the plaintiff, whether based on race, national origin or religion. (Exh. B, Acosta Decl. ¶ 4; Exh. C, Smith Decl. ¶ 4). In particular, Officers Acosta and Smith never heard that night about any alleged reference to plaintiff as "Al-Qaeda." (Exh. B, Acosta Decl. ¶ 5; Exh. C, Smith Decl. ¶ 5). They also did not learn about any other alleged discriminatory statement by anyone about the plaintiff, whether based on race, national origin or religion. (Exh. B, Acosta Decl. ¶ 6; Exh. C, Smith Decl. ¶ 6). Therefore, because Officers Acosta and Smith had no notice of discriminatory treatment of the plaintiff, there can be no causal connection between any alleged protected activity and adverse action.

Plaintiff's speculative theories are insufficient to establish a genuine issue of material fact. Where plaintiff's evidence is "merely colorable or not significantly probative," plaintiff cannot survive summary judgment. Haynes v. Williams, 392 F.3d 478, 485 (D.C. Cir. 2004). In this respect, the present case is similar to Paquin v. Fannie Mae, 1999 U.S. App. LEXIS 10651 (D.C. Cir. May 18, 1999), where the Court affirmed summary judgment on a retaliation claim. In Paquin, plaintiff showed that his protected activity – a written complaint – arrived by fax at defendant's offices five hours before defendant took the adverse action. The defendant's decision-makers testified, though, that they were unaware of the complaint at the time they decided upon the adverse action. The Court held that plaintiff could not show the requisite causal connection because the circumstantial evidence as to the timing of the adverse action was insufficient to rebut the testimony of the decision-makers. Id. at *3-4, citing Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir. 1997) (explaining that plaintiff must "show a defendant's awareness with more evidence than mere curious timing coupled with speculative theories").

Similarly, here, Officers Acosta and Smith testified that were unaware of any alleged discriminatory conduct.  Plaintiff has no evidence otherwise, only speculation.  Without evidence of such awareness by Officers Acosta and Smith, plaintiff cannot show a causal connection between any adverse action and protected activity.

IV.   CONCLUSION

For the foregoing reasons, plaintiff cannot prove any of the three elements of his DCHRA retaliation claim.  Accordingly, this Court should enter summary judgment in favor of defendants Acosta and Smith.

    Respectfully submitted,

    LINDA SINGER
    Attorney General for the District of Columbia

    NADINE C. WILBURN
    Chief Counsel
    Personnel, Labor and Employment Division


    /s/ Phillip A. Lattimore, III /s/
    PHILLIP A. LATTIMORE, III [422968]
    Chief, General Litigation Section III


    /s/ Carl J. Schifferle /s/
    CARL J. SCHIFFERLE [463491]
    Assistant Attorney General
    Suite 600S
    441 Fourth Street, N.W.
    Washington, D.C. 20001
    (202) 724-6624
    (202) 727-3625 (fax)
    Email:  carl.schifferle@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMILE MAZLOUM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-0002 (JDB) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

1. On the night of March 11-12, 2005, defendants Acosta and Smith were on-duty uniformed officers with the Metropolitan Police Department. (Exh. B, Acosta Decl. ¶ 2; Exh. C, Smith Decl. ¶ 2).

2. Sometime after midnight, Officers Acosta and Smith responded to a call for assistance at the FUR nightclub from MPD Lieutenant Allman. (Exh. E, Acosta Depo. 61-62; Exh. F, Smith Depo. 41-42).

3. When responding to the call, Officers Acosta and Smith had no information about what had occurred at the nightclub. (Exh. F, Smith Depo. 41-43).

4. Upon the officers' arrival, Lieutenant Allman told Officer Acosta, "Here is your disorderly," and pointed to the plaintiff. (Exh. E, Acosta Depo. 65-66, 76).

5. Officer Ramirez, who was off-duty and not in uniform, was standing near the plaintiff, who was in handcuffs. (Exh. E, Acosta Depo. 66-67).

6. Officer Ramirez took his handcuffs off the plaintiff and placed Officer Smith's handcuffs on the plaintiff. (Exh. D, Pl. Depo. 195-96).

7. Officer Smith had a brief conversation with Officer Ramirez regarding the exchange of the handcuffs. (Exh. F, Smith Depo. 53).

8. Officer Smith had no further conversation with Officer Ramirez that night. (Exh. F, Smith Depo. 53).

9. Officer Acosta did not talk with Officer Ramirez that night. (Exh. E, Acosta Depo. 93-94).

10. After talking with Officer Ramirez, Officer Smith still had no information about what had happened. (Exh. F, Smith Depo. 54-56).

11. Officer Acosta still had no information about what had happened. (Exh. E, Acosta Depo. 76-77).

12. Both Officers Acosta and Smith then spoke with the plaintiff to find out what had happened. (Exh. E, Acosta Depo. 76-77; Exh. F, Smith Depo. 61-63; Exh. D, Pl. Depo. 198).

13. Plaintiff told Officer Smith that he had been assaulted. (Exh. D, Pl. Depo. 199-209).

14. Plaintiff did not tell Officers Acosta and Smith that he wanted to make a complaint of discrimination. (Exh. B, Acosta Decl. ¶ 3; Exh. C, Smith Decl. ¶ 3; Exh. A, Resp. to Req. Adm.).

15. Plaintiff did not tell Officers Acosta and Smith about a derogatory reference to him as "Al-Qaeda." (Exh. A, Resp. to Req. No. 5-6).

16. Plaintiff did not tell Officers Acosta and Smith about any statements referencing his race, national origin or religion. (Exh. A, Resp. to Req. No. 7-10).

17. Plaintiff did not tell Officers Acosta and Smith his race, national origin, or religion. (Exh. A, Resp. to Req. No. 11-14).

18. Officers Acosta and Smith did not refer to plaintiff's race, national origin or religion. (Exh. A, Resp. to Req. No. 15-18).

19. Officers Acosta and Smith did not treat plaintiff differently in any manner because of his race, national origin or religion. (Exh. B, Acosta Decl.¶ 7; Exh. C, Smith Decl. ¶ 7; Exh. D, Pl. Depo. 236).

20. At some point that night, Officers Acosta and Smith spoke with Michael Persons, who worked security for the nightclub and who was involved in the incident with the plaintiff. (Exh. G, Alkadi Depo. 286-92).

21. Officers Acosta and Smith did not speak with anyone else allegedly involved in the assault of the plaintiff. (Exh. D, Pl. Depo. 231).

22. Officers Acosta and Smith never learned that night about any alleged discriminatory treatment of the plaintiff, whether based on his race, national origin or religion. (Exh. B, Acosta Decl. ¶ 4; Exh. C, Smith Decl. ¶ 4).

23. Officers Acosta and Smith never learned that night about any alleged reference by anyone to plaintiff as "Al-Qaeda." (Exh. B, Acosta Decl. ¶ 5; Exh. C, Smith Decl. ¶ 5).

24. Officers Acosta and Smith never learned that night about any alleged discriminatory statement by anyone about the plaintiff, whether based on his race, national origin or religion. (Exh. B, Acosta Decl. ¶ 6; Exh. C, Smith Decl. ¶ 6).

25. Officers Acosta and Smith never told the plaintiff that he could not go to a police station on his own to make a report. (Exh. D, Pl. Depo. 225).

26. Plaintiff went to the police station later the same day and made a full report. (Compl. ¶ 45-49).

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

NADINE C. WILBURN
Chief Counsel
Personnel, Labor and Employment Division

/s/ Phillip A. Lattimore, III /s/
PHILLIP A. LATTIMORE, III [422968]
Chief, General Litigation Section III

/s/ Carl J. Schifferle /s/
CARL J. SCHIFFERLE [463491]
Assistant Attorney General
Suite 600S
441 Fourth Street, N.W.
Washington, D.C. 20001
(202) 724-6624
(202) 727-3625 (fax)
Email:  carl.schifferle@dc.gov

4