UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EMILE MAZLOUM,                           *
                                         *
            Plaintiff,                   *
                                         *
      v.                                 *      C.A. No.  06-00002 (JDB)
                                         *
DISTRICT OF COLUMBIA, *et al*.,          *
                                         *
            Defendants.                  *
_____  *

**DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Defendant District of Columbia, by and through counsel, respectfully moves this Court,

pursuant to Fed. R. Civ. Pro. 12 (b) (6) to dismiss Plaintiff's Second Amended Complaint as to

Counts II, III and IV, which are the only counts brought against the District of Columbia.   In the

alternative, the District moves pursuant to Rule 56 (c), for entry of judgment in its favor, as to

these three Counts.  In support of this motion the District states as follows:

I.      Count III should be dismissed because Plaintiff has not alleged and cannot prove that a
        custom or policy by a policymaker violated his rights under 42. U.S.C. §1981.

II.     Plaintiff has failed to give notice of his claims for unliquidated damages to the Mayor of
        the District of Columbia as required by D.C. Code §12-309 and, therefore, Counts II
        (assault and battery) and Count IV (violation of the D.C. Human Rights Act) should be
        dismissed.
.

                                         Respectfully submitted,

                                         LINDA SINGER
                                         Attorney General

                                         GEORGE VALENTINE
                                         Deputy Attorney General
                                         Civil Litigation Division

/s/Nicole L. Lynch/s/_____
NICOLE L. LYNCH [471953]
Assistant Attorney General
Civ. Lit. Div., Chief Section II

/s/David A. Jackson/s/_____
DAVID A. JACKSON [471535]
Assistant Attorney General
Office of the Attorney General
441 Fourth Street, NW, 6 South
Washington, D.C.  20001
Direct Line: (202) 724-6618
Facsimile: (202) 727-3625
E-mail:  davida.jackson@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EMILE MAZLOUM,                          *
                                        *
        Plaintiff,                      *
                                        *
        v.                              *    C.A. No.  06-00002 (JDB)
                                        *
DISTRICT OF COLUMBIA, *et al.*,         *
                                        *
        Defendants.                     *
_____ *

**DEFENDANT DISTRICT OF COLUMBIA'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS OR
IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

This case arises out of an encounter on March 12, 2005 between Plaintiff Emile Mazloum

and on-duty Metropolitan Police Department Police Officers Defendants Jose Acosta and David

Smith (collectively "on-duty officers"), off-duty police Officers Defendants Anthony Ramirez,

Thaddeus Modlin, Richard Phillips, and Louis Schneider (collective "off-duty officers"), and

Defendant employees of the FUR Night Club (hereinafter "FUR employees").  Plaintiff claims

that in the early morning hours of March 12, 2005, while at the FUR Night Club, the Defendants

off-duty officers and one employee of Defendant FUR, without justification or excuse, beat and

kicked him about the body, particularly in the face area.  Second Amended Complaint ¶¶ 18-31.

Plaintiff also alleges that Defendant Ramirez twice called Plaintiff a "fucking Al-Qaeda."

Second Amended Complaint ¶ 29.  Plaintiff further alleges that when Defendant on-duty officers

arrived on the scene they refused to allow Plaintiff to file a complaint against the Defendant off-

duty officers.  Second Amended Complaint ¶¶ 38-41.  Plaintiff also alleges that Defendant FUR

employees destroyed videotape evidence of the beating of Plaintiff.  Second Amended
Complaint ¶¶ 50-56.

Based on these events, Plaintiff has brought a six (6) count Second Amended Complaint
alleging a violation of his constitutional rights under the Fourth Amendment pursuant to 42
U.S.C §1983 against Defendants Ramirez, Modlin, Phillips and Schneider (Count I), assault and
battery against Defendants Ramirez, Persons, Modlin, Phillips, Schneider, the District of
Columbia and the FUR Nightclub (Count II),  race discrimination pursuant to 42, U.S.C §§ 1981
against the Defendants District of Columbia, Ramirez, Modlin, Phillips, Schneider (Count III),
violation of the D.C. Human Rights Act against all Defendants (Count IV), reckless/negligent
spoliation of evidence against Defendants Rehman, the FUR Nightclub and Fiorito (Count V)
and aiding and abetting spoliation of evidence against Defendant Ramirez (Count VI).

The only direct claims against the District are Counts III and IV.  The District now moves
to dismiss those claims against it.   The District also moves to dismiss Count II, assault and
battery, which is based upon a theory of *respondeat superior.*.

## STANDARD OF REVIEW

### A.  Motion to Dismiss

In reviewing the sufficiency of a complaint pursuant to Fed R. Civ. P. 12(b)(6), a court
must consider the facts presented in the pleading as true and construe them and all reasonable
inferences in the light most favorable to the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236
(1974) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) and citing *Gardner v. Toilet
Goods Assn.,* 387 U.S. 167, 172 (1967)).   The court need not consider inferences that are
unsupported by the facts or legal conclusions framed as facts.   *See Kowal v. MCI*

*Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  The motion can be granted, and

the complaint dismissed, only if no relief could be granted upon those facts.  *Id.*

**B.      Motion for Summary Judgment**

Under Fed. R. Civ. P. 56, a motion for summary judgment shall be granted if the

pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that

there is no genuine issue of material fact, and that the moving party is entitled to judgment as a

matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986).  In considering a

motion for summary judgment, the "evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in his favor." Id. at 255.

The non-moving party's opposition, however, must consist of more than mere

unsupported allegations or denials and must be supported by affidavits or other competent

evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P.

56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, (1986).  The non-moving party must provide

evidence that would permit a reasonable jury to find in the non-moving party's favor.

*Laningham v. United States Navy*, 259 U.S. 317, 324 (1987).  If the evidence is merely colorable,

or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at

249-50.

**ARGUMENT**

**I.      Count III should be dismissed because Plaintiff has not alleged and cannot prove
that a custom or policy by a policymaker violated his rights under 42. U.S.C. §1981.**

In order to maintain a claim for discrimination against the District under 42 U.S.C. §

1981 Plaintiff must allege and establish that a custom or policy of the District was the moving

force that caused him harm.  *Jett v. Dallas Independent School District,* 491 U.S. 701, 710-737

(1989).  Since Plaintiff has failed to make such allegations and indeed cannot prove that a

District custom or policy approved by a District policymakers was the cause of his alleged

injuries, Count III should be dismissed and judgment entered for the District.

In 1987, when *Jett* was decided, 42 U. S. C. § 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same
> right in every State and Territory to make and enforce contracts, to sue, be
> parties, give evidence, and to the full and equal benefit of all laws and
> proceedings for the security of persons and property as is enjoyed by white
> citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses,
> and exactions of every kind, and no other."

The statute did not provide for liability against the government. *Jett, supra*.

In *Jett*, the Supreme Court addressed two critical issues relating to municipal liability

under §1981.   In *Jett*, an employment discrimination case, a white teacher  sued the principal

and school district claiming that his termination from his coaching job was because of his race.

Plaintiff brought suit under §§1981 and 1983.  First, the Supreme Court held that § 1983 was

plaintiff's exclusive remedy for any alleged violations of his rights and under §1983 the school

district could not be held liable under a theory of *respondeat superior*.  *Jett*, 491 U.S. at 731.

Second, and on point with the issues in the instant case, the Supreme Court held that the "custom

and policy" analysis announced in *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658,

691 (1978), applies to for municipal liability under §1981.   *Jett*, 491 U.S. at 731.

In 1991, the Civil Rights Act 1991, §101 amended §1981 by adding two subsections,

one of which was § 1981(c).  This new subsection provides that "the rights protected by this

section are protected against impairment by nongovernmental discrimination and impairment

under color of State law."  42 U.S.C. § 1981(c).   Thus, the 1991 amendment to §1981 provided

for direct liability against government entitles and reversed the Supreme Courts' holding in *Jett*

as to this question only.

The amendment did not, however, effect the Supreme Court's holding as to the custom and policy required. *Powell v. City of Pittsfield,* 143 F. Supp. 2d 94, 110-114 (D.Mass. 2001). Since the 1991 amendment to §1981, courts have consistently applied to custom and policy analysis to §1981 claims against municipalities. *Medina v. District of Columbia* 2007 U.S. Dist. (Decided June 6, 2007) (Sullivan, J.) (custom and policy analysis applied to a violation of rights under §1981); *Taylor, et al. v. District of Columbia Water & Sewer Authority*, 241 F.R.D. 33, n5 (Decided March 13, 2007)( Kennedy, J) (The requirement of a common policy applies to intentional discrimination under Section 1981); *Federation of African Am. Contractors*, *et al. v. City of Oakland, et al.,* 96 F.3d 1204, 1215 (Ninth Cir. 1996); *Johnakin v. City of Philadelphia*, 1996 U.S. Dist. LEXIS 445, No. Civ. A. 95-1588, 1996 WL 18821, at *4 (E.D. Pa. Jan. 18, 1996); *Gallardo v. Bd. Of County Comm'rs*, 857 F. Supp. 783, 786-87 (D. Kan. 1994); *see also Philippeaux v. N. Cent. Bronx Hosp.*, 871 F. Supp. 640, 654-56 (S.D.N.Y. 1994) (not resolving whether section 1981(c) overturns *Jett*'s first principal, but holding that "policy or custom" must yet be established). Thus, in order to maintain a claim against the District under §1981, Plaintiff must allege and prove that his injuries were caused by a custom or policy approved by a District policymaker in accordance with *Monell, supra.*

Thus, in order to state a claim against the District, plaintiff must allege that the deprivation of his constitutional rights was caused by a policy, custom or practice of the District. As explained in *Monell,* the District can be held liable for the plaintiff's constitutional claims only if the plaintiff alleges facts that indicate his injury was caused by a policy or custom of the District. 436 U.S. 658, 694 (1978); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). According to the Supreme Court decision in *Monell*:

> a local government may not be sued under § 1983 for an injury inflicted
> solely by its employees or agents. Instead, it is when execution of a

> government's policy or custom … inflicts the injury that the government
> as an entity is responsible under § 1983.

436 U.S. at 694.

The Supreme Court further held in *Oklahoma City* that, "at the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma City*, 471 U.S. at 824. The *Oklahoma City* decision interpreted *Monell* as holding that "municipal liability should not be imposed when the municipality was not itself at fault." *Id.* at 818. To establish a pattern, policy or custom, a plaintiff must present "concentrated, fully packed, precisely delineated scenarios of unconstitutional conduct." *Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988) (quoting *Carter v. District of Columbia*, 795 F.2d 116, 125 (D.C. Cir 1986))

Since the seminal *Monell* ruling, the courts have developed four different types of proof that can establish such municipal liability. First, a plaintiff can satisfy the *Monell* requirements by setting forth direct evidence that the municipality adopted an unconstitutional policy. This can be done by pointing to a formally adopted policy—such as a statute or regulation—that violates the constitutional rights of the individual. *Monell*, 436 U.S. at 694. In this case, plaintiff cannot point to any law, regulation or policy of the District relating to the arrests that can fairly be said to be unconstitutional.

Second, direct evidence of a municipal policy can be proven by an unconstitutional decision or action taken by an official policymaker of the municipality. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Plaintiff cannot prove that a District policymaker adopted an unconstitutional policy relating to arrest. To begin, a policymaker is determined not by federal law fact but rather by state law. *City of St. Louis v. Praprotnik*, 485, U.S. 112, 118-119 (1988). "Authority to make municipal policy may be granted directly by a legislative

enactment or may be delegate by an official who possess such authority …" Id. (quoting *Pembaur, supra*). Supervisors are not policymakers for the purpose of establishing liability against a municipality.

In *Triplett v. District of Columbia,* 108 F.3d 1450, 1454 (D.C. Cir 1997), an inmate plaintiff sued two correctional officers and the District of Columbia for the officers' use of excessive force. The court held that the plaintiff could succeed on his § 1983 claims against the District only if he could "show fault on the part of the city based on a course its policymakers consciously chose to pursue." *Id.* (*citing Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986)).

In *Pembaur*, the Supreme Court further explained the limitations of using the "policymaker" approach to satisfy the rigid *Monell* standard. 475 U.S. at 481. There, the Court first explained that:

> The conclusion that tortious conduct, to be the basis for municipal liability under § 1983, must be pursuant to a municipality's "official policy" is contained in this discussion. The "official policy" requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.

*Id.* at 479. The Court then held that, under this standard, "Municipal liability attaches only where the decision maker possesses *final authority* to establish municipal policy *with respect to the action ordered*." *Id.* at 481 (emphasis added).

Under this standard, to be a "policymaker" for purposes of municipal liability, it is not enough for a particular official to have "discretion in the exercise of particular functions." *Id.* at 482. Instead, the Court wrote, "[t]he official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at

482-83 (emphasis added); *see also Morgan v. Barry*, 785 F. Supp. 187, 194 (D.D.C. 1992) ("the authority to make policy that will give rise to municipal liability is final policy…. The District of Columbia can be held responsible under § 1983 for the eviction of the plaintiff if it was the product of a sanctioned policy ordered or allowed to exist by a municipal official with final policymaking authority in that area.").

In the District, the Mayor and the Chief of Police are policymakers for the MPD.  The Mayor's authority over the MPD is established by DC Code § 5-101.03 (2001 edition), which provides:

> It shall be the duty of the Mayor of the District of Columbia at all times of the day and night within the boundaries of Police District:
>
> (3)  To protect the rights of persons and property …

The Chief of Police's policymaking authority is found in District of Columbia Municipal Regulations.  Title 6A, § 800.3 provides:

> The Chief of Police shall promulgate all orders, rules and regulations of the Mayor or Council which pertain to the work of the Metropolitan Police Department, and shall issue those instructions, and promulgate those orders, rules, and regulations, not inconsistent with the law or with the overall D.C. Government policy, as he or she may deem proper in the exercise of his or her functions as chief executive of the department.

In this case, plaintiff has not alleged any unconstitutional conduct on part of either the Mayor or the Chief of Police.  Without such allegations and proof, the District cannot be held liable for alleged constitutional violations committed by one of its employees.

Third, if there is no direct evidence of an unconstitutional municipal policy, plaintiff still can establish municipal liability if she can provide sufficient circumstantial evidence that the District had informally adopted an unconstitutional policy.   This generally can be shown by specific statistical evidence, or by setting forth a series of similar incidents that were known to municipal policymakers, but not addressed or resolved by those officials. *Carter v. District of*

*Columbia*, 795 F.2d 116, 124-126 (D.C. Cir. 1986).  This is a much more difficult burden to prove.

In *Carter*, plaintiff introduced statistical evidence which showed that over a five year period police officers were exonerated in 92% of the misconduct investigation, of the 26 officers who were found to have used unjustifiable force adverse action was taken against only one of them and the others received only a reprimand, of the 21 cases in which the Civilian Complaint Review Board recommended adverse action against police officers, only five officers received adverse actions. *Id*. at 123-124.

Further, plaintiffs sought to establish liability under §1983 by placing into evidence incidents of prior alleged police misconduct. The evidence consisted of testimony of a witness that police had beat him, the death of a prisoner while in police custody, the death of seven people over a two-month period, a fine imposed on a police officer for striking a person without cause, the reprimand of police officer who looped a belt around the neck of a prisoner and the admission by the police chief that a officer had kicked a handcuffed suspect. *Id*. at 123-124

In the face of this evidence, the Court of Appeals concluded that even this evidence was insufficient to prove a custom or policy of constitutional violations.  *Id*.  The Court stated that the "testimony of actual occurrences was scattered and the occurrences did not coalesce into a discernable policy and that the plaintiff's statistics were too general to prove any pattern or policy."  *Id*.  The Court specifically stated "if the evidence plaintiffs presented here were adequate to make out a §1983 case, then practically every large metropolitan police force, it would seem, could be targeted for such liability."  *Id*

In this case, there is no record evidence obtained during discovery that even comes close to the evidence relied on by the plaintiff's in *Carter* and rejected by the Court of Appeals and,

therefore, Plaintiff will be unable to establish an unconstitutional policy or practice by statistical

evidence.  Even if there were statistical evidence in the record, Plaintiff has not named an expert

who would be able to present statistical analysis at trial to establish that a custom, policy or

practice of the District was the moving force behind Plaintiff's alleged injuries.   Plaintiff fails to

identify any policy of the District of Columbia or action by a municipal decision-maker that

violated his rights.  Moreover, the Second Amended Complaint also fails to set forth facts that

would support an inference of "deliberate indifference" by a District policymaker.  Without

factually supported allegations that the alleged violations were result of conduct on the part of  a

District policymaker, Plaintiff's § 1981 claim against the District must be dismissed.

Finally, a plaintiff might be able to prove municipal liability by showing that the

municipality failed to adequately train its employees.  To satisfy such a standard, a plaintiff must

provide evidence that officials knew or should have known of a specific training need, that

failure to address that need was likely to result in violation of individual  rights, and that the

officials were deliberately indifferent to the need for such training. *City of Canton, Ohio v.

Harris*, 489 U.S. 378, 388 (1989).

Furthermore, once a plaintiff has proven—by any of the above methods—that a

municipality has adopted a policy or custom of violating constitutional rights, the plaintiff still

must prove that the policy or custom caused the constitutional injury in question. *Oklahoma City*,

471 U.S. at 823.  The plaintiff must prove that the policy was the "moving force" behind the

alleged constitutional violation.  *Id.*

Here, since Plaintiff cannot establish a formal or informal unconstitutional policy or

custom of the District and cannot establish deliberate indifference on the part of a District

policymaker, Plaintiff will be unable to show that a policy of the District was the "moving force"

that caused his injury.   For these reasons, Count III should be dismissed as to the District of

Columbia.

II.      **Plaintiff has failed to give notice to the Mayor of the District of Columbia pursuant to DC Code Section 12-309 and, therefore, Counts II (assault and battery) and Count IV (violation of the D.C. Human Rights Act) should be dismissed.**

In order to maintain any tort action against the District of Columbia for unliquidated

damages, a plaintiff must satisfy the mandatory notice requirement of § 12-309 of the D.C. Code

(2001 edition).  *See, e.g.*, *Hill v. District of Columbia*, 345 A.2d 867, 869 (D.C. 1975).  In

pertinent part, § 12-309 provides that:

> An action may not be maintained against the District of Columbia
> for unliquidated damages to person or property unless, within six
> months after the injury or damage was sustained, the claimant, his
> agent, or attorney has given notice in writing to the ... [Mayor] of the
> approximate time, place, cause, and circumstances of the injury or damage.
> A report written in writing by the metropolitan Police Department, in the
> regular course of duty is a sufficient notice under this section.

The primary purpose of the §12-309 notice requirement is to protect the District of

Columbia against unreasonable claims and to assist it in the defense of the public interest where

claims are made within the applicable statute of limitations but not so long after the event that it

is difficult for the District to obtain evidence for use in the litigation that may result.  *Shehyn v.*

*District of Columbia*, 392 A.2d 1008, 1013 (D.C. 1978); *see also Pitts v. District of Columbia,*

391 A.2d 803, 807 (D.C. 1978) (general purposes of D.C. Code §12-309 are "(1) to allow the

District to investigate potential claims so that evidence may be gathered while still available, for

example before the relevant sidewalk is paved over or the meter cover fixed, (2) to enable the

District to correct defective conditions, thus increasing public safety, and (3) to facilitate

settlement of meritorious claims and resistance of frivolous ones . . .").

The requirements of the provision are not mere technicalities. Rather, because §12-309 departs from the common law norm of sovereign immunity by allowing suits against the District, the provision's notice requirements are a mandatory prerequisite to filing a lawsuit against the District. *District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995); *Gwinn v. District of Columbia*, 434 A.2d 1376, 1378 (D.C. 1981); *Pitts*, 391 A.2d at 807. Moreover, the notice requirements must be "construed narrowly against claimants," *Dunmore*, 662 A.2d at 1359, even where a "harsh result" may occur, *Hill*, 345 A.2d at 869. DC Code Section 12-309 applies not only to negligent actions but, to intentional tort as wells. *Breen v. District of Columbia*, 400 A.2d 1058 (DC App. 1979).

The notice requirements of §12-309 applies not only to negligent actions but, to intentional tort as wells. *Breen v. District of Columbia*, 400 A.2d 1058 (DC App. 1979); See *Beeton v. District of Columbia, et al.*, 779 A.2d 918, 925 (D.C. App. 2001) (An employee who fails to provide the requisite notice may not successfully claim unliquidated damages relating to her wrongful termination claim). § 12-309 is not limited to specified torts but by its very terms applies to any action "against the District of Columbia for unliquidated damages to person or property." D.C. Code §12-309. In other words, Section 12-309 "imposes a notice requirement on *everyone* with a tort claim against the District of Columbia." *District of Columbia v. Dunmore*, 662 A.2d 1356, 1358 (D.C. 1995) (emphasis added)). Thus, §12-309 applies to Plaintiff's for assault and battery (Count II) as well as his claims under the D.C. Human Rights Act (DCHRA) (Count IV).

At least two Superior Court Judges, interpreting D.C. law, have held that §12-309 does in fact apply to claims brought under the DCHRA. *See McFarlane v. New leaders For New Sch.*, No. 2004 CA 008506 B, at 14 (D.C. Super. Ct. Nov. 10, 2005); *Descunter v. District of*

*Columbia*, No. 2004 CA 007214, at 5 (D.C. Super. Ct. Mar. 1, 2005) ( attached hereto as Exhibits 2 and 3, respectively).

Because this Court is exercising supplemental jurisdiction over plaintiff's DCHRA claim, the Court is bound by the D.C. Court of Appeal's interpretation of District law in determining whether the notice requirement of D.C. Code § 12-309 is applicable to claims brought pursuant to the DCHRA. *See Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp.*, 441 F. Supp. 2d 695, 704 (D. Pa. 2006) (noting that state law applies to claims considered pursuant to supplemental jurisdiction).

While the D.C. Court of Appeals has not ruled on this specific question, it is logical to conclude from the court's analysis of D.C. Code § 12-309, and its applicability to other similar provisions, that the notice requirement of § 12-309 applies to claims brought under the DCHRA. Moreover, the plain language of the DCHRA supports a finding that it is subject to the notice requirement of § 12-309. Section 12-309 requires timely notice to the District before a claimant can file suit for "unliquidated *damages* to person or property." D.C. CODE § 12-309 (2001) (emphasis added). The DCHRA provides in pertinent part: "Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for *damages* and such other remedies as may be appropriate . . . ." D.C. CODE § 2-1403.16 (2001) (emphasis added).

A person aggrieved by unlawful discrimination suffers damages to her person caused by another person. Such damages are analogous to damages from intentional torts, such as libel, where a claimant is harmed by the words of another. The D.C. Court of Appeals has unequivocally held that claims of intentional torts brought against the District for monetary

damages are subject to the notice requirement of § 12-309.  *See, e.g.*, *Breen*, 400 A.2d at 1061.  Based on the same logic, § 12-309 must extend to claims under the DCHRA.

To comply with the statute, Plaintiff must give notice of his claims to the *Mayor.* (Emphasis added).   Although §12-309 allows Plaintiff to used a police report as sufficient notice under the statute, Plaintiff is not relieved of his responsibility to send the police report to the Mayor.  Notice to subordinate officials does not take place of written notice to the Mayor of the District of Columbia.  See *Brown v. District of Columbia*, 251 F.Supp.2d 152, 158  (D.D.C. 2003) (District of Columbia police officer's letter alleging intentional infliction of emotional distress and other torts and submitted to police chief, District's [Attorney General], and other individuals, but not the mayor, did not satisfy requirement of statute requiring notice to the mayor of possible litigation);   *Hunter v. District of Columbia,* 943 F.2d 69, (D.C. Cir. 1991); *Pitts v. District of Columbia*, 391 A.2d 803 (D.C. App. 1978) (Mother's oral report of her child's injury to security guard assigned to building in public housing project in which she lived did not satisfy requirement of statute requiring notice to the mayor of possible litigation against the District of Columbia).

In this case, Plaintiff seeks to hold the District of Columbia liable under Count II for assault and battery and under Count IV for violation of the D.C. Human Rights Act.  However, Plaintiff has not sent written notice of these claims to the Mayor as required by §12-309.  (*See* Exhibit 1, Affidavit of Mia Powell Liley).  Since Plaintiff has failed to comply with §12-309 Counts II and IV should be dismissed.

## Conclusions

For the forgoing reasons, the District Motion to Dismiss or in the Alternative for Summary Judgment should be granted.

Respectfully submitted,

LINDA SINGER
Attorney General

GEORGE VALENTINE
Deputy Attorney General
Civil Litigation Division


/s/Nicole L. Lynch/s/_____
NICOLE L. LYNCH [471953]
Assistant Attorney General
Civ. Lit. Div., Chief Section II

/s/David A. Jackson/s/_____
DAVID A. JACKSON [471535]
Assistant Attorney General
Office of the Attorney General
441 Fourth Street, NW, 6 South
Washington, D.C.  20001
Direct Line: (202) 724-6618
Facsimile: (202) 727-3625
E-mail:  davida.jackson@dc.gov