```
00001
 1
 1       UNITED STATES DISTRICT COURT
 2       FOR THE DISTRICT OF COLUMBIA
 2
 3
 3   EMILE MAZLOUM            :
 4                            :
 4         Plaintiff          :
 5                            :
 5      vs.                   :  Civil Action No.
 6                            :  1:06:CV 00002
 6   DISTRICT OF COLUMBIA,    :  (JDB)
 7    et al.                  :
 7                            :
 8         Defendants         :
 8
 9            Washington, D.C.
 9            December 18, 2006
10
10
11   Deposition of:
12       LIEUTENANT FRANCIS MICHAEL ALLMAN,
13   called for oral examination by counsel for
14   Plaintiff, pursuant to notice, at the offices
15   of Katten Muchin Rosenman, LLP, 1025 Thomas
16   Jefferson Street, N.W., East Lobby, Suite 700,
17   Washington, D.C., before Lynell C.S. Abbott, a
18   Notary Public in and for the District of
19   Columbia, beginning at 9:44 a.m., when were
20   present on behalf of the respective parties:
21
22
```

```
00136
 1   much.
 2            BY MR. CORCORAN:
 3       Q   There's an answer.  It says,
 4   "During our interactions..."  Do you see that?
 5   Are you on Page 6, Lieutenant Allman?
 6       A   Yes.
 7       Q   Go down to the middle, the second
 8   half, or actually right before the middle,
 9   there is a question.  "He said he told you to
10   arrest this man for disorderly conduct and
11   then he left."
12       A   That's not true.
13       Q   And it says, "I say that's not
14   true."  Have you ever heard that Officers
15   Smith or Acosta have stated on the record that
16   you did not tell them to arrest the Plaintiff?
17            MS. PHILLIPS:  Except for if you
18   heard by counsel.
19            BY MR. CORCORAN:
20       Q   Other than through counsel, have
21   you ever heard that before?
22       A   I heard that they came up with
```

```
00137
 1   their explanation for their actions and that
 2   their account of our conversation did not
 3   agree.  I knew that.  I knew there was a
 4   conflict there.  But I don't know exactly what
 5   they said.  This is the first time that I'm
 6   reading his statement verbatim.
 7       Q    In your opinion, is what he is
 8   saying here, is this correct?
 9       A    He told me -- that I left the
10   scene?  That's not my recollection.
11       Q    And about this where he says you
12   told him to arrest this man for disorderly
13   conduct.
14       A    That seems like a question from
15   Sergeant McGuire.  I did not say that I told
16   them to arrest him for disorderly conduct.  I
17   told them, I said it was a simple assault
18   arrest.  So that's not correct.
19       Q    Look at the bottom of Page 4 then
20   of the question.  It reads, "Did Lieutenant
21   Allman ever direct you to arrest this man?"
22   And then if you turn to the top of Page 5.
```

```
00138
 1           MR. KAPLAN:  Which is right after
 2   Page 6.
 3           MR. CORCORAN:  Go in more.  They
 4   are miss-ordered, I'm sorry.  The copy is out
 5   of order.
 6           MR. BRUCKHEIM:  For the record,
 7   it's 4, 6, 5.
 8           BY MR. CORCORAN:
 9      Q    There we go.  There is the answer.
10   Do you see his answer?
11      A    "At no time did anybody on the
12   scene, any officials, Lieutenant Allman or
13   otherwise tell us to make an arrest."  I
14   disagree with that statement.
15      Q    So he's lying when he says that?
16           MR. BRUCKHEIM:  Objection.
17           MR. SCHIFFERLE:  Objection to the
18   form.
19           MS. PHILLIPS:  Objection.
20           THE WITNESS:  I say it's a
21   misunderstanding between my recollection and
22   his recollection.  And I believe that my
```

```
00139
 1   recollection is the accurate one.  So I think
 2   he's wrong.
 3          BY MR. CORCORAN:
 4       Q   He's wrong.  So how would you
 5   explain the difference, if you can?
 6          MR. SCHIFFERLE:  Objection to the
 7   form.
 8          MS. PHILLIPS:  And objection.
 9          THE WITNESS:  Well, giving them
10   the benefit of --
11          MS. PHILLIPS:  Objection; calls
12   for speculation.  And you may answer the
13   question.
14          THE WITNESS:  Well, giving them
15   the benefit of the doubt, maybe they didn't
16   understand me.
17          BY MR. CORCORAN:
18       Q   Do you have any knowledge that
19   they had both indicated that you did not tell
20   them to arrest the Plaintiff?
21       A   No, I don't have that knowledge.
22   That doesn't surprise me.
```

```
00175
 1  appear.
 2          BY MR. CORCORAN:
 3      Q   $150 a night.
 4      A   Right.
 5      Q   And so you don't have a monthly
 6  salary beyond that.  If you don't appear you
 7  don't get paid.
 8      A   That is correct.
 9          MR. CORCORAN:  No further
10  questions.  Thanks.
11          MS. PHILLIPS:  I think
12  Mr. Schifferle may have some questions.
13   EXAMINATION FOR DEFENDANTS ACOSTA AND SMITH
14          BY MR. SCHIFFERLE:
15      Q   Lieutenant Allman, let me
16  introduce myself again.  My name is Carl
17  Schifferle.  I represent Officers Acosta and
18  Smith, and I just have a few questions.
19      A   All right.
20      Q   I will be brief.  When you
21  mentioned that after Officers Acosta and Smith
22  arrived you had a conversation in which one of
```

```
00176
 1   them said something to the effect whether
 2   rookies could handle the situation.
 3       A    Smith said that.
 4       Q    Okay.  And then after your brief
 5   conversation, did you see either Officer
 6   Acosta or Smith speak with the Plaintiff,
 7   Mr. Mazloum?
 8       A    Speak with, oh, Mazloum?  I saw
 9   them take physical charge of him.  But I don't
10   know the extent of the conversation.  I wasn't
11   within earshot of any conversation that they
12   had with him.
13       Q    But were you aware that there was
14   a conversation that happened between Officer
15   Acosta, Smith and the Plaintiff Mr. Mazloum?
16       A    I was aware that they were all in
17   proximity.  I don't know whether they had a
18   conversation or not.  I don't know.  I wasn't
19   close enough to hear.
20       Q    And from that point until you left
21   the scene, you didn't hear any specifics of
22   any conversation that might have occurred
```

```
00177
 1  between the two uniformed officers, Acosta and
 2  Smith, and the Plaintiff Mr. Mazloum?
 3      A   No.  I don't recall that.
 4      Q   There was a point at which
 5  handcuffs were exchanged, such as the
 6  handcuffs that were on Mr. Mazloum initially
 7  were exchanged with one of the officer's
 8  handcuffs.  Is that correct?
 9      A   I believe that's what happened,
10  yes.
11      Q   Do you recall observing which
12  officer or officers exchanged handcuffs?
13      A   I can't say at this point in time.
14      Q   Do you recall Officers Acosta and
15  Smith speaking with anyone else there on the
16  scene other than yourself briefly?
17      A   Not in my presence.  I know later
18  that they talked to Persons.
19      Q   But I guess first off, just in
20  terms of what you saw and heard while you were
21  on the scene.
22      A   I did not see them having a
```

```
00178
 1   conversation with Persons.  I heard about that
 2   later.  And I did not see them.  I don't know
 3   the extent of any conversation they had with
 4   Mazloum.
 5       Q    Or anybody else.
 6       A    Or anybody else.
 7       Q    What did you learn of the
 8   conversation with Mr. Persons later?
 9       A    That they came back to him and
10   said, "Well, if we arrest him for assault
11   we'll have to arrest you for assault.  So if
12   you want to press your charge we got to lock
13   you up."  That's what I heard they told
14   Persons.
15       Q    And did you hear this from
16   Mr. Persons?
17       A    I heard it from Fiorito who heard
18   it from Persons.
19       Q    And when did you have this
20   conversation with Mr. Fiorito?
21       A    That was like a day or two after,
22   maybe that following Saturday night, maybe a
```

```
00179
 1  day.  I don't know for sure.  But within a
 2  reasonably short time after the incident
 3  occurred.
 4      Q    Did you see Officers Acosta and
 5  Smith do anything else there on the scene
 6  other than what we've talked about, any
 7  conversations, any actions, anything else you
 8  recall them doing or saying?
 9      A    I can't recall anything that
10  hasn't been brought up already.
11      Q    And did I understand correctly
12  that you testified you stayed on the scene for
13  about five minutes after Officers Acosta and
14  Smith arrived?
15      A    I think that's about it.
16      Q    Do you recall at any point
17  relieving Officer Ramirez, telling him for
18  example that he could go back into the club or
19  just go about his business?
20      A    Yeah.  He was willing to handle
21  the arrest.  He volunteered to handle the
22  arrest.  I said, "That's not necessary."  I
```

```
   00180
 1  should have, in hindsight, I should have let
 2  him handle the arrest.  But I thought I could
 3  depend on Smith and Acosta to do it, because
 4  technically if you make an arrest you're
 5  supposed to be handling the paperwork.  But
 6  since I joined the Police Department it's a
 7  courtesy in a situation like that, an off duty
 8  arrest, that an on-duty officer handle it as a
 9  courtesy to the off-duty officer.
10       Q    Did Officer Ramirez, in fact,
11  leave your presence after Officers Acosta and
12  Smith arrived and before you left?
13       A    Did he leave my presence after and
14  before I left.  Yeah, he went back in the
15  club.
16       Q    And that was something you had
17  authorized him to do?
18       A    That I had what?
19       Q    Is that something that you
20  authorized him to do, to go back --
21       A    To go back in the club?  I don't
22  remember saying, "You may now go back in the
```