UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EMILE MAZLOUM :
:
Plaintiff :
:
vs. : Civil Action No.
: 1:06:CV 00002
: (JDB)
DISTRICT OF COLUMBIA, :
et al. :
:
Defendants :

Washington, D.C.
Monday, January 29, 2007

Videotaped Deposition of:

EMILE MAZLOUM

called for oral examination by counsel for Defendants, pursuant to notice, at the offices of the Attorney General, 441 4th Street, N.W, 6th Floor South, Washington, D.C. 20001, before Renee A. Feder, CSR, a Notary Public in and for the District of Columbia, beginning at 9:54 a.m., when were present on behalf of the respective parties:

Association?

A. I am not sure. But when I did my taxes it was the right address.

MR. BRUCKHEIM: Why don't we take a break for ten minutes, and then we will come back.

MR. CORCORAN: All right.

VIDEOGRAPHER: The time is 10:59 a.m. We are off the record.

(A recess was taken.)

VIDEOGRAPHER: Back on the record at 11:12 a.m.

BY MR. BRUCKHEIM

Q. Mr. Mazloum, before we get to the incident, I have a couple of questions to ask you just to follow-up on some of your testimony. Did you say that you did fill out a loan application when you bought the property at 8834 Stark Road?

A. Yes.

MR. BRUCKHEIM: I would like to have this marked as Exhibit Number 3.

(Document referred to marked Deposition Exhibit No. 3 for identification and subsequently attached to the deposition.)

BY MR. BRUCKHEIM

Q. Mr. Mazloum, this is Exhibit Number 3 for the deposition. I would ask you to take a look at Page 3 of this document. Is that your signature?

A. Yes.

MR. BRUCKHEIM: Let me wait until Warren's melodic cell phone goes off.

MR. CORCORAN: Let me ask just a question about the document, Michael. Was this produced to you in this litigation?

MR. BRUCKHEIM: It wasn't produced in the discovery file.

MR. CORCORAN: We didn't produce it. Did you subpoena it?

MR. BRUCKHEIM: Yes.

MR. CORCORAN: Did you provide us with a copy of that subpoena?

MR. BRUCKHEIM: I can if you want.

MR. CORCORAN: I think you are supposed to give us a copy of the subpoena at the time you issue it.

MR. BRUCKHEIM: I don't believe that is the case.

MR. CORCORAN: That is the case. So I will reserve the right to object, to move to strike this exhibit on that ground. You can ask him questions about it, but the Federal Rules do require that you serve a subpoena on any third-party at the time it is served. And I would additionally note you typically produce the materials that you obtain pursuant to the subpoena on the parties in litigation.

MR. BRUCKHEIM: This is a subpoena for documents and we just received them. And I don't think that is what the rules state with respect to this document. But your objection is noted for the record.

BY MR. BRUCKHEIM

Q. Mr. Mazloum, on Page 3, did you

testify that is your signature with the date of April 28, 2005?

A. Yes.

Q. Looking at this document, is this the loan application that you completed to purchase the address at 8834 Stark Road in Annandale, Virginia?

A. Yes.

Q. If you look on the first page, it says the loan amount was for $437,700.

THE INTEPRETER: What line is that?

MR. BRUCKHEIM: On the first page under where it says amount.

BY MR. BRUCKHEIM

Q. Was that the loan amount, Mr. Mazloum?

A. Yes.

Q. This was -- the purpose of buying this property, as you stated on your loan application, was for the property to be a primary residence. Is that right?

A. Yes.

Q. If you turn to the third page of the document under Roman Numeral VII where it says details of transaction?

A. Where is it?

Q. It lists the purchase price --

A. Okay.

Q. -- as 547,125. Is that correct?

A. Yes.

Q. And further down on Page 3, above where you provided your signature and the date, there is a section that says acknowledgement and agreement. Do you see that?

A. Which one?

Q. Where it says Roman numeral IX and it says acknowledgement and agreement?

A. Yes.

Q. And underneath that in smaller type, it lists subsection one.

A. Okay.

Q. I am not going to read it word for

word. But is it true that it essentially says that the information you provided in this application is true and correct -- well, maybe I will read it word for word -- is true and correct as of the date set forth opposite my signature. And that any intentional or negligent misrepresentation of this information contained in this application can result in civil liability?

MR. CORCORAN: Objection. Number 1, the document speaks for itself. Number 2 we are again way far afield of the issue in dispute in this case. Number 3, I am not done, this document was not produced properly to us nor was the subpoena provided to us and we will move to strike all lines of questioning related to it.

MR. BRUCKHEIM: Your objection is on the record. We will continue.

BY MR. BRUCKHEIM

Q. Further along in that sentence, Mr. Mazloum, there is also a part where it

says that continuing from the internet -- from the intentional and negligent misrepresentation, that it can also result in criminal penalties.

And you signed your name to this acknowledgement. Is that correct?

MR. CORCORAN: Objection.

THE WITNESS: Yes.

MR. SCHIFFERLE: What was the answer?

THE WITNESS: Yes.

BY MR. BRUCKHEIM

Q. If you could please turn to Page 2. At the very top of the page to the left there is a column that says gross monthly income. Do you see that?

A. Yes.

Q. And you list as the borrower that your base employment income, your gross monthly income is $10,833. Is that correct?

A. That is what it shows.

Q. So, by signing that

acknowledgement, you acknowledged that in April of 2005 your gross monthly income was $10,833.

MR. CORCORAN: Objection.

THE WITNESS: It doesn't say what month was it. It was in April or --

BY MR. BRUCKHEIM

Q. I was referring to April as the date when you signed the acknowledgement. That is on Page 3.

A. The application, it was signed on March. But it doesn't say the amount, what month was it.

Q. My question to you is you did see your signature on Page 3. Correct?

A. Yes.

Q. And the date next to that says 04-28-05. Do you see that?

A. Yes.

Q. That means that when you signed this acknowledgement, you signed it on April 28, 2005?

A. Yes. I signed the document on April, 2005.

Q. And you signed this document after the incident occurred in FUR Nightclub had occurred?

A. Yes.

Q. And you recall testifying at this deposition that you earned no income whatsoever between March 11, 2005 and the end of August, 2005, and early September, 2005?

A. Correct.

Q. If you could please turn to the second page, then you provided in this application that you signed on April 28, 2005, that your gross monthly income was $10,833.

A. I didn't sign on April that I make $10,833. I signed the application in April, only.

Q. Did you review the application before you signed it?

A. Yes.

Q. Did you see that you had listed

under gross monthly income the amount of 10,833?

A. Yes.

Q. Moving down on the left hand side where it lists assets and liabilities, under assets, you provide an account at BB&T and you state that the amount in that account was $73,000. Do you see that?

A. No. That is not for BB&T.

Q. That is not for BB&T?

A. No, that is for S&L.

Q. For Savings and Loan?

A. Yes.

Q. Did you have an account at Savings and Loan that had the amount of $73,000 in it?

MR. CORCORAN: Objection. Irrelevant. Whatever he had saved in his S&L has nothing to do with his monthly income. So it really has nothing to do with his damages.

THE WITNESS: Yes.

BY MR. BRUCKHEIM

Q. Is that a checking account or a

savings account?

A. I am sorry, what was the question again?

Q. Is that a checking account or a savings account?

A. None.

Q. Did you ever have an account at BB&T?

A. I am sorry, are you talking about BB&T account or are you talking about S&L account?

Q. I am talking about the account you had at BB&T. Which I guess is the name of the bank.

A. Yes, that was my checking account. I am sorry.

Q. Just to clarify, when you signed this application you were claiming that you had $73,000 in your checking account at BB&T Bank?

A. Yes.

Q. If you could please turn to

Page 3. Under Roman Numeral VIII, it says declarations.

THE INTEPRETER: He can't see it, sir.

MR. BRUCKHEIM: On the right side of the page, it says declarations and then it has a bunch of yes and no boxes.

If you go further down a little bit.

THE WITNESS: Okay.

BY MR. BRUCKHEIM

Q. You got it?

A. Yes.

Q. Moving down to the letter L, there is a question that says do you intend to occupy the property as your primary residence. Do you see that?

A. Yes.

Q. And you checked the box yes?

A. Yes.

Q. And you had testified earlier at this deposition that you never resided at that

address at Stark Road?

A. Yes.

Q. If you look at the next letter, the letter M, it asks have you had an ownership interest in a property in the last three years. And you checked the box yes?

A. Yes.

Q. Underneath that if you go to Number 2, it says how did you hold title to the home. It says "Solely by yourself, jointly with your spouse or jointly with another person." Do you see that?

A. Yes, I see it.

Q. Which property were you referring to when you checked this box?

A. This application was made from a loan officer and maybe he, instead of putting -- because the property that I own on Logsdon Drive, I had somebody with me. But maybe he missed -- he put letter S, instead of he should put something else.

Q. So maybe he missed it?

A. Yes.

Q. But you did sign this application. Correct?

A. Yes.

MR. BRUCKHEIM: Let me mark this Number 4.

MR. CORCORAN: I will just renew my objection to strike the line of questioning related to this document.

(Document referred to marked Deposition Exhibit No. 4 for identification and subsequently attached to the deposition.)

BY MR. BRUCKHEIM

Q. Mr. Mazloum, this is Exhibit Number 4 for this deposition, and I ask that you take a look at it. And look at the second page and see if you recognize that as your signature?

A. Yes.

Q. Did you fill this document out with respect to the purchase of the house at Stark Road. Correct?

MR. CORCORAN: Let me just note for the record, I am assuming that this document was also subpoenaed as was the first. In which case we will move to strike questions relating to it. And also the document from its face doesn't reference any loan. So I don't know how the witness can link it to the document he was just asked questions about, regardless. And these matters, again, are way far afield of the issues in dispute and I don't think we subjected any defense witnesses to this degree of irrelevant questions.

MR. BRUCKHEIM: I beg to differ on that statement strongly. However, your objection is noted for the record.

BY MR. BRUCKHEIM

Q. Mr. Mazloum, did you fill out this occupancy affidavit with respect to the purchase of the property on Stark Road?

THE INTEPRETER: Sorry, I would like to understand. What do you mean by occupancy affidavit here?

MR. BRUCKHEIM: I am just reading the title off it.

THE INTEPRETER: Yes. I don't understand what they mean by affidavit.

MR. BRUCKHEIM: I am just asking if he filled out this document when he was applying for the loan.

MR. JACKSON: Off the record for a minute.

If I understand, you don't understand?

THE INTEPRETER: I don't understand. That is what I am saying. And I need to understand.

MR. JACKSON: I think the problem is the interpreter can't interpret it to Mr. Mazloum if she doesn't understand. Maybe we should agree what the affidavit or the definition of the affidavit is before we go back on the record.

THE INTEPRETER: I know what is an affidavit. But I don't know what occupancy

affidavit is.

MR. KAPLAN: Ask a different question.

BY MR. BRUCKHEIM

Q. I am asking if you filled out --

Did you sign this document either with respect to the loan or the purchase of the home at Stark Road?

A. All I can see in this document is just my signature. There is nothing else that shows that this is Stark Road or another house on that document.

Q. Do you see the number in the bottom left that says loan document?

A. Yes.

Q. Did you fill out this document with respect to a loan?

A. I will have to check the number, the loan number here, to see what is the number here. I don't remember that number. But, again, I have to check it, if it is in the application, the loan application.

Q. Let me have you turn to the second page of the affidavit document. There is a date next to your signature, which is May 27, 2005.

A. Yes.

Q. Between March of 2005 and June of 2005, did you purchase any other properties other than the one at Stark Road?

A. No.

Q. Did you understand this document when you signed and swore to it?

A. Yes.

Q. On the first page the box of primary residence is checked?

A. Yes.

Q. You did not check the box for investment property?

A. Yes.

Q. Yes, you did not check the box for investment property?

A. Yes, I did not check the box for investment.

Q. And you have testified that you did not ever reside at the Stark Road address. Correct?

A. The house was under renovation. I couldn't live there. So I didn't live on Stark Road.

Q. Did you sell the Stark Road address in September of 2005?

MR. CORCORAN: Objection. Relevance.

MR. BRUCKHEIM: Noted.

THE WITNESS: Yes.

BY MR. BRUCKHEIM

Q. Did you sell the Stark Road address for the amount of 667,000?

A. Yes.

Q. This is the Stark Road address that you purchased in May of 2005 for $547,125?

A. Could you please say the numbers again?

Q. You had testified that you sold

the Stark Road address in September of 2005 for $667,000?

A. Yes.

Q. And you purchased the Stark Road property in May of 2005 for $547,125?

A. Yes.

Q. When did you first meet Imad Alkadi?

A. I don't remember exactly what day, but at the end of 2004.

Q. How did you meet him?

A. In Marwan's apartment.

MR. FITZSIMMONS: I am sorry, can you talk up?

THE WITNESS: Marwan's apartment.

BY MR. BRUCKHEIM

Q. Is this the apartment that you and he used to share together?

A. No.

Q. Was Imad friends with Marwan first before you met him?

A. Yes.