UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMILE MAZLOUM,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA *et al.*,<br><br>　　　　　　Defendants. | Civil Action No. 1:06 CV 00002 (JDB) |

**MEMORANDUM OF LAW
OF DEFENDANTS
NIGHT AND DAY MANAGEMENT, L.L.C. AND MICHAEL PERSONS
IN SUPPORT OF THEIR MOTION IN LIMINE
TO PRECLUDE PLAINTIFF FROM INTRODUCING EVIDENCE
RELATING TO FUR'S VIDEO SURVEILLANCE SYSTEM**

Defendants Night and Day Management, L.L.C. ("Night & Day Management" or "N&D") and Michael Persons (together, the "FUR Defendants"), by and through undersigned counsel, hereby submit this Memorandum of Law in Support of their Motion in Limine to Preclude Plaintiff from Introducing Evidence Relating to FUR's Video Surveillance System and request that the Court issue an Order prohibiting Plaintiff Emile Mazloum ("Plaintiff") from seeking to introduce evidence relating to the video surveillance system in place at N&D's place of business, a nightclub called The Fur Factory ("FUR").

**INTRODUCTION**

FUR's video surveillance system captured, onto a computer hard drive, images of Plaintiff from two vantage points during the early morning of March 12, 2005, but that video recording was automatically overwritten by the host computer within three days of that recording, at which point it was unrecoverable. However, David McLeod, the Security Manager

at FUR, viewed the recording within a day of the incident in question; he testified that it did not show Plaintiff being assaulted or battered but merely showed Plaintiff as he was being led out of the front door of the building with officers holding him by the arms. (February 27, 2007 Deposition of David McLeod ("McLeod Dep.") at 159-162, attached hereto as Exhibit 1.) Plaintiff's own testimony squares with Mr. McLeod's testimony in that Plaintiff testified that he was not assaulted or battered during this time frame. (January 29-30, 2007 Deposition of Emile Mazloum ("Mazloum Dep.") at 368-70, attached hereto as Exhibit 2.)

Recently, this Court dismissed Plaintiff's corresponding spoliation claim against the FUR Defendants, which was based on FUR's failure to preserve this video recording.

The only remaining claim against the FUR Defendants in this action is for assault and battery. In light of the foregoing, the FUR Defendants anticipate that Plaintiff will attempt to introduce at trial evidence concerning the FUR video surveillance system, including particularly:

1. The video recording from FUR's video surveillance system from the early morning of March 12, 2005 and the video surveillance system in place at FUR.

2. Information obtained about FUR's video surveillance system during Plaintiff counsel's July 26, 2006 inspection of FUR's premises and video surveillance. Plaintiff's counsel, including Brian H. Corcoran, Esquire, conducted an inspection of FUR and its video surveillance system on July 26, 2006 during which he made notes and captured images on FUR's video surveillance system of an associate who walked through the club.

### LEGAL STANDARD

Evidence that is not relevant is inadmissible. Fed.R.Evid. 402. Relevant evidence is evidence that has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.

Even if evidence is relevant, it may be "excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed.R.Evid. 403.  Evidence that is incompetent, irrelevant, immaterial, privileged, or otherwise inadmissible is to be excluded in order to prevent the jury from hearing certain questions and statements that are prejudicial.  *See McCormick on Evidence*, § 52 at 128 (E. Cleary 3rd ed. 1984).

## ARGUMENT

**A.    Evidence Concerning Video Recordings From FUR's Video Surveillance System—Including Evidence Concerning The Video Recordings From The Early Morning Of March 12, 2005—Should Be Excluded From Evidence**

Evidence concerning the video surveillance system in place at FUR during the early morning of March 12, 2005—including concerning specifically the video recording that the surveillance system captured that early morning—is irrelevant because that evidence would not assist Plaintiff in establishing a prima facie case of assault and battery.  The video recording from March 12, 2005, which was overwritten within three days in the normal course of business, showed Plaintiff walking out of the front door of the building on his own with officers holding him by the arms.  (McLeod Dep. at 159-162.)  Plaintiff's own testimony squares with that of Mr. McLeod in that Plaintiff testified that he was not being assaulted while he was being led out of the front doors of FUR.  (Mazloum Dep. at 368-70.)  As the content of the March 12, 2005 video recording did not show Plaintiff being assaulted or battered, that recording would in no event have helped him establish his assault and battery claim against Persons or FUR.  As a result, pursuant to Federal Rule of Evidence 402, evidence concerning the content of that recording should be excluded from evidence.

3

Further, evidence relating generally to the video surveillance system in place at FUR is irrelevant because it could not have captured any footage of Plaintiff on March 12, 2005 other than the images Mr. McLeod testified he viewed of Plaintiff being led out of the front doors of FUR.  As the operations manager of FUR testified, there is no camera aimed at the stage area where the altercation between Mr. Persons and Plaintiff began in the early morning of March 12, 2005.  (May 30, 2007 Certificate of Diego Sequeira ("May 30, 2007 Sequeira Cert.") at ¶ 6, attached hereto as Exhibit 3.)  There is no camera aimed at the Tunnel staircase inside FUR, where Plaintiff was handcuffed during the early morning of March 12, 2005.  (May 30, 2007 Sequeira Cert. at ¶ 7.)  Furthermore, the camera capable of looking down into the Tunnel corridor at the top of that staircase, through which corridor Plaintiff was led out of the club, is positioned to look instead at FUR's cash registers during operating hours.  (July 12, 2007 Certificate of Diego Sequeira ("July 12, 2007 Sequeira Cert") at ¶ 3, attached hereto as Exhibit 4.)  Additionally, the only camera at FUR which has the capability of viewing the curb area outside FUR—because that camera can be rotated 360 degrees—is positioned during operating hours to view the general and VIP admission lines, not the curb area outside the club.  (July 12, 2007 Sequeira Cert. at ¶ 8.)  Because the video surveillance system could not have captured more than what Mr. McLeod testified to—Plaintiff's being led out of the front doors of the club—no evidence concerning that system would assist Plaintiff in making his prima facie case of assault and battery.  As a result, pursuant to Federal Rule of Evidence 402, evidence concerning the video surveillance system in place at FUR should be excluded from evidence.

Furthermore, evidence concerning the video surveillance system should be excluded pursuant to Federal Rule of Evidence 403 because such evidence would be unduly prejudicial and might tend to cause confusion and mislead the jury as to the assault and battery claim at

4

issue in this action. Presenting this evidence might lead the jury to believe that the issue at hand regarding the FUR Defendants is concerning spoliation of the March 12, 2005 video recording, rather than assault and battery. Moreover, the jury may somehow be led to believe that the issue of whether Plaintiff was assaulted or battered the night in question is related to the existence, operation and functioning of the video surveillance system at FUR.

**B.** **Evidence Concerning Attorney Corcoran's Knowledge Of FUR's Video Surveillance System From His July 26, 2006 Inspection Of FUR Is Irrelevant To Plaintiff's Assault And Battery Claim Against The FUR Defendants And Should Be Excluded From Evidence**

Attorney Corcoran's notes, perceptions and personal knowledge from his July 26, 2006 inspection of FUR's premises and video surveillance system are also irrelevant as to whether Plaintiff was assaulted and battered on March 12, 2005. It is entirely speculative that images recorded during Attorney Corcoran's July 26, 2006 inspection of FUR are reflective of the images the cameras may have captured on March 12, 2005, and, thus, those later images have no adequate bearing on Plaintiff's assault and battery claim.

Furthermore, this evidence would be unduly prejudicial and would cause confusion and mislead the jury as to what is issue at hand in this action: specifically, the jury may be misled to believe, based on Attorney Corcoran's perceptions from his July 26, 2006 inspection of FUR, that whether an assault and battery occurred is tied to what the FUR video surveillance system could *potentially* have captured on March 12, 2005.

Additionally, Attorney Corcoran's notes, perceptions, and personal knowledge from his July 26, 2006 inspection of FUR should be excluded from evidence also because he is Plaintiff's lawyer, and courts tend to disfavor testimony on contested matters given by a lawyer within that lawyer's own case. *E.g.*, *Lincecum v. Collins*, 958 F.2d 1271, 1280 (5th Cir. 1992) ("As for [the attorney's] affidavit, we are loathe to accept the self-serving statements of habeas counsel as

5

evidence that other persons were willing and able to testify on [the client's] behalf"); *Kansas v. Favela*, 911 P.2d 792, 801-02 (Kan. 1996) (citing *State v. Hobbs*, 801 P.2d 1028 (Wash. App. 1990)) ("the self-serving assertions by the defendant's attorney, without expert testimony, was insufficient to justify the sentencing court's finding"). *Cf.* D.C. Rules of Prof'l Conduct R. 3.7 ("A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness[.]").

Moreover, any testimony from Attorney Corcoran regarding what the video surveillance system "would have" captured on March 12, 2005 is inadmissible because he is a lay witnesses, not an expert witness. Attorney Corcoran uses the information he learned during his July 26, 2006 inspection of FUR merely to hypothesize what images the FUR cameras *might have captured* on March 12, 2005. However, lay witnesses are permitted to give testimony only based on their firsthand observations, which of course contrasts with the abilities of expert witnesses, who are permitted to give opinion testimony as well, whether based on evidence presented at trial or on other secondhand data. *See*, *e.g.*, Fed.R.Evid. 703, Advisory Committee's Note; *cf.*, *e.g.*, *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) ("the ability to answer hypothetical questions is '[t]he essential difference' between expert and lay witnesses"). Correlatively, lay witnesses are limited in their testimony to things they have actually observed, as opposed to things they may believe they "would have" observed had circumstances been different: "[W]e know of no case holding that a trial judge must permit a lay witness to use one set of observations as the foundation for an opinion about what he might have seen under different circumstances." *United States v. Gibson*, 205 U.S.App.D.C. 53, 56, 636 F.2d 761, 764 (1980). Here, Attorney Corcoran may not testify as to what images the FUR cameras supposedly "would have captured" of Plaintiff in certain locations on March 12, 2005 because that testimony

would constitute impermissible opinion evidence rather than generally permissible lay observation.

For the foregoing reasons, Plaintiff should be prohibited from introducing evidence relating to the video surveillance system in place at FUR.

>
> Respectfully submitted,
>
> /s/ Paul A. Fitzsimmons
> _____
> Thomas S. Schaufelberger, Bar No. 371934
> Paul A. Fitzsimmons, Bar No. 444829
> S<small>AUL</small> E<small>WING</small> LLP
> 2600 Virginia Avenue, N.W.
> The Watergate—Suite 1000
> Washington, D.C.  20037
> Telephone: (202) 333-8800
>
> Counsel for
> Defendants Night & Day Management, LLC,
> Michael Rehman, John Fiorito, and
> Michael Persons