UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
EMILE MAZLOUM,                      )
                                    )
            Plaintiff,              )      Civil Action No. 1:06 CV 00002
                                    )      (JDB)
      v.                            )
                                    )
DISTRICT OF COLUMBIA, *et al*.,     )
                                    )
            Defendants.             )
_____)


**PLAINTIFF'S BRIEF IN OPPOSITION TO THE FUR DEFENDANTS'
MOTION *IN LIMINE* TO PRECLUDE THE USE OF EVIDENCE
RELATING TO FUR'S SECURITY POLICIES**

Plaintiff Emile Mazloum ("Mazloum"), by his undersigned counsel, for his opposition to the motion *in limine* filed by the FUR Defendants seeking to preclude the use at trial of evidence relating to FUR's security policies, respectfully states as follows:

**PRELIMINARY STATEMENT**

Several of the FUR Defendants' witnesses have admitted under oath that Defendant Michael Persons, a FUR security employee, violated FUR security employee policies in striking Mazloum and/or attempting to deal with him without involving other FUR personnel. It is likely that, had Persons followed such policies, Mazloum's subsequent ordeal would have been lessened – or avoided entirely. Yet, despite the plain and obvious fact that Persons violated written rules of which he was very much aware, the FUR Defendants nevertheless move to exclude the employee manual which sets forth these written guidelines. *See* Excerpts from FUR Employee Manual, true copies of which are attached as Exhibit A (the "FUR Manual").

FUR's security employee policies are generally relevant to Mazloum's claims. They constitute circumstantial proof that helps "set the stage" for the incident, by illustrating to the jury that Persons knew how to handle an allegedly disruptive patron in such a way as to not result in the patron having to go to the hospital (as undeniably happened here). More specifically, the policies contained in the FUR Manual may be used by Plaintiff to rebut Persons's claim of self-defense, which centers on the reasonableness of his conduct, as well as in support of Plaintiff's request for punitive damages (which requires a showing of particularly egregious conduct). Persons's conduct must be judged in light of his responsibilities as a Nightclub bouncer, and the extent to which he exceeded official FUR policies is highly relevant to that inquiry.

**STATEMENT OF FACTS**

In discovery, the FUR Defendants produced a copy of their official employee manual. As that document indicates, FUR foresaw the possibility of violence at its Nightclub – and accordingly recognized the need to promulgate policies setting forth training and guidelines for its security personnel. *See* Excerpts from Deposition Transcript of John Fiorito, true copies of which are attached hereto as Exhibit B, at 37:8 – 38:7, 93:20 – 95:10, 97:5-21. Indeed, the FUR Manual includes four pages specifically reviewing possible security-related issues, and defining practices to be followed in such instances. Those policies with respect to security personnel or bouncers included as follows:

- Defusing altercations with the "utmost minimum force necessary"
- Involving additional security staff immediately, upon learning of an incident;
- Escorting individuals involved in a problem out of FUR.

In particular, the FUR Manual states that "at no time does FUR Nightclub authorize the use of force by any staff members." Ex. A at 21.

Several FUR witnesses have further admitted that the FUR Manual specifies proper conduct for security personnel, and that Persons's conduct exceeded such written policies. *See generally* Excerpts from Deposition Transcript of David McLeod (FUR's Director of Security), true copies of which are attached hereto as Exhibit C; Excerpts from Deposition Transcript of Michael Persons, true copies of which are attached hereto as Exhibit D. Persons himself testified that he felt tired on the night of March 11-12, having just come to the Nightclub from a particularly heavy workout session at a gym, and that as a result he did not follow FUR's written policies for dealing with unruly patrons when he was in the process of confronting Mazloum for his "illegal" presence on the dance floor stage. Accordingly, both Persons and McLeod have admitted that Persons did not do as he should have done in failing to involve another FUR security personnel to remove Mazloum. Persons Tr. at 71:20 – 77:20, ; McLeod Tr. at 128:5 – 131:19 ("Did Mr. Persons follow that rule? No, he didn't").

## ARGUMENT

### THE FUR SECURITY POLICIES ARE RELEVANT CIRCUMSTANTIAL EVIDENCE

FUR's argument against admission of the FUR Manual is premised on an overly narrow reading of relevance. FRE 401 envisions the admission not simply of direct evidence of the *prima facie* elements of a claim, but also indirect, or circumstantial evidence. "As the Supreme Court has observed, 'direct evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'" *L & J Energy Company, Inc. v. Secretary of Labor*, 57 F.3d 1086, 1088 n. 4 (C.A.D.C. 1995), *quoting Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960); *see also United States v. Fadayini*, 28 F.3d 1236, 1239-40 (D.C.Cir.1994). Accordingly, circumstantial evidence is not inherently less probative than

direct evidence. *Holland v. United States*, 348 U.S. 121, 140 (1954) ("[c]ircumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence.")

Mazloum offers the relevant portions of the FUR Manual as circumstantial evidence on certain elements of his battery claim for which direct evidence is hard to ascertain. Courts widely recognize, in a variety of contexts, that it is often exceedingly difficult to find direct proof of certain kinds of elements of claims, thus obligating claimants to rely on circumstantial proof. *See, e.g., Tew v. Chase Manhattan Bank, N.A.,* 728 F. Supp. 1551, 1555 (S.D.Fla.1990) ("[c]ertain issues such as fraud, intent, and knowledge . . . can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun.' "). It therefore does not matter that the policies set forth in the FUR Manual do not themselves "prove" Persons assaulted Mazloum, so long as they have some value in proving the elements of that claim.

Here, this evidence is relevant in two respects:

**A.    The FUR Manual is Relevant to Rebut the FUR Defendants' Self-Defense Affirmative Defense.**

As the Court's Summary Judgment opinion reflects, FUR concedes that the Plaintiff can establish the *prima facie* elements of his battery claim against Persons. *See* Summary Judgment Memorandum Opinion, dated November 6, 2007 (Docket No. 139) at 44. Because assault and battery is an intentional tort, one of those elements is proof of intentionality. Assuming such proof, the FUR Defendants must then prevail in their affirmative defense – that Persons acted in self-defense against a violent and dangerous patron – to defeat the claim. This Court has explicitly observed that self-defense is "an inherently fact-bound inquiry that often turns on context to determine whether a defendant's actions were *"reasonable" given the circumstances*." *Id.*

(emphasis added). Thus, the surrounding circumstances of Persons's conduct are relevant to the reasonableness of his conduct and to whether it was justified.

Evidence of applicable guidelines and standards governing an intentional tortfeasor's conduct have been frequently found by D.C. courts to be admissible on the issue of a defendant's reasonableness. *Fernandors v. District of Columbia,* No. Civ.A. 02-2001 (JDB), 2006 WL 449300, at *2-*3 (D.D.C. Feb. 23, 2006) (allowing MPD General Orders into evidence with respect to plaintiffs' intentional tort claims because as relevant to the issue of whether police officers' conduct constituted reasonable level of force in light of the circumstances); *Smith v. District of Columbia,* 882 A.2d 778, 792 (D.C. Cir. 2005) (court considered evidence of applicable standards governing police restraint of an individual in making a determination of reasonableness with respect to battery claim). The same principal has been applied in other jurisdictions specifically with respect to employee manuals. *See, e.g., Caldwell v. K-Mart Corporation*, 410 S.E.2d 21, 24 (S.C. App. 1992) (allowing admission of employee manual that contained guidelines for employees making shoplifting arrests as relevant to the reasonableness of the defendant's actions in terms of false arrest claim); *Luckie v. Piggly-Wiggly Southern, Inc.,* 325 S.E.2d 844, 845-46 (Ga. App. 1984).

Here, the policies set forth in the FUR Manual are relevant to the reasonableness of Persons's allegedly self-defensive behavior. Whether Persons acted reasonably depends to some extent on what other options he had available for his response to Mazloum's alleged aggressiveness. The FUR Nightclub's employee manual sets forth specific procedures for handling unruly patrons. Persons's defense is based upon his argument that he was physically threatened by Mazloum and thereupon forced to take action to defend himself. Suspending one's disbelief in order to consider the merits of this argument,[1] the jury hearing this case is likely take into account the fact that Persons

---

1 Persons weighs nearly 300 pounds, can leg press 2000 pounds, and has tried out for the Baltimore Ravens football team, so his claims that he felt threatened by the much smaller, soft-spoken Mazloum strain credulity. In addition, there

5

was not himself a FUR Nightclub patron like Mazloum, but rather a security professional who has experience dealing with patron-related problems inside of FUR.  Moreover, he was aware of FUR-promulgated policies designed to defuse situations with disruptive individuals.  Those policies specifically obligated and trained Persons to find another member of security to assist his efforts – not to take matters into his own hands.  Yet that is precisely what he did – with grave consequences for Mazloum.  The relevant portions of the FUR Manual thus place Persons's actions in their proper context, providing a jury with a benchmark by which to gauge the reasonableness of Persons's conduct.

### B. **The Fur Manual is Relevant to the Punitive Damages Claim.**

Plaintiff seeks to recover punitive damages against Persons and FUR relating to the battery claim.  Punitive damages are available "only if it is shown by clear and convincing evidence that the tort committed by the defendant was aggravated by egregious conduct and a state of mind" sufficient to make an award of exemplary relief appropriate.  *Chatman v. Lawlor,* 831 A.2d 395, 400 (D.C. 2003) (quoting *Jonathan Woodner Co. v. Breeden,* 665 A.2d 929, 938 (D.C. 1995)); *see also Henson v. W.H.H. Trice and Co.,* 466 F. Supp. 2d 187, 193 (D.D.C. 2006)(punitive damages may be awarded to punish a defendant's outrageous conduct, maliciousness, wantonness, recklessness, or willful disregard of another's rights).

It is certainly relevant, on the issue of the egregiousness of the conduct of the FUR Defendants, to consider FUR's self-appointed standards governing the conduct of its security personnel, in order to evaluate the extent to which these particular Defendants acted in total violation of those practices and policies.  Courts in other jurisdictions have admitted employee manuals as

---

is no evidence or testimony that Mazloum possessed a weapon or had threatened, hit, or otherwise improperly engaged with any other FUR personnel or patrons before his encounter with Persons, such that Persons might reasonably have believed that Mazloum posed any threat.  Similarly, any assertions that Persons was "ganged up" upon by Mazloum and his two friends who were also present at the time (Imad Alkadi and Marwan Abi-Aad) are undercut by their smaller

evidence relevant to determining the appropriateness of punitive damages. *See, e.g., Globe Security Systems Co. v. Sterling,* 556 A.2d 731, 735 (Md. App. 1989) (allowing introduction of training manuals on the issue of punitive damages on assault claim because they were material to the issues of wantonness and reckless disregard for the rights of others); *Peak v. W.T. Grant Company,* 409 S.W.2d 58, 62 (Mo. 1966) (admitting employer's manual on procedures for apprehending shoplifters as material to the issue of punitive damages). The same result is warranted here.

### C. FRE 403 Provides No Other Basis for Exclusion of the FUR Manual.

In a final aside, the FUR Defendants suggest that the FUR Manual should be excluded under the Fed. R. Evid. 403 balancing test, due to its prejudicial impact and/or tendency to mislead the jury. With respect to the issue of prejudice, the Rule 403 test for balancing probative value versus prejudicial effect looks to see if the evidence at issue is *unfairly* prejudicial. *U.S. v. Gloster,* 185 F.3d 910, 914 (D.C. Cir. 1999)(upholding admission of evidence on Fed. R. Evid. Rule 403 grounds). Evidence is not "unfairly prejudicial" simply because it is not favorable to a party. *U.S. v. Emeron Taken Alive, II,* 262 F.3d 711, 714-15 (8th Cir. 2001)("[t]here is a difference between evidence that is unfair in that it hurts a party's case and evidence that is unfairly prejudicial"); *see also SEC v. DiBella,* No. 3:04 CV 1342(EBB), 2007 WL 1395101, at *3 (D. Conn. May 8, 2007)("[e]vidence is not unfair or excluded for Rule 403 balancing purposes if it is merely damning").

The FUR Manual is simply not sufficiently "unfairly" prejudicial to exclude it, given its otherwise probative value as circumstantial evidence. This is a situation in which the scope of proper conduct for a nightclub's bouncer is at issue. Any jury hearing this case will inescapably learn certain facts about the incident – that it occurred in a nightclub, for example, and that it arose

---

stature as well, plus the fact that Persons knew them to be working at the Nightclub that night as party promoters – not unknown assailants.

out of interaction between FUR security personnel (Persons) and the Plaintiff.  The jury will need to consider whether it is reasonable for a bouncer to choose to handle a situation with a patron on his own, even when he is aware that other security procedures (particularly by finding a second security member to assist him) are available – which, if followed, might defuse the situation effectively.  And they will also need to evaluate the result of his decision – an all-out fracas that sent the Plaintiff, but not Persons, to the hospital – in light of his claimed justifications.  There is nothing "unfair" about consideration of such evidence by the jury.

Equally, the FUR Manual should not be excluded because of its potential to mislead the jury or waste time.  Both are unlikely.  The jury will have no trouble comprehending (especially with a proper limiting instruction) that Plaintiff's claim against the FUR Defendants is simply one for assault and battery – not a negligence claim based on FUR's failure to follow its own policies.  The evidence is offered solely in support of the battery claim, as contextual proof of the backdrop for Persons's conduct, as a yardstick for measuring his assertion that he was merely defending himself, and on the willfulness element necessary for a punitive damages award.  The contents of the FUR Manual are very plain and easy to understand – as is the fact that this evidence, alone, does not prove Mazloum was beaten by Persons.  But, as already noted, such circumstantial evidence is routinely admitted in proceedings despite the fact that it is not itself direct proof – and it should be here as well.

**CONCLUSION**

For the foregoing reasons, Plaintiff requests that the FUR Defendants' Motion *in Limine* to preclude Plaintiff at trial from use of evidence relating to FUR's security employee policies be denied in its entirety.

Respectfully submitted,

Dated:  November 20, 2007

/s/
Brian H. Corcoran (Bar No. 456976)
Katten Muchin Rosenman LLP
1025 Thomas Jefferson St., NW
Suite 700 East Lobby
Washington, D.C.  20007
Ph: (202) 625-3500
Fax: (202) 298-7570
Brian.Corcoran@kattenlaw.com

Susan Huhta (Bar No. 453478)
Warren R. Kaplan (Bar No. 034470)
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, D.C.  20036
Ph: (202) 319-1000
Fax: (202) 319-1010
Warren_Kaplan@washlaw.org

Attorneys for Plaintiff
Emile Mazloum