UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMILE MAZLOUM,<br><br>    Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA *et al.*,<br><br>    Defendants. | Civil Action No. 1:06 CV 00002 (JDB) |

**MEMORANDUM OF LAW
OF DEFENDANTS
NIGHT AND DAY MANAGEMENT, L.L.C. AND MICHAEL PERSONS
IN OPPOSITION TO THE MOTION IN LIMINE TO REOPEN DISCOVERY
FOR THE PURPOSE OF DEPOSING MR. DIEGO SEQUEIRA**

Defendant Night and Day Management, L.L.C. ("Night & Day Management") and Michael Persons (together, the "FUR Defendants"), by and through undersigned counsel, hereby submit this Memorandum of Law in opposition to the Motion In Limine To Reopen Discovery For The Purpose Of Deposing Mr. Diego Sequeira filed by Plaintiff Emile Mazloum.

**I. AS A MATTER OF LAW, PLAINTIFF IS NOT ENTITLED TO SEEK ANY ADVERSE INFERENCE INSTRUCTION AT TRIAL BASED ON THE ABSENCE OF THE MARCH 12, 2005 VIDEO EVIDENCE, THUS RENDERING MOOT PLAINTIFF'S MOTION IN LIMINE TO REOPEN DISCOVERY**

Plaintiff errs in arguing (Br. at 5-9) that District of Columbia Court of Appeals decisions govern regarding whether this Court should give adverse inference instructions at trial:

> The Johnsons also argue that several adverse inferences should be drawn from WMATA's failure to collect or preserve relevant evidence. They make these arguments under the rubric of the District of Columbia's spoliation of evidence doctrine. However, even though District of Columbia law governs the Johnsons' tort claims, federal, not state, rules govern procedural matters such as what evidence may be admitted. *Cf. Ricciardi v. Children's Hosp. Medical Center*, 811 F.2d 18 (1st Cir. 1987) (holding that even though state substantive law controls in diversity actions, federal evidentiary rules must be applied in federal courts); *see generally Hanna v. Plumer*, 380 U.S. 460,

  14 L. Ed. 2d 8, 85 S. Ct. 1136 (1965). The appropriate federal doctrine is the so-called adverse inference rule which "provides that when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him.' *Int'l Union v. N.L.R.B.*, 459 F.2d 1329, 1336 (D.C. Cir. 1972). Normally, such inferences are not drawn unless there is evidence of "evil intent, bad faith or willfulness." See *Vick v. Texas Employment Com.*, 514 F.2d 734, 737 (5th Cir. 1975); *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 587 F. Supp. 180, 208 (D.D.C. 1984).

*Johnson v. Washington Metropolitan Area Transit Authority*, 764 F.Supp. 1568, 1579-80 (1991) ("*Johnson*").[1]

Conforming with that substantive statement in *Johnson*—that "[t]he appropriate federal doctrine is the so-called adverse inference rule which 'provides that when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him'"—federal decisional law in this regard holds that where, as here, a plaintiff has tried but failed to make out a spoliation tort claim, that plaintiff is *not* entitled to any corresponding adverse inference instruction. *See*, *e.g.*, *Kraus v. GMC*, 2007 U.S. Dist. LEXIS 79651 at **8-9 (S.D.N.Y. 2007) ("*Kraus*," with emphases added below):

> III. An Adverse Inference Instruction Is Not Warranted
>   *Because plaintiff has not established spoliation, it is not entitled to an adverse inference charge*. "It is a well-established and a long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). "*In order for an adverse inference to arise from the destruction of evidence, the party having control over the evidence must have had an obligation to preserve it at the time it was destroyed.*" *Id.*; see also *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220

---

[1] The presiding magistrate judge in *Rice v. United States*, 917 F.Supp. 17, 19 (D.D.C.1996) ("*Rice*"), may have been mislead by the litigants in this regard, in that the Court therein stated: "The controlling law in the District of Columbia regarding the loss of evidence in civil cases is set forth in *Battocchi v. Washington Hospital Center*, 581 A.2d 759 (D.C. 1990). [Etc.]" The *Rice* Court then incorrectly went on, 917 F.Supp. at 19-20, to equate that District of Columbia evidentiary law with the controlling law thereon of the United States District Court for the District of Columbia. As a result of that error, *Rice* cannot rightly be regarded as presenting even guiding authority on this evidentiary law point.

(S.D.N.Y. 2003). This obligation to preserve evidence arises, for example, when a party should have known that the evidence might be relevant to future litigation. *Kronisch*, *supra*, 150 F.3d at 126.

For the reasons already discussed, GM had no duty to preserve the vehicle at issue in September 2002 because litigation was not pending nor reasonably foreseeable to GM at the time. Given this, an adverse inference instruction is not warranted and none will be given.

Dated: October 24, 2007

*See also Jinks-Umstead v. England*, 2005 U.S. Dist. LEXIS 34547, 9-10 (D.D.C. 2005) ("*Jinks-Umstead*"):

> *See also Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 100-01 (D. Md. 2003) (holding that, because the granting of an adverse inference is such an "extreme sanction, three things must be shown to warrant an adverse inference instruction for spoliation of evidence: (1) *the party having control over the evidence had an obligation to preserve it when it was destroyed or altered*[ (emphasis added)]; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.") (citations omitted).

It need scarcely be added that that result in *Kraus* is the fair one. No court could reasonably hold that, where certain evidence has been lost, a company found not to have been obligated to preserve that evidence might nonetheless appropriately be the *victim* of a jury's adverse inference for having not done what the company had no obligation to do in the first place. No court could reasonably discard the duty/breach link in this regard by ruling: "Yes, Acme Corporation, you had no duty to preserve the evidence in question, but, now that the evidence is gone, the jury properly may find against you because you did not preserve it."[2]

---

[2] For the record, the FUR Defendants would point out that none of the cases from the District of Columbia Court of Appeals relied upon by Plaintiff held, contrary to the holding in *Kraus*, that (a) an asserted spoliation tort cause of action failed but (b) an adverse inference instruction to the jury might nonetheless still be given. The FUR Defendants would respectfully submit that a defendant against whom an adverse inference instruction might be given regarding the loss of

(footnote continued ...)

3

As a result, and as this Court has already rightly determined that the FUR Defendants had no duty to preserve the video recordings in question (November 11, 2007 Memorandum Opinion at 47), any request by Plaintiff at trial that an adverse inference instruction be given in this regard against the FUR Defendants would, as a matter of law, be ill-founded.

Thus, for these reasons alone, no adverse inference instruction against the FUR Defendants would be possible, and, therefore, Plaintiff's stated grounds for seeking to take, after the close of discovery herein, the deposition of Diego Sequeira—"to evaluate arguments the FUR Defendants will make (and indeed, already have) to rebut the[ adverse] inference at trial" (Br. at 10)—must be rejected as moot.

## II. PLAINTIFF FAILS EVEN TO ESTABLISH WHY AN ADVERSE INFERENCE INSTRUCTION AT TRIAL MIGHT OTHERWISE BE APPROPRIATE

Notwithstanding that he seeks an adverse inference instruction against FUR based on the unavailability of the video surveillance recordings, Plaintiff presents little or no evidence or argument regarding what the video recordings would supposedly have shown and how they would have been helpful to him. *See Jinks-Umstead*, 2005 U.S. Dist. LEXIS 34547, 9-10 (movant must show "the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it").

For example, regarding an image from a recording made by FUR for Mr. Skip Coburn in early 2006 (Br. at 3 n.3 and Exhibit B)—a recording which Plaintiff has had in his possession for

---

(... footnote continued)
evidence must first be found, even under District of Columbia law, to have had a duty to preserve the evidence in question.

over a year—Plaintiff now makes the following assertions, albeit without benefit of any supporting testimony: "As the image reveals, the 'stage' area of the Nightclub and much of the path leading to the stairs arising out of the dance floor toward the Nightclub's entrance are plainly visible." (Br. at 3 n.3)  The FUR Defendants would raise three points in response.

First, *"the 'stage' area of the Nightclub"*—as described by Plaintiff (Br. at 3 n.3)—and *the tip of the stage-left side of this twenty-five-foot-long stage (as circled on Plaintiff's second such image)* are two very different things.  Not even Plaintiff has the temerity to assert that the stage floor where the tussle between himself and Mr. Persons took place or even the stage steps where that tussle began are shown within this image.  As a result, Plaintiff's description of "the 'stage' area of the Nightclub" as being "plainly visible" is *highly misrepresentative*, in that no part of the scuffle between these two men could possibly have been captured by this camera notwithstanding that that scuffle indeed took place in "the stage area," i.e., on the stage steps and the stage floor.

Second, and likewise, Plaintiff does not claim that the Tunnel staircase—starting at the stage floor and going up to one end of the Tunnel corridor (which itself leads to the Nightclub's front entrance), upon which staircase Plaintiff claims to have been battered by Officer Ramirez—is within the field of vision of this "Exhibit B" camera.  Thus, not even Plaintiff is claiming that this camera would have captured images of that supposed instance of battery.

Third, Plaintiff asserts that "much of the path leading to the stairs arising out of the dance floor toward the Nightclub's entrance [is] plainly visible," but he offers no testimony either corroborating that description or detailing what that image would supposedly have revealed on the night in question; obviously, Plaintiff offers no "reconstruction" shots taken from that camera, which he might have obtained during his Rule 34(a)(2) physical inspection of the

5

Nightclub had he been genuinely interested in presenting evidence on this point rather than merely textual musings. Moreover, if, in fact, the image would have shown the police struggling to get Plaintiff out of the Nightclub, it would have revealed nothing more than what the parties seem to agree actually happened, in which case the absence of the recording is irrelevant.

In sum, Plaintiff had the ability to perform an inspection of FUR's video recording system such that he could have attempted to demonstrate to this Court—and, perhaps, to a jury—what, if anything, the FUR video surveillance system would have recorded of this incident *that would actually have been important to his case*. Instead, following an inadequate inspection of the FUR video surveillance system performed by his own counsel rather than by a qualified expert, Plaintiff asks this Court to assume without foundation that that recorded evidence "would clearly [have been] helpful to Mazloum's overall case, as it would *likely* show images of the Defendants and what they did in their interactions with Mazloum." (Br. at 7 (emphasis added).) Such supposed "helpful[ness]" is, in fact, however, not in the least "clearly" present here because Plaintiff has—through his own fault—failed to take adequate discovery steps to try to meet his burden to show the relevance and materiality of the lost video recordings. In essence, Plaintiff wants both this Court and the jury in this cause to speculate as to what those recordings would have shown—and to speculate that they would have aided (rather than markedly hurt) his case—notwithstanding his failure to offer any adequate and specific proof thereon.

In light of Plaintiff's failure to demonstrate this relevance and materiality of the lost recordings, any subsidiary, post-discovery deposition inquiries thereon with Mr. Sequeira would be pointless. For this reason as well, Plaintiff's instant Motion should be denied.

6

### III. PLAINTIFF HAS OTHERWISE SHOWN NO GOOD CAUSE TO TAKE MR. SEQUEIRA'S DEPOSITION

The FUR Defendants need not long dwell on assertions such as "[h]ad he been disclosed properly during discovery, Plaintiff would unquestionably have deposed Mr. Sequeira" (Br. at 4), although such a statement cannot be taken at face value. Plaintiff's spoliation claim itself quite obviously required, from the start of this litigation, expert examination and testimony, yet Plaintiff didn't designate any such expert at any point during the discovery phase of this case. Moreover, FUR identified its security manager David McLeod as its Rule 30(b)(6) deponent concerning the video-related questions, and he testified in this regard that, although he himself did not have dealings with the installer/maintenance contractor for the FUR video surveillance system, FUR's general manager "Diego" did have such dealings; nonetheless, Plaintiff didn't seek to depose Mr. Sequeira during the course of discovery. Thus, in essence, Plaintiff seems to be arguing:

> Although we had the opportunity to inspect the FUR video system, and while we did bring *half a dozen lawyers* to the Rule 34(a)(2) physical inspection thereof which we performed, we didn't trouble ourselves to bring along anyone who actually knew how such a system operated. As a result, we didn't apprehend that some of the cameras in question were rotatable, nor did we thus learn of corresponding issues such as what FUR's practices were regarding camera placement during the hours it is open for business. Because we didn't understand the system, we also didn't ask various questions in this regard of the Rule 30(b)(6) deponent proffered by FUR; neither did we, as a result, feel it necessary to depose the only person whom that deponent identified in deposition testimony as the person at FUR in charge of maintenance of the video surveillance system.
>
> In sum, notwithstanding the fact that we didn't learn very much from our own lawyers-only inspection of FUR's video system (though we could have learned much more about it had we retained an expert), and notwithstanding that we could have deposed Diego Sequeira during the course of discovery—as he was a person identified by FUR's Rule 30(b)(6) deponent as having information on the installation and maintenance of this video system—we want to take Mr. Sequeira's deposition after discovery has closed to learn at this late date more about how this video system actually works.

Based on these facts as well, Plaintiff has presented no good cause to take, belatedly, the deposition of Mr. Sequeira.

## IV.   CONCLUSION

Because no adverse inference instruction is appropriate where a plaintiff's spoliation tort cause of action has failed due to the finding of an absence of a duty to preserve lost evidence, because Plaintiff has also failed to meet his burden of showing the relevance and materiality of the lost video recordings, and because Plaintiff's failure to depose Mr. Sequeira during the discovery phase of this litigation was due to Plaintiff's own inadequate discovery efforts, Plaintiff's instant Motion should be denied.

    Respectfully submitted,

    /s/ Paul A. Fitzsimmons
    _____
    Thomas S. Schaufelberger, Bar No. 371934
    Paul A. Fitzsimmons, Bar No. 444829
    SAUL EWING LLP
    2600 Virginia Avenue, N.W.
    The Watergate—Suite 1000
    Washington, D.C.  20037
    Telephone: (202) 333-8800

    Counsel for
    Defendants Night & Day Management, LLC,
    Michael Rehman, John Fiorito, and
    Michael Persons

Date:  November 21, 2007