## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EMILE MAZLOUM,          )
                              )
      Plaintiff,          )     CA No.: 06-002 (JDB)
                              )
                              )
DISTRICT OF COLUMBIA, et al.,    )
                              )
      Defendants.       )
_____)

### DEFENDANT ANTHONY RAMIREZ, THADDEUS MODLIN, RICHMOND PHILLIPS AND LOUIS SCHNEIDER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE THE ADMISSION OR USE OF FINANCIAL EVIDENCE

Defendants[1] Anthony Ramirez, Thaddeus Modlin, Richmond Phillips and Louis Schneider (hereinafter "defendants"), by and through counsel, hereby opposes plaintiff's Motion *In Limine* to Preclude the Admission or Use of Financial Evidence. The evidence at issue here goes directly to plaintiff's credibility regarding the alleged severity of his injuries, and the events in question, and a jury should be permitted to consider this evidence when weighing the overall credibility of plaintiff's testimony. In support of their opposition, these defendants state as follows:

## I.    PRELIMINARY STATEMENT

This matter concerns an alleged incident that occurred in the very early morning hours of March 12, 2005. Plaintiff alleges that these defendants, without provocation, assaulted and battered him inside and outside the nightclub, giving rise to the constitutional and common law claims currently pending against these defendants. Plaintiff was deposed in this matter on January 29, 2007, and January 30, 2007. Plaintiff testified extensively as to the effect of his

---

[1] Upon information and belief, the Fur defendants and the District of Columbia join in this opposition.

alleged injuries on his ability to work, and the relevant colloquies of his testimony are the

following:

> Q: Okay. If you want to take some time to take a look at the tax return. Just so you know, my question to you is how were you able to afford the monthly mortgage payments around $2000 a month when your income was only $480 a month.

> A: Well, if you go back to how much I used to make, I told you 360 to $800. That is a week. And until when I had the accident, the incident which is March 11, I stopped working for a couple of months. And I used some of the money I got from the house to pay for, actually, on the beginning for my medication from the incident, and for the couple of months that I stay home, I didn't—I couldn't work because of what happened on Fur Nightclub on March 11.

See Exhibit #1, Deposition of Emile Mazloum, at 42:21-22, and 43:1-15.

> Q: Before your answer, your attorney actually had a better question, which is after the incident at Fur Nightclub, how many months did you not work?

> A: From March 11, 2005 until maybe September of 2005.

> Q: So, during that time you did not work at all?

> A: No.

See Exhibit #1, Deposition of Emile Mazloum, at 44:11-19.

> Q: Are you claiming that this back pain that you have been feeling is as a result of what happened during the incident?

> A: Yes.

> Q: And did you not work at all from the time of the incident until late August, early September that year?

> A: Yes.

See Exhibit #1, Deposition of Emile Mazloum, at 173:1-8.

> Q: Any other businesses that you lost immediately after March 11, 2005?

> A: Well, I couldn't do anything. I couldn't work for a couple months. So of course. I couldn't even—I wasn't able to be looking for a job.

See Exhibit #1, Deposition of Emile Mazloum, at 262:1-6.

> Q: During the time that you could not work did you make any effort to find business so that you could get an income?

> A: No, sir.

Exhibit #1, Deposition of Emile Mazloum, at 423:10-13.

Approximately six weeks after the date of the incident, and during the time period in which plaintiff testified under oath that he was unable to work, plaintiff filled out a loan application to purchase a home. *See* Plaintiff's Motion, Exhibit #3. Plaintiff stated in this application that he was earning a monthly income of $10,833.00. *Id.* Plaintiff signed and dated this document on April 28, 2005, and in so doing effectively swore that the representations contained in the application were true. On May 27, 2005, Plaintiff swore under oath that the representations contained in his loan application were true. *See* Plaintiff's Motion, Exhibit #4.

Plaintiff has moved *in limine* to prevent the admission of his financial evidence. Plaintiff argues that such evidence should be precluded under Fed. R. Evid. 402, 403 and 608(b), as well as Fed. R. Civ. Pro. 45(b)(1). As set forth below, plaintiff's motion should be denied because, contrary to plaintiff's argument, the financial evidence directly impacts the credibility of plaintiff's liability and damages claim, as well as his overall propensity for truth and veracity.

## II.     ARGUMENT

### A)     Plaintiff's Motion Violates LCvR 7(m).

LCvR 7(m) requires counsel to contact opposing counsel **before** filing a non-dispositive motion. Emphasis added. The purpose for this contact is to discuss the anticipated filing and determine whether there is any opposition, and if there is opposition, to narrow the areas of disagreement. According to Rule 7(m), the party filing the motion shall include in its motion a

statement that the required discussion occurred, and a statement as to whether the motion is opposed.

Plaintiff's motion is a non-dispositive motion. Plaintiff's counsel did not contact undersigned counsel for these defendants prior to filing the instant motion *in limine*. In fact, plaintiff's motion does not contain statements that the required discussion occurred and whether the motion is opposed, as required by LCvR 7(m), because no discussion occurred in compliance with the Rule. Accordingly, plaintiff's motion should be summarily denied.

**B)      The Financial information is Admissible under Fed. R. Evid. 402 and 403.**

Fed. R. Evid. 402 provides for the exclusion of irrelevant evidence. Plaintiff's argument that the financial information is irrelevant is incorrect. While the defendants appreciate plaintiff's decision to drop his claim for lost wages, the financial information goes directly to his credibility as it relates to the underlying incident, and the alleged severity of his injuries. Plaintiff testified that, due to the injuries he allegedly sustained at Fur Nightclub, he was unable to work between March 11, 2005, and September, 2005. He further testified that he earned no income whatsoever. However, plaintiff filled out a loan application six weeks following the incident, and in so doing effectively swore that he was earning nearly $11,000 a month. This testimony does not only go to lost wages, as plaintiff believes, but instead to the credibility regarding the alleged severity of his injuries. The jury will clearly have to consider the severity of plaintiff's injuries, as proving damages is a vital and necessary component to plaintiff's claim. In so doing, the jury must weigh the credibility of plaintiff's injuries. In describing his injuries, plaintiff testified that he was unable to work for six months. The jury should be permitted to consider the scope of plaintiff's injury if, despite testifying under oath that he *couldn't* work in

April and May 2005, he nevertheless swore that he *was* working in April and May 2005, and earning nearly $11,000 a month.

The financial testimony plaintiff seeks to preclude is relevant to his state of mind regarding his injuries and to his claimed "truth" about his injuries. Plaintiff testified that he did not work between March 11, 2005, and September, 2005, and *did not attempt to seek any work* presumably because of his injuries. A jury can properly infer from this testimony that plaintiff was either too injured to work or believed that he was to hurt to begin working because of his injuries. However, plaintiff filled out a loan application for $437,700 to purchase a home in April, 2005, and claimed that he earned more than what he has now testified about. As the financial information is contrary to plaintiff's claim regarding his damages, and is clearly relevant to the scope of plaintiff's injuries, plaintiff is not entitled to his requested relief under Fed. R. Evid. 402.

For similar reasons, the financial information is admissible under Fed. R. Evid. 403. Plaintiff's argument that such evidence would result in a "mini-trial" requiring an "investigation" into plaintiff's tax history and property ownership history borders on the frivolous. Plaintiff gave two contradictory statements under oath. One statement came in the form of deposition testimony, and the other came in the form of notarized loan documents. The statements directly challenge plaintiff's credibility as to the scope and severity of his injuries, which is a vital element which plaintiff must prove at trial. The jury should be able to consider that, while plaintiff testified that his injuries prevent him from earning an income between March and September 2005, he nevertheless swore that he was earning a substantial income in those very months. Any perceived prejudice is clearly outweighed by the probative value on the issue of plaintiff's credibility about liability, but more importantly about his claimed damages. The jury

may weigh this testimony in determining whether plaintiff's allegations merit an award for

damages. Accordingly, as the financial information is admissible under Fed. R. Evid. 402 and

403, plaintiff's motion should be denied.

       **C)     The Financial Information is Admissible under Fed. R. Evid. 608(b)**

      In arguing for the exclusion of the financial information under Fed. R. Evid. 608(b),

plaintiff cites to *Dean v. Garland,* 779 A.2d 911, 917 (D.C. 2001). Under *Garland,* plaintiff

argues that two requirements must be met before the financial information is admitted: 1) there is

a factual predicate for the information, and 2) the financial information must bear directly on the

witness in respect to the issues involved *in the trial.*[2] As noted in Part A, *supra,* the financial

information bears directly on the issue of plaintiff's damages, which is a vital component in this

trial. While plaintiff testified under oath that he did not work because of his claimed injuries, the

financial evidence contradicts that sworn testimony. Accordingly, plaintiff's argument on this

issue should be rejected and his motion denied.[3]

       **D)     The Financial Information Should Not be Excluded Under Fed. R. Civ. Pro.
45(b)(1).**

      On December 14, 2006, undersigned counsel noted plaintiff's deposition for January 29,

2007. In preparation for that deposition, and after reviewing plaintiff's tax information provided

during discovery, undersigned counsel noted some discrepancy in the information disclosed by

---

[2] Plaintiff italicized this language in his motion.

[3] Plaintiff argued that no formal finding has been made as to whether his statements were false. Such an assertion is irrelevant. Plaintiff made contradictory statements under oath regarding the scope of his injuries and his own belief in the severity of his injuries. The jury will decide how to weigh these statements, and no "formal finding" is required. Furthermore, plaintiff's attempts to compare his financial information to this Court's earlier decision regarding defendant Ramirez has no basis. The financial information directly impacts an element that plaintiff must prove to the jury—his injuries and damages. By contrast, the Ramirez "evidence" concerned a completely separate and unrelated event that had no relationship whatsoever to any component of this trial, and was rightfully excluded by this Court.

plaintiff in his discovery responses.4  Undersigned counsel could not understand how plaintiff

could have obtained a loan for $437,300.00, when he claimed only to have earned $5,760.00 that

year.  On or about January 23, 2007, less than a week before plaintiff's scheduled deposition,

undersigned counsel faxed a subpoena to JLM Direct Funding seeking financial information on

plaintiff.  The subpoena commanded the production of the information on February 2, 2007, after

the date of plaintiff's deposition.  See Exhibit #2, Subpoena.  Through inadvertence, error, and

the press of other business, plaintiff was not provided with a copy of the faxed subpoena.  JLM

Direct Funding honored the faxed subpoena three business days before plaintiff's scheduled

deposition, and the documents were provided to plaintiff at the scheduled deposition.  Fed. R.

Civ. Pro. 45(b)(1).provides that "[p]rior notice of any commanded production of documents and

things … before trial shall be served on each party in the manner prescribed by Rule 5(b).

Plaintiff argues that because he was not provided a copy of the subpoena under which the

financial information was obtained, the disclosed information should be excluded.   This Court

has broad discretion as to whether to sanction a party, and whether to allow the use of plaintiff's

financial information at the trial of this matter.

        Plaintiff's argument for a blanket exclusion of the financial documents fails in several

respects, and the Court should deny his motion in limine.  Plaintiff argues that Rule 45(b)(1)

exists to afford parties an opportunity to object to the production or inspection, to monitor the

discovery process, and to serve a demand for additional documents or information that may or

should be produced.  Plaintiff has failed to show how his failure to receive a copy of the

---

4 Undersigned counsel is the lead attorney representing the herein named defendants in this action.  He was in trial
on December 4, 2006, in the case *Valentina Chambers v. D.C.,* C.A. No. 03-6686 in the Superior Court for the
District of Columbia.  On December 21, 2006, undersigned counsel filed a post-trial motion in the *Chambers* case
and proceeded to trial on January 8, 2007, in the case *Gladys Thomas v. D.C.,* C.A. No. 03-0032 (RCL).

subpoena has prejudiced him with respect to the use of the financial documents at trial, particularly since the disclosed information, i.e. the loan application, is of no surprise to him since he prepared it. Plaintiff has not claimed that he would have moved to quash the subpoena and/or on what basis he would have taken such action. The financial information is relevant to plaintiff's claims of damages, and no privilege exists for their non-disclosure. Moreover, plaintiff cannot show and has not argued that the information requested through the subpoena was overly burdensome and/or unreasonable. See Pl.'s Motion, generally.

Plaintiff has not claimed or shown prejudice by being unable to "monitor" the discovery process, or that he was precluded from serving a demand for additional documents. Plaintiff's deposition lasted for two days; January 29 **and** January 30, 2007. Counsel for plaintiff could have reviewed the documents and questioned plaintiff on January 30, 2007, but opted not to do so. Additionally, plaintiff had ample opportunity to monitor discovery, and/or to request additional information related to the disclosed information. The financial documents were produced to plaintiff on January 29, 2007. However, fact discovery in this case did not close until March 2, 2007. See December 22, 2006, Minute Entry. Plaintiff has failed to state exactly how he needed to prepare to discuss documents which **he himself prepared and signed**. Absent a showing of any prejudice, and given the financial documents' fundamental relevance to a core issue of plaintiff's allegations, plaintiff's motion should be denied in its entirety.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

8

_____\s_____

PATRICIA A. JONES [428132]
Chief, Civil Litigation, Section IV

_____\s_____

MICHAEL BRUCKHEIM [455192]
LETICIA L. VALDES [0461327]
Assistant Attorney General
441 4th Street, N.W., 6th Floor North
Washington, DC 20001
(202) 724-6649; (202) 727-6295
(202) 727-3625 (fax)
E-mail:  Michael.Bruckheim@ dc.gov

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| EMILE MAZLOUM, | ) | |
| | ) | |
| Plaintiff, | ) | CA No.: 06-002 (JDB) |
| | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**<u>ORDER</u>**

Upon consideration of Plaintiff's Motion *In Limine* to Preclude the Admission or Use of Financial Evidence, the defendants' Memorandum of Points and Authorities in Opposition thereto, and the record herein, it is this ___ day of _____, 200__,

ORDERED:  Plaintiff's Motion *In Limine* to Preclude the Admission or Use of Financial Information is hereby DENIED for the reasons set forth in the defendants' opposition.

_____
Judge Bates
U.S. District Court for DC