UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMILE MAZLOUM,<br><br>       Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA *et al.*,<br><br>       Defendants. | Civil Action No. 1:06 CV 00002 (JDB) |

REPLY MEMORANDUM OF LAW
OF DEFENDANTS
NIGHT AND DAY MANAGEMENT, L.L.C. AND MICHAEL PERSONS
IN SUPPORT OF THEIR MOTION IN LIMINE
TO PRECLUDE PLAINTIFF FROM INTRODUCING EVIDENCE OF
FUR'S POLICIES AND PRACTICES IN DEALING WITH CUSTOMERS

Defendant Night and Day Management, L.L.C. ("Night & Day Management") and Michael Persons (together the "FUR Defendants"), by and through undersigned counsel, hereby submit this Reply Memorandum of Law in Support of their Motion in Limine to Preclude Plaintiff from Introducing Evidence of FUR's Policies and Practices in Dealing With Customers and again request that the Court issue an Order prohibiting Plaintiff Emile Mazloum ("Plaintiff") from seeking to introduce evidence relating to FUR policies and practices regarding dealing with its customers.

To begin with in this regard, the FUR Defendants would note that, in the second quarter of this year, Plaintiff expressly attempted to accomplish what he is now trying to accomplish by sleight of hand, namely, to bring into this litigation what is essentially an "employment policy"-based negligence claim on top of his pending assault and battery claim:

> Plaintiff now seeks to file a Second Amended Complaint in order, *inter alia*, to add a claim of negligence against Persons and FUR based on Persons' handling of the incident. Specifically, Plaintiff asserts that Persons failed to act in accordance with policies reflected in FUR's Employee Manual because he used physical force towards

Plaintiff and failed to involve other security personnel for assistance during the incident.FN1  (Pl.Mot. at 2.)

> FN1:  It should be noted that the FUR Employee Manual authorizes FUR security personnel to use physical force under certain circumstances:
>
> > Security must remember that they are to promote a safe club environment and defuse hostile situations using no physical force, *unless a customer strikes or becomes combative towards them or another guest* [emphasis added].
>
> (FUR Employee Manual at 20 (attached hereto as Exhibit 1).)  That fact unambiguously contradicts an assertion made in Plaintiff's proposed negligence count (Proposed Second Amended Complaint at 21, ¶ 88) that Persons was "prohibited, pursuant to the written policy, from resorting to the use of force in dealing with allegedly unruly patrons."

(FUR Defendants' Opp.Mem. (#106) at 2 and 2 n.1.)  In opposing Plaintiff's motion to amend his complaint to add that new negligence claim, the FUR Defendants observed the motion's untimeliness as well as the fact that his case would fail due to his not having designated in discovery any security expert to address standard-of-care issues.  Soon after the FUR Defendants filed their opposition, Plaintiff withdrew his motion to amend (Notice (#108)).

By contrast to that attempted-and-abandoned negligence claim, Plaintiff's pending assault and battery claim against the FUR Defendants turns on what *objectively* occurred between Plaintiff and Mr. Persons.  *E.g.*, *Fernadors v. District of Columbia*, 2006 WL 449300 at *2 (D.D.C. February 23, 2006) ("*Fernadors*") ("the standard for determining whether the contact is harmful or offensive is objective").  No negligence standard-of-care issues are raised by that claim; instead, the common law regarding the elements of that claim and the defenses thereto controls and governs.  Because no negligence standard-of-care issues are raised by Plaintiff's assault and battery claim, evidence regarding FUR employment policies would be irrelevant regarding whether Plaintiff can in fact make out such a claim based, in part, on that evidence.

The decisions relied upon by Plaintiff do not support any contrary conclusion.

In *Fernadors*, at issue was "evidence tending to show a violation of an internal operating procedure or guideline existing at the state law level" (*id*. at *1), and the context of that issue was whether there existed a qualified privilege to use reasonable force to effect an arrest and, more

2

specifically, whether a police officer had a reasonable belief that the means employed for an arrest were reasonably necessary under the circumstances (*id*. at *2).

At issue in the instant litigation is, however, (a) whether Plaintiff was, as he has sworn, attacked out of the blue from behind by Mr. Persons without cause or (b) whether, as Mr. Persons has sworn, Plaintiff was merely a combative drunk who responded to getting repeatedly chased off the FUR stage by attacking Mr. Persons and, thereafter, several off-duty police officers who pulled Plaintiff off Mr. Persons.  If, on the one hand, the jury ultimately finds that Plaintiff was attacked out of the blue, then Mr. Persons' common law self-defense privilege would fail, and, therefore, no "reasonable belief" evidence—such as might be found in FUR's employment Manual—regarding the contact between these men would be relevant.  On the other hand, if the jury finds that Plaintiff was a combative drunk who responded to getting repeatedly chased off the FUR stage by attacking Mr. Persons (and, later, the several off-duty police officers who pulled Plaintiff off of Mr. Persons), then the jury here would have no cause whatsoever to consider any related "excessive force" questions:  the Mazloum/Persons tussle involved, at worst, a couple of respectively-thrown blows and some wrestling around on the FUR stage floor, up to the point when several off-duty police officers intervened.  No guns, batons, Tazers, or chokeholds were alleged to have been involved vis-à-vis the tussle between these two men on the FUR stage.  For these same reasons, FUR's employment policies would not appropriately speak, in this situation, to any claim against the FUR Defendants for punitive damages.

Therefore, based on both relevancy and "balancing" grounds (Fed.R.Evid. 401, 402, and 403), FUR employment policy evidence should be excluded as irrelevant, unduly confusing and misleading, and a waste of time.

In another decision relied on by Plaintiff, *Caldwell v. K-Mart Corporation*, 306 S.C. 27, 410 S.E.2d 21 (Ct.App. 1991), the court examined whether "internal store guidelines regarding

3

shoplifting incidents"—*not* regarding battery incidents—should be admitted into evidence, emphasizing that "each case must be dealt with on its own facts" regarding relevancy. *Id*., 306 S.C. at 31, 410 S.E.2d at 24. That court looked, *id*., to "the plurality opinion of the Georgia Court of Appeals in *Luckie v. Piggly-Wiggly Southern Inc.*, 173 Ga. App. 177, 325 S.E.2d 844 (1984)," which also dealt with admissibility of internal store guidelines regarding shoplifting incidents. Even in that shoplifting context, however, the *Caldwell* court might, however, have more thoughtfully considered the dissent of two of the judges in that Georgia case:

> I respectfully dissent as to Division 2. The document, entitled "Shoplifting (Procedure for Detention, Arrest, and Prosecution)," purports to spell out the law on the subject, states with particularity what the company's policy is, and sets out in a number of explicitly detailed steps what procedure the company employee must follow when confronted with a suspected shoplifting incident.
> It would appear that if this written document were considered by the jury in the jury room, there would be a substantial danger that its instructions would be a substitute for the jury's judgment as to what a reasonable man should do in like circumstances. The reasonableness of the guidelines was not at issue; the behavior of the defendant's employee was. The guidelines should not be allowed to "illustrate" and thus show and exemplify and illuminate the applicable standard of reasonableness. That is the jury's province, not the company's, to ascertain. The danger of the jury confusing the company's standards with the law's standard, especially since the company's would be in written form in the jury room and the legal standard would be only from the lips of the judge, to be remembered by the jury in its deliberations, apparently convinced the trial judge that the negative outweighed any positive which would result from admission.
> Like the polygrapher's official report which was improperly admitted in *Harris v. State*, 168 Ga. App. 458, 460-61 (309 SE2d 431) (1983), the written procedure standards for employees of the company would weigh heavily in the jury's deliberations with respect to the legal standard and the plaintiff would be helpless to dislodge its true significance. At the very least, it would cause confusion as to the proper standard. *Jones v. Montgomery Ward & Co*., 49 Or. App. 231 (619 P2d 907) (1980).
> Moreover, the company could not avoid liability by showing that its employee did not follow the policy instructions which allegedly set a reasonable standard, and so was outside the scope of his employment[, citing *J. J. Newberry Co. v. Judd*, 259 Ky. 309 (82 SW3d 359) (1935)], any more than it could avoid liability by showing that its employee did follow the policy.
> Even if it were conceded that the company's guidelines had some relevancy to any of the issues, the law is that "Evidence which is relevant may be excluded because its probative worth or value is outweighed by its tendency to confuse the issues, or the jury." *MacNerland v. Johnson*, 137 Ga. App. 541, 544 (224 SE2d 431) (1976). Repeatedly we have held that broad discretion is reposed in the trial court in determining whether to admit evidence, and that the trial court's decision will not be disturbed except in cases demonstrating a clear abuse of such discretion. *MacNerland v. Johnson*, supra; *Allstate Ins. Co. v. McGee*, 157 Ga. App. 53, 55 (7) (276 SE2d 108) (1981). That court is in the best position to size up what the effect of that evidence is likely to be on the jury and to weigh the confusion factor against the relevancy factor. I do not find an abuse of that discretion here.
> The question is apparently a new one in this state, and I believe the majority opinion sets a dangerous precedent by requiring such company guidelines to be admitted in evidence.
> I am authorized to state that Judge Pope joins in this dissent.

173 Ga. App. at 180-81, 325 S.E.2d 846-47 (Beasley, J., dissenting).

**CONCLUSION**

In the run-up to this trial, Plaintiff finds himself scrambling both to keep key evidence away from the jury—namely, compelling evidence of his lying under oath regarding the nature and extent of his alleged injuries, as reflected in his financial dealings—and to get before the jury evidence that doesn't even reach a sideshow level of interest: namely, evidence regarding internal FUR policies. What all this tends to suggest is that Plaintiff's case is weak and that, as in this instance, he will be trying to do everything he can at trial to confuse the jury with irrelevancies, including what is or is not contained in FUR's employment Manual.

What the jury should, instead, be considering at trial—vis-à-vis Plaintiff's battery claim against these FUR Defendants—is whether Plaintiff was, as he has sworn, attacked out of the blue from behind by Mr. Persons for no reason or whether, *as seems rather more likely*, Plaintiff was merely a combative drunk who responded to getting chased off the FUR stage by attacking Mr. Persons and, then, attacking several off-duty police officers who pulled Plaintiff off Mr. Persons. Evidence regarding FUR's employment policies would be irrelevant to that inquiry and would in any event unduly confuse the jury and waste the time of this Court.

Date: November 28, 2007

                                              Respectfully submitted,

                                              /s/ Paul A. Fitzsimmons

                                              _____
                                              Thomas S. Schaufelberger, Bar No. 371934
                                              Paul A. Fitzsimmons, Bar No. 444829
                                              SAUL EWING LLP
                                              2600 Virginia Avenue, N.W.
                                              The Watergate—Suite 1000
                                              Washington, D.C. 20037
                                              Telephone: (202) 333-8800

                                              Counsel for
                                              Defendants Night & Day Management, LLC,
                                              Michael Rehman, John Fiorito, and
                                              Michael Persons