UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                         )
EMILE MAZLOUM,                           )
                                         )
            Plaintiff,                   )    Civil Action No. 1:06 CV 00002
                                         )    (JDB)
      v.                                 )
                                         )
DISTRICT OF COLUMBIA, *et al*.,          )
                                         )
            Defendants.                  )
_____)

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF HIS MOTION *IN LIMINE*
TO PRECLUDE THE ADMISSION OR USE OF FINANCIAL EVIDENCE**

At stake in this motion is whether Defendants should be allowed to attempt to impeach Plaintiff's credibility on cross examination by using documents or information from documents obtained in flagrant and deliberate violation of Rule 45, of dubious relevance, and otherwise inadmissible under any applicable Federal Rule of Evidence. For each and all of the following reasons, Plaintiff submits the answer should be "no".[1]

**A.   Defendants' Rule 45 Violation Is Itself Sufficient Grounds for Exclusion Of the Subpoenaed Financial Records and any Information Contained Therein.**

The Off-Duty Officer Defendants still cannot adequately explain their Rule 45 violation.

---

1  At the outset, Plaintiff acknowledges having failed to abide by Local Rule 7(m) with respect to "meeting and conferring" in advance of filing this motion *in limine*. But Plaintiff does note that his counsel addressed the issue of the financial records (and, specifically, the propriety of their use as well as admissibility) at length with opposing counsel at the time of his deposition, without obtaining any agreement from the Defendants' counsel as to the resolution of the issue. The "meet and confer" requirement was thus honored in spirit, if not in letter. In any event, given the substantive importance of this matter, this omission should not be grounds for dismissal of the motion. *See, e.g.*, *United States ex rel Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 35 (D.D.C. 2007) (granting motion for leave to file surreply despite failure to certify meet and confer); *Niedermeier v. The Office of Max S. Baucus*, 153 F. Supp. 2d 23, 27 (D.D.C. 2001) (prior rule 7.1) (noting "the general judicial preference for resolving motions on their merits rather than dismissing them on technicalities"). Indeed, the FUR Defendants themselves filed a motion *in limine* (relating to FUR's security procedures) without first following this Local Rule, so that motion too would need to be dismissed out of hand if the District's view is correct.

They admit that they never copied Plaintiff's counsel on the subpoena, but claim this was not deliberate, but rather was due to "inadvertence, error, and the press of other business," (Defendants' Opp. at 7). Unfortunately, Defendants' latest explanation represents a 180 degree reversal from their previous excuse ("we weren't required to give notice of the subpoena"), and raises more questions than it answers.[2]

Defendants offer no details as to whose "inadvertence" (among the four lawyers or other staff members from the Attorney General's office working on this case) was involved, or what the "error" consisted of, or why the "press of other business" was so great as to leave no time to address an e-mail or fax a cover sheet to plaintiff's counsel containing the subpoena. But what is far more disturbing is the subsequent conduct and radically shifting explanations of Defendants' counsel after the subpoena was issued.

As Exhibit 2 to Defendants' Opposition indicates, on the morning of January 23, 2007, Defendants' counsel had a telephone conversation with a Leonard Wahlquist, the registered agent for JLM Direct Funding Ltd, and "per [their] conversation", faxed a subpoena and cover letter to Mr. Wahlquist, calling for certain mortgage loan application documents. With Mr. Mazloum's deposition scheduled for January 29th (just six days away) Defendants' counsel expressly invited Mr. Wahlquist to fax or email the subpoenaed documents to her in advance of mailing hard copies. Exhibit 2 to Opposition, p.3. Plaintiff's counsel was not copied on the letter or subpoena.

Presumably Mr. Wahlquist accepted the invitation to expedite his company's document production, and Defendants' counsel admit that they received the subpoenaed documents no later than three days prior to the start of the deposition, i.e., by January 26th. Upon receipt of the

---

[2] Defendants' excuse of inadvertence might be more compelling if the record truly supported it. Here, however, (as discussed in greater detail below), this after-the-fact excuse of inadvertent omission is untrue, based on Defendants' counsel's contrary representations on the record as to why notice of the subpoena was unnecessary.

subpoenaed documents, and clearly realizing their potential value in the upcoming deposition, Defendants' counsel once again failed to fax or even mail a copy to Plaintiff's counsel, or even inform counsel that documents had been received.

Was this omission also the result of "error, inadvertence or press of other business"? Defendants do not say.

There is another, less innocuous explanation for this omission. During the three day period prior to the Mazloum deposition, Defendants appear to have determined to use the documents in surprise, to trap or impeach Mazloum in that deposition. Although Defendants' counsel now claims that not copying Plaintiff's counsel on the subpoena was merely inadvertent, they make no such claim regarding their failure to transmit the documents themselves; *i.e.*, they do not deny being aware for the entire three day period prior to the deposition that they were in possession of potentially significant subpoenaed documents which had not been furnished to Plaintiff's counsel, and the receipt of which had not been communicated to Plaintiff's counsel.

Defense counsel had one last opportunity to ameliorate the impact of their prior Rule 45 violations just before the commencement of the deposition on January 29th. Counsel *might* have provided the documents to Plaintiff's counsel before the deposition began, knowing that Plaintiff was completely unaware that these documents had been subpoenaed, so that Plaintiff and his counsel could briefly review them. Instead, Defendants' counsel remained silent, and allowed the deposition to get underway.[3] Then, about an hour into the deposition, the Defendants sprung their trap – plunking a copy of the subpoenaed but previously undisclosed loan application down on the table, having it marked as deposition Exhibit 3, and commencing to ask questions about it, brushing

---

[3] The failure to disclose the subpoenaed documents was not the sole rules violation committed by Defendants' counsel at this deposition. The deposition notice did not include any indication that it would be recorded by videographer as well as stenographically – in violation of Rule 30(b)(2). Thus, without having provided notice in advance to Plaintiff, Defendants appeared at the deposition with a videographer. Despite this violation, Plaintiff allowed the deposition to go

aside all objections by counsel regarding the failure to comply with the rules.

While Defendants now ascribe their failure to give the required Rule 45 notice of the subpoena to "inadvertence" and "press of other business", there is, regrettably, incontrovertible evidence that this excuse is a recent contrivance, and that Defendants' counsel were aware at all times that no notice of the subpoena had been given to Plaintiff's counsel. That evidence is found in the deposition transcript itself - where Defendants' counsel was asked why no notice of the subpoena had been given to plaintiff's counsel, and gave as his reason that no such notice was required!

> **Mr. Corcoran**: Let me ask just a question about the document, Michael. Was this produced to you in this litigation?
>
> **Mr. Bruckheim**: It wasn't produced in the discovery file.
>
> **Mr. Corcoran**: We didn't produce it. Did you subpoena it?
>
> **Mr. Bruckheim**: Yes.
>
> **Mr. Corcoran**: Did you provide us with a copy of that subpoena?
>
> **Mr. Bruckheim**: *I can if you want.*
>
> **Mr. Corcoran**: I think you are supposed to give us a copy of the subpoena at the time you issue it.
>
> **Mr. Bruckheim**: *I don't believe that is the case.*[4]
>
> **Mr. Corcoran**: That is the case. So I will reserve the right to object, to move to strike this exhibit on that ground. You can ask him questions about it, but the Federal Rules do require that you serve a subpoena on any third-party at the time it is served. And I would additionally note you typically produce the materials that you obtain pursuant to the subpoena on the parties in litigation.
>
> **Mr. Bruckheim**: This is a subpoena for documents and we just received them. *And I don't think that is what the rules state with respect to this document.* But your objection is noted for the record.

---

forward in order to avoid delay.

4  This blanket denial of the obligation to give notice to parties of a Rule 45 subpoena directed at third parties raises serious and far-reaching questions which may well extend beyond this lawsuit. In how many other cases pending in this court has the District of Columbia similarly issued surreptitious third party subpoenas?

4

*See* Mazloum deposition Tr. (Ex. B to Plaintiff's Motion) at 48:12 -49:20 (emphasis added).

Thus, Defendants have shifted from one untenable position to another in "explaining" their failure to give proper notice – first denying any obligation to inform Plaintiff of the subpoena or documents obtained therewith, then (after realizing that their original excuse is blatantly unsupportable) reversing field and instead seeking to excuse the omission as some anonymous person's "inadvertence", or the "press of other business". But it is abundantly clear from their initial, on the record remarks that Defendants' counsel acted knowingly in withholding the subpoena and the documents thus obtained from the Plaintiff. Such conduct, including Defendants' lack of candor on this issue with the Court, should not go unredressed. It is the Plaintiff's view that the appropriate sanction for such an intentional violation of Rule 45 is to exclude the documents, and any reference to their contents, from being offered into evidence.5

Rule 45 serves an important policy purpose that is subverted when litigants, like the Defendants, fail to provide advance notice of a third party subpoena. *Lumbermens Mutual Casualty v. U.S.,* 70 Fed.Cl. 94, 99 (Ct. Cl. 2006)("[t]he purpose of Rule 45 is to discourage parties from engaging in secretive behavior"). Here, that purpose was completely thwarted, thereby depriving Plaintiff of his right to object to the propriety of subpoenaing these financial records. And indeed - contrary to Defendants' representations - Plaintiff in fact would have objected to the production of these documents by moving to quash had he been given proper advance notice of the subpoena.6 A private mortgage application simply has no bearing on Mazloum's having been beaten up at a nightclub, thus rendering the subpoena harassing and an undue invasion of Plaintiff's privacy for a

---

5 Regarding the Defendants' disingenuous Opposition and lack of candor about the relevant circumstances, these are matters left solely to the Court's discretion.

6 Even though the subpoena at issue was not directed at the Plaintiff himself, he would still have had sufficient standing to challenge the subpoena on the grounds of "privilege, proprietary interests, or personal interest in the subpoenaed matter." *Washington v. Thurgood Marshall Acad.,* 230 F.R.D. 18, 21 (D.D.C. 2005).

very marginal evidentiary purpose.

Once these materials were sprung upon the Plaintiff at the deposition,[7] Plaintiff's counsel could do little more than put as many timely objections on the record to the use of these materials as possible.[8] Mazloum's counsel had no reasonable opportunity to prepare him for that line of inquiry.[9] Exclusion of the subpoenaed financial records, as well as any of Mazloum's deposition testimony relating thereto, is accordingly appropriate.

**B.     The Financial Records Are Not Relevant To The Claims At Issue.**

As previously noted in Plaintiff's Motion, the subpoenaed loan application has no bearing on whether Mazloum was or was not beaten, and his federal rights accordingly violated, by the off-duty officer Defendants.  Plaintiff's Motion at 5-6.  In response, the Defendants assert that the financial evidence "goes directly to [Plaintiff's] credibility as it relates to the underlying incident." Defendants' Opp. at 4)  Defendants also argue that this evidence is probative not only "on the issue of plaintiff's credibility about liability but more importantly about his claimed damages."  *Id.* at 5. Defendants are wrong on both issues.

First, as discussed at length in Plaintiff's underlying motion (and below as well), the loan application evidence does not bear on Mazloum's credibility with respect to the beating at all.  It relates to a completely collateral matter (Mazloum's application to obtain a mortgage) that has no

---

7  It is wholly disingenuous for Defendants' counsel to claim that "the documents were provided to plaintiff at the scheduled deposition" (Defendants' Opp. at 7), when in fact counsel merely marked the documents as an exhibit and started asking Mr. Mazloum questions about them without any prior notice to Plaintiff's counsel.  *See* Ex. B to Plaintiff's Motion *in Limine* at 48.

8 Given the broad scope of discovery under Rule 26 (as opposed to the standards for the *admissibility* of evidence), Plaintiff's counsel did not believe that they could properly halt the deposition or instruct the witness not to answer questions, based on the improper use of these documents.

9 Despite Defendants' assertion that "[c]ounsel for plaintiff could have reviewed the document and questioned plaintiff on [the second day of the deposition], but opted not to do so," that is incorrect.  Mr. Mazloum's counsel could *not* discuss his testimony with him while he remained on cross examination, as such interim communications would constitute impermissible "coaching".  *U.S. v. Philip Morris Inc.,* 212 F.R.D. 418, 420 (D.D.C. 2002) (prohibition on

relevance to Mazloum's direct case. The financial records are devoid of any statement in which Mazloum makes any reference to the subject of this case. Understandably, Defendants would like to shift the focus of this trial from (a) the assault and battery they committed to (b) implied mortgage fraud on the part of Plaintiff. That effort should be treated for what it is – a mark of desperation on the part of the Defendants, who would prefer to talk and have the jury think about *anything* except their own conduct on the night of March 11-12, 2005.

Second, Defendants' argument that certain representations in the financial records bear on the damages issue relies on a tortuous logic. Defendants reason that certain statements in the financial records about Mazloum's income in 2005 are relevant to statements he has made elsewhere regarding whether he did in fact work following the incident, which in turn illuminates the extent and seriousness of the injuries he suffered. But these links are far too tenuous to accept that the financial evidence is itself relevant to the issue of liability- again, as it does not at all prove, or even help to prove, whether Mr. Mazloum was beaten by the off-duty officers. Plaintiff will offer medical bills and hospital records, as well as contemporaneous photographs of himself, that objectively speak to the severity of his injuries. The financial records cannot possibly be said to "contradict" such evidence.

Nor can it be said that representations within the financial records say anything specific about Mazloum's income that contradicts his assertion he was out of work for a period after the incident. In this regard, Defendants incorrectly assert that via his mortgage application Mr. Mazloum "swore that he was working in April and May 2005 and earning nearly $11,000 a month" (Defendants' Opp. at 5). In fact, in the mortgage application Mazloum merely set forth an *average* base monthly income of $10,833 as of the date the application was signed. *See, e.g.,* Ex. A to Plaintiff's Motion. But the document nowhere sets forth the context in which this representation is made, including the

---

communications between a witness and defending counsel where the witness is being deposed day-to-day).

method by which that figure was calculated, by whom, the time period it was based on, whether the applicant was temporarily not working for medical reasons, etc. An estimation of his monthly income is not inconsistent with his having been out of work for some period of the entire time.

Even to the limited extent that the financial records speak to Mazloum's income in 2005, that issue is no longer relevant in this matter. Mazloum will seek at trial a damages award consisting of compensatory monetary damages reflecting his medical expenses, plus a pain and suffering award in recognition of the physical severity of his injuries and the humiliation and indignity of the experience inflicted upon Mazloum, plus punitive damages. As noted in the underlying motion, Mazloum will <u>not</u> be seeking any monetary recovery for lost wages resulting from his injuries. The financial records at best would have related solely to that limited issue (given that, according to the Defendants, they provide an alternative representation of his income during this out-of-work period), but no longer, with that aspect of the damages claim having been withdrawn. What limited relevance his 2005 income ever had has now been eliminated.

**C.     Any Probative Value of the Financial Records Is Substantially Outweighed By Their Unfair Prejudicial Character.**

Plaintiff's motion establishes that the financial records' extremely low probative value is substantially outweighed by the dangers of unfair prejudice to Mr. Mazloum, confusion of the issues, capacity for misleading the jury, and undue delay. Plaintiff's Motion at 5-7. Nothing argued by the Defendants in response alters this conclusion. The Defendants' real purpose in offering this evidence is to suggest to the jury that Mazloum is some sort of "cheat" who cannot be trusted to tell the truth generally, based upon this wholly separate context of making a mortgage application. But what little probative value the evidence in question would have to that issue is greatly outweighed by its unfair prejudicial effect. Mazloum has no criminal record and is a model immigrant to the United States in all respects, so it is particularly unfair to try to impeach him with evidence so unrelated to the

incident at issue.

This Court has already ruled that the Plaintiff should not be permitted to use far more reliable and probative character evidence (a criminal conviction relating to reprehensible conduct by Ramirez occurring *days before* the March 12, 2005 incident), in part due to the unfairly prejudicial nature of such evidence. It is extremely difficult to understand how the Court could reach a contrary result with respect to the financial records, which are far less probative and reliable but equally unfairly prejudicial.

**D.      The Financial Records Are Extrinsic Evidence And May Not Be Used To Attack Mr. Mazloum's Character For Truthfulness Under Fed. R. Evid. 608(B).**

The Defendants have, in effect, admitted that they wish to offer the financial record evidence directly in contravention of FRE 608(b) – that is, to use Mr. Mazloum's mortgage application to show his "overall propensity for truth and veracity." Defendants' Opp. at 3. This Court should not allow such a sweeping contravention of the rule. As already observed, Rule 608(b)'s prohibition against offering extrinsic evidence to prove untruthfulness is unqualified. Accordingly, there can be no serious contention that the loan application documents allegedly containing untruthful statements should be admitted per se.

The only remaining basis Defendants could make use of this evidence under 608(b) would be to "inquire" of Mazloum on cross examination about the loan applications and/or representations contained therein. But, for the reasons previously set forth in Plaintiff's original Motion (as well as above in this Reply), this Court should not even permit that limited use of the financial records. Plaintiff has already established the collateral nature of this evidence. Plaintiff's Motion at 7-9. The "representations" about Mazloum's income contained in these financial records cannot be said to bear directly on his "character for truthfulness or untruthfulness," as required by Rule 608(b). The fact that certain of the statements in the financial records are said to have been made "under oath"

9

does not change this analysis. This is because the statements themselves are not adjudications of Mazloum's honesty or lack thereof; rather, they are statements he made, in an entirely separate context, relating to his 2005 *estimated* income. By themselves, and without any comparative evidence suggesting that the statements are reliably true, false, or otherwise, they simply do not speak to his truthfulness. For that nut to be cracked, the parties will have to hold an entire "mini trial" in which they will litigate Mazloum's general income, income at the time of the incident, why Mazloum believed he could make this representation in his mortgage application despite his being out of work, *etc*. This is the sort of frolic and detour from the main issues in dispute that the evidentiary rules seek to prevent.

The statements contained in the mortgage application would still fail to cast doubt on Mazloum's overall truthfulness even if they stood on their own. They tell the jury nothing regarding whether, in a completely different context, Mr. Mazloum is telling the truth about the events on the night in question or the extent of his injury. Mazloum's purchase of a home has, at bottom, absolutely nothing to do with his claims in this action or whether he is giving truthful testimony about the claims in this matter. Certainly the Defendants can use documents that *are* relevant to this case (the numerous FBI and police statements that all party witnesses have given) to explore Mazloum's credibility as to his version of events. But it is improper to exclude this particular extrinsic evidence, even if offered solely for impeachment purposes.

## CONCLUSION

For the foregoing reasons, Plaintiff reiterates his request that the Defendants be precluded from offering at trial and/or utilizing in cross examination any documents subpoenaed from JLM Direct Funding, any information contained therein, and any deposition testimony by Plaintiff regarding such documents.

Respectfully submitted,

Dated: November 30, 2007            /s/
                                    Brian H. Corcoran (Bar No. 456976)
                                    Katten Muchin Rosenman LLP
                                    1025 Thomas Jefferson St., NW
                                    Suite 700 East Lobby
                                    Washington, D.C. 20007
                                    Ph: (202) 625-3500
                                    Fax: (202) 298-7570
                                    Brian.Corcoran@kattenlaw.com

                                    Susan Huhta (Bar No. 453478)
                                    Warren R. Kaplan (Bar No. 034470)
                                    Washington Lawyers' Committee for
                                    Civil Rights and Urban Affairs
                                    11 Dupont Circle, NW
                                    Suite 400
                                    Washington, D.C. 20036
                                    Ph: (202) 319-1000
                                    Fax: (202) 319-1010
                                    Warren_Kaplan@washlaw.org

                                    Attorneys for Plaintiff
                                    Emile Mazloum