# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EMILE MAZLOUM, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:06 CV 00002 |
| | ) | (JDB) |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS RICHMOND PHILLIPS, THADDEUS MODLIN AND LOUIS SCHNEIDER'S MOTION TO STAY PROCEEDINGS PENDING APPEAL

The Off-Duty Officer Defendants blithely assume that merely by filing their notice of interlocutory appeal, they have automatically deprived the Court of jurisdiction over this matter and thus created grounds for staying the pending January 2008 trial.  In fact, Defendants bear the burden of establishing *proper* grounds for so doing.  Here, they cannot – primarily because the matter they wish to appeal (this Court's denial of summary judgment as to the 42 U.S.C. § 1983 claims on qualified immunity grounds) is completely frivolous, presenting neither a legal matter that is appropriately subject to interlocutory appeal, nor any appellate issue upon which they have any chance of success.  Viewed in this light, the noticed interlocutory appeal is simply an effort to delay the looming day of reckoning for these Defendants.  In the interests of justice and efficiency, and in finally giving Plaintiff his fair day in court, the motion should be denied.

## BACKGROUND

Among the causes of action asserted by Plaintiff Emile Mazloum against Defendants Modlin, Schneider and Phillips (the "Off-Duty Officers"), are claims arising under 42 U.S.C. § 1983. These claims assert that Plaintiff's Fourth Amendment rights to be free from police misconduct, improper arrest, and excessive use of force were violated when the Off-Duty Officers (along with co-defendant Anthony Ramirez, also an off-duty officer present at the time): (1) unlawfully participated in arresting Mazloum against his will inside FUR Nightlcub on March 12, 2005, based on no reasonable belief in the existence of probable cause; (2) assisted in handcuffing and removing Mazloum from the Nightclub; and (3) gratuitously, and again without cause or threat to themselves, beat, punched, and/or kicked Mr. Mazloum in the process, resulting in severe injuries.

In May of this year, the Off-Duty Officers moved for summary judgment on these Section 1983 claims, claiming, *inter alia*, that they were entitled to qualified immunity.[1] The Off-Duty Officers' qualified immunity argument was premised on two grounds. First, they argued that because Plaintiff could not identify which of them actually physically assaulted him, he could not offer sufficient evidence as to any of them in particular to survive summary judgment. Off-Duty Officers' MSJ Brief, May 30, 2007 (Docket No. 111), at 8-9. Second, the Off-Duty Officers argued that because they had probable cause to arrest Plaintiff, the force they used in the course of the arrest was reasonable and appropriate under the circumstances. *Id.* at 7-8. Notably, these were the <u>only</u> two grounds specified in the Off-Duty Officers' motion on the issue of qualified immunity. *Id.*

On November 6, 2007, this Court issued its summary judgment opinion which, *inter alia*,

---

[1] Ramirez did not move to dismiss the same Section 1983 claims asserted against him.

rejected the Off-Duty Officers' qualified immunity defense. Summary Judgment Op. (Docket No. 139), at 12. As to the Off-Duty Officers' first argument, the Court found that Plaintiff had alleged the "personal involvement" of each of the Off-Duty Officers in the illegal conduct, and he thus had met his "light burden." *Id.* at 8.

The Court rejected the Off-Duty Officers' second argument primarily because the factual assertions underlying it, while perhaps material, were completely in dispute. *See* Summary Judgment Op. at 7-8 (noting that the material facts at issue are "hotly in dispute"). As the Court properly recognized, on summary judgment it was required to construe the facts in the light most favorable to Plaintiff. *Id.* at 7, 8, 9 (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001) and *Scott v. Harris*, 127 S. Ct., 1769, 1774-75 (2007)). Although the Off-Duty Officers argued they had sufficient probable cause for arrest, the Court found this assertion untenable for purposes of summary judgment due to Plaintiff's contrary factual evidence. Resolving the factual disputes in Plaintiff's favor, the Court made the following factual findings:

- Plaintiff "had engaged in no culpable conduct" (Summary Judgment Op. at 10);

- Plaintiff had not assaulted Defendant Persons *(id.* at 9);

- Defendant Persons in fact assaulted Plaintiff (*id.*);

- The Off-Duty Officers intervened only after Plaintiff had been "pinned to the ground" by Defendant Persons (*id.*);

- Plaintiff "flailed his arms and legs about [only] after" the [Off-Duty] officers became involved (*id.*);

- Plaintiff "posed no threat to the officers or other club patrons before the [Off-Duty] officers became involved in the incident" (*id.*);

- Plaintiff was not evading arrest (*id.*); and

- Plaintiff in no way provoked the Off-Duty Officers' subsequent assault(s)
  (*id.*).

Thus, the Court found that there was a substantial material dispute regarding the Off-Duty Officers' assertion that they had probable cause to arrest and/or that they had reasonable grounds to believe probable cause existed. *See id.* at 12 (the facts construed in Plaintiff's favor "would not permit reasonable off-duty officers to conclude that plaintiff had committed a crime warranting their intervention").

Once the Court found probable cause lacking, the Off-Duty Officers' contention that they employed only "reasonable" force completely collapsed. *Id.* at 10 (under Plaintiff's version of events, "these facts do not justify the use of <u>any</u> force against him since he had engaged in no culpable conduct.") (emphasis in original) (citing *Scott*, 127 S. Ct. at 1778). Accepting Plaintiff's account of the force employed, the Court also noted that he offered evidence of more than the mere "gratuitous shove." *Id.* at 10 ("plaintiff alleges that he was assaulted by the officers, repeatedly pushed and hit in the back, dragged across the nightclub floor, and then thrown to the ground outside . . .").

Thus, accepting Plaintiff's version of events (supported by record evidence) – that he suffered a completely unprovoked arrest and substantial physical assault not premised on probable cause – the Court had no trouble finding that a constitutional violation was presented under the facts (*id.* at 9), and that the Fourth Amendment right to be free of completely unprovoked arrests and physical assaults by Off-Duty Officers who lacked probable cause to believe a crime had been committed was "clearly established" by March of 2005 when the incident occurred. *Id.* at 12. Based on these legal determinations, the Court denied the Off-Duty

Officers summary judgment based on qualified immunity.

On November 14th, the Off-Duty Officers filed a notice of interlocutory appeal of the Court's qualified immunity determination. Presently before the Court is the Off-Duty Officers' November 29th Motion to Stay all proceedings in the district court (including the trial set to begin on January 7, 2008).

## ARGUMENT

A stay pending appeal is an "*extraordinary* remedy" that should be used sparingly. *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (emphasis added); *Teva Pharmaceuticals USA, Inc. v. FDA*, 404 F. Supp. 2d 243, 245 (D.D.C. 2005) ("Injunctive relief pending appeal is a rare remedy that is not granted lightly"). A stay is not automatic once a notice of appeal is filed. *See* U.S. Court of Appeals for the District of Columbia Circuit, *Handbook of Practice and Internal Procedures*, at 32 (stay is not automatic, as party seeking a stay must first apply for a stay in the district court and it is possible that such a motion may be denied by the district court). Rather, it is the moving party's burden to justify imposition of a stay. *Cuomo*, 772 F.2d at 978; *Shays v. Federal Election Comm'n*, 340 F. Supp. 2d 39, 44 (D.D.C. 2004) (denying defendants' motion for stay pending).

In determining whether a stay pending appeal is warranted, the Court must consider these four factors: (1) the likelihood that the moving party will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the Court grants the stay; and (4) the public interest in granting the stay. *See Cuomo*, 772 F.2d at 974; *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *Va. Petroleum Jobbers Ass'n v. Federal Power*

*Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958). A motion to stay should be denied when the "moving party fails to establish a substantial case on the merits, and further fails to demonstrate that the balance of the equities or the public interest strongly favors the granting of a stay..." *Judicial Watch, Inc. v. National Energy Policy Dev. Group*, 230 F. Supp. 2d 12, 13, 14 (D.D.C. 2002) (describing standards as "stringent" and denying defendant's motion to a stay pending appeal).

### A.      A Stay Does Not Automatically Follow a Notice of Interlocutory Appeal

As noted above, *Defendants* bear the burden of showing that a motion to stay is justified. However, in the Off-Duty Officers' motion, they never even mention the four factors articulated by the D.C. Circuit, much less argue how application of the factors cuts in their favor. What the Off-Duty Officers do instead is attempt to circumvent their burden by simply assuming that a right to an interlocutory appeal of a qualified immunity determination is unqualified, and further assuming that such a determination automatically strips this Court of jurisdiction over their 1983 claim during the pendency of their appeal. Those assumptions are erroneous.

As explained by the Seventh Circuit Court of Appeals, "if [a] claim of immunity is a sham, [], [a] notice of appeal does not transfer jurisdiction to the court of appeals, and so does not stop the district court in its tracks." *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989). An appeal is considered a sham or frivolous when its disposition is "obvious," and the legal arguments are "wholly without merit." *Reliance Ins. Co. v. Sweeney Corp., Md.*, 792 F.2d 1137, 1138 (D.C. Cir.1986); *see also Caldwell v. Palmetto State Savings Bank of S.C.*, 811 F.2d 916, 919 (5th Cir.1987) (frivolous appeals are those which involve "legal points not arguable on their merits"). Interlocutory appeals that challenge a district court's evidentiary findings on qualified immunity or that are based "upon an unsupportable legal proposition" are frivolous. *Bean v. City*

*of Buffalo*, 822 F. Supp. 1016, 1018-19 (W.D.N.Y. 1993).

In *Apostol*, the Seventh Circuit was presented with precisely the same argument raised by defendants here – whether, irrespective of the merits, a notice of interlocutory appeal of a qualified immunity determination automatically strips the district court of jurisdiction over the plaintiff's Section 1983 claim. Recognizing that meritless and/or frivolous interlocutory appeals of qualified immunity determinations cause substantial harm to the plaintiff, other litigants and the Courts themselves, the Seventh Circuit held that a district court has full authority to determine whether a qualified immunity interlocutory appeal is frivolous and if it so determines, may promptly "get on with the trial." *Id.* at 1339.

Indeed, the Supreme Court in *Behrens v. Pelletier*, 516 U.S. 299 (1996), fully endorsed the district court's right to retain jurisdiction over Section 1983 claims when it determines that the interlocutory appeal would be frivolous: "In the present case, [], the District Court appropriately certified petitioner's immunity appeal as 'frivolous' in light of the Court of Appeals' . . . precedent. This practice, which has been embraced by several Circuits, enables the district court to retain jurisdiction pending summary disposition of the appeal, and thereby minimizes disruption of the ongoing proceedings." *Id.* at 310; *see also Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992) (if district court certifies a qualified immunity appeal as frivolous, it retains jurisdiction over Section 1983 claim); *Yates v. Cleveland*, 941 F.2d 444, 448-49 (6th Cir. 1991) (citing *Apostol* with approval); *Stewart v. Donges*, 915 F.2d 572, 576-77 (10th Cir. 1990) (where appeal is frivolous, district court does not lose its jurisdiction over claims and can proceed to trial); *Bean*, 822 F. Supp. at 1019 (upon finding that defendant's interlocutory appeal of qualified immunity determination was frivolous, district court held it had continuing jurisdiction over Section 1983 claim and refused to stay trial proceedings).

The D.C. Circuit has not itself promulgated a rule explicitly permitting a district court to certify that a notice of appeal is frivolous. But even in the absence of such a circuit court rule, there is a consensus among the federal courts that have addressed the issue that district courts may retain jurisdiction upon a finding that the appeal is frivolous. *See, e.g., Bean*, 822 F. Supp. at 1019 (*citing Gaztambide v. Gaztambide*, 94 F. Supp. 451 (D. P.R. 1992); *Chuman*, 960 F.2d 104; *Stewart*, 915 F.2d 572).

D.C. federal case law fully supports this position. *See Bombadier Corp. v. Nat'l Railroad Passenger Corp.*, No. 02-7125, 2002 WL 31818924, at *1 (D.C. Cir. Dec. 12, 2002) (concluding that appeals court had jurisdiction to review "*non*-frivolous" appeal) (emphasis added). Thus, for example, in *Kimberlin v. Quinlan*, 199 F.3d 496 (D.C. Cir. 1999), the D.C. Circuit reviewed a qualified immunity determination on appeal from the district court. Determining that the issue needed to be remanded to the district court for further findings of fact, the Court made clear that if the trial court rejected the defendant's qualified immunity defense because the material facts were in dispute, an appeal would not be permitted:

> Upon resolving these [factual] questions, the District Court will either issue a summary judgment for appellants or proceed to hear the case on the merits. The second possibility will result in an interlocutory order which will not be subject to immediate review. *See Johnson* [*v. Jones*], 515 U.S. [304, 313-18 (1995)]. Nonfinal qualified immunity determinations are appealable "when they resolve a dispute concerning an abstract issue of law relating to qualified immunity – typically, the issue whether the federal right allegedly infringed was clearly established." *Behrens* [*v. Pelletier*], 516 U.S. [516 U.S. 299, 313 (1996)] ... (internal quotation marks omitted) (citing *Johnson*, 515 U.S. at 317). . . Moreover, this court has interpreted *Behrens* and *Johnson* to draw a clear distinction between the availability of appellate review in qualified immunity cases involving pure legal issues and those involving disputed issues of fact: "In the qualified immunity arena, the Supreme Court has drawn a distinction between two categories of cases, only one of which merits immediate appellate review: an interlocutory decision that rests upon the purely legal question of whether or not an official's actions violate clearly established law does satisfy the *Cohen* criteria [permitting interlocutory appeal], while an interlocutory decision that denies summary judgment because of the presence of triable issues of fact does not.

199 F.3d at 503 (quoting *Meredith v. Federal Mine Safety & Health Review Comm'n*, 177 F.3d 1042, 1048-49 (D.C. Cir. 1999)); *see also Farmer v. Moritsugu*, 163 F.3d 610, 613-14 (D.C. Cir. 1998) (noting that appeals of evidentiary findings are not allowed); *Crawford-El v. Britton*, 951 F.2d 1314, 1317 (D.C. Cir. 1991) (where the defendants' arguments on appeal took the form of a simple denial – an "I didn't do it" defense – the appeals court was unable to immediately review those arguments).

Here, as discussed in detail below, because the Off-Duty Officers simply have no non-frivolous legal basis for seeking to appeal the denial of their summary judgment motion, and because this is readily evident at the outset of the appeal, there is no basis for this Court to do anything but go forward with the to trial as scheduled.

**B.  Defendants Cannot Demonstrate That Their Appeal Has Any Likelihood of Succeeding on Merits**

The Off-Duty Officers in their Motion fail to articulate even what they intend to argue to the D.C. Circuit, much less demonstrate how that appeal is likely to succeed.  This failure notwithstanding, an evaluation of Defendants' motion in light of the four factors clearly evidences that Defendants cannot make a showing that a stay is warranted in this instance.  Here, the first factor – success on the merits – is particularly dependent on the Off-Duty Officers demonstrating they can even bring to the D.C. Circuit a properly appealable issue of law.  Since they cannot, they have no entitlement to a stay.

**1.  The Right to Interlocutory Appeal of Qualified Immunity Determinations is Limited to Pure Questions of Law – Not District Court's Factual Determinations**

Contrary to the Off-Duty Officers' contention in their motion, the right to interlocutory appeal of a qualified immunity determination is not unqualified.  The U.S. Supreme Court on multiple occasions has made clear that a district court's interlocutory denial of a claim of

qualified immunity is appealable as a "final decision" within the meaning of 28 U.S.C. § 1291 only "to the extent that it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Behrens*, 516 U.S. at 306; *Johnson*, 515 U.S. at 313; *see also Meredith*, 177 F.3d at 1049 (only those interlocutory decisions resting upon purely legal questions may be immediately appealed, while decisions denying summary judgment because of the presence of triable issues of fact are not immediately appealable). In contrast, district courts' evidentiary determinations on summary judgment – even when the defense at issue is qualified immunity – are not immediately appealable. *Johnson*, 515 U.S. at 313; *Mitchell*, 472 U.S. at 528 ("[a]n appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim"); *Kimberlin*, 199 F.3d at 503 (on interlocutory appeal, circuit courts lack jurisdiction to hear a defendant's qualified immunity appeal when premised on a disagreement with the district court regarding findings of fact or findings regarding whether plaintiff offered evidence sufficient to create a material dispute of fact); *Meredith,*177 F.3d at 1048-49 ("[a] defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial"); *Farmer*, 163 F.3d at 614 (Supreme Court precedent "draws a critical line between appeals of the 'I cannot, as a matter of law, be held liable' variety and appeals of the 'I did not, as a matter of fact, do it' variety. The former is permitted [on interlocutory appeal] … the latter, however, is not").[2]

---

[2] The basis for the distinction derives from *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). In *Cohen*, the Supreme Court held that an interlocutory order qualifies for immediate review under 28 U.S.C. § 1291 as a final order only if it: (1) conclusively determines a disputed question; (2) resolves an important issue completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from a final judgment. The Court in *Johnson* determined that an interlocutory decision that denies summary judgment because of the presence of triable issues of fact does not satisfy the three *Cohen* criteria. 515 U.S. at 317. Notably, the Off-Duty Officers fail to articulate, much less demonstrate, that the Court's decision here satisfies any of the three *Cohen* factors.

Thus, contrary to the Off-Duty Officers' suggestion in their brief, their right to an interlocutory appeal is not unqualified, and could only be based on a challenge to the legal conclusions of the district court – not the district court's resolution of factual disputes.

> 2. The D.C. Circuit Lacks Jurisdiction to Entertain Either
> Purported Basis for Qualified Immunity that the Off-Duty
> Officers Argued on Summary Judgment.

While the Off-Duty Officers' motion, perhaps intentionally, does not elaborate on the intended grounds for their appeal, it is important to note that the D.C. Circuit lacks jurisdiction to entertain either basis for qualified immunity that they raised with this Court in their summary judgment motion. As noted above, the Off-Duty Officers based their qualified immunity argument to this Court on two theories: (1) that Plaintiff could not identify which of them actually struck him; and (2) that the facts showed they had sufficient probable cause for arrest and thus the force employed was reasonable under the circumstances. Both of these arguments were rejected by the Court due to the *material factual disputes* in the record. *See* Summary Judgment Op. at 8. Thus, under clearly established Supreme Court precedent, the D.C. Circuit lacks jurisdiction to entertain either of the Off-Duty Officers' previously articulated grounds on interlocutory appeal, because these are fact determinations not turning on legal issues.

As to the Off-Duty Officers' first contention – that Plaintiff cannot identify which one of them actually struck him – the facts of *Johnson*, 515 U.S. 304, are instructive. In *Johnson*, the plaintiff was a diabetic who, while experiencing an insulin seizure, was arrested by police officers who mistook him for a drunk. When the plaintiff awoke in a hospital at some later point, he found he had been beaten. He brought a Section 1983 claim against the five police officers involved, claiming they had used excessive force against him.

Three of the officers eventually moved for summary judgment on the issue of qualified

immunity, basing their motion on the contention that the plaintiff "could point to no evidence that *these three* had beaten him or had been present while others did so,'" *id.* at 306 (emphasis in original), presumably because the plaintiff was unconscious or semi-conscious at the time of the incident due to the insulin seizure. The district court rejected the officers' argument, finding that "there was sufficient circumstantial evidence supporting [the plaintiff's] theory of the case," and that even if the officers had simply sat back and watched while other officers had beat him, this was sufficient to confer liability. *Id.*

The officers in *Johnson* thereafter noticed an interlocutory appeal, arguing that "the record contained 'not a scintilla of evidence . . . that one or more' of them had 'ever struck, punched or kicked the plaintiff, or ever observed anyone doing so." *Id.* The Seventh Circuit dismissed the appeal, finding that it "'lack[ed] appellate jurisdiction over th[is] contention,' i.e., of the 'evidence insufficiency' contention that 'we didn't do it.'" *Id.* On certiorari, the Supreme Court resolved a split in the circuits and agreed with the Seventh Circuit, holding that "the District Court's determination that the summary judgment record in this case raised a genuine issue of fact concerning petitioner's involvement in the alleged beating of respondent was not a 'final decision' within the meaning of the relevant statute," and thus was "not appealable." *Id.* at 313.

The Off-Duty Officers' contention that they are entitled to qualified immunity because Plaintiff cannot identify which one of them hit him is nearly identical to the theory argued by the defendants and rejected by the Supreme Court in *Johnson*. The district court in *Johnson* and this Court rejected each based on a *factual* finding that the circumstantial evidence presented by the plaintiff was sufficient to allow the case to proceed. *See Johnson*, 515 U.S. at 306; Summary Judgment Op. at 8-10. The Supreme Court's decision in *Johnson* makes crystal clear that such

12

fact-based determinations of the district court are not appealable on an interlocutory basis, and
that the Circuit Court lacks jurisdiction to entertain them.

From a jurisdictional standpoint, the second argument the Off-Duty Officers raised to the
district court would fare no better on appeal. Again, as recounted above, the Officers' argument
rested almost entirely on disputed issues of fact regarding whether they had probable cause to
arrest. Their argument completely failed to even consider Plaintiff's evidence or acknowledge
his allegations (supported amply by record evidence) that he had done nothing wrong and indeed
had been attacked unprovoked by Defendant Persons before they intervened. This is precisely
the type of factual dispute not suitable or capable of resolution on an interlocutory appeal. *See
Barham v. Ramsey*, 434 F.3d 565, 572, 577 (D.C. Cir. 2006) (district court's denial of summary
judgment on the issue of qualified immunity is not an appealable order where claim to immunity
turned on "factual controversy"); *Kimberlin*, 199 F.3d at 503 (interlocutory decision that denies
summary judgment because of presence of triable issues of fact is not appealable); *Farmer*, 163
F.3d at 613-14 (appeals of evidentiary findings not permitted). Thus, to the extent that the Off-
Duty Officers intend to base their appeal on the arguments they presented to this Court – and
their brief suggests as much[3] – they cannot demonstrate a likelihood of success on the merits.

> 3. Any Argument on Appeal that the Off-Duty Officers are
> Entitled to Qualified Immunity Based on The Facts Found by
> This Court Would be Frivolous

As the above-referenced binding precedent makes clear, the only issues over which the
D.C. Circuit conceivably would have jurisdiction would be, under the facts as construed in the

---

[3] In their Motion to Stay, the Off-Duty Officers state that "the facts giving rise to these defendants' entitlement to
qualified immunity is [sic] intertwined with the common law claims against defendants . . ." Stay Br. at 5. It is hard
to imagine how these unidentified "facts" that supposedly entitle them to qualified immunity and are also
"intertwined" with Plaintiff's common law claims for assault and battery are not the very same factual assertions
which the Court rejected as material and disputed in its summary judgment opinion.

light most favorable to the Plaintiff and as found by the district court for purposes of summary judgment, (a) whether a constitutional violation had occurred, and (b) whether the constitutional right at issue was "clearly established" at the time of the violation. *See Saucier*, 533 U.S. at 201; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Barham*, 434 F.3d at 572. In this instance, such an appeal would pose the following "question presented": Is the Fourth Amendment violated when police officers, lacking any reasonable basis to believe that probable cause existed, arrest, repeatedly assault and then eject an American Citizen from a place of public accommodation; and if so, was the Fourth Amendment right to be free from such unwarranted acts by state actors clearly established by March 2005? It is hard to imagine the D.C. Attorney General making such an argument with a straight face, but it is in fact the only one conceivably available to the government to establish jurisdiction in the Circuit Court of Appeals. There can be no doubt that such an argument would be entirely frivolous.

Indeed, such an argument would completely contravene black letter Fourth Amendment law. It was clear decades before the events giving rise to this case that an arrest made without probable cause violates the Fourth Amendment. *See, e.g. Martin v. Malhoyt*, 830 F.2d 237, 262 (D.C. Cir. 1987) (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)); *Fernandors v. District of Columbia*, 382 F. Supp. 2d 63, 71 (D.D.C. 2005) (Fourth Amendment claim for unlawful arrest "may be established upon a showing that there is no probable cause to support a plaintiff's warrantless arrest and detention").

Moreover, the "use of excessive force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier*, 533 U.S. at 202. A claim of excessive use of force turns on whether the officers' conduct was reasonable under the circumstances confronting the officer at the time. *See Tennessee v. Garner*, 471 U.S. 1, 8-12

(1985). In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court identified factors relevant to the merits of a constitutional excessive force claim, which include: (1) the severity of the crime; (2) whether the suspect poses a threat to the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396. In the facts at bar, there was no crime, there was no threat posed by plaintiff, and there was no flight. *See* Summary Judgment Op. at 9. As such, the Off-Duty Officers' repeatedly assaulting and then ejecting Plaintiff from a place of public accommodation clearly constituted excessive force in violation of the Fourth Amendment. Moreover, there can be no doubt that protection from excessive force in such circumstances was clearly established as of March 2005.

It is possible that, in their reply, the Off-Duty Officers will argue that the fact that the D.C. Circuit would at least have jurisdiction over such a frivolous appeal issue means that the trial cannot go forward. This simply is not and should not be the case. *Bean v. City of Buffalo*, 822 F. Supp. 1016 (W.D.N.Y. 1993), is a case squarely on point. In *Bean*, the plaintiff brought a Section 1983 excessive force claim and the defendants had previously moved for summary judgment on qualified immunity grounds. In denying the motion, the district court had found that "factual issues exist regarding the objective reasonableness of defendants' use of force. . . . It cannot yet be said what the true circumstances were." *Id.* at 1017. Thereafter, defendants filed a notice of interlocutory appeal and moved to stay of all proceedings. In denying the stay, the *Bean* court reasoned as follows:

> Defendants simply argued that they were entitled to summary judgment under their version of the facts, and that plaintiff had failed to substantiate her version with admissible evidence. . . . [] [D]efendants have never argued that they are entitled to qualified immunity under *plaintiff's* version of the facts, and it is incomprehensible that such a legal proposition could be the basis for defendant's appeal. It is likely that defendants have waived this argument for appeal purposes by not raising it with this Court. Furthermore, such an argument would fly in the face of the clearly established principle that police officers are not entitled to

> qualified immunity for shootings of unarmed individuals who pose no substantial threat of death or serious injury to the officers or other individuals. Therefore, this Court concludes that defendants' appeal is frivolous, because it is grounded either upon questions of fact and is therefore not appealable under the "collateral order doctrine", or upon an unsupportable legal proposition.

*Id.* at 1018-19 (citations omitted) (emphasis in original).

Here, the Court is presented with the same situation as the *Bean* court found itself in. This Court has denied summary judgment because the facts are "hotly in dispute" and the Off-Duty Officers have filed a notice of interlocutory appeal and motion to stay. The Off-Duty Officers have argued nothing to suggest that they have a legitimate appeal question. It is clear that the D.C. Circuit would lack jurisdiction to entertain the arguments the Off-Duty Officers presented to this Court. And the one appeal over which the D.C. Circuit would have jurisdiction flies squarely in the face of black letter Fourth Amendment jurisprudence. [4] Given these circumstances, this Court should find that the appeal is frivolous and that it has continuing jurisdiction over Plaintiff's Section 1983 claim.

**C.    A Balance of the Equities Calls for Denial of Defendants' Motion to Stay**

When balancing the equities through a consideration of the remaining three factors relevant to the determination of a motion to stay, it is clear that Defendants' motion to stay should not be granted. Defendants fail to: (1) adequately articulate the harm they would allegedly suffer if a stay is not granted; (2) consider the substantial harm to Plaintiff should a stay be granted; or (3) articulate any harm that the public would allegedly suffer if a stay is not granted. And in fact, application of these three factors cuts substantially in Plaintiff's favor.

---

[4] Here, as in *Bean*, the Off-Duty Officers likely have waived any such legal argument because they did not raise it at summary judgment before this Court. In the D.C. Circuit, it is well-settled that "[a]rguments not raised in the district court are generally ... waived on appeal." *U.S. v. Layeni*, 90 F.3d 514, 522 (D.C. Cir. 1996); *accord District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984); *National Rifle Ass'n of Am. v. Federal Election Comm'n*, 854 F.2d 1330, 1337 (D.C. Cir. 1988); *see also Bean*, 822 F. Supp. at 1018 (finding that argument in favor of qualified immunity that was not presented to district court would likely be deemed waived on appeal).

1. <u>Defendants Have Failed to Show Any Irreparable Harm</u>

In the D.C. Circuit, when considering a motion to stay pending appeal, "the harms to each party are tested for 'substantiality, likelihood of occurrence, and adequacy of proof.'" *Judicial Watch v. Nat'l Energy Policy Dev. Group*, 230 F. Supp. 2d 12, 15 (D.D.C. 2002) (quoting *Cuomo*, 772 F.2d at 976-77). The moving party "is required to demonstrate that the injury claimed is 'both certain and great.'" *Cuomo*, 772 F.2d at 976 (quoting *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985)).[5]

Here, the only way the Off-Duty Officers could possibly demonstrate irreparable harm to them if the case is not stayed is to make at least a plausible argument that their appeal has merit, is not frivolous, and indeed is likely to succeed. *See Barham*, 434 F.3d at 152 (the whole purpose of allowing interlocutory appeal of denials of qualified immunity turning on questions of law is to prevent only "*deserving* officials" from having to undergo the burdens of litigation) (emphasis added). Of course, as noted above, the Off-Duty Officers do not and cannot make such a showing.

Nor can the Off-Duty Officers legitimately claim that they face a likelihood of repeated litigation or inconsistent results if the stay is denied. As the Court is aware, Plaintiff also asserts assault and battery claims against these Defendants. These claims will be tried regardless of whether the Section 1983 claims are dismissed – and they are themselves not automatically disposed of simply because the federal, related claims are eliminated. *See Barnstead Broadcasting Corp. v. Offshore Broadcasting Corp.*, 869 F. Supp. 35 (D.D.C. 1994) ("When an appeal is taken from an interlocutory order, ... the district court retains jurisdiction to act with

---

[5] It should be noted that, even if a party seeking a stay does demonstrate irreparable harm, this alone is insufficient to warrant entry of a stay. *See United States v. Judicial Watch*, 241 F. Supp. 2d 15, 18 n.4 (D.D.C. 2003) (if a movant's case on the merits is weak, a "showing of irreparable harm is insufficient to justify a stay"); *Shays v. Federal Election Comm'n*, 340 F. Supp. 2d 39, 45 (D.D.C. 2004 ) (same).

respect to matters not related to the issues involved in the appeal or when a district court's action would aid in the appeal"); *Decatur Liquors, Inc. v. District of Columbia*, No. Civ. A, 04-1971 (RMC), 2005 WL 607881, at *3 (D.D.C. March 16, 2005) ("The district court does retain jurisdiction to act with respect to matters not related to the issues involved on the appeal"). Thus, the Off-Duty Officers face trial no matter what, and will suffer no inequitable or duplicative adjudications if the stay is denied.[6]

Defendants seek only to delay the inevitable. The only thing a stay would accomplish is a (substantial) delay of the trial on the merits that ultimately will occur in this case. Denial of such a delay – a delay to which, as a matter of law, the Off-Duty Officers simply are not entitled – cannot be legitimately viewed as irreparably harmful.

### 2.   Plaintiff and Others Would be Significantly Harmed by a Stay

Not surprisingly, Defendants completely ignore the substantial harm that Plaintiff will suffer if their motion to stay is granted. Even in cases where granting a stay would arguably save a party from irreparable harm, courts consider harm to other parties to the litigation. *See Apostol*, 870 F.2d at 1338-39; *Yates*, 941 F.2d at 448. The D.C. Circuit has cautioned against granting a stay where the relief the moving party requests would result in substantial injury to other parties to the action, stating that "[r]elief saving one claimant from irreparable injury, at the expense of similar harm caused another, might not qualify as the equitable judgment that a stay represents." *Virginia Petroleum Jobbers*, 259 F.2d at 925.

In *Apostol*, the Seventh Circuit explained the harm caused by frivolous appeals of the type the Off-Duty Officers present here:

---

[6]  In fact, judicial efficiency will be better served by denying the stay and proceeding to trial. That way, all claims can be tried at once and resolved. Should the Off-Duty Officers prevail on their appeal, the portion of any verdict going against them on the federal claims can be overturned, much like a j.n.o.v. determination. Since they would still need to litigate many of the same issues with respect to the assault and battery claims as with the federal claims, such a procedure would promote efficiency with little inconvenience to these Defendants.

> During the appeal memories fade, attorneys' meters tick, judges' schedules become chaotic (to the detriment of litigants in other cases). Plaintiffs' entitlements may be lost or undermined. Most deferments will be unnecessary. The majority of *Forsyth* appeals – like the bulk of all appeals – end in affirmance. Defendants may seek to stall because they gain from delay at plaintiffs' expense, an incentive yielding unjustified appeals. Defendants may take *Forsyth* appeals for tactical as well as strategic reasons: disappointed by the denial of a continuance, they may help themselves to a postponement by lodging a notice of appeal. Proceedings masquerading as *Forsyth* appeals but in fact not presenting genuine claims of immunity create still further problems.

870 F.2d at 1338-39 (7th Cir. 1989); *see also Yates*, 941 F.2d at 448 ("delaying trial in order to allow a defendant to appeal a denial of qualified immunity prolongs the [trial] process, often to the disadvantage of the plaintiff"); *In re Elsino Shore Assoc.*, 91 B.R. 238, 259 (Bkrtcy D. N.J. 1988) (hearing to confirm proposed Chapter 11 plan would not be stayed pending appeal of bankruptcy court's decision, concluding that delay of proceedings would substantially harm other interested parties).

The harm to Plaintiff Mazloum should this matter be stayed is almost self-evident. Mr. Mazloum's lawsuit was filed two years ago this January. It is based upon conduct that occurred nearly three years ago. Given that so much of the case's determination will turn on witness testimony and personal recollection, it is vital that the matter be resolved before memories fade, and indeed the whole dispute itself starts to fade in importance to the average juror. In addition, many fact witnesses who are presently available in the region might relocate later. And of course there is no guarantee that delay pending appeal, given both this Court's as well as the Court of Appeal's active dockets, might not last a year or even two. Given the weak bases for the noticed appeal, the harm to Plaintiff is simply too great to ignore under the circumstances.

### 3.  The Public Would Be Harmed if a Stay is Granted

Defendants have not, and cannot, articulate any reasons why the public would be harmed if a stay is not granted because it is clear that the public – particularly the courts and other

litigants – *is* harmed when defendants make frivolous appeals challenging the district court's denial of qualified immunity. First, such appeals "injure the legitimate interests of other litigants and the judicial system." *Apostol*, 870 F.2d at 1338. While an appeal is pending, the availability of a party's witnesses may change, memories may fade and attorneys' fees mount. *Id.* In addition, the courts, already dealing with crowded dockets, are harmed by frivolous appeals that stretch their limited resources and impede the conclusion of pending litigation. *Id.* As the Supreme Court has explained: "An interlocutory appeal can make it more difficult for trial judges to do their basic job – supervising trial proceedings. It can threaten those proceedings with delay, adding costs and diminishing coherence. It also risks additional, and unnecessary, appellate court work either when it presents appellate courts with less developed records or when it brings them appeals that, had the trial simply proceeded, would have turned out to be unnecessary." *Johnson*, 515 U.S. at 309.

Simply put, none of the policy rationales that justify interlocutory appeals of summary judgment determinations on qualified immunity in legitimate circumstances are presented here. A valid interlocutory appeal, well-grounded in law, is permitted to go forward (and the underlying case from which it arises stayed) so that the government's proper exercise of its police powers is not chilled or thwarted by litigation. These interests are not served by allowing a frivolous interlocutory appeal to bring an entire lawsuit to a standstill a month before trial. Indeed, such a result only compounds the abuse of governmental power that is the basis for this action. Allowing a stay here would be a perversion of the qualified immunity defense, not a natural consequence of it.

## CONCLUSION

For the reasons stated above, this Court should deny Defendants Modlin, Schneider and Phillips's Motion To Stay All Proceedings. Plaintiff further requests oral argument on Defendants' motion.

Dated: December 4, 2007

                                           /s/

Brian H. Corcoran (Bar No. 456976)
Katten Muchin Rosenman LLP
1025 Thomas Jefferson St., N.W.
Suite 700 East Lobby
Washington, D.C. 20007
Ph: (202) 625-3500
Fax: (202) 298-7570
Brian.Corcoran@kattenlaw.com

Susan E. Huhta (Bar No. 453478)
Warren R. Kaplan (Bar No. 034470)
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, N.W.
Suite 400
Washington, D.C. 20036
Ph: (202) 319-1000
Fax: (202) 319-1010
Sue_Huhta@washlaw.org
Warren_Kaplan@washlaw.org

Attorneys for Plaintiff
Emile Mazloum

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EMILE MAZLOUM, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:06 CV 00002 |
| | ) | (JDB) |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Upon consideration of Defendants Richard Phillips, Thaddeus Modlin and Louis Schneider's Motion to Stay All Proceedings, the Memorandum of Points and Authorities in support thereof, the opposition thereto, and the record therein, it is, this _____ day of _____, 2007:

ORDERED: that Defendants' Motion to Stay All Proceedings is hereby DENIED; and it is

FURTHER ORDERED: that trial in the above-captioned matter will remain set to begin January 8, 2008. As such, the parties will submit their Pretrial Statements on December 13, 2007, and the Pretrial Conference will be held on December 19, 2007.

_____
Judge John D. Bates
United States District Court Judge