UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

EMILE MAZLOUM,

        Plaintiff,

        v.

DISTRICT OF COLUMBIA, *et al.*,

        Defendants.
_____

Civil Action No. 1:06 CV 00002 (JDB)

**PLAINTIFF'S PRETRIAL STATEMENT**

    Plaintiff Emile Mazloum, by counsel, for his Pretrial Statement pursuant to Local Rule 16.5(b), hereby states as follows:

**1.**    **Statement of the Case**

    A.    *Nature of the Case*

    Plaintiff Emile Mazloum, a legal resident of the U.S. of Lebanese ethnicity, was the victim of a vicious beating, combined with an unlawful exercise of police powers, in the early morning hours of March 12, 2005. These wrongful and illegal acts were perpetrated by off-duty D.C. Metropolitan Police Department officers in conjunction with Michael Persons, a "bouncer," or member of the security detail, at the FUR Nightclub in Washington, D.C. Police officers Anthony Ramirez, Thaddeus Modlin, Richmond Phillips, and Louis Schneider happened to be patrons of the Nightclub at the same time Mazloum was in attendance. They took it upon themselves to arrest and eject Mazloum, in handcuffs, from the Nightclub after interceding in an attack initially perpetrated by Mr.

1

Persons. In so doing, they employed excessive and unnecessary force, while identifying themselves as police officers, thus invoking their official authority as justification for the beating to which Mazloum was subjected. At no time did they bother to inquire as to whether Mazloum had in fact committed a crime or done anything else to warrant their patent overreaction. In the process, Mazloum's Lebanese national origin, race and perceived religion were also disparaged, as he was the recipient of verbal epithets accusing him of being an "Al Qaeda."

Thereafter, when it became evident that Mazloum had in fact done nothing warranting the assault just delivered against him, the MPD and its officers, with the complicity of the Nightclub and several of its employees, acted to cover up the incident—refusing Mazloum's reasonable efforts to file a complaint, destroying critical evidence, and ultimately threatening Mazloum with retaliation should he endeavor to exercise his rights in connection with this incident.

As a result of the above, Mazloum has suffered serious physical and emotional injuries as well as incurred medical expenses to treat his injuries. In addition, his constitutional, statutory and common law rights have been violated.

      B.    *Identity of the Parties*

Mazloum is a Lebanese citizen of the Arab race and is a legal permanent resident of the United States.

The District of Columbia is a municipal corporation. The D.C. Metropolitan Police Department (the "MPD") is a department of the District of Columbia.

Defendant Night and Day Management, LLC ("N & D"), d/b/a Fur Nightclub is a limited liability company incorporated under the laws of the District of Columbia since 2002. N & D owns and operates the FUR Nightclub, which is located at 33 Patterson Street, N.E. in the District of Columbia.

Defendants Anthony Ramirez, Thaddeus Modlin, Richmond Phillips, and Louis Schneider are present or former officers of the MPD who were acting in an off-duty capacity at FUR Nightclub in the early morning hours of March 12, 2005.

Defendant Michael Persons was at all relevant times employed as part of club security, or a "bouncer," at Fur Nightclub.

C.    *Bases for Jurisdiction and Venue*

This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and 1367, given the federal claims asserted against the off-duty MPD officers, and pendent jurisdiction over the other state law-based claims. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) because it is an action between citizens of different states, and because the matter in controversy exceeds the sum of $75,000. Venue is proper in this Court under 28 U.S.C. § 1391, because all or a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district. For the same reason, the court has personal jurisdiction over the Defendants.

**2.    Statement of Plaintiff's Claims**

This is an action arising under the Constitution and the civil rights laws of the United States, 42 U.S.C. §§ 1981 and 1983, the District of Columbia's Human Rights Act, D.C. Code §§ 2-1401.01 *et seq.* (the "DCHRA"), as well as the common law of assault and battery and liability premised on the doctrine of *respondeat superior*. The claims may be broken down as follows:

A.    Plaintiff asserts a cause of action arising under 42 U.S.C. Section 1983 against the four off-duty MPD officers for violating Mazloum's Fourth Amendment right to be free from unlawful detention and the use of excessive force by police officers;

B.    Plaintiff asserts a cause of action arising under 42 U.S.C. Section 1981 against the four off-duty MPD officers for discriminating against Mazloum on the basis of his race and

3

ethnicity, in the following manner: (i) defendant Ramirez directly discriminated against Mazloum by calling him ethnic slurs such as an "Al-Qaeda," in the course of detaining him and/or beating him; and (ii) the remaining off-duty officer defendants are liable for Ramirez's conduct because they were aware of Ramirez's "Al-Qaeda" comments and had a reasonable opportunity to stop him from discriminating against and physically abusing Mazloum in this fashion, but chose not to so act, thereby tolerating and implicitly approving of this discriminatory conduct.

      C.      Plaintiff asserts a cause of action arising under the DCHRA, Section 2-1402.31, against the four off-duty MPD officers for intentionally discriminating against Mazloum on the basis of his race and ethnicity in a manner prohibited by D.C. statute, in the following manner: (i) defendant Ramirez directly discriminated against Mazloum by calling him ethnic slurs such as an "Al-Qaeda," in the course of detaining him and/or beating him; and (ii) the remaining off-duty officer defendants are liable for Ramirez's conduct because they were aware of Ramirez's "Al-Qaeda" comments and had a reasonable opportunity to stop him from discriminating against and physically abusing Mazloum in this fashion, but chose not to so act, thereby tolerating and implicitly approving of this discriminatory conduct. Plaintiff also asserts the same claim against the District based on its *respondeat superior* liability for the conduct of the off-duty officer defendants; and

      D.      Plaintiff asserts a cause of action for common law assault and battery against the four off-duty MPD officers and defendant Persons for intentionally beating Mazloum both within and (as to the Off-Duty Officer Defendants) later outside of the FUR Nightclub and thereby causing him great injury. Plaintiff also asserts the same claim against the District and the FUR Nightclub, based on their *respondeat superior* liability for the conduct of their respective employees.

**3.**      <u>**Statement of Defendants' Defenses**</u>

    Not Applicable to Plaintiff.

**4.    Plaintiff's Witness Schedule**

A.    "Will Call" Witnesses – the following are individuals Plaintiff expects to present at trial. Plaintiff reserves the right to revise in a seasonable fashion this schedule up to and before trial.

1.    Emile Mazloum, 4910 Ravensworth Road, Alexandria, Virginia  22003, 703-606-8484. Mr. Mazloum has knowledge of all issues set forth in the complaint other than the allegations relating to the destruction of security camera evidence. Estimated time of testimony – four hours.

2.    Marwan Abi-Aad, 7501 Long Pine Drive, Springfield, Virginia  22151, 703-566-1377. Mr. Abi-Aad has knowledge of the following: the nature of and circumstances surrounding the beating inflicted upon Plaintiff at the FUR Nightclub on the night of March 11-12, 2005, the extent and nature of the injuries suffered as a result, and Plaintiff's subsequent efforts to file a complaint with MPD. Estimated time of testimony – three hours.

3.    Imad Alkadi, 2262 Pimmit Run Lane, Falls Church, Virginia  22043, 703-845-1834. Mr. Alkadi has knowledge of the following: the nature of and circumstances surrounding the beating inflicted upon Plaintiff at the FUR Nightclub on the night of March 11-12, 2005, plaintiff's subsequent efforts to file a complaint, and Mr. Alkadi's subsequent meeting with certain of the FUR Defendants on March 12, 2005. Estimated time of testimony – three hours.

B.    "May Call" Witnesses – the following are individuals Plaintiff may call at trial if the need arises. Plaintiff reserves the right to revise in a seasonable fashion this schedule up to and before trial.

1. Any or all of the named individual defendants (Ramirez, Modlin, Schneider, Phillips, and Persons).

2. Jose Acosta, c/o D.C. Metropolitan Police Department, First District Station, 415 4th St., S.W., Washington, D.C. 20024.  On information and belief, Officer Acosta has knowledge of the following: the nature of and circumstances surrounding the beating inflicted upon Plaintiff at the FUR Nightclub on the night of March 11-12, 2005.  Estimated time of testimony – one hour.

3. David Smith, c/o D.C. Metropolitan Police Department, First District Station, 415 4th St., S.W., Washington, D.C. 20024.  On information and belief, Officer Smith has knowledge of the following: the nature of and circumstances surrounding the aftermath of the beating inflicted upon Plaintiff at the FUR Nightclub on the night of March 11-12, 2005.  Estimated time of testimony – one hour.

4. David McLeod, the head of security at FUR Nightclub, c/o Night and Day Management, LLC, d/b/a FUR Nightclub, 33 Patterson Street, N.E., Washington, D.C. 20002.  Mr. McLeod was designated as a FUR 30(b)(6) witness with specialized knowledge of FUR's security procedures and the functioning and capacity of its security camera system.  On information and belief, Mr. McLeod has knowledge of the following: the meeting held at the FUR Nightclub on the night of Saturday, March 12, 2005, to discuss the beating of Mr. Mazloum; the functioning of the security camera system; and the destruction of security camera film at the FUR Nightclub showing the beating of Mr. Mazloum.  Estimated time of testimony – two hours.

5. Diego Sequeira, FUR Operations manager, c/o Night and Day Management, LLC, d/b/a FUR Nightclub, 33 Patterson Street, N.E., Washington, D.C. 20002. On information and belief, Mr. Sequeira has knowledge of the following: the functioning of the security camera system and the occasional repositioning of individual cameras.  Estimated time of testimony – one hour.

6. Skip Coburn, 1526 6th Street, N.W., Washington, D.C. 20001.  To the extent required

by the objections of the Defendants to the authenticity of documents and/or the Court, Plaintiff will call Mr. Coburn to authenticate a video he prepared and obtained in January of 2006 inside of the FUR Nightclub.  Estimated time of testimony – fifteen minutes.

       7.       Custodians of Record of hospitals and medical caregivers.  To the extent required by the objections of the Defendants to the authenticity of documents and/or the Court, Plaintiff will call any and all custodians of records for the relevant hospitals where Plaintiff received treatment in March of 2005 for the injuries suffered in the battery committed by the Defendants, in order to authenticate the relevant medical records from such hospitals, along with medical caregivers who treated Plaintiff to attest to the nature of the services rendered and the reasonableness of associated charges.  Estimated time of testimony – fifteen minutes.

       8.       Videographer, Henderson Legal Services, 1015 15th Street, N.W., Suite 525, Washington, D.C. 20005.  To the extent required by the objections of the Defendants to the authenticity of documents and/or the Court, Plaintiff will call the individual who provided videographic services to Plaintiff to authenticate a video he prepared and obtained in July of 2006 at the FUR Nightclub.  Estimated time of testimony – fifteen minutes.

       9.       Any additional persons named as witnesses by the Defendants.

**5.**      **<u>Exhibits to be Offered by Plaintiff in Evidence</u>**

The exhibit schedules attached hereto do not include any materials the Plaintiff may offer or utilize at trial for purposes of rebuttal or impeachment.  Plaintiff reserves the right to amend these exhibit schedules in a seasonable fashion if necessary.

       **A.**      **Exhibits the Plaintiff expects to offer at trial:**

*See* Exhibit A-1, attached.

**B.     Exhibits the Plaintiff may offer at trial:**

*See* Exhibit A-2, attached.

**6.     Deposition Designations**

The listed deposition designations do not include any deposition testimony the Plaintiff may offer or utilize at trial for purposes of impeachment. Plaintiff reserves the right to amend these designations in a seasonable fashion if necessary. References are to page and then line number.

A. <u>Ramirez</u> . . . . . . . . .

    7:9-12

    49:18 – 50:2

    52: 22 – 53:16

    58:15 – 60:1

    61:14 – 62:14

    110:10 – 111:16

    111:17- 112:7

    115:6 – 20

    116:2 – 12

    118:22 – 119:20

    120:9 – 121:10

    123:11 – 124:3

    124:7 – 19

    127:3 – 22

        133:20 – 134:16

  B. <u>Persons</u> . . . . . . . .  . . . . . .

        4: 9 - 13

        37:3 - 16

        42:13 - 43:3

        47:14 - 22

        62:15 - 67:8

        66:22 - 67:8

        71:10 - 19

        99:15 - 21

        102:6 - 14

        134:7 - 136:13

        154:16 - 155:17

  C. <u>FUR - 30(b)(6) Deposition of David McLeod</u>

        5:8 - 16

        6:3 - 17

        13:5 - 16:12

        25:14 - 21

        44:22 - 45:11

        47:16 - 48:2

        118:1 - 13

      120:14 - 121:3

      124:7 - 125:11

      128:5 - 131:22

      133:16 - 134:14

      145:6 - 146:8

  D. <u>Diego Sequeira</u>

      1:9-11

      7:12-17

      8:8-9, 13

      15:10-21

      26:6-21

      60:16-18

      61:1-7, 11-12

      63:5-15

      64:2 - 67:16

      68:3 - 70:22

      71:7-20

      72:1 - 74:6

7. **Damages Itemization**

Mazloum seeks compensatory damages for the (i) physical injuries, (ii) physical, mental, and emotional pain and suffering; and (iii) medical expenses he suffered due to the Defendants' unlawful and wanton misconduct on March 11-12, 2005. Plaintiff also seek an award of punitive damages

and reasonable attorneys fees

A.   Medical Expenses

At the time of the assault, Mazloum received a broken nose, a contusion to his left eye, scrapes on his face and ears, swelling on the left side of his neck where he was grabbed, and an assortment of cuts, deep bruises and bumps on his head. His torso, and legs were bruised, and his left knee was swollen from where he had been kicked. His back was bruised from the beating and related scuffle, as well as from being forced to the ground. His wrists were also cut and abraded from where he had been handcuffed. On March 18, 2005, two weeks after the assault, Mazloum had medical procedures performed to repair the damage to his nose caused by the assault.

Mazloum continues to suffer from certain of the injuries that he incurred on the night of the assault. In particular, Mazloum continues to experience intermittent back pain, particularly when he has to lift heavy objects, as is often required given the nature of his work as a contractor. This back pain is so incapacitating at times that he is unable to move or walk without difficulty and he must take prescription medication to alleviate the pain. Mazloum is under the care of Dr. Siamak Heydarian, and has also consulted with specialists, for this ongoing condition. Additionally, Mazloum continues to experience breathing complications due to his nose injury. Mazloum reports that his sleep is routinely disrupted due to his inability to breathe properly through his nose.

In the three months following the assault (March – June 2005), Mazloum incurred approximately $12,455.80 in medical expenses, all of which he was able to satisfy via funds obtained pursuant to the Superior Court of the District of Columbia's Crime Victims Compensation Program ("the Compensation Program"). Pursuant to D.C. Law 3-429, Mazloum is required to repay the Compensation Program for such sums out of any damages award he may receive in this action. Since then, Mazloum has incurred additional expenses relating to ongoing treatment needed

11

for his persistent back pain.

      B.      <u>Pain and Suffering/Punitive Damages</u>

Mazloum seeks an award of damages for his physical and mental pain and anguish stemming from the improper beating he received at the hands of MPD officers and FUR employees, and the related indignity and humiliation of having suffered through such a traumatic event.

Mazloum's pain and suffering has two components. First, there is the general post-incident impact of his injuries. After the incident, he was unable to work for several months. To this day, Mazloum suffers from intermittent back pain as a result of the assault and has been advised by his doctors to take care in lifting heavy objects. Because physical labor is a fundamental part of Mazloum's work, his condition has made performing his work functions as a contractor more difficult.

Second, Mazloum has suffered mental distress as a result of the traumatic events on the night of the assault. At the time of the assault, Mazloum was humiliated and treated with contempt and disdain by police officers (who society expects to help – not harm – the innocent) as well as the FUR Nightclub. Thereafter and up to this day, Mazloum has been plagued with images from his horrifying ordeal and memories of how he felt during the beating. He remains ashamed and embarrassed of the manner in which he was treated.

Because of the willful and wanton character of defendants' conduct as will be specified at trial, Mazloum seeks to recover punitive damages in such amounts as may be determined by the jury. In addition, Mazloum seeks reasonable attorneys fees and expenses for his legal representation in this action.

**8.**      <u>**Other Relief Sought by Plaintiff**</u>

None.

9. **Proposed Fact Stipulations**

a. Plaintiff requests that the Defendants stipulate to the following facts:

1. On March 12, 2005, Ramirez, Modlin, Phillips and Schneider were all employed as officers of the D.C. Metropolitan Police Department.

2. In the early morning hours of March 12, 2005, Ramirez, Modlin, Phillips and Schneider were patrons at FUR nightclub.

3. At the time officers Ramirez, Modlin, Phillips and Schneider were patrons of FUR Nightclub on March 11-12, 2005, all four officers were off-duty.

4. In the early morning hours of March 12, 2005, and while acting within the scope of their employment, the Off-Duty Officers were involved in a physical altercation with the plaintiff, Emile Mazloum.

5. In the course of the that physical altercation, one or more of the Off-Duty Officers displayed his badge and announced that they (the Off-Duty Officers) were police.

6. In the course of the altercation, Defendant Ramirez produced his police handcuffs and used them to handcuff the Plaintiff.

7. During the altercation, the Plaintiff was physically dragged out of the FUR Nightclub in handcuffs, and was made to wait outside on the curb until uniformed police officers arrived.

8. Defendant Ramirez had a conversation with one of the uniformed officers who arrived on the scene after the Plaintiff had been removed from the FUR Nightclub.

9. The uniformed officers, after speaking with Mazloum, Ramirez, and Defendant Persons, determined that there was no basis to arrest Mazloum and released him

      10.    On March 12, 2005, Defendant Persons was at that time employed as a bouncer at FUR Nightclub by Defendant N & D.

      11.    On March 12, 2005, while acting within the scope of his employment, Defendant Persons became engaged in a physical altercation with the plaintiff, Emile Mazloum.

      b.    Plaintiff has proposed that the Defendants stipulate to certain facts relating to the capabilities of FUR's video camera system, as well as agree to the authenticity of certain images depicting the "feed" such cameras can obtain, so that admissibility challenges on this matters can be avoided at trial. Plaintiff is in the process of attempting to reach final agreement with the Defendants on these matters, and will submit a written stipulation if such agreement is reached.

**10.**     <u>**Other Issues**</u>

      a.    Plaintiff believes it is essential for an interpreter to be retained for those days at trial when the Plaintiff, as well as other Arabic language witnesses, will be testifying, because the Plaintiff has a limited English capability, and two of the other witnesses who will be called in the Plaintiff's case only slightly less so. Plaintiff suggests that the parties utilize the same interpreter used for this purpose at several of the depositions, and that the cost of the interpreter be borne by the court system.

      b.    Plaintiff requests that the jurors be permitted to view the interior and exterior of the FUR Nightclub during the trial.

**11.**     <u>**Materials Accompanying this Statement**</u>

In accordance with this Court's order as well as the Local Rules, Plaintiff submits simultaneously with this Statement his proposed jury instructions (standard and non-standard) (attached hereto as Exhibits B and C, respectively) as well as proposed *voir dire* questions (attached hereto as Exhibit D).  Plaintiff is also submitting at this time a proposed verdict form (attached hereto as Exhibit E), as well as a set of special interrogatories for the jury to be used in connection with its evaluation of the Off-Duty Officers' qualified immunity defense (attached hereto as Exhibit F).

Respectfully submitted,

Dated:  March 3, 2008

/s/
Brian H. Corcoran (Bar No. 456976)
Katten Muchin Rosenman LLP
1025 Thomas Jefferson St., NW
Suite 700 East Lobby
Washington, D.C.  20007
Ph: (202) 625-3500
Fax: (202) 298-7570
Brian.Corcoran@kattenlaw.com

Susan Huhta (Bar No. 453478)
Warren R. Kaplan (Bar No. 034470)
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, D.C.  20036
Ph: (202) 319-1000
Fax: (202) 319-1010
Warren_Kaplan@washlaw.org

Attorneys for Plaintiff
Emile Mazloum