**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EMILE MAZLOUM, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 1:06 CV 00002 |
| ) | (JDB) |
| v. ) | |
| ) | |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE THE**
**FUR DEFENDANTS FROM USING DEFENDANT**
**JOHN FIORITO'S DEPOSITION TESTIMONY AT TRIAL**

Plaintiff Emile Mazloum ("Mazloum"), by his undersigned counsel, for his motion *in limine* to preclude defendants Night & Day Management, LLC ("FUR") and Michael Persons (together, the "FUR Defendants") from using citations from the depositions of John Fiorito in lieu of his live testimony, respectfully states as follows:

FUR co-owner John Fiorito ("Fiorito"), a defendant in this action, is an individual whose testimony is central to certain highly disputed and relevant issues in this lawsuit. Fiorito, however, has his place of residence in Florida (although he makes frequent business trips to the District of Columbia). In a transparent effort to shield Mr. Fiorito from what the FUR Defendants reasonably expect to be damaging cross-examination, they propose (in the Pretrial Statement) to introduce excerpts from his deposition testimony, instead of calling him at trial as a live witness.

The FUR Defendants should not be permitted to succeed in this gambit, because Fiorito is not in fact "unavailable" within the meaning of Federal Rule 32 such that excerpts from his deposition may be used at trial. Regardless of Fiorito's official place of residence, he is clearly not

only a party defendant in his individual capacity, but also a high-level employee, if not an "officer", of FUR, who has regularly come to the District for business directly relating to FUR. Indeed, one of the depositions from which these proposed designations are taken was a 30(b)(6) deposition, for which FUR *specifically chose* to designate Fiorito as its representative, whose answers would be deemed to bind the corporate entity. Fiorito is thus plainly viewed by the FUR Defendants as a significant witness, and should be considered the equivalent of a "managing agent" of the entity for purposes of this analysis.

In light of the above, and under Federal Rule of Civil Procedure 32(a)(4) and Local Rule 16.5(b)(7), these are improper deposition designations and should be stricken. Parties and party officers, directors, or "managing agents" are subject to the subpoena power of this Court and are accordingly "available" for trial, thereby prohibiting the use of their deposition testimony for an affirmative purpose. If the FUR Defendants believe Fiorito's testimony is important to their case, it behooves them to make him available in person for trial, where his credibility can be evaluated by the jury firsthand. In the alternative, Plaintiff has proposed two other options, either of which it believes would be far preferable to simply reading Fiorito's deposition testimony into the record, and the Court should compel the FUR Defendants to accept one of them if they will not call him to trial themselves.

## RELEVANT FACTS

Plaintiff's counsel deposed Fiorito twice in this case - once in his individual capacity, on October 25, 2006, and then again (based on FUR's choice to so designate him) as FUR's 30(b)(6) corporate representative. Fiorito specifically traveled back to Washington, D.C. from Florida on February 23, 2007 for that deposition, and apparently the FUR Defendants had no difficulty arranging for his presence at that proceeding. In these depositions, Plaintiff learned a number of

facts about Fiorito that demonstrate his close involvement with numerous relevant and disputed issues in this lawsuit.

Fiorito is not only a named party in this lawsuit[1], but is also a minority partner in FUR, having invested substantial capital into the FUR Nightclub. (*See* Excerpts from the Deposition of John Fiorito, dated October 25, 2006, a true copy of which is attached as Exhibit A ("Fiorito Dep.") at 23:1-24:13). In particular, Fiorito contributed a quarter of a million dollars worth of sound and lighting equipment, and oversaw construction of the system. (Fiorito Dep. at 22:16-22.) He also drafted the FUR employee manual, including its security procedures. (Fiorito Dep. at 37:10-13.) Subsequently, despite relocating to Florida after the Nightclub was opened in 2004-2005, Fiorito retained his ownership interest in FUR and continued to maintain the system and to supervise all the technical aspects of lighting and sound at FUR. (Fiorito Dep. at 32:11-19.) FUR would fly Fiorito up from Florida, at FUR's expense, at least twice per month to check, inspect, and test the club's sound and lighting. (Fiorito Dep. at 32:17-34:6.) Fiorito is also affiliated with a sound and lighting company in the District, which itself performs work at FUR. (*See* Excerpts from FUR 30(b)(6) Deposition, dated February 23, 2007, true copies of which are attached as Exhibit B, at 8:5-13.) He receives compensation from FUR in the amount of $130,000 per year, paid in increments of $2,500 per week. (Fiorito Dep. at 33:14-34:6.) Although Fiorito's membership interest and the income he receives from FUR are technically held in the name of his wife, that arrangement is a legalism solely intended to avoid running afoul of a Florida law that makes it illegal for a police officer to own an interest in an establishment that serves alcohol. (Fiorito Dep. at 22:12-23:3, 26:7-12.)

It is undisputed by the FUR Defendants that Fiorito was present at FUR on March 11-12,

---

1 Plaintiff notes that Fiorito is technically still a party to this case. While the claims asserted against him were dismissed on the FUR Defendants' motion for summary judgment, there is no final order in place and that decision remains appealable by Plaintiff after the trial of the remaining claims in this action.

2005, the night of the incident, and, by his own testimony, witnessed the off-duty police officers forcibly removing Plaintiff Mazloum from the club. (Fiorito Dep. at 47:4-8.) The following day, Mazloum went to the police station and filed a complaint against Officer Ramirez and the other officers who had beaten him the night before. In response, Ramirez immediately telephoned Fiorito to inform him about Mazloum's complaint, and the two discussed FUR's video surveillance system. (Fiorito Dep. at 117:4-119:19.) Fiorito then telephoned the promoter who had organized the event held at FUR the previous night and was able to arrange a prompt meeting with Imad Alkadi, who had attended the club with Mazloum the previous night, had witnessed the incident, and accompanied Mazloum to the police station the next day to support Mazloum's complaint of misconduct and police brutality against Ramirez. (Fiorito Dep. at 122:6-13.) During that meeting (which took place the evening of the day of the incident), Alkadi has testified that the video system was discussed and that Fiorito expressly informed him any footage of the incident was now "gone." *See* Deposition of Imad Alkadi, dated February 26, 2007, a true copy of which is attached as Exhibit C ("Alkadi Dep.") at 417:18-419:6. Fiorito denies that he made any such representations during the meeting with Alkadi, or that the topic of the security camera footage was even discussed.

Based upon the above, Plaintiff reasonably expected that the FUR Defendants would likely call Fiorito as a live witness at trial. Accordingly, Plaintiff was surprised to learn from the FUR Defendants' Pretrial Statement, filed March 3, 2008 (Docket No. 164), that they do not intend to do so, and instead have designated for use at trial portions of Fiorito's October 25, 2006 deposition as well as portions of his deposition as FUR's 30(b)(6) designee.

Pursuant to Local Rule 7(m), On March 24th, Plaintiff's counsel contacted counsel for the FUR Defendants in an effort to resolve their objections to the FUR Defendants' designation of Fiorito's deposition testimony. Plaintiff's counsel specifically suggested several preferable alternatives, in which Fiorito would either voluntarily appear at trial, or would appear in Florida,

4

either in advance of trial by videotape, or "live" via telecommunications hook-up during the trial. *See* E-mail, dated March 24, 2008 ( a true copy of which is attached as Exhibit D). Counsel for the FUR Defendant responded by telephone on March 26, 2008 and indicated their refusal to modify their position or to accept any such proposals.

**ARGUMENT**

**I.     FIORITO IS A PARTY AND/OR PARTY WITNESS UNDER FUR'S CONTROL.**

Fiorito is properly considered both a party and a high-level employee / officer of FUR nightclub, and therefore also a "party witness" under the FUR Defendants' control.

Because FUR (or more accurately, its corporate entity Night & Day Management LLC) does not observe strict corporate formalities[2], it does not literally possess any officers or directors - but this does not mean that certain FUR personnel would not qualify as corporate officers, or "managing agents," for purposes of the discovery rules. In the D.C. Circuit, it is recognized that a witness's status as a corporate "managing agent" requires a case-by-case analysis, considering such factors as "the character of the individual's control" over corporate affairs, as well as "the degree to which the interests of the individual and the corporation converge." *Founding Church of Scientology of Washington, D.C. v. Webster,* 802 F.2d 1448, 1452-53 (D.C. Cir. 1986)(founder and spiritual leader of organization was properly considered "managing agent" of entity even though he had resigned formal position with organization). Some of the factors considered by Courts in evaluating whether a witness's status rises to the level of "managing agent" are (i) whether the person is invested with general powers to exercise judgment and discretion in dealing with matters affecting the corporate entity, (ii) whether the person could be depended upon by the corporation to carry out the employer's

---

2 Indeed, FUR prepares and issues no financial statements of its revenue and profits either - but this does not mean that as a corporate entity, it has no profits, or that they could not be measured. It is for this reason that the Plaintiff must resort in this case to review of FUR's tax returns to look for evidence of the entity's profits.

direction to give required testimony, and (iii) whether the person would tend to identify with the interests of the corporation, rather than the adverse party. *Philadelphia Indem. Ins. Co. v. Federal Ins. Co.,* 215 F.R.D. 492, 494 (E.D. Pa. 2003).

As is plain from his deposition testimony, Fiorito should be considered an officer or "managing agent" of FUR. He is a co-owner of FUR and is closely involved in different aspects of the club's operations. Although he has apparently relocated to Florida, he continues to receive significant income from FUR. He also regularly travels back to the area to fulfill his business obligation of maintaining FUR's sound and lighting system, if not for the purposes of transacting other business as well (given his affiliation with a lighting company located here). And - most tellingly of all - he was present at FUR on March 11-12, 2005, and stood at the epicenter of orchestrating FUR's initial response to the incident involving Mazloum. Indeed, he was one of the prime FUR-related witnesses to take charge of FUR's "response" to the news that Mazloum had gone to a police station to complain of his treatment. Such a witness cannot possibly be considered a third party.

## II. FIORITO'S DEPOSITION TESTIMONY CANNOT BE USED BECAUSE FIORITO COULD BE COMPELLED TO GIVE TESTIMONY AT TRIAL THROUGH A TRIAL SUBPOENA AND IS THEREFORE NOT "UNAVAILABLE" UNDER FED. R. CIV. P. 32.

The FUR Defendants seem to believe that Mr. Fiorito's Florida residence is dispositive of this issue, making him "unavailable" for trial and thereby permitting them to use his deposition testimony in lieu of his live presence at trial under Fed. R. Civ. P. 32. However, because of Fiorito's status both as a party and as a high-level FUR employee[3], the Federal Rules in fact *permit* subpoenaing him at trial, despite his place of residence - thus making inapplicable the circumstances

in which a legitimately "unavailable" witness's testimony can be read in deposition form.

Live testimony at trial is far preferable to the use of substituted deposition testimony. As the court in *In re Vioxx Prods. Liability Litig.*, 438 F. Supp. 2d 664 (E.D. La. 2006) explained:

> As an alternative to live trial testimony, the Court, the parties, and, most importantly, the jury is left with the deposition—a second best. To best fulfill its fact-finding duties, a jury should be engaged and highly sensitive to each witness. As this Court knows all too well, the deposition, whether read into the record or played by video, has the opposite effect. It is a sedative prone to slowly erode the jury's consciousness until truth takes a back seat to apathy and boredom.

438 F. Supp. 2d at 668 (internal quotations and citations omitted).

Accordingly, the Federal Rules of Civil Procedure allow the use of depositions in court proceedings only in limited circumstances. Although out-of-court testimony is normally considered hearsay, an exception allows deposition testimony to be used if the witness is shown to be "unavailable" by virtue of the fact "that the witness is more than 100 miles from the place of hearing or trial." Fed. R. Civ. P. 32(a)(4)(B). However, a witness whose presence at trial may be compelled pursuant to a subpoena does not qualify as "unavailable" under this exception. *Niver v. Travelers Indemnity Co. of Illinois*, 430 F. Supp. 2d 852, 866 (N.D. Iowa 2006).

Admittedly, the Federal Rules of Civil Procedure place geographical limits on the service of trial subpoenas. Subpoenas may usually be served in the United States only "within the judicial district of the issuing court," Fed. R. Civ. P. 45(b)(2)(A), or "outside that district but within 100 miles of the place specified for the . . . trial," Fed. R. Civ. P. 45(b)(2)(B). However, the Rules expressly expand these geographical limitations in certain circumstances. In particular, Rule 45(b)(2) makes clear that its geographical limits are subject to Rule 45(c)(3)(A)(ii), which governs the circumstances under which a court *must* quash a subpoena. Fed. R. Civ. P. 45(b)(2).

Rule 45(c)(3)(A)(ii) directs a court to quash a subpoena that "requires a person *who is neither a party nor a party's officer* to travel more than 100 miles from where that person resides, is

7

employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(3)(A)(ii) (emphasis added). Stated differently, the 100-mile limit does not apply to a subpoena directed at a party or a party's officer, and therefore a court need not automatically quash such a subpoena. Furthermore, a court need not quash a subpoena directed to a third party if that person resides, is employed, or regularly transacts business in person within 100 miles of the court.

In determining the scope of their subpoena power, federal courts have ruled that party witnesses found beyond the 100-mile limit may nevertheless be subpoenaed. *See In re Vioxx*, 438 F. Supp. 2d at 666-67 (collecting cases) ("Rule 45(c)(3)(a)(ii) expands a district court's subpoena power under Rule 45(b)(2)."). Under such circumstances, a subpoena may be issued for such a party witness, and service will be deemed proper under Rule 45(b)(2). For example, the court in *Vioxx*, 438 F. Supp. 2d at 667, held that Rules 45(b)(2) and 45(c)(3)(A)(ii) "empower[ed] the Court with the authority to subpoena . . . an officer of a party, to attend trial beyond the 100-mile limit." *See also Clark v. Wilkin,* No. 2:06 cv 693 TS DN, 2008 WL 648542, at *1 (D. Utah March 10, 2008)("the majority of courts, including this Court, have found that when a subpoena is served upon a party to the suit, the 100 mile rule does not apply"); *Am. Fed. of Gov't Employees Local 922 v. Ashcroft*, 354 F. Supp. 2d 909, 915 (E.D. Ark. 2003).

In light of the above, to the extent the FUR Defendants believe they require some testimony from Fiorito at trial (which, based upon their liberal deposition citations, they evidently do), he could be subpoenaed as a "party witness." This renders him "available" for trial, and accordingly makes it improper to permit the FUR Defendants to reference his deposition testimony in lieu of live testimony. It matters not that Rule 32(a)(4) regarding unavailable witnesses applies equally to both parties and nonparties; the Plaintiff could opt to subpoena Fiorito in the event the FUR Defendants refuse to do so, thereby making him "available" and precluding the use of his deposition testimony. *Niver*, 430 F. Supp. 2d at 866 ("[u]ntil and unless such a witness who is under subpoena . . . is absent

8

when called, [a party cannot present] deposition testimony in lieu of live testimony.")

### III.  THIS COURT SHOULD COMPEL FIORITO TO GIVE SOME FORM OF LIVE TESTIMONY RATHER THAN PERMIT THE READING OF HIS DEPOSITION.

In an effort to resolve this dispute amicably, Plaintiff has proposed several alternatives to forcing Fiorito to travel to D.C. for trial (assuming of course that this, the best "solution" to the problem, is for some unknown reason a hardship for Fiorito). For example, Fiorito's trial testimony could be videotaped in advance in Florida, with counsel either present or participating remotely through a telecommunications link. Alternatively, Fiorito could testify live at trial but via remote telecommunications hookup, and all parties could question him like any other witness physically present at trial. All of these proposals were rejected by the FUR Defendants.

Plaintiff respectfully suggests that either of the proposed alternatives is lawful and appropriate. What is not lawful or appropriate is the FUR Defendants' effort to subvert Rule 32 in order to evade the effective cross-examination of Fiorito - a significant and material witness whose credibility should be judged first-hand by the jury.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court rule that Fiorito's deposition testimony may not be used in lieu of live testimony, and that if the FUR Defendants wish to offer his testimony, it must be in the form of either (a) a pre-videotaped direct and cross examination, (b) a live feed video hookup at the time of trial, or (c) live testimony with the witness in court.

Respectfully submitted,

Dated: March 26, 2008

/s/
Brian H. Corcoran (Bar No. 456976)
David J. Gonen (Bar No. 500094)
Katten Muchin Rosenman LLP
1025 Thomas Jefferson St., NW
Suite 700 East Lobby
Washington, D.C. 20007
Ph: (202) 625-3500
Fax: (202) 298-7570
Brian.Corcoran@kattenlaw.com

Susan Huhta (Bar No. 453478)
Warren R. Kaplan (Bar No. 034470)
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, D.C. 20036
Ph: (202) 319-1000
Fax: (202) 319-1010
Warren_Kaplan@washlaw.org

Attorneys for Plaintiff
Emile Mazloum