UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EMILE MAZLOUM,

    Plaintiff,

v.

DISTRICT OF COLUMBIA et al.,

    Defendants.

Civil Action No. 06-0002 (JDB)

**RESPONSE OF DEFENDANTS NIGHT & DAY, LLC AND MICHAEL PERSONS
TO PLAINTIFF'S MOTION *IN LIMINE*
TO PRECLUDE THE FUR DEFENDANTS
FROM USING DEFENDANT JOHN FIORITO'S DEPOSITION AT TRIAL**

    Defendant Night & Day Management, LLC ("FUR") and Michael Persons (together, the "FUR Defendants"), by their counsel, respectfully submit the following in response to Plaintiff's *in limine* Motion to preclude them from using at trial the deposition testimony of John Fiorito.

    With pellucid clarity, Federal Rules of Civil Procedure Rule 32(a)(4) unambiguously permits the FUR Defendants to use "*for any purpose*" the deposition testimony taken in this litigation of now-nominal Defendant John Fiorito, as he is located (and will be located at the time of the trial in this matter) 900 miles from this Court and as his absence from this jurisdiction has not been procured by the FUR Defendants:

> [Rule 32(a)(4):]  A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:
> …
> (B)    that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition[.]

Deputy Sheriff Fiorito's March 27, 2008 Certification (attached hereto as "Exhibit 1") establishes beyond cavil those relevant factual points, and no other bases for use of his

deposition testimony at trial are required to be given. "The admissibility of depositions under the 100 mile provision of Rule 32 is not conditioned upon the court's inability to subpoena the deponent." *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 204 n.2 (1st Cir. 1988), *citing United States v. Int'l Business Machines Corp.*, 90 F.R.D. 377, 380 (S.D.N.Y. 1981). *See also*, *e.g.*, *Houser v. Snap-On Tools Corp.,* 202 F.Supp. 181, 189 (D.Md. 1962) ("the mere absence of the deponent from the 100 mile area is sufficient, and the party attempting to submit the deposition into evidence need not proffer an excuse for the failure of the deponent to appear in court").

Nonetheless, through an obviously self-interested *ipse dixit*, Plaintiff invites this Court to disregard the law by urging Rule 32's supposed irrelevance here: "It matters not that Rule 32(a)(4) regarding unavailable witnesses applies equally to both parties and nonparties[.]" (Br. at 8.) The gist of Plaintiff's argument in this regard is (a) that the Federal Rules somehow recognize as effective the service of process on a party witness (or a witness who is an officer of a party) without regard to where that witness might actually be served therewith, (b) that this supposed ability to be subpoenaed anywhere renders that witness "available," and, thus, (c) that that "availability" trumps Rule 32(a)(4) and forecloses the FUR Defendants' proposed use of this deposition testimony. (*See* Br. at 7-9.)

It might first be observed, however, Plaintiff does not in this regard trouble himself with any consideration of the following rather obvious question:

> If any living individual who is a party to litigation is indeed always subpoenable (as Plaintiff posits) and thus is always "available" and, therefore, is never the proper subject of Rule 32(a)(4) concerning use of deposition testimony, why on God's green earth did the drafters of that rule make specific, express provision therein for its affirmative application to such party witnesses *whenever* they are "more than 100 miles from the place of hearing or trial or [are] outside the United States"?

In other words, why is it—supposedly—that "it matters not that Rule 32(a)(4) regarding unavailable witnesses applies equally to both parties and nonparties"? (Br. at 8.) Merely posing

2

these questions tends to suggest a fallaciousness that indeed underlies Plaintiff's argument on this point. In particular, his error here is based in large part on the false notion that a federal court's authorized power to compel a party's attendance at trial is, essentially, limitless.

As required by Rule 45(a)(2)(a), a subpoena "must issue" in order to compel a person's "attendance at a hearing or trial"; in particular here, such a subpoena must issue from this Court (*id.*). Similarly, as established by Rule 45(e), the exercise of federal courts' contempt powers concerning failure to obey a subpoena is limited to those persons who, "*having been served*, fail[] without adequate excuse to obey the subpoena" (emphasis added). Thus, issuance of a subpoena and proper service thereof are prerequisites to holding anyone in contempt for failing to appear at a trial.

The places whereat service of federal subpoenas may properly be made are specified in Rule 45(b)(2)-(4). Of those provisions, Rule 45(b)(2) is obviously the most relevant to Plaintiff's instant Motion:

> [Rule 45(b)(2):] Subject to Rule 45(c)(3)(A)(ii), a subpoena may be served at any place:
>
> (A)  within the district of the issuing court;
> (B)  outside that district but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection;
> (C)  within the state of the issuing court if a state statute or court rule allows service at that place of a subpoena issued by a state court of general jurisdiction sitting in the place specified for the deposition, hearing, trial, production, or inspection; or
> (D)  that the court authorizes on motion and for good cause, if a federal statute so provides.

It is, of course, impossible to read and appreciate the specific lengths and limits of those express geographic constraints and to conclude therefrom that an unstated subsection should also be read into the rule: "a subpoena may be served at any place … (E) the court so desires." Limits are limits, even for courts, and these are they.

The suggestion that Rule 45(c)(3)(A)(ii)—which addresses certain occasions when properly served subpoenas must be quashed[1]—somehow *extends* those Rule 45(b)(2) geographic service limits is entirely ludicrous, notwithstanding the fact that that is indeed a position which (as detailed below) some few federal courts have, to their shame, wrongfully employed in seeking to rationalize unauthorized (and, it must be observed, often unchallengeable) arrogations of extra-judicial subpoena power.

Rule 45(a)(2)(a) essentially says 'One may serve subpoenas in herein-specified places.' Rule 45(c)(3)(A)(ii)—to be read in direct conjunction with Rule 45(a)(2)(a), as that rule explicitly mandates—essentially says '*Even if one serves subpoenas in those specified places*, a court must nonetheless quash them under herein-specified conditions.'

Thus, the notion that Rule 45(c)(3)(A)(ii), *on quashing properly served subpoenas*, might instead somehow be legitimately read to say "One may serve subpoenas in places *in addition to those specified in Rule 45(a)(2)(a)*" is utterly groundless, as cogently observed by the court in *JamSports & Entm't, LLC v. Paradama Prods.*, 2005 U.S. Dist. LEXIS 59 (N.D.Ill., January 3, 2005) ("*JamSports*"):

---

[1] [Rule 45(c)(3):] Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

    (i)    fails to allow a reasonable time to comply;
    (ii)   requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
    (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv)   subjects a person to undue burden.

4

> Nothing in the history of the adoption of Rule 45(c)(3)(A) suggests that it was intended to alter the longstanding geographic limitations on the reach of a district court's subpoena power. Nor does the text of the Rule support the reading proposed by JamSports or in the cases upon which it relies. Rule 45(c)(3)(A) does not confer authority for service of a subpoena; it confers authority to quash or modify a subpoena. It provides an exception to Rule 45(b)(2), not an addition to that Rule. *See Johnson v. Land O'Lakes, Inc.,* 181 F.R.D. 388, 396-97 (N.D. Iowa 1998).
>
> Read in context, the cross-reference of Rule 45(c)(3)(A)(ii) in Rule 45(b)(2) is meant to reflect that even if service of a subpoena is otherwise proper under Rule 45(b)(2), the subpoena is to be quashed if it imposes a requirement identified in Rule 45(c)(3)(A)(ii). Specifically, even if a subpoena is *served* within the geographic boundaries of a district, outside the district but within 100 miles of the place of trial, or outside the state in which the district lies, it must be quashed if it requires a non-party witness to *travel* more than 100 miles from where he or she resides, employs, or regularly transacts business. To provide a concrete example, a witness who lives and works in Galena, Illinois can properly be served with a subpoena under Rule 45(b)(2) to appear at a trial in Chicago, because Galena is within the Northern District of Illinois. But if the witness is not a party or officer of a party, she is entitled under Rule 45(c)(3)(A)(ii) to have the subpoena quashed, because it would require her to travel more than 100 miles.

2005 U.S. Dist. LEXIS 59 at **4-5 (emphases in original).

In distinct contrast to the *JamSports* court, a few other federal courts have adopted opposite readings of Rule 45 which are muddled, which disregard express provisions of the law, which invent judicial authority where the Federal Rules of Civil Procedure in fact invest no such authority, and, perhaps worst, which tend merely to parrot each other in an unthinking manner.[2]

---

[2] *See esp. In re Vioxx Prods. Liability Litig.*, 438 F.Supp.2d 664, 666-67 (E.D.La. 2006) ("*Vioxx*"), and *Clark v. Wilkin*, 2008 U.S. Dist. LEXIS 18419 (D.Utah March 10, 2008) ("*Clark*").

Without doubt, the particular outcomes in some such cases may have been viewed by the deciding courts in an "ends-justify-means" fashion (*e.g.*, *Clark*, 2008 U.S. Dist. LEXIS 18419 (ordering the case's only eyewitness to attend trial 350 miles from his home)).

Nonetheless, the upshot of these decisions is that the so-called "rule of law" turns out to be worth not even the paper it's written on and that new *ad hoc* "rules" and new powers will, at least by some courts, be self-legislated and arrogated on the fly—and, then, of course, applied—in order to reach results desired by those courts though foreclosed by the actual written laws and rules. *E.g.*, *Vioxx*, 438 F.Supp.2d at 668:

> While this Court understands the limitations of its judicial power and accepts that it is not a deliberative body, the Court believes that the 100 mile rule as it currently exists has

(footnote continued ...)

5

At its March 31, 2008 pretrial conference, this Court aptly suggested that Plaintiff might indeed have "slapped" a trial subpoena on John Fiorito when he was being deposed. Similarly, if a jury's seeing his "live" testimony was actually as important as Plaintiff now claims, Plaintiff could certainly have videotaped Mr. Fiorito's testimony (as he did regarding deposition testimony given by former MPD Officer Ramirez). Plaintiff did, though, neither, and the Federal Rules of Civil Procedure ought not to be rewritten, upon Plaintiff's instant Motion, in order to remedy his lack of foresight or to accommodate his supposed after-the-fact discovery desires, notwithstanding unworthy and non-binding decisional precedents such as *Vioxx*. Neither should

---

(... footnote continued)
little utility. Although this Court lacks any power to repeal or amend Rule 45, the Court suggests that an amendment to the rule would be wise. *See* Sloan & Gotfryd, *supra*, at 40-44; Roach, *supra*, at 109-117. This Court, however, does have the power to interpret Rule 45. In interpreting Rule 45, the Court finds that it has authority to compel the appearance of Mr. Anstice to attend and testify at a trial in New Orleans.

Perhaps the most charitable thing to say about the *Vioxx* decision is that it involved multi-district products liability litigation and that the subpoena issues therein addressed *might* properly have been resolved, with the same outcome, because of that special multi-district context: "If one court is going to be legislatively mandated to handle thousands of cases from throughout the nation, it needs some national reach at least as to the parties." 438 F.Supp.2d at 669, *citing* 28 U.S.C. § 1407.
In a rather less charitable vein, one might well conclude that that Eastern District of Louisiana court failed to recognize the irony of its own above-quoted recommendation concerning the "wis[dom]" of effecting an amendment to Rule 45. Amending the rule in this respect would, naturally, be completely superfluous since the court's own Orwellian "war is peace" construction of that language yielded the precisely result it claimed would be the appropriate result of such amendment:

Essentially, the PSC contends that Rule 45(c)(3)(A)(ii) expands a district court's subpoena power under Rule 45(b)(2). The Court agrees.
The plain, unambiguous language of Rule 45 supports the PSC's position.

438 F.Supp.2d at 666-67. Why should, one might ask, a plain and unambiguous rule allowing certain service of process ever be amended to permit that same form of service? Perhaps the answer is: for the benefit of unsophisticated legal practitioners whose gross ignorance prevents them from discerning as astutely as did the *Vioxx* court that 'prohibition' in Rule 45 plainly and unambiguously means 'permission.'

6

Deputy Sheriff Fiorito otherwise be put to any additional trouble or expense here, as Plaintiff has already deposed him twice in this matter.

The FUR Defendants therefore ask that, pursuant to Rule 32, their right to proffer at trial designations from the Fiorito Depositions—designations which, it might be noted, contain no questioning by his own counsel—be confirmed and that Plaintiff's Motion thus be denied.

Finally, the undersigned feels impelled to add for the record that Plaintiff's counsels' assertions to this Court that the FUR Defendants' seeking to use this evidence "is not lawful" and constitutes an effort by them "to subvert Rule 32" (Br. at 9)—beyond being legally unfounded and stupendously erroneous—are unprofessional.

        Respectfully submitted,

        /s/ Paul A. Fitzsimmons
        _____
        Thomas S. Schaufelberger, Bar No. 371934
        Paul A. Fitzsimmons, Bar No. 444829
        SAUL EWING LLP
        2600 Virginia Avenue, N.W.
        The Watergate—Suite 1000
        Washington, D.C.  20037
        Telephone: (202) 333-8800

        Counsel for
        Defendants Night & Day Management, LLC and
        Michael Persons

Dated:  April 3, 2008