UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**EMILE MAZLOUM,**

    **Plaintiff,**

    **v.**                                 Civil Action No.  06-0002 (JDB)

**DISTRICT OF COLUMBIA**
**METROPOLITAN POLICE**
**DEPARTMENT, et al.,**

    **Defendants.**

**MEMORANDUM AND ORDER**

    This case, presently scheduled to go to trial beginning April 23, 2008, comes before the Court on plaintiff Emile Mazloum's motion *in limine* to preclude defendants Night & Day Management, LLC ("FUR") and Michael Persons (collectively the "FUR defendants"), from using portions of John Fiorito's deposition testimony at trial in lieu of his live appearance.  That motion is now fully briefed and ripe for resolution.  For the reasons set forth below, the Court will deny Mazloum's motion.

**DISCUSSION**

    John Fiorito remains a nominal defendant to this action.  Although the Court has granted summary judgment to Fiorito on all of the claims lodged against him, see Mazloum v. District of Columbia, 522 F. Supp. 2d 24 (D.D.C. 2007), that decision is not yet a final order and he has not been dismissed from this action.  See Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties . . .").  From the

submitted deposition excerpts, it is clear that Fiorito (through his wife) maintains a 5% ownership interest in the FUR Nightclub that manifests itself in the form of a $130,000 annual annuity.[1]  See Pl.'s Mot. Ex. A Fiorito Dep. at 34:2-17.  Indeed, FUR designated Fiorito as a Rule 30(b)(6) deponent during discovery to testify concerning the venue's lighting and sound system, which Fiorito designed and installed.  He currently resides in Florida and his wife still draws a weekly amount from FUR, but maintenance on that system is now performed by Fiorito's "sound and lighting company that [he is] affiliated with [in the District]."  See Pl.'s Mot. Ex. B Fiorito Dep. at 8:7-13.

Fiorito was present at the club on March 11-12, 2005, the date of the events at issue.  Although he was not a primary participant in any of the relevant physical activity that occurred on that evening, Fiorito's role in the events of March 12, 2005 is more noteworthy.  In particular, Mazloum alleges that Fiorito summoned Imad Alkadi to the FUR Nightclub to inform him that if Mazloum continued to pursue his Metropolitan Police Department complaint he would be "burned."  In addition, Alkadi maintains that Fiorito represented to him that the videotape of the incident recorded by FUR's security camera system was already "gone" -- that is, it had been destroyed far sooner than the scheduled automatic deletion date.

The present controversy centers around the FUR defendants' desire to submit Fiorito's deposition testimony to the jury in lieu of his live participation at trial.  They maintain that Fed. R. Civ. P. 32(a)(4)(B) authorizes them to do precisely that because Fiorito is an "unavailable witness" under that rule since he resides in Florida, which is self-evidently more than 100 miles from the

---

[1] At one point, Fiorito had a 10% interest that paid a variable weekly amount.  See Pl.'s Mot. Ex. A Fiorito Dep. at 35:2-30.  That share was reduced to 5% to provide Fiorito's wife with a guaranteed amount of $2,500 per week.  Id.

situs of the trial.  In relevant part, Fed. R. Civ. P. 32(a)(4) provides:

> A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds: . . .
>> (B) that the witness is more than 100 miles from the place of hearing or trial or is outside of the United States, unless it appears that the witness's absence was procured by the party offering the deposition.

See Fed. R. Civ. P. 32(a)(4)(B).  Hence, the FUR defendants insist that this Rule covers precisely this scenario and that it authorizes them to submit Fiorito's deposition testimony -- whether you characterize him as a party, officer, managing agent, or otherwise -- for any purpose whatsoever.  They are correct.  There is no ambiguity in Rule 32 on this point.  The pertinent facts here bring this case squarely within the ambit of Rule 32.  And there is no evidence that the FUR defendants have procured Fiorito's absence from this jurisdiction.  Thus, pursuant to Rule 32, the FUR defendants may introduce Fiorito's deposition testimony for any purpose they desire, subject to, of course, the normal constraints imposed by the rules of evidence.

Notwithstanding the plain import of Rule 32, Mazloum insists that it is not applicable here.  That is so, he argues, because Fiorito is no ordinary witness in this case.  Instead, he is still an actual party to this matter, he was designated as a Rule 30(b)(6) deponent, and he is a "managing agent," if not an officer,[2] of FUR.  Those factors, Mazloum contends, indicate "that [Fiorito] is by definition *available* even if he happens to be literally outside the 100-mile limit set forth in Rule 32."  Pl.'s Reply at 3 (emphasis in original).  That is because, the argument goes, "a witness whose presence at trial may be compelled pursuant to a subpoena does not qualify as 'unavailable' under the [Rule 32(a)(4)(B)] exception."  Pl.'s Mot. at 7.  Although there is no support for that

---

[2] FUR evidently lacks any formal corporate structure and does not appear to follow ordinary corporate formalities.

proposition found anywhere in the Federal Rules of Civil Procedure, Mazloum nevertheless maintains that Niver v. Travelers Indemnity Co. of Illinois, 430 F. Supp. 2d 852, 866 (N.D. Iowa 2006), held just that.

Unfortunately for Mazloum, Niver did no such thing. In that case, the plaintiff sought to introduce through Rule 32(a)(4)(B) the deposition testimony of several employees of the corporate defendant who were ordinarily located more than 100 miles from the place of trial.[3] Significantly, however, the defendant in that case had represented to the court that the "witnesses in question will all be present to testify at the courthouse when required." Niver, 430 F. Supp. 2d at 866. Accordingly, the court held that "until and unless such a witness who is under subpoena or whom [defendant] has guaranteed will be present is absent when called, [plaintiff] cannot present videotaped deposition testimony in lieu of live testimony pursuant to [Rule 32(a)(4)(B)]." Id. Thus, Niver stands for the unremarkable proposition that a party cannot introduce the deposition testimony of a witness (other than for impeachment purposes) who will, in fact, be present and giving live testimony at trial. As another court put it, if certain witnesses "are made available as has been agreed for examination [at trial], the Court will not allow deposition testimony in lieu of live testimony, even though at the time of . . . trial the witness resides or is located at a greater distance than 100 miles." Young & Assocs. Public Relations, L.L.C., v. Delta Air Lines, Inc., 216 F.R.D. 521, 524 (D. Utah 2003). Simply put, it is the fact that a witness will actually be present at the trial that renders him or her "available," and thus outside the scope of Rule 32(a)(4)(B), not the fact that the witness could be compelled to appear via subpoena, as Mazloum would have it. Here,

---

[3] In fact, Niver interpreted an older version of Rule 32; the provision now found in Rule 32(a)(4)(B) was then found in Rule 32(a)(3)(B).

of course, the FUR defendants have explicitly stated that Fiorito will not be present for the trial. Niver, then, is entirely inapposite.

For present purposes, that is all that is strictly required to resolve this motion. Mazloum has not attempted to serve a trial subpoena upon Fiorito in Florida. In any event, nothing in Rule 45, which outlines the use of subpoenas in federal litigation, has any prospective impact upon the application of Rule 32(a)(4)(B). Put another way, even if it were possible for Mazloum to serve a subpoena that Fiorito could not successfully quash, until Mazloum does so and compels Fiorito to show up at trial, the plain text of Rule 32(a)(4)(B) operates in full force.

It does seem likely, however, that Mazloum may attempt to serve Fiorito with a trial subpoena that the FUR defendants would surely move to quash. The question of the proper construction and reach of Rule 45 is not presently before the Court and thus the Court will not issue any definitive decision on that question. Nevertheless, it seems appropriate to comment on this issue given that the parties addressed it at length in their briefing. Mazloum appears to be correct that the majority of federal district courts that have addressed the interaction between Rule 45(b)(2)(B) and Rule 45(c)(3)(A)(ii) have held that the latter authorizes a federal court to issue a trial subpoena upon a party witness outside of the 100-mile radius limitation contained in Rule 45(b)(2)(B). See, e.g., Clark v. Wilkin, 2008 WL 648541 at *1 (D. Utah Mar. 10, 2008) (collecting cases from ten different federal courts that reflect the "majority" position). But there are reasons to question that majority position.

To begin with, based simply on the text of Rule 45(b)(2) it would seem that Rule 45(c)(3)(A)(ii) functions as a limitation on the scope of Rule 45(b)(2)(B) rather than an expansion of authority. In relevant part, Rule 45(b)(2) states: "Subject to Rule 45(c)(3)(A)(ii), a subpoena

may be served at any place . . ." See Fed. R. Civ. P. 45(b)(2) (emphasis added).  The phrase "subject to," of course, commonly refers to a constraint, and there is no reason to believe that it does not do so here.  The majority position, however, appears to interpret that phrase as if it read: "*In addition to the provisions* of Rule 45(c)(3)(A)(ii), a subpoena may be served at any place . . ."  That is an odd construction.

But even if one were to accept the apparent majority reading -- that Rule 45(c)(3)(A)(ii) could somehow be an expansion of the reach of Rule 45(b)(2) -- the terms of Rule 45(c)(3)(A)(ii) do not appear to support the conclusion that the majority of courts have reached.  The logical jump that those decisions make, as this Court understands it, begins with Rule 45(c)(3)(A)(ii), which mandates that a court quash any subpoena served upon a non-party (or an employee of a party who is not an officer) that would require that witness to travel more than 100 miles "from where that person resides, is employed, or regularly transacts business in person."  See Fed. R. Civ. P. 45(c)(3)(A)(ii).  From that proposition, those courts have concluded that a party witness may be served with a subpoena beyond 100 miles from the place of trial pursuant to Rule 45(b)(2)(B).

But that may not logically follow from the text of the Rule.  Indeed, the upshot of Rule 45(c)(3)(A)(ii) with respect to party witnesses is, as this Court sees it, that a court is not required to quash a properly served subpoena even if it required a party witness to travel more than 100 miles.  If, for instance, Mazloum had served Fiorito with a trial subpoena while he was present in the District for his 30(b)(6) deposition, Rule 45(c)(3)(A)(ii) would not compel this Court to quash that subpoena (assuming Fiorito is in fact a party) even if he had to travel from Florida to attend the trial.  But there does not appear to be a basis in the text of Rule 45(c)(3)(A)(ii) to authorize valid service of a subpoena upon a party witness beyond the normal 100-mile range of a federal court's

subpoena power.  Two other federal courts, which evidently comprise the "minority" position, have reached this conclusion.  See Jamsport & Entm't, LLC v. Paradama Prods., Inc., 2005 WL 14917 at *1 (N.D. Ill. Jan. 3, 2005); Johnson v. Land O'Lakes, 181 F.R.D. 388, 397 (D. Iowa 1998).

Thus, as it now stands, the FUR defendants will introduce large portions of Fiorito's deposition testimony into evidence.  And Mazloum, presumably, will likewise do the same through counter-designations.  In effect, the trial will involve reading hundreds of pages of documents to the jury.  To be sure, this is a highly unsatisfactory result.  Fiorito is not simply a tangential witness in this case; he remains a party to this action, he was an eye-witness to some of the events of March 11-12, 2005, and he played a key role in the subsequent destruction of the videotape evidence, as Mazloum would have it.  Under such circumstances, it is unusual to present such an important witness's testimony through lengthy deposition excerpts.  The long-standing preference for live testimony serves a sound purpose, and the Court urges the parties to reach an arrangement whereby Fiorito's testimony can either be videotaped or otherwise presented to the jury in a "live" fashion rather than tediously reading deposition excerpts into the record.  Absent such an agreement, however, Rule 32 does indeed permit the FUR defendants to utilize Fiorito's deposition excerpts as they see fit.[4]

## CONCLUSION

Upon consideration of [175] Mazloum's motion *in limine*, the opposition and reply thereto, the entire record herein, and for the foregoing reasons it is hereby **ORDERED** that the motion is

---

[4] At least one other federal court has suggested that "the court's inherent power enables the court to order" that a party witness appear at trial notwithstanding the fact that the witness resided outside of the 100-mile service radius authorized by Rule 45(b)(2).  See Clark, 2008 WL 648542 at *2.  This Court, however, is not inclined to exercise its inherent power in a manner that would conflict with the structure and terms of the Federal Rules of Civil Procedure.

**DENIED**.

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated:  April 11, 2008