# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

EMILE MAZLOUM,

     Plaintiff,

     v.

DISTRICT OF COLUMBIA, *et al.*,

     Defendants.

C.A. No. 06-0002 (JDB)

## DEFENDANT ANTHONY RAMIREZ'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT, AND DEFENDANTS RICHMOND PHILLIPS, THADDEUS MODLIN AND LOUIS SCHNEIDER'S MOTION FOR JUDGMENT AS A MATTER OF LAW

     Defendant Anthony Ramirez ("Ramirez"), by and through counsel, moves this Court for judgment notwithstanding the verdict pursuant to Fed. R Civ. P. 50(b)(1). Defendants Richmond Phillips ("Phillips"), Thaddeus Modlin ("Modlin"), and Louis Schneider ("Schneider"), by and through counsel, move for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a)(1).[1] As grounds for their requested relief, these Defendants state that: 1) Probable cause existed for Plaintiff's arrest and therefore his false arrest claim pursuant to 42 U.S.C. § 1983 fails as a matter of law against Defendants Ramirez, Phillips, Modlin and Schneider; 2) The Defendants are entitled to qualified immunity under 42 U.S.C. § 1983, for Plaintiff's false arrest claim; 3) Based on the Court's granting Defendants Phillips, Modlin and Schneider's Rule 50 motion at the close of Plaintiff's case-in-chief, these Defendants are entitled to judgment on Plaintiff's excessive

---

[1] Plaintiff's 42 U.S.C. § 1983 claim against defendants, Phillips, Modlin and Schneider was not tried before this Court due to these defendants' interlocutory appeal of this Court's denial of their motion for summary judgment based on their qualified immunity defense. Defendants Phillips, Modlin and Schneider have moved the Court of Appeals to hold further briefing in abeyance in the event this Court indicates a willingness to grant their post-trial motion. If this Court so indicates, these defendants will ask the Court of Appeals to remand the case to this Court to allow a final judgment to be entered in their favor as provided in *Smith v. Pollin,* 194 F.2d 349, 350 (D.C. Cir. 1952).

force claim against them; 4) Based upon the jury's verdict in favor of Defendant Ramirez on

Plaintiff's assault and battery claims against him, and the jury's responses to the Special

Interrogatories on the Verdict Form, Plaintiff has failed to show that Defendant Ramirez used

excessive force to remove him from the Fur Nightclub; 5) The Defendants are entitled to

qualified immunity under 42 U.S.C. § 1983 for excessive force; and (6) Plaintiff is not entitled to

an award of punitive damages against defendant Ramirez.

The grounds for this motion are more fully set forth in the accompanying memorandum

of points and authorities attached hereto and incorporated herein.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

___/s/ Patricia A. Jones_____
PATRICIA A. JONES [428132]
Chief, General Litigation Sec. IV


___/s/ Leticia L. Valdes_____
MICHAEL P. BRUCKHEIM [455192]
Chief, Criminal Section
LETICIA L. VALDES [461327]
Assistant Attorney General
SHAMEKA L. GAINEY [493891]
Special Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 727-3807; (202) 442-9845; (202) 727-6295
(202) 730-1881 (fax)

**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

EMILE MAZLOUM,

    Plaintiff,

    v.

DISTRICT OF COLUMBIA, *et al.*,

    Defendants.

C.A. No. 06-0002 (JDB)

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ANTHONY RAMIREZ'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT, AND DEFENDANTS RICHMOND PHILLIPS, THADDEUS MODLIN AND LOUIS SCHNEIDER'S MOTION FOR JUDGMENT AS A MATTER OF LAW

### INTRODUCTION

In this case, Plaintiff asserts that Officer Anthony Ramirez is liable for assault and battery and violations of the D.C. Human Rights Act, 42 U.S.C. §§ 1981, and 1983. The jury found against Plaintiff on all but the section 1983 claim for false arrest or excessive force and awarded a relatively small amount of damages for the purported violation. The jury then answered sixteen special interrogatories, specifically crafted by the Court to assess the defendants' entitlement to qualified immunity for any constitutional violation. The interrogatories ably served that purpose and confirmed that there was no clear violation of plaintiff's rights (or indeed, any violation at all).

According to the version of events described by the special interrogatory responses (together with the jury's conclusion that there was no assault and battery), the defendant Officers (who announced that they were police officers in the presence of Plaintiff) removed Plaintiff from the bar after he fought with a bar bouncer, acted drunk and disorderly, and resisted the officers' attempts to remove him. As they were removing him, the officers "forced" the plaintiff "across the floor and

roughly handled him with excessive force," but the Plaintiff was not punched, kicked, or otherwise battered by the officers during the incident, none of which was racially motivated. Under these facts, it is clear as an initial matter that the officers had probable cause to arrest Plaintiff, and, at a minimum, were reasonable in reaching that conclusion.

This version of events, moreover, cannot sustain a finding that the force at issue was unreasonable, let alone so obviously excessive that it vitiates the Defendants' entitlement to qualified immunity. Indeed, if there is any place where the leeway afforded by qualified immunity is necessary, it would be in assessing the level of force necessary to move a drunk and disorderly individual resisting removal across a floor and outside a nightclub, without punching, kicking or otherwise battering that individual. This version of events also precludes a finding that the Defendant Ramirez's conduct was so egregious and outrageous as to make punitive damages appropriate. Defendant Ramirez therefore respectfully requests that the Court enter judgment notwithstanding the verdict. Defendants Phillips, Modlin and Schneider request that judgment as a matter of law be entered in their favor.

## PRELIMINARY STATEMENT

Plaintiff initially filed this lawsuit on January 4, 2006, against Defendants Night and Day Management, LLC, Michael Rehman, District of Columbia Metropolitan Police Department, the District of Columbia, Anthony Ramirez, and a number of John Doe police officers. *See* Docket Entry #1. On March 7, 2006, Plaintiff filed his First Amended Complaint, and added a number of other Defendants, including Michael Persons, Thaddeus Modlin, Richmond Phillips, Louis Schneider, Jose Acosta, David Smith, and John Fiorito. *See* Docket Entry #34. On May 18, 2007, Plaintiff filed his Second Amended Complaint. *See* Docket Entry #110.

Plaintiff alleges that while at Fur Nightclub on the night of March 11-12, 2005, he was the victim of a vicious beating perpetrated by Michael Persons and the off-duty officers Ramirez, Modlin, Phillips, and Schneider.  See Pl.'s First Amended Complaint, at ¶¶ 2, 60.  Plaintiff alleges that the officers employed excessive and unnecessary force when they arrested and ejected him from the nightclub while identifying themselves as police officers.  *Id.*  Plaintiff also averred that his Lebanese national origin, race and perceived religion were disparaged when Defendant Ramirez accused him of being an "Al Qaeda," and that the discrimination was the moving force behind his beating and ejection from the nightclub.  *Id.*

Plaintiff filed suit under 42 U.S.C. § 1981,[2] 1983,[3] and 1985,[4] and the District of Columbia's Human Rights Act (DCHRA),[5] as well as under the common law for assault and battery, negligence, civil conspiracy, reckless/negligent spoliation of evidence, aiding and abetting the spoliation of evidence, and liability premised on the doctrine of *respondeat superior.*

---

[2] Section 1981(a) states in relevant part, that: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory. . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . .

[3] Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

[4] Section 1985 (3) states in relevant part:

> If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws;. . . .in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

[5] The DCHRA (a)(1) states in relevant part: "It shall be an unlawful discriminatory practice to . . . deny directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations . . . wholly or partially for a discriminatory reason based on the actual or perceived: race, color, religion, national origin. . . ."

See Pl.'s Second Amended Complaint, at ¶ 1, at Docket Entry #110.  On November 6, 2007, the

Court granted Defendants Acosta, Smith, Fiorito and Rehman's motion for summary judgment,

and granted in part and denied in part Defendants District of Columbia, Ramirez, Phillips,

Modlin, Schneider, Fur Nightclub and Michael Persons' motion for summary judgment.  The

Court denied Defendants Phillips, Modlin, and Schneider's qualified immunity defense pursuant

to 42 U.S.C. § 1983, as well as Plaintiff's claims of assault and battery, and bystander liability

against these Defendants under the D.C. Human Rights Act.  The Court denied Defendant

Ramirez' motion for judgment on Plaintiff's constitutional claims filed pursuant to 42 U.S.C. §

1981 and the D.C. Human Rights Act.[6]  The Court denied Defendant Persons' motion for

judgment on Plaintiff's assault-and-battery claim against him. Lastly, the District and Fur

Nightclub remained as party defendants under the theory of *respondeat superior* liability for the

common-law claims.

On November 14, 2007, Defendants Phillips, Modlin, and Schneider appealed the Court's

denial of their qualified-immunity defense under 42 U.S.C. § 1983.  *See* Docket Entry #140.

On April 23, 2008, the jury trial commenced on Plaintiff's claims against Defendant

Anthony Ramirez for assault and battery under common law, false arrest and excessive force

pursuant to 42 U.S.C. § 1983, discrimination on the basis of race in violation of 42 U.S.C. §

1981, and discrimination on the basis of actual or perceived race, appearance, religion, or

national origin in violation of the D.C. Human Rights Act, D.C. Official Code §§ 2-1401.01, *et*

*seq.*  Plaintiff's claims for assault and battery, discrimination on the basis of race in violation of

42 U.S.C. § 1981, and discrimination on the basis of actual or perceived race, appearance,

religion, or national origin in violation of the D.C. Human Rights Act were tried against

---

[6] Defendant Ramirez did not move for summary judgment on Plaintiff's claims filed under 42 U.S.C. § 1983.

defendants Richmond Phillips, Thaddeus Modlin and Louis Schneider.  Plaintiff's claims against the District of Columbia and Fur Nightclub under a theory of *respondeat superior* liability for the common law claims of assault and battery remained, as well as the claim against the District under the D.C. Human Rights Act.

At the close of Plaintiff's case-in-chief, this Court granted defendants Richmond Phillips, Thaddeus Modlin and Louis Schneider's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a)(1) on plaintiff's claims against them for assault and battery.  The Court found that Defendants Phillips, Modlin and Schneider had a qualified privilege to remove Plaintiff from the FUR Nightclub, and that at the time of the incident Plaintiff was resisting his removal from the club.

On May 6, 2008, the jury returned a verdict in favor of Defendants Phillips, Modlin and Schneider on all counts pending against them.  The jury returned a verdict in favor of defendant Ramirez on all counts against him, save for the single count of false arrest or excessive force pursuant to 42 U.S.C. § 1983.  The jury awarded compensatory damages in the amount of $5,000 and punitive damages in the amount of $25,000.  On May 6, 2008, the jury verdict form was docketed.  *See* Docket Entry #204, hereby attached as Exhibit 1.  On May 9, 2008, the Clerk docketed the judgments.  *See* Docket Entries ##206-208. Defendant Ramirez now seeks relief notwithstanding the judgment pursuant to Fed. R. Civ. P.  50(b), and Defendants Phillips, Modlin and Schneider seek judgment as a matter of law on Plaintiff's false arrest or excessive force claim filed pursuant to 42 U.S.C. § 1983.

## STATEMENT OF FACTS

At trial, Plaintiff testified that on March 11, 2005, he drank 1-2 beers prior to going to the Fur Nightclub with his friends Marwan Abi-Aad and Imad Alkadi, both party promoters for the

club.[7]  Plaintiff admitted that after he arrived at the Fur Nightclub, he drank another 2-3 beers.

Plaintiff testified that he mingled at the club that night and tried to go on the stage several times,

but was stopped by Defendant Persons. Plaintiff testified that on one occasion, instead of

walking up the stairs to get on the stage, he climbed on the stage.  Defendant Persons testified

that he noticed Plaintiff on the stage and decided to eject him from the nightclub because by

climbing on the stage he had subjected himself to possible injury and the club to liability.

Plaintiff concedes that Defendant Persons was in the process of ejecting him from the club prior

to the incident that forms the basis of this lawsuit.

Plaintiff testified that Defendant Persons grabbed him from behind and pushed him to the

floor.  Defendant Persons testified that he walked behind Plaintiff and placed his hand on

Plaintiff's back to escort him from the club.  Defendant Persons testified that Plaintiff turned

around and hit him.  Defendant Persons denied pushing Plaintiff to the floor but admitted that he

punched Plaintiff in the face and saw blood come from his nose.  Defendant Persons testified that

Plaintiff's blood got all over the front of his shirt.  Plaintiff did not refute Defendant Persons'

testimony that he punched Plaintiff in the face or that blood came from his nose after he was

punched by Defendant Persons.

Plaintiff's friend Alkadi testified that when he saw that Defendant Persons was

attempting to eject Plaintiff from the nightclub, he tried to intervene to prevent Plaintiff's

ejection from the nightclub.  Defendant Modlin testified that he saw Plaintiff and his friends

struggling with Defendant Persons, who at the time had his jacket over his head.  Defendants

Modlin, Phillips and Ramirez testified that as they approached the "fray," they identified

themselves as police officers.  Defendants Modlin and Phillips intervened in the fray and tried to

---

[7] The Defendants do not have the benefit of the trial transcripts to support their motion.  However, the witnesses
testified consistent with their deposition testimony.

remove Plaintiff from the nightclub.  All witnesses testified that Plaintiff resisted being removed

from the nightclub. Plaintiff testified that Defendants Phillips, Modlin, Schneider and Ramirez

joined the fray  by beating, kicking and dragging him across the dance floor, causing him to

become saturated with alcohol that had been dropped on the floor by other customers.  David

McLeod, head of security at FUR Nightclub, testified that FUR nightclub has several employees

on staff whose job is to immediately wipe any spills on the floor at the nightclub. They walk

around the nightclub picking up empty glasses, bottles and the like and when they see a spill they

"immediately" wipe it clean.

Plaintiff testified that Defendant Ramirez called him an Al-Qaeda while in and outside

the club.  Plaintiff testified that his removal from the club was motivated by Defendant

Ramirez's racial animosity, and the other Defendants failed to protect him from Defendant

Ramirez's excessive force.  Plaintiff testified that he was dragged outside and thrown to the curb

which caused him to hit his head.  Plaintiff admitted that he called Defendant Ramirez a racial

epithet, but he did so only after Defendant Ramirez continued to call him a "fucking Al-Qaeda."

Plaintiff testified that he was not drunk on the night of March 11, 2005, or the early

morning hours of March 12, 2005.  Abi-Aad testified that Plaintiff was "tipsy" and he thought

that the Defendants were taking him to the drunk room. All of the Defendants testified that

Plaintiff was drunk and disorderly.  Defense witness Officer Jose Acosta testified that Plaintiff

appeared intoxicated while outside of the nightclub.  Officer Trapero, another witness who

testified in the Defendants' case-in-chief, testified that at the hospital, after the alleged incident,

Plaintiff appeared to be intoxicated.

Defendant Ramirez testified that he observed the other Defendants trying to remove

Plaintiff from the nightclub.  Plaintiff was resisting his removal from the club.  Defendant

Ramirez testified that he placed one of his handcuffs on Plaintiff's wrist, but could not handcuff the other wrist because of Plaintiff's resistance. Defendant Ramirez testified that the other Defendants assisted in getting the other handcuff on Plaintiff's wrist. Defendant Ramirez denied kicking, dragging or otherwise beating Plaintiff, and denied calling him an "al-qaeda." Defense witness Sultan Al-Hammoud, who was outside at the same time as Plaintiff and Defendant Ramirez, testified that he did not hear anyone call Plaintiff an "al-qaeda." Defendant Ramirez testified that on one occasion while outside, he "swept" Plaintiff's legs when Plaintiff stood up. According to Defendant Ramirez, this was a technique he learned at the police academy.

At the close of Plaintiff's case-in-chief, this Court granted defendants Richmond Phillips, Thaddeus Modlin and Louis Schneider's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a)(1) on plaintiff's claims against them for assault and battery. The Court found that Defendants Phillips, Modlin and Schneider had a qualified privilege to remove Plaintiff from the FUR Nightclub, and that at the time of the incident Plaintiff was resisting his removal from the club.

At the end of the Defendants' case-in-chief the Defendants renewed their Rule 50 motion. The Defendants argued that Plaintiff had not met his burden to show that he was removed from the nightclub for discriminatory reasons, and that there was no evidence that Defendants Phillips, Modlin or Schneider heard the racial epithet allegedly made by Defendant Ramirez, and/or sought to remove Plaintiff from the nightclub based on discrimination. The Court took the motion under advisement, and the case was given to the jury.

In order to aid it in its determination of Defendant Ramirez's qualified immunity defense, the Court submitted detailed special interrogatories to the jury as part of the jury verdict form. The jury was instructed to answer either "yes" or "no" to the questions listed on the jury verdict

form.  During deliberations, the jury questioned whether their answers to the special

interrogatories had to be unanimous.  They were instructed that while their verdict had to be

unanimous, if they could not answer "yes" or "no," they could answer in some other format as

long as their verdict was unanimous.  They were also told that any special interrogatory that the

jury could not unanimously answer, even in another format, could be left unanswered.  *See* Jury

Note and Instruction, at Docket Entries 200-201.

The jury found that defendants Phillips, Modlin and Schneider neither discriminated

against the Plaintiff on the basis of race in violation of 42 U.S.C. § 1981, nor did they

discriminate on the basis of actual or perceived race, appearance, religion, or national origin in

violation of the D.C. Human Rights Act. The jury returned a verdict in favor of Defendant

Ramirez on Plaintiff's claims of assault and battery and discrimination under 42 U.S.C. § 1981,

and the D.C. Human Rights Act.  The jury specifically stated that the incident was not racially

motivated.  However, the jury returned a verdict against Defendant Ramirez under 42 U.S.C. §

1983, and awarded Plaintiff $5,000.00 for compensatory damages, and an award of $25,000.00

for punitive damages.  The jury also found in favor of Plaintiff against Defendant Persons on the

battery claim and awarded Plaintiff $5,000.00 in compensatory damages.  *See* Court Docket

#204, Verdict Form.

## **ARGUMENT**

### I.    **Standard of Review**

Under Fed. R. Civ. P. 50(b), "[i]f the court does not grant a motion for judgment as a

matter of law made under subdivision (a), the court is considered to have submitted the action to

the jury subject to the court's later deciding the legal questions raised by the motion.  The

movant may renew its request for judgment as a matter of law by filing a motion no later than 10

days after the entry of judgment or…."  In ruling on a renewed motion, the court may:

> (1)    if a verdict was returned:
>        (A)    allow the judgment to stand,
>        (B)    order a new trial, or
>        (C)    direct entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b)(1).

> Fed. R. Civ. P. 50(b) also provides that the court may,

> 2)    if no verdict was returned;

> (A)    order a new trial, or
> (B)    direct entry of judgment as a matter of law.

Defendant Ramirez seeks the entry of judgment notwithstanding the verdict pursuant to Rule

50(b)(1)(C).  Defendants Phillips, Modlin and Schneider seek entry of judgment as a matter of

law pursuant to Rules 50(a), and/or 50(b)(2)(B).

Although a judgment as a matter of law should be granted only in extreme cases, *Webb v.*

*Hyman*, 861 F. Supp 1094, 1108 (D.D.C. 1994) , a judgment pursuant to Rule 50 is appropriate

where only one conclusion reasonably could be drawn from the evidence.  *Id.  See also* W.

PAGE KEETON, *et al.*, PROSSER & KEETON ON THE LAW OF TORTS § 41, at 268-69 (5th

ed. 1984) (When the question of the defendant's causation "remains one of pure speculation or

conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to

direct a verdict for the defendant.")

This Court may properly grant judgment as a matter of law when the "evidence, together

with all inferences that can reasonably be drawn therefrom, is so one-sided that reasonable men

could not disagree on the verdict."  *Vander Zee v. Karabatsos*, 589 F.2d 723, 726 (D.C. Cir.

1978).  *See also Siegel v. Mazda Motor Corp.,* 878 F.2d 435, 437 (D.C. Cir. 1989); *Morgan v.*

10

*District of Columbia*, 263 U.S. App. D.C. 69, 824 F.2d 1049, 1056 (D.C. Cir. 1987). A Rule

50(b) motion is merely the renewal of a Rule 50(a) motion for a directed verdict and the

applicable standard is the same as when awarding a directed verdict.  9 C. Wright & A. Miller,

Federal Practice and Procedures § 2530 at 574 (1971); Lester v. Dunn, 154 U.S. App. D.C. 399,

475 F.2d 983, 985 (D.C. Cir. 1973). A jury verdict based on surmise, conjecture and a mere

scintilla of evidence may not withstand a motion for judgment notwithstanding the verdict.

*Mattivi v. South African Marine Corp., "Huguenot,"* 618 F.2d 163, 167-68 (2d Cir. 1980);

*Tackett v. Kidder*, 616 F.2d 1050, 1053 (8th Cir. 1980).  The Court "must consider all of the

evidence offered by the parties," mindful that "the question for us is not whether there was *some*

*evidence*, but whether, in terms of 'the actual quantum and quality of proof necessary to support

liability,' there was *sufficient evidence* upon which a jury could properly base a verdict for the

[plaintiff]. . . . To survive a motion for judgment n.o.v., the evidence [Plaintiff] introduced has to

be more than merely colorable; it must have been significantly probative if the jury's verdict is to

stand." *Id.* (quoting *Richardson v. Richardson-Merrell, Inc.*, 857 F.2d 823, 827, 828-29 (D.C.

Cir. 1988) (*quoting Anderson v. Liberty Lobby*, 477 U.S. 242, 254, 91 L. Ed. 2d 202, 106 S. Ct.

2505 (1986)).

II.    **Defendant Ramirez is Entitled to Judgment Notwithstanding the Verdict and
       Defendants Phillips, Modlin and Schneider Are Entitled to Judgment As a Matter of
       Law.**

      A.    <u>Probable Cause Negates any Finding of False Arrest</u>

      A false arrest occurs when one person intentionally and unlawfully arrests another person

for any length of time, whether by actual force or threat of force, without a warrant or other legal

justification.  *See* Standardized Jury Instructions for the District of Columbia, Instruction 18-2.

"The central issue in a false arrest case is whether the officer was legally justified in making the

arrest." *See* Standardized Jury Instructions for the District of Columbia, Instruction 18-3. "One way the officer …may prove the arrest was legally justified is to show that the officer had probable cause. An officer has probable cause to arrest if he … has reason to believe that a crime has been or is about to be committed." *Id.* "Another way the officer…may prove the arrest was legally justified is to show that the officer reasonably believed, in good faith, that his conduct toward the plaintiff was lawful." *Id.* The jury must consider the evidence from the officer's perspective as they decide whether the officer acted in good faith in arresting the plaintiff. *Id.* In this case, the jury found Defendant Ramirez liable under 42 U.S.C. § 1983, for false arrest or excessive force. Based on the evidence presented at trial, no reasonable jury could legally find the Defendants liable for false arrest because the existence of probable cause for the arrest negates any finding that Plaintiff was falsely arrested.

Defendant Persons was the bouncer at Fur Nightclub and had the authority to remove patrons from the club. Defendant Persons testified that he decided to remove Plaintiff from the nightclub on March 11-12, 2005, because he had climbed on the stage, thereby exposing himself to danger and the club to liability. The Court submitted special interrogatories to the jury for its consideration. In special interrogatory no. 1, the jury was asked the following question:

> Q.  Prior to the intervention by the off-duty officers in the incident between Mr. Mazloum and Mr. Person, Mr. Mazloum had engaged in any conduct that warranted the involvement of the police?

The jury answered in the affirmative. *See* Court Docket #204, Jury Verdict Form, Interrogatory Answer No. 1. The jury found that Plaintiff was involved in a scuffle with Defendant Persons, and he behaved in an intoxicated and disorderly manner toward the off-duty officers after they intervened. *See* Court Docket #204, Jury Verdict Form, Interrogatory Answer Nos. 6 and 11. The jury also found that Plaintiff resisted the off-duty officers' attempts to remove him from the

12

Fur Nightclub.  *See* Court Docket #204, Jury Verdict Form, Interrogatory Answer No. 9.  Since probable cause existed for Plaintiff's arrest, the Defendants cannot be found liable for false arrest.  *See District of Columbia v. Murphy,* 631 A.2d 34, 36 (D.C. 1993), *affirmed on rehearing,* 635 A.2d 929, 931-32 (D.C. 1993) (holding an officer, who has probable cause in a constitutional sense to arrest a person, can not be held liable for false arrest).  *See also Etheridge v. District of Columbia,* 635 A.2d 908, 918 (D.C. 1993) (holding "where an officer lacks probable cause to arrest a plaintiff on the announced charge, but where probable cause existed to believe that he committed a different offense proffered by the defense after the fact, the officer can avoid liability if the consequences for the plaintiff probably would have been substantially as unfavorable if he had been arrested on the later charge.").  Based on the trial testimony, and the jury's findings, probable cause existed for Plaintiff's arrest for a number of crimes, including assault and battery upon Defendant Persons, disorderly conduct, and trespass since Plaintiff refused to leave FUR Nightclub after Defendant Persons and the remaining Defendants sought to remove him.  Therefore, these Defendants are entitled to judgment as a matter of law on Plaintiff's false arrest claim filed pursuant to 42 U.S.C. § 1983.

      B.      <u>The Defendants Are Entitled to Qualified Immunity for Arresting Plaintiff</u>

The Defendants are entitled as a matter of law to qualified immunity in connection with the arrest of Plaintiff because they could reasonably have concluded that the Plaintiff had attacked the club bouncer and that such an attack constituted probable cause for arrest.  Police officers enjoy a qualified immunity from suits alleging violations of constitutional rights.  *See Saucier v. Katz,* 533 U.S. 194, 200 (2001).  A police officer making an arrest is generally shielded from personal liability for civil damages with respect to constitutional claims brought under 42 U.S.C. § 1983, by the doctrine of qualified immunity insofar as his or her conduct does not violate

13

clearly established rights of which a reasonable person would have known.  *Hunter v. District of Columbia*, 943 F.2d 69, 75 (D.C. Cir. l99l).  In making this determination, the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 200.

In this case, the officers reasonably perceived that Plaintiff had committed a battery against Defendant Persons, a known bouncer at FUR nightclub, and intervened to break up the scuffle.  As they led Plaintiff out of the club, he resisted his removal.  While Plaintiff claims that he was not the aggressor during the incident with Defendant Persons, the issue "turns not on whether probable cause to arrest plaintiff in fact existed, but on whether [the officer] has established as a matter of law that a reasonable officer in his shoes would have believed it to have existed."  *See James v. United States*, 709 F. Supp. 257, 260 (D.D.C. 1989).   To assess whether defendants' actions were objectively reasonable, the Court must consider the facts as they would have been perceived by a reasonable officer on the scene, and not with the 20/20 vision that comes with knowledge of the full landscape of the facts.  *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Richardson v. U.S. Department of Interior*, 740 F. Supp. 15 (D.D.C. 1990) (holding that an officer did not violate a clearly established right when that officer had an honest and reasonable belief that the plaintiff had violated the law in light of the facts available to him at the scene of the arrest).  The Defendants in good faith believed that Plaintiff was the aggressor in a scuffle with the bouncer and had refused to leave the club when asked initially.  Therefore, Plaintiff was seized and removed from the club.  Indeed, the jury specifically found that prior to the intervention by the off-duty officers in the incident between Plaintiff and Defendant. Person, Plaintiff engaged in conduct that warranted the involvement of the police.  *See* Jury Verdict Form, Interrogatory Answer No. 1.  While the jury

found that the off-duty officers did not witness the start of the interaction between Plaintiff and

Defendant Persons, Plaintiff resisted the off-duty officers' attempts to remove him from the FUR

Nightclub.  *See* Jury Verdict Form, Interrogatory Answer Nos. 4 and 9.  Finally, the jury found

that Plaintiff behaved in an intoxicated and disorderly manner toward the off-duty officers after

they intervened.  See Jury Verdict Form, Interrogatory Answer No. 11.  Based on these facts as

presented at trial, and determined by the jury, judgment as a matter of law must be granted to the

Defendants based on their entitlement to qualified immunity.

        C.      <u>Defendants Are Entitled to Judgment As a Matter of Law on Plaintiff's Excessive Force Claim</u>

            1.      The Court's Grant of Defendants Phillips, Modlin, and Schneider's Rule 50 Motion Mandates that Judgment Be Entered on Plaintiff's Excessive Force Claim File Pursuant to 42 U.S.C. § 1983 Against These Defendants.

During Plaintiff's case-in-chief, Plaintiff testified that he had climbed on the stage

without permission, that he and Defendant Persons were engaged in a scuffle on the floor prior to

the Defendant officers' intervention, and that he resisted his removal from the club.  At trial,

Defendant Persons and the Defendant officers corroborated that testimony.  Although Plaintiff

testified that each Defendant officer joined the fray, he could not testify what each Defendant

did.  At the close of Plaintiff's case-in-chief, this Court found that Phillips, Modlin and

Schneider were entitled to judgment on Plaintiff's assault and battery claims.  The Court found

that Defendants Phillips, Modlin and Schneider had a qualified privilege to remove Plaintiff from

the FUR Nightclub, and that at the time of the incident Plaintiff was resisting his removal from

the club.

This Court's ruling that Plaintiff failed to present a *prima facie* claim of common law

assault and battery against Defendants Phillips, Modlin and Schneider should dispose of the

constitutional excessive force claims against them arising from the same facts. If there was no unreasonable force under the common law, the constitutional excessive force claim should fall as a matter of law. Common law assault and battery claims related to arrests "turn on 'whether the officer's conduct was reasonably necessary and thereby privileged.'" *Smith v. District of Columbia*, 882 A.2d 778, 791 (D.C. 2005), quoting *Holder v. District of Columbia*, 700 A.2d 738, 742 (D.C. 1997). The common law and the Fourth Amendment both require that "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and the "calculus of reasonableness" must allow for the fact that police officers have to make split-second judgments about the amount of force necessary in a particular situation. *Etheredge v. District of Columbia*, 635 A.2d at 916 and n.10 (D.C. 1993), quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). *See also Rogala v. District of Columbia*, 161 F.3d 44, 57 (D.C. Cir. 1998) (standard of reasonableness under common law similar to excessive force standard under Constitution); *Scott v. District of Columbia*, 101 F.3d 748 (D.C. Cir. 1996) (holding even where an officer's use of force is motivated by malice, a plaintiff cannot demonstrate excessive force if the mode of arrest is one that a reasonable officer might have applied.).

The jury's finding that Defendant Ramirez was not liable for assault and battery further supports these Defendants' entitlement to judgment as a matter of law. Plaintiff alleged that Defendant Ramirez kicked, punched, and slammed his head on the sidewalk. The jury did not believe that testimony and found in favor of Defendant Ramirez on his assault and battery claim. There was no evidence in this record that these Defendants' actions met and/or exceeded those of Defendant Ramirez. In fact, other than remove Plaintiff roughly from the club as he resisted arrest, there is no evidence in this record that these Defendants used excessive force to remove

16

Plaintiff from the club.  Accordingly, given this Court's finding that these Defendants did not

commit an assault and battery, and the jury's findings that the Plaintiff was drunk and disorderly

and that he resisted the officers' efforts to eject him from the club, judgment as a matter of law

must be awarded to these Defendants.

> 2.   The Evidence Does Not Support Plaintiff's Excessive Force Claim
>      Against Defendant Ramirez.

The jury's verdict on Plaintiff's assault-and-battery claim and its findings in response to

the special interrogatories alone makes clear that the finding of excessive force verdict against

Defendant Ramirez cannot stand.  The jury absolved Defendant Ramirez of Plaintiff's battery

claim.  See Verdict Form, at Docket Entry #204.  The jury's finding that there was no battery

directly and effectively dictates the conclusion that there was no excessive force.  Battery is

defined as the unlawful and intentional touch or use of force on another person in a harmful,

offensive, or insulting way.  *See* Standardized Jury Instructions for the District of Columbia,

Instruction 19-3.  A police officer's defense to a claim of battery is the privilege to use

reasonable force.  *See Jackson v. District of Columbia*, 412 A.2d 948, 955-56 (D.C. 1980).  It

directly follows that the absence of battery means the absence of unreasonable (*i.e.*, excessive)

force.

The law of excessive force reinforces the point.  Instruction 19-5 provides that "there are

some circumstances in which threatening or actually using force, even deadly force, is necessary

to carry out a lawful act.  However, a person may threaten to use or actually use force only in the

amount reasonably necessary to carry out the lawful act."  The instruction goes on to state that if

the jury finds after "considering the circumstances as they appeared to the defendant, that the

defendant used or threatened to use more force than was reasonably necessary to do the

17

otherwise lawful act, then [their] verdict must be for the plaintiff."  A finding that there is no

battery, by definition, precludes a finding of excessive force.  Indeed, in order to prevail on a

claim of battery/excessive force, a plaintiff must establish that the force used was "clearly

excessive."  *See Gabrou v. May Dep't Stores Co.,* 462 A.2d 1102, 1105 n. 4 (D.C. 1983), citing

*Jackson,* 412 A.2d at 956.  This standard is similar to the excessive force standard applied in the

§ 1983 context.  *See Etheridge v. District of Columbia,* 635 A.2d 908, 915 n.10 (D.C. 1993).

The jury's finding that Defendant Ramirez did not commit a battery negates any finding of

excessive force under 42 U.S.C. § 1983.

The jury's answers to the special interrogatories also state that the finding of excessive

force was based entirely on the alleged "rough" handling of the Plaintiff as the Defendants

moved him across the floor while ejecting him from the club.  The following questions were

presented to the jury:

| | | |
|---|---|---|
| 10. | Q. | The off-duty officers dragged and hit Mr. Mazloum? |
| | A. | We find by a preponderance of the evidence that the off-duty officers forced Mr. Mazloum across the floor and roughly handled him with excessive force. |
| 12. | Q. | Mr. Ramirez punched Mr. Mazloum after Mr. Mazloum was handcuffed? |
| 13. | Q. | Mr. Ramirez kicked Mr. Mazloum after Mr. Mazloum was handcuffed? |
| 14. | Q. | Mr. Ramirez slammed Mr. Mazloum's head on the sidewalk while Mr. Mazloum was handcuffed? |

The jury did not give a separate answer to 12, 13, or 14.  Instead, the unanimously answered as

follows:

> A. For 12, 13, 14, we find that Mr. Ramirez was overly aggressive with Mr. Mazloum and Mr. Ramirez employed excessive force against Mr. Mazloum.

*See* Jury Verdict Form, Interrogatory Answer No. 10, 12, 13, and 14.  However, the jury found

that Plaintiff engaged in conduct that warranted the involvement of the police.  Specifically, the

jury found that Plaintiff resisted the off-duty officers' attempts to remove him from the night

club, and that Plaintiff behaved in an intoxicated and disorderly manner toward the officers after

they rightfully intervened.  The analysis of the force used by police must be based on the totality

of the circumstances.  Because Plaintiff resisted removal from the nightclub, the Defendants had

to increase their level of force to remove him from the club.

 Plaintiff had the burden to establish his claims by a preponderance of the evidence.  Although

Plaintiff testified that the Defendants beat him, and that Defendant Ramirez kicked, beat, and slammed

his head on the sidewalk when he was handcuffed in violation of his constitutional rights, the jury did

not believe Plaintiff's version of events.  In fact, they failed to unanimously find that Defendant

Ramirez punched, kicked or slammed Plaintiff's head on the sidewalk while he was handcuffed as

Plaintiff had claimed.  See Jury Verdict Form, Interrogatory Answer Nos. 12-14.  Because the jury

also found that Plaintiff was intoxicated, behaved in a disorderly manner, and resisted arrest, the jury's

finding of excessive force is without legal justification.

 Police officers employ a continuum of force.  The Defendants testified that because Plaintiff

resisted arrest, they had to use enough force to remove him from the nightclub.  Defendant Ramirez

specifically testified that he was unable to handcuff Plaintiff without the assistance of the other

Defendants.  After Plaintiff was removed from the club and was seated on the curbside, Defendant

Ramirez testified that he "swept" Plaintiff's legs as he stood up while outside the club in accordance

with his police training.  Because Defendant Ramirez testified that he was trained to use the

"sweeping" technique on suspects like Plaintiff, Plaintiff's failure to provide evidence to negate the

applicability or appropriateness of the technique Defendant Ramirez used to control Plaintiff, defeats

19

Plaintiff's ability to establish this Defendant's alleged misconduct and/or alleged inappropriate use of force to control Plaintiff's actions. Absent evidence that Defendant Ramirez's use of the sweeping technique on Plaintiff constituted excessive force, the jury's finding of excessive force must be vacated.

3.    The Defendants Are Entitled to Qualified Immunity on Plaintiff's Excessive Force Claim Filed Pursuant to 42 U.S.C. § 1983.

The jury's finding against Defendant Ramirez on the excessive force claim under 42 U.S.C. § 1983 must be set aside because, based on the jury's verdict and responses to special interrogatories, the force applied was not "clearly excessive." In fact, Defendants Ramirez, Phillips, Modlin and Schneider are entitled to qualified immunity based on Plaintiff's behavior and the situation that these Defendants confronted. Consequently, the doctrine of qualified immunity bars Plaintiff's claim as a matter of law.

As with the application of the qualified immunity privilege to claims of false arrest, claims of excessive force under section 1983 are not be judged with 20-20 hindsight in the peace of a courtroom. Rather, "qualified immunity operates to protect officers from the sometimes hazy border between excessive and acceptable force." *See Saucier*, 533 U.S. at 206, and *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (internal quotations omitted) (emphasis added). In *Saucier*, the Court specifically held that police officers may apply force that eventually is determined to be unconstitutional, yet still be protected by qualified immunity. *Saucier*, 533 U.S. at 206. While an officer's use of force can be clearly excessive or appropriate, a gray area exists in between. If an officer's use of force falls within this gray area, the Court must give deference to the officer and grant qualified immunity. *See id. See also Graham v. Connor*, 490 U.S. 386, 396 (1989) ("[n]ot every push or shove, even if it may later seem unnecessary in the peace of a

judge's chambers," violates the Fourth Amendment.).  Reasonableness is to be determined by the

"facts and circumstances of each particular case, including the severity of the crime at issue,

whether the suspect poses an immediate threat to the safety of the officers and others, and whether

he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.  Even an "officer's

evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of

force." *Id.* at 397.

Here, according to the special interrogatories submitted to the jury by the Court for the

specific purpose of evaluating the applicability of qualified immunity, the jury's finding of

excessive force was based on the "rough" removal of Plaintiff from the club.  See Special

Interrogatory No. 10, "We find by a preponderance of the evidence that the off-duty officers

forced Mr. Mazloum across the floor and roughly handled him with excessive force."  There was

**no finding** that Defendant Ramirez or the other Defendants wantonly punched, beat or kicked

the Plaintiff as he lay defenseless, as the Plaintiff claimed.  The jury itself found that the level of

force used did not rise to the level of assault and battery – a conclusion that by itself (as

discussed above), dictates the conclusion that the level of force used was reasonable.  In addition,

the jury found that Plaintiff was drunk and disorderly and resisted being removed from the club

by the Defendants.  *See* special interrogatories nos. 9 and 11, set forth below.

> 9. Q. Mr. Mazloum resisted the off-duty officers' attempts to remove him from the FUR Nightclub?
>
> A. Yes.
>
> 11. Q. Mr. Mazloum behaved in an intoxicated and disorderly manner toward the off-duty officers after they intervened?
>
> A. Yes.

*See* Special Interrogatories and Responses at Docket Entry # 204.  Accordingly, the special interrogatory responses about the circumstances of the Plaintiff's behavior and his removal preclude the conclusion that the "roughness" of the handling was so excessive as to remove the force used from the gray area of leeway afforded by the doctrine of qualified immunity.  Alleged "rough" handling of a drunk and disorderly man resisting removal who the officers reasonably believed to have been engaged in a battery on another individual does not violate a "clearly established" right.  Put another way, if there is an area where leeway is required, it is in assessing the level of force required to "handle" and remove such an individual without punching or kicking them.  In *James v. United States*, 709 F. Supp. 257, 259 (D.D.C. 1989) , the Court held that the police officer was entitled to qualified immunity despite plaintiff's allegations that the officer intentionally hit his head and kicked him during the course of the arrest.  The Court held that generally speaking, officers are protected by qualified immunity unless they were plainly incompetent or knowingly violate the law.  *Id.*, *quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986). *See also Martin v. Malhoyt*, 830 F.2d 237, 261 (D.C. Cir. 1987), holding that the reasonableness test for excessive force claims is a balancing test that looks to the totality of the circumstances known to the officer at the time of the challenged conduct, and also accords a measure of respect to the officer's judgment about the amount of force called for in a quickly developing situation. *See also Brosseau* 543 U.S. 194; *Cole v. Bone*, 993 F.2d 1328, 1333 (8th Cir.  1993); *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992).  Based on the totality of the circumstances that the Defendants confronted on March 11-12, 2005, and Plaintiff's active resistance to being removed from the nightclub, these Defendants are entitled to qualified immunity as a matter of law on Plaintiff's excessive force claims filed pursuant to 42 U.S.C. § 1983.

## III.    <u>Plaintiff's Punitive Damages Claim Fails as a Matter of Law</u>.

Punitive damages are awarded to punish the defendant for his conduct and to serve as an example to prevent others from acting in a similar way. *See* Standardized Civil Jury Instructions for the District of Columbia, Instruction 16-1. To prevail on a punitive damages claim, a plaintiff must establish the following elements with **clear and convincing** evidence:

1.    that the Defendant acted with evil motive, actual malice, deliberate violence or oppression, or with intent to injure, or in willful disregard for the rights of the plaintiff; **and**

2.    that the Defendant's conduct itself was outrageous, grossly fraudulent, or reckless toward the safety of the plaintiff.

*See Standardized Civil Jury Instruction No.* 16-1 (2002) (emphasis added). *See also Jonathan Woodner Co. v. Breeden,* 665 A.2d 929, 938 (D.C. 1995), holding that "the jury must be instructed that punitive damages may be awarded only if it is shown by clear and convincing evidence that the tort committed by the defendant was aggravated by egregious conduct and a state of mind that justified punitive damages." *See also Price v. Griffin,* 359 A.2d 582, 589 (D.C. 1976); *King v. Kirlin Enterprises*, *Inc.,* 626 A.2d 882, 884 (D.C. 1993), holding punitive damages are allowable only where there is evidence of actual malice, wanton conduct, deliberate violence, or intent to injure.

In this case, the jury found that Defendant Ramirez had a right to intervene in the fray, and that his involvement was not racially motivated. *See* Jury Answer to Interrogatory Nos. 1, and 15. The jury also found that Defendant Ramirez did not assault nor batter Plaintiff, did not punch, kick nor slam Plaintiff's head to the ground as alleged by Plaintiff. *See* Jury Answer to Interrogatory Nos. 12, 13, and 14. Plaintiff did not meet his burden to sustain the jury's award of punitive damages. Plaintiff failed to prove with clear and convincing evidence that Defendant Ramirez's claimed misconduct was the result of evil motive, actual malice, deliberate violence or

23

oppression, or performed with intent to injure or with willful disregard for his rights. Defendant Ramirez's conduct arose in an effort to remove Plaintiff from the FUR nightclub in a chaotic situation after Plaintiff, as found by the Jury, had engaged in conduct that warranted the involvement of the police, behaved in an intoxicated and disorderly manner toward the off-duty officers and resisted the off-duty officers' attempts to remove him from the FUR Nightclub. Based on the record evidence in this case, Plaintiff's claim for punitive damages fails as a matter of law because there is no record evidence to support that Defendant Ramirez's conduct rose to a level for which punitive damages may be awarded.

## CONCLUSION

For the forgoing reasons, Defendant Ramirez's Motion for Judgment Notwithstanding the Verdict, and Defendants Modlin, Phillips and Schneider's Motion for Judgment as a Matter of Law should be granted.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division


____/s/ Patricia A. Jones_____
PATRICIA A. JONES [428132]
Chief, General Litigation Sec.  IV


_____/s/ Leticia L. Valdes_____
MICHAEL P. BRUCKHEIM [455192]
Chief, Criminal Section
LETICIA L. VALDES [461327]
Assistant Attorney General
SHAMEKA L. GAINEY [493891]
Special Assistant Attorney General

24

441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 727-3807; (202) 442-9845; (202) 730-1881 (fax)

**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

EMILE MAZLOUM,

     Plaintiff,

     v.

DISTRICT OF COLUMBIA, *et al.*,

     Defendants.

C.A. No. 06-0002 (JDB)

### <u>ORDER</u>

Upon consideration of Defendants Anthony Ramirez's Motion for Judgment Notwithstanding the Verdict, the Memorandum of Points and Authorities in support thereof, any opposition thereto, and the record herein, it is, this _____ day of _____, 2008;

ORDERED; that Defendants' Motion for Judgment Notwithstanding the Verdict is hereby granted for the reasons set forth in their motion; and it is

FURTHER ORDERED; that judgment is hereby entered in favor of defendant Anthony Ramirez.

_____
Judge John D. Bates
United States District Court Judge

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| EMILE MAZLOUM, | |
|     Plaintiff, | |
|     v. | C.A. No. 06-0002 (JDB) |
| DISTRICT OF COLUMBIA, *et al.*, | |
|     Defendants. | |

## <u>ORDER</u>

Upon consideration of Defendants Richmond Phillips, Thaddeus Modlin and Louis Schneider's Motion for Judgment as a Matter of Law, the Memorandum of Points and Authorities in support thereof, any opposition thereto, and the record herein, it is, this _____ day of _____, 2008;

ORDERED:  that Defendants Richmond Phillips, Thaddeus Modlin and Louis Schneider's  Motion for Judgment As A Matter of Law is hereby granted for the reasons set forth in their motion; and it is

FURTHER ORDERED:  judgment is hereby entered in favor of Richmond Phillips, Thaddeus Modlin and Louis Schneider's and against Plaintiff on his false arrest and excessive force claims under 42 U.S.C. § 1983.

_____
Judge John D. Bates
United States District Court Judge

2