## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| EMILE MAZLOUM, | |
| Plaintiff, | |
| v. | C.A. No. 06-0002 (JDB) |
| DISTRICT OF COLUMBIA, *et al.*, | |
| Defendants. | |

**DEFENDANTS ANTHONY RAMIREZ, RICHMOND PHILLIPS, THADDEUS MODLIN AND LOUIS SCHNEIDER'S REPLY TO PLAINTIFF EMILE MAZLOUM'S OPPOSITION TO THEIR MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND MOTION FOR JUDGMENT AS A MATTER OF LAW**

### INTRODUCTION

Plaintiff's opposition to defendants' motion for judgment as a matter of law establishes only that a brief's length (over 40 pages) is no measure of its overall merit or the extent to which it aids the Court in addressing the key weaknesses of its case. Here, those weaknesses are the jury's conclusion that Officer Ramirez did not assault and batter the plaintiff (consistent with and reinforced by the jury's special-interrogatory responses) and the undisputed fact that Officer Ramirez's involvement in the purported incident commenced after the intoxicated plaintiff was actively resisting attempts to remove him from the nightclub. Disregarding the assault-and-battery verdict allows plaintiff to ignore the jury's refusal to credit plaintiff's claims that Officer Ramirez hit him or kicked him, and disregarding the timing of Officer Ramirez's involvement allows plaintiff to ignore the evident probable cause that existed at the time Officer Ramirez became involved.

Once exposed, these weaknesses establish that Officer Ramirez is entitled to judgment as a matter of law or, at a minimum, to qualified immunity.

**ARGUMENT**

1.  **THESE DEFENDANTS HAVE MET THE APPROPRIATE STANDARD UNDER RULE 50 FOR THE REQUESTED RELIEF.**

As support for his argument that these defendants have not met the standards set forth under Fed. R. Civ. P. 50, plaintiff cites *Hudson, et al. v. District of Columbia, et al.,* 517 F. Supp. 2d 40 (2007). The *Hudson* Court opined that Fed. R. Civ. P. 50(a)(1) "permits a court to grant a motion for judgment as a matter of law if a party has been fully heard on an essential issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." According to the Court, "where the court does not grant a motion for judgment as a matter of law made at the close of all of the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." *Id.* at 45. A defendant seeking judgment as a matter of law under Rule 50 must demonstrate that the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached a verdict in plaintiff's favor. *Id.*

In *Hudson,* plaintiff was arrested and charged with simple assault and possession of a prohibited weapon. Plaintiffs averred that the officer struck them several times with a metal baton in violation of their constitutional rights. The *Hudson* Court framed the appropriate question for consideration as "was the amount and type of force used by Officer Merritt objectively reasonable in light of the facts and circumstances confronting him?" *Id.* at 50. Based on the record evidence, the Court could not say that the evidence was so one-sided that plaintiffs' version of the facts is unsupported. "With due regard for

2

the jury's role in making credibility determinations, and viewing the facts in the light

most favorable to plaintiffs, the Court conclude[d] that [the officer] is not entitled to

qualified immunity" and denied the Rule 50 motion.

In *Hudson,* the defendant officer was charged with using a weapon on an unarmed

arrestee.  Unlike the facts in *Hudson*, there was no weapon used in this case.  Moreover,

unlike the *Hudson* defendants, these defendants have shown that the evidence is so one-

sided that plaintiff's version is unsupportable.  In fact, the Court need not take away the

jury's findings of fact or substitute its judgment for that of the jury, as the jury has

determined that plaintiff was intoxicated and engaged in conduct that warranted police

involvement.  Moreover, plaintiff resisted the defendants' attempts to remove him from

the club.  See Jury Verdict Form, at Docket Entry #204.  Based on these facts, the Court

can determine the legal question as to whether defendant Ramirez (and the other

defendants) are entitled to qualified immunity, and judgment as a matter of law.

**2.      DEFENDANT RAMIREZ IS ENTITLED TO JUDGMENT AS A MATTER
         OF LAW OR QUALIFIED IMMUNITY ON PLAINTIFF'S FALSE
         ARREST AND EXCESSIVE FORCE CLAIMS**

> **A.      Plaintiff's Argument That Defendant Ramirez Is Not Entitled to
>          Judgment As a Matter of Law or Qualified Immunity on Plaintiff's
>          Excessive Force Claim Depends Upon a Version of Events That is
>          Precluded By the Jury's Favorable Assault-and-Battery Verdict, the
>          Jury's Special-Interrogatory Responses, and the Uncontradicted
>          Evidence As to When Officer Ramirez Became Involved in the
>          Incident**

The combination of the jury's assault-and-battery verdict and special-

interrogatory responses demonstrates that the jury found that Officer Ramirez was

excessively rough in forcing plaintiff from the club but that he did not hit or kick the

plaintiff or slam the plaintiff's head into the ground.  Accordingly, given the jury's

additional finding that Mr. Mazloum resisted the off-duty officers' attempts to remove

him from the FUR Nightclub, defendant is entitled to judgment as a matter of law on

plaintiff's excessive force claim or, at a minimum, is entitled to qualified immunity on

that claim.

Plaintiff's qualified immunity/excessive force argument is based on a version of

events – specifically, that defendant Ramirez kicked, hit, or punched the plaintiff, that is

contrary to what the jury found.  *See* Pl. Opp. at 32-33 (conceding that the "violent acts"

of punching, kicking or head slamming were "emphasized to the jury as the primary basis

for Ramirez' liability and for an award of punitive damages"); *see also id*. at 32 (asserting

that the jury's answer to special interrogatories 12-13 "is best interpreted to mean" that

"at least *some* act or acts of physical violence occurred (*e.g.*, a punch, kick, head slam),

even if the jury could not agree unanimously on precisely which ones") and *id*. at 28-29

(referring to Officer Ramirez's "acts of violence against Mazloum after he was

handcuffed").  Plaintiff thus cannot prevail on this claim because the jury's unanimous

finding that there was no assault-and-battery flatly precludes plaintiff's understanding by

itself, and plaintiff does not address that verdict in making his argument.  The

untenableness of plaintiff's argument is only confirmed by the special interrogatories,

which also expressly declined to find punching, hitting or kicking.

The result is that plaintiff offers no legal analysis under which the Court could

conclude that overly aggressive removal of an individual actively resisting arrest could

constitute excessive force as a matter of law, let alone vitiate qualified immunity.  To the

contrary, all of the cases cited by plaintiff involved the type of actions that the jury

declined to find in this case – *i.e.*, actions that would constitute a classic assault and

battery. For example, in *Jones v. Buchanan*, 325 F.3d 520, 529, 532-534, (4th Cir. 2003), Jones, the injured party, claimed that the deputy knocked him to the floor, jumped on him, and crushed or hit his nose while his wrists were handcuffed behind his back in a locked room. Plaintiff also cites *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002), where the defendant was arrested for improperly honking her car horn on a busy street during rush hour and "slam[med] her head against the trunk after she had been arrested and secured in handcuffs." Lastly, in *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988), the jury found that an officer hitting the handcuffed plaintiff with a nightstick was found to be excessive. By contrast, plaintiff has failed to cite a case on point that stands for the proposition that "dragging" a clearly resistant, intoxicated, person who is resisting arrest is clearly unlawful.

The *Lee* Court determined that there are two ways for a party to show that the law clearly established that a particular amount of force was excessive: (1) to point to a "materially similar case [that has] already decided that what the police officer was doing was unlawful; and (2) to show "that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *See Willingham v. Loughman,* 261 F.3d 1178, 1187 (11th Cir. 2001), *Priester v. City of Riviera Beach,* 208 F.3d 919, 925 n. 3 (11th Cir. 2000) (quoting *Smith v. Mattox,* 127 F.3d 1416, 1419 (11th Cir. 1997). According to the *Lee* Court, "under this test, the law is clearly established, and qualified immunity can be overcome, only if the standards set forth in *Graham* and our own case law "inevitably lead every reasonable officer in [the defendant's] position to

conclude the force was unlawful." 284 F.3d a5 1199, citing *Priester,* 208 F.3d 919

(quoting *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1559 (11th Cir. 1993).

Nowhere does plaintiff dispute that "if there is anywhere where the leeway

afforded by qualified immunity is necessary, it would be in assessing the level of force

necessary to move a drunk and disorderly individual resisting removal across a floor and

outside a nightclub, without punching, kicking or otherwise battering that individual." *See*

Def. Mot. at 22. As discussed in greater detail in defendants' initial motion, it is in this area

where the hazy gray area between legitimate and illegitimate levels of force comes into play

most starkly, and it is in this area where the conduct at issue here must fall if it is held not to

fall clearly on the legal side of the line.

Further, as with the false arrest argument discussed in the next section, plaintiff's

excessive force argument ignores the point when Officer Ramirez became involved in the

altercation. Instead, he relies on the Court's finding that "plaintiff insists he was already

pinned down by Persons" when the off-duty officers intervened. Pl. Opp. at 28. But this

was indisputably not the state of events when Officer Ramirez became involved in the

incident, and it therefore cannot support plaintiff's claim that the excessive-force finding

against Officer Ramirez should be sustained.

> **B.      Plaintiff's Argument That Defendant Ramirez Is Not Entitled to Judgment As a Matter of Law or Qualified Immunity on Plaintiff's False Arrest Claim Depends Upon a Version of Events That is Precluded By the Jury's Special-Interrogatory Responses and the Uncontradicted Evidence As to When Officer Ramirez Became Involved in the Incident**

Plaintiff's argument that the false arrest verdict should be sustained rests on a

singularly flawed elision – specifically, that Officer Ramirez became involved in the

events at issue at the same time as the other officers. For example, plaintiff asserts that:

> *The officers* collectively knew only that Mazloum was pinned to the
> ground under the massive Persons, and was face down, struggling to get
> free.  No one had asked *them* to investigate Mazloum; no one had pointed
> him out as a problem; none of *them* knew of anything he had done within
> the Nightclub before they encountered him, and in fact *they* admitted to
> lack such knowledge. . . . Reasonable officers seeing Persons pinning
> Mazloym could hardly conjecture that Mazloum, was engaging in
> "disorderly conduct."  Nor is judgment as a matter of law warranted on the
> theory that a reasonable jury could *only* conclude that Persons was pinning
> down Mazloum and that Mazloum was resisting this.  Again, prior to *the
> officers'* intervention, a reasonable jury could readily conclude that *the
> officers* knew only that Persons was pinning down Mazloum and that
> Mazloum was resisting this—not that Mazloum was engaging in an assault
> or in disorderly conduct against Persons.  Most importantly, even
> assuming Mazloum engaged in 'disorderly conduct' towards *the officers*
> (as criminally defined, which is quite unlikely given his justification for
> acting), such conduct occurred *after the officers*' arrest of Mazloum."

Pl. Opp. at 35, 37 (emphasis added except for the words "after" and "only").  The

problem with this argument is that the uncontradicted testimony of three witnesses was

that Officer Ramirez did not become involved until *after* the off-duty officers began to

remove the Plaintiff from the club.[1]  At this point, the jury found in its special-

interrogatory answers, that Mazloum was resisting efforts to remove him from the

nightclub and was behaving in a drunk and disorderly manner towards the off-duty

officers.  *See* Court Docket #204, Jury Verdict Form, Interrogatory Answer Nos. 1, 6 and

11. Under these circumstances, it was more than reasonable for Officer Ramirez to

believe that probable cause existed to arrest Mazloum.  Plaintiff makes no effort to

defend the false arrest finding under a version of events that recognizes the indisputable

timing as to when Officer Ramirez became involved.  Plaintiff's opposition also ignores

that the jury found that prior to the intervention by the off-duty officers in the incident

between Mr. Mazloum and Mr. Person, Mr. Mazloum had engaged in conduct that

---

[1]  While repeatedly referring to "the officers" collectively, plaintiff acknowledges in a footnote that
Ramirez was not involved in the incident when Officers Modlin and Phillips initially sought to remove
plaintiff from the club during his altercation with the club bouncer.  *See* Pl. Opp. at 35 note 28.

warranted the involvement of the police.  *See* Court Docket #204, Jury Verdict Form,

Interrogatory Answer No. 1.  Accordingly, defendant is entitled to judgment as a matter

of law or qualified immunity on this claim[2].

**3.      PLAINTIFF'S OPPOSITION CONTAINS ADDITIONAL ERRONEOUS
         STATEMENTS THAT REQUIRE REFUTATION.**

While plaintiff argues that the defendants have chosen to "cherry pick" amongst

the jury's special interrogatory answers that are most favorable to them, in his opposition

plaintiff has created facts and evidence that were not presented to or accepted by the jury.

See Pl.'s Opp. at 9.   Plaintiff's arguments are no more than red herrings intended to

confuse this Court about the facts adduced at trial and accepted by the jury.  For example,

plaintiff argues that the jury could have believed that the officers drunk more than they

admitted to at trial.  Opp. at 13.  Presumably, plaintiff wants this Court to believe that the

officers' alleged drunkenness caused them to use excessive force.  There is no evidence

in this record that any of the officers were drunk, or that alcohol affected their judgment.

Plaintiff argues that he was treated as a "dangerous felon" when the officers

intervened.  He avers that the officers could have taken defendant Persons in custody, or

separated the two.  Opp. at 14.  There was no testimony at trial that plaintiff was treated

like a "dangerous felon" when the officers intervened between Persons and the plaintiff

and attempted to remove plaintiff from the club.  Instead, the evidence was that plaintiff,

while intoxicated, resisted his removal from the club.  More importantly, there is no

police testimony, expert or otherwise, to establish that the officers' decision to remove

---

[2] Plaintiff argues in his opposition that defendant Ramirez "violates well settled principles in arguing for
Judgment as a Matter of Law" and that he waived such argument. Defendant Ramirez did not waive his
right to assert that he is entitled to judgment as a matter or law or qualified immunity.

plaintiff from the club was unreasonable or what level of force is required when an

officer attempts to remove a resistant person from an establishment.

Additionally, plaintiff claims that he pointed out defendant Ramirez to the

uniformed officers and claimed that this defendant assaulted him.  There is no testimony

in this record that plaintiff specifically pointed at defendant Ramirez when he reported to

the uniformed officers that he was assaulted.  While plaintiff attempts to use the events of

March 12, 2005, to show that defendant Ramirez knew that his conduct was unlawful, his

claims are unavailing and is insufficient to overcome defendant Ramirez's entitlement to

qualified immunity.  In fact, the events of March 12, 2005, do not show what defendant

Ramirez's frame of mind was on the day of the incident, and do not evidence evil motive

or wrongful conduct.  There was no pending claim against these defendants for any

alleged action taken by defendant Ramirez the day after the subject incident.

Lastly, plaintiff avers that the defendants violated the District's MPD Special

Order, SO-07-07, entitled "Carry Service Firearms While Off-Duty in the District of

Columbia."  Plaintiff argues that since the regulations instruct that "off-duty, unarmed

members … shall not take direct police action as a Metropolitan Police Officer unless

such action can be taken safely without use of force or the endangerment of others," a

reasonable jury could conclude that the defendants violated these regulations.  *See* Opp.

at 18.  First, the regulation cited and relied upon by plaintiff principally deals with

officers carrying service firearms while off-duty in the District of Columbia.  According

to the evidence at trial, none of the officers were in possession of their firearms at the

time of the subject incident.  Moreover, according to the General Order, GO-RAR-

901.07, regarding "use of force," a member is allowed to use force.  In fact, the Order

provides that "officers of the Metropolitan Police Department shall use the minimum amount of force that the objectively reasonable officer would use in light of the circumstances to effectively bring an incident or person under control…."  Under the "use of force continuum," the level of response is based on the situation encountered at the scene and the actions of the subject in response to the member's commands.  Such response may progress from the member's actual physical presence at the scene to the application of deadly force.  See G.O.-RAR-901.07, hereto attached as Exhibit 1.  Based on this General Order, no reasonable jury could find that the officers violated this General Order.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in defendant's initial motion, Officer Ramirez is entitled to judgment as a matter of law or qualified immunity on plaintiff's false-arrest and excessive force claims.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

    /s/ Patricia A. Jones
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV

    /s/ Leticia L. Valdes
LETICIA L. VALDES [0461327]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 442-9845; (202) 730-1881
Leticia.Valdes@dc.gov