# GENERAL ORDER



**DISTRICT OF COLUMBIA**

**Title**
Use of Force

**Series / Number**
GO – RAR – 901.07

**Effective Date**        **Distribution**
October 7, 2002              B

**Replaces / Rescinds**
General Order 901.7 (Use of Force)

**Related to**
General Order RAR-901.08
   (Use of Force Investigations)
General Order RAR-901.09
   (Use of Force Review Board)

I.   Background.....................Page 1
II.  Policy................................Page 2
III. Definitions........................Page 2
IV.  Rules ...............................Page 4
V.   Regulations ....................Page 5
VI.  Procedural Guidelines....Page 9
VII. Cross References...........Page 10

I. **BACKGROUND**

The legal limitations on the use of force by District of Columbia law enforcement officers are expressed in D.C. Code § 4-176 (Use of Wanton or Unnecessary Force) and in District of Columbia Municipal Regulations (DCMR), Title 6A, Section 207 (Use of Firearms and Other Weapons).

6A DCMR Section 207.1 provides, among other things, that a member is allowed to "use only the minimum amount of force, which is consistent with the accomplishment of his or her mission, and shall exhaust every other reasonable means of apprehension or defense before resorting to the use of firearms."

6A DCMR Section 207.2, provides, among other things, that no member shall discharge a firearm in the performance of police duties except to "defend himself or herself or herself or another from an attack which the officer has reasonable cause to believe could result in death or serious bodily injury"; or to "effect the arrest or to prevent the escape, when every other means of effecting the arrest or preventing the escape has been exhausted, of a person who has committed a felony or has attempted to commit a felony . . . Provided, that the felony for which the arrest is sought involved an actual or threatened attack which the officer has reasonable cause to believe could result in death or serious bodily injury; and provided further, that the lives of innocent persons will not be endangered if the officer uses his or her firearm; . . . ."

The Fourth Amendment of the U.S. Constitution guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. The Supreme Court has stated that the Fourth Amendment "reasonableness" inquiry is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or

motivation. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split-second decisions about the amount of force necessary in a particular situation. (Graham v. Connor, 490 U.S. 386, 396-397 [1989]).

With respect to the use of deadly force, the Supreme Court in *Tennessee v. Garner*, 471 U.S. 1, 11-12, held that "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens an officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." (CALEA 1.3.2)

II.  **POLICY**

The policy of the Metropolitan Police Department is to value and preserve human life when using lawful authority to use force. Therefore, officers of the Metropolitan Police Department shall use the minimum amount of force that the objectively reasonable officer would use in light of the circumstances to effectively bring an incident or person under control, while protecting the lives of the member or others. (CALEA 1.3.1)

III.  **DEFINITIONS**

When used in this directive, the following terms shall have the meanings designated:

A.  **Deadly Force** – any use of force likely to cause death or serious physical injury, including but not limited to the use of a firearm or a strike to the head with a hard object.

B.  **Non-Deadly Force** – any use of force that is neither likely nor intended to cause death or serious physical injury.

C.  **Serious Use of Force** – lethal and less-than-lethal actions by MPD officers including:

   1.  all firearm discharges by an MPD officer with the exception of range and training incidents and discharges at animals;

   2.  all uses of force by an MPD officer resulting in a broken bone or an injury requiring hospitalization;

   3.  all head strikes with an impact weapon;

    4.    all uses of force by an MPD officer resulting in a loss of consciousness, or that create a substantial risk of death, serious disfigurement, disability or impairment of the functioning of any body part or organ;

    5.    all other uses of force by an MPD officer resulting in a death; and

    6.    all incidents where a person receives a bite from an MPD canine.

D.    **Use of Force** – any physical contact used to effect, influence or persuade an individual to comply with an order from an officer. The term shall not include unresisted handcuffing or hand control procedures that do not result in injury.

E.    **Use of Force Indicating Potential Criminal Conduct by a Member** – includes, but is not limited to, all strikes, blows, kicks or other similar uses of force against a handcuffed subject and all accusations or complaints of excessive force made against the member.

F.    **Serious Physical Injury** – any injury that results in hospitalization and that creates a substantial risk of death, serious disfigurement, disability or protracted loss or impairment of the functioning of any body part or organ.

G.    **Less-Than-Lethal Weapons** – any object or device deployed with the intent or purpose of eliminating a threat without causing death. These include, but are not limited to, a 37 mm gas gun containing a cloth bag filled with small lead shot pellets, rubber bullets, batons, OC Spray, A.S.P. (Armament System Procedures) tactical batons.

H.    **Use of Force Continuum** – a training model/philosophy that supports the progressive and reasonable escalation and de-escalation of member-applied force in proportional response to the actions and level of resistance offered by a subject. The level of response is based upon the situation encountered at the scene and the actions of the subject in response to the member's commands. Such response may progress from the member's actual physical presence at the scene to the application of deadly force.

I.    **Objective Reasonableness** – Reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene in light of the facts and circumstances confronting the officer without regard to the officer's underlying intent or motivation.

Revised 9/2/05

IV. **RULES**

   A.  No member of the Metropolitan Police Department shall discharge his/her firearm under the following circumstances:

      1.  As a warning. (CALEA 1.3.3)

      2.  Into a crowd.

      3.  At or from a moving vehicle unless deadly force is being used against the officer or another person. For purposes of this order, a moving vehicle is not considered deadly force. Members shall, as a rule, avoid tactics that could place them in a position where a vehicle could be used against them. (CALEA 1.3.4) "

      4.  In a felony case which does not involve an actual attack, but involves a threatened attack, unless the member has reasonable cause to believe the threatened attack is imminent and could result in death or serious bodily injury. (CALEA 1.3.2)

      5.  In any misdemeanor offense, unless under exceptional circumstances.

      6.  Solely to protect property interests.

      7.  To stop an individual on mere suspicion of a crime simply because the individual runs away.

   B.  No member shall draw and point a firearm at or in the direction of a person unless there is a reasonable perception of a substantial risk that the situation may escalate to the point where lethal force would be permitted. When it is determined that the use of lethal force is not necessary, as soon as practicable, firearms shall be secured or holstered.

   C.  When feasible, members shall identify themselves as a police officer and issue a warning before discharging a firearm.

   D.  No member of the Metropolitan Police Department, in the normal exercise of his or her responsibilities, shall carry, use or discharge any firearm or other weapon, except those issued or approved for use by the Metropolitan Police Department under direction of the Chief of Police. (CALEA 1.3.9)

   E.  No member of the Metropolitan Police Department shall carry, use, or discharge any unauthorized ammunition in their issued service weapons. Members are prohibited from obtaining service ammunition from any source except through official departmental channels. Members are further required to carry only the requisite amount of service ammunition as applicable to the authorized service weapon they are utilizing. (CALEA 1.3.9)

**Revised 9/2/05**

F. Any excessive force by a member will subject him or her to disciplinary action and possible criminal prosecution or civil liability.

G. Any violation of these rules will subject members to disciplinary action.

## V. REGULATIONS

When force is necessary, District of Columbia regulations require members to use the minimum level of force that is necessary to accomplish a police mission. (CALEA 1.3.1) Members are not required to start at the lowest level of the options listed in the Use of Force Continuum. Members should select the appropriate level of force based on what a reasonable member and the circumstances require (See attached Use of Force Continuum chart).

A. **Prompt Medical Attention**

When any level of force is used, there shall be a visual and verbal check of the subject to ascertain whether the subject is in need of medical care. Medical assistance shall be summoned immediately if a person is physically injured in any way, complains of pain, or demonstrates life-threatening symptoms. (CALEA 1.3.5)

B. **Use of Force Continuum** (CALEA 1.2.7)

In determining what level of force to use, it is important to consider the seriousness of the crime, the level of threat or resistance presented by the suspect, the imminence of danger, and the suspect's mental capacity. Only the minimum level of force needed to obtain control that the objectively reasonable officer would use in light of the circumstances shall be used.

All members who encounter a situation where the possibility of violence or resistance to lawful arrest is present should, if possible, defuse the situation through advice, warning and verbal persuasion.

In the event that a situation escalates beyond the effective use of verbal diffusion techniques, members are authorized to employ Department-approved compliance techniques and Department-issued defensive weapons.

1. The Department recognizes and employs the Use of Force Continuum. Members in response to resistant or dangerous individuals may apply escalating options of force (see Use of Force Continuum Chart attached). The options include:

    a. <u>Cooperative Controls</u>, such as verbal persuasion;

    b. <u>Contact Controls</u>, such as hand control procedures, firm grip, escort and control holds;

    c. **Compliance Techniques**, such as Oleoresin Capsicum (OC) Spray (non-deadly);

    d. **Defensive Tactics**, such as less-than-lethal weapons, including impact weapons, such as a baton, or ASP, and including less-than-lethal projectiles used by the Emergency Response Team and during times of civil disobedience (e.g., 12 gauge shotgun, 37mm gas guns, and rubber bullets), and canines.

    e. **Deadly Force** (including deadly applications of less-than-lethal weapons).

2. The patrol supervisor, if present where there is a violent or resisting subject, shall direct and control all activity.

3. Members shall modify their level of force in relation to the amount of resistance offered by a subject. As the subject offers less resistance, the member shall lower the amount or type of force used. Conversely, if resistance escalates, members are authorized to respond in an objectively reasonable manner. (CALEA 1.3.1)

4. Issued defensive weapons may be employed in response to the threat level recognized by an objectively reasonable police member in the circumstances as necessary to protect himself/herself or another from physical harm, to restrain or subdue a resistant individual, and to bring an unlawful situation safely and effectively under control.

C. **Authorized Use of Non-Deadly Force** (CALEA 1.3.4)

1. When using force, members must be able to articulate the facts and circumstances surrounding the force used in any given situation.

2. Only objectively reasonable force may be used to respond to threats or resistance in every situation.

3. A member's decision to use non-deadly force must involve one or more of the following:

    a. To protect life or property.

    b. To make a lawful arrest.

    c. To prevent the escape of a person in custody.

    d. To control a situation and/or subdue and restrain a resisting individual.



2584

4. A member shall use only that option of force on the Department's Use of Force Continuum that is reasonably necessary to bring the situation under control. If de-escalation does not work, the member may use an increasing level of force to overcome the level of resistance. As soon as the incident is under control, the member's use of force should diminish proportionally. (CALEA 1.3.1)

D. **Authorized Use of Deadly Force** (CALEA 1.3.2)

1. **Defense of Life**

   a. Members of the Metropolitan Police Department may use deadly force in the performance of police duties:

      (1) When it is necessary and objectively reasonable AND,

      (2) To defend himself/herself or another from an actual or threatened attack that is imminent and could result in death or serious bodily injury.

   b. Members shall not draw and point a firearm at or in the direction of a person unless the officer has an objectively reasonable perception of a substantial risk that the situation may escalate to the point where lethal force would be permitted. When it is determined that the use of lethal force is not necessary, as soon as practicable, firearms shall be secured or re-holstered.

2. **Fleeing Felon**

   Members may use deadly force to apprehend a fleeing felon ONLY when every other reasonable means of affecting the arrest or preventing the escape has been exhausted AND,

   a. The suspect fleeing poses an immediate threat of death or serious bodily harm to the member or others; OR (CALEA 1.3.2)

   b. There is probable cause to believe the crime committed or attempted was a felony, which involved an actual or threatened attack which could result in death or serious bodily harm; AND

      (1) There is probable cause to believe the person fleeing committed or attempted to commit the crime, AND

      (2) Failure to immediately apprehend the person places a member or the public in immediate danger of death or serious bodily injury; AND

      (3) The lives of innocent persons will not be endangered if deadly force is used.

2585

3. <u>Warning to Subject</u>

When feasible, members shall identify themselves as police officers and issue a warning before discharging a firearm.

E. **Less-Than-Lethal Projectiles** (CALEA 1.3.4)

1. The objective of less-than-lethal projectiles is to save human life.

2. Consistent with the Department's philosophy of using only the minimum amount of force necessary to control or subdue potentially violent subjects, less-than-lethal projectiles may be used only by authorized members with appropriate specialized training.

3. During instances of civil disobedience, less-than-lethal weapons may only be used to subdue or incapacitate a subject to prevent imminent physical harm to the officer or another person and shall be used only at the direction of the official in charge of the scene. All other use, by any other member, is strictly prohibited.

F. **Prohibitions**

1. No member shall carry any Department-issued weapon prior to successfully completing Department-approved training courses directed by the Chief of Police. (CALEA 1.3.10)

2. Under no circumstances shall a member carry or use blackjacks, saps, nunchakus, kempo sticks, brass knuckles, or weighted gloves or other unauthorized weapons.

3. Members shall not employ any form of neck restraint except when an imminent threat of death or serious physical injury exists, and no other option is available.

4. Whenever it becomes necessary to take a violent or resisting subject into custody, the responding member shall utilize appropriate tactics in a coordinated effort to overcome resistance.

5. Members shall avoid the use of flashlights, radios or any items not issued specifically as a defensive weapon as a means of force, except when an imminent threat of death or serious physical injury exists, and no other option is available.

G. **Positional Asphyxia Precautions**

When necessary to restrain subjects, members shall:

1. Make every effort (whenever possible) to avoid tactics, which may impede a subject's ability to breathe, which may result in chest or throat compressions, or airway blockage.

2. Position the individual in a manner to allow free breathing, once he or she has been controlled and placed under custodial restraint using handcuffs and other authorized methods. The subject shall not be maintained or transported in a face down position.

3. Seek medical assistance immediately if a person appears to be having difficulty breathing or is otherwise demonstrating life-threatening symptoms (such as positional asphyxia). The patrol supervisor shall direct that alternative means to maintain custody be utilized, if appropriate.

4. The unauthorized use of restraints and the transportation of subjects in a face down position within any vehicle are prohibited.

VI. PROCEDURAL GUIDELINES

Notification and Reporting of a Use of Force Incident

1. **Incidents To Be Reported**

   The Use of Force Incident Report (PD Form 901-e) shall be completed in all of the following situations: (CALEA 1.3.6)

   a. all Use of Force incidents (except Cooperative or Contact Controls, e.g., mere presence, verbal commands or submissive handcuffing, unless there has been a resulting injury or the subject complains of pain following the use of Cooperative or Contact Controls);

   b. any time when an officer is in receipt of an allegation of excessive use of force; or

   c. whenever a member draws and points a firearm at or in the direction of another person.

2. **Member Responsibilities**

   Members shall notify their supervisor and complete a PD Form 901-e (Use of Force Incident Report) immediately following any use of force, receipt of an allegation of excessive force, or immediately following the drawing of and pointing a firearm at or in the direction of another person.

3. **Supervisor Responsibilities**

   When a member has declined to complete the Use of Force Incident Report immediately following an incident, the supervisor shall compel the member to complete the report following a declination by the U. S. Attorney's Office and/or issuance of an authorized Reverse-Garrity warning.

2587

VII. **CROSS REFERENCES**

   A. **Related Directives**

      1. GO OPS-301.03 (Operation of Emergency Vehicles, Fresh Pursuit and Vehicular Pursuit)
      2. GO OPS-304.10 (Police-Citizen Contacts, Stops and Frisks)
      3. GO RAR-306.01 (Canine Teams)
      4. GO RAR-901.01 (Handling of Service Weapons)
      5. GO RAR-901.04 (Oleoresin Capsicum Spray Dispensers)
      6. GO-RAR-901.08 (Use of Force Investigations)
      7. GO RAR-901.09 (Use of Force Review Board)

   B. **Court Opinions**

      1. Tennessee v. Garner, 471 U.S. 1, 11-12 (1985)
      2. Graham v. Connor, 490 U.S. 386 (1989), 104 L. Ed 2d 443, 447
      3. Saucier v. Katz, 533 U.S. 194 (June 18, 2001)

   C. **Laws and Regulations**

      1. D.C. Code §4-176 (Use of Wanton or Unnecessary Force)
      2. D.C. Municipal Regulations, Title 6A, Section 207 (Use of Firearms and Other Weapons)

   D. **Other**

      1. CALEA Standards Section 1.3 (Use of Force)
      2. IACP Model Policy (Use of Force)

   E. **Related Form**

      1. PD Form 901-e (Use of Force Incident Report) [electronic version]
      2. PD Form 901-hc (Use of Force Incident Report) [interim hard-copy version]

Charles H. Ramsey
Chief of Police

Attachment: Use of Force Continuum Chart
            PD Form 901-hc (Use of Force Incident Report) [interim hard-copy version]

CHR:NMJ:JAE:MAR:AFA:afa

Attachment A — General Order RAR - 901.07 (Use of Force)



# Use of Force Incident Report

Date: _____

Report ID: _____

## REPORTING PERSON

| OFFICER | SUBJECT | EYE WITNESS | THIRD PARTY | |
|---|---|---|---|---|
| LAST: | FIRST: | MIDDLE: | | CAD#: |
| ADDRESS: | CITY: | | STATE: | ZIP: |
| PHONE(H): | EMPLOYMENT/SCHOOL: | | | PHONE(W): |
| DOB: | SEX: | RACE: | HEIGHT: | WEIGHT: |
| PERSON NOTIFIED: | RANK: | CAD#: | DATE/TIME NOTIFIED: | |
| FIT NOTIFIED: | TIME NOTIFIED: | FIT INVESTIGATOR: | | CAD#: |

## EVENT INFORMATION

| CCN: | TOTAL # of OFFICERS USING FORCE: | | TOTAL # of SUBJECTS: |
|---|---|---|---|
| REPORT TAKEN BY: | | CAD#: | |
| REPORT TAKEN ON SCENE? Yes No | REPORT DATE/TIME: | INCIDENT DATE/TIME: | |
| OTHER JURISDICTION? Yes No | INCIDENT LOCATION: | DISTRICT: | PSA |
| 1st MEMBER ON SCENE: | | CAD#: | RADIO ASSIGNMENT? Yes No |
| WEATHER: | GROUND: | LIGHTING: | |

### LOCATION TYPE

| Air/Bus/Train Terminal | Alley | Bank/Savings & Loan | Bus Stop | Church/Synagogue/Temple |
|---|---|---|---|---|
| College/University | Commercial Office Bldg | Construction Site | Convenience Store | Department/Discount Store |
| DC Government Bldg | Doctor Office/Hospital | Drug Store | Federal/Government Bldg | Fields/Woods |
| Grocery/Supermarket | Hotel/Motel | Jail/Prison | Lake/Waterway | Liquor Store |
| Park Area | Parking lot/garage | Public Housing Project | School | Rental Storage Facility |
| Residence/Home | Restaurant | Service Station | Sidewalk | Specialty Store |
| Street/Highway/Road | Tavern/Night Club | Other | N/A | Unknown |

### DESIGNATED AREAS

| Victim's Vehicle | Suspect's Vehicle | Taxi-Cab | Bus | Train/Metro/Amtrak/Etc. |
|---|---|---|---|---|
| Hallway | Elevator | Stairwell | Basement/Laundry Room | Apartment/Condo Unit |
| Single Family Dwelling | Hotel/Motel Room | College/University Dorm | Classroom | Office Room |
| Vacant Bldg/Room | Customer Area | Storage Area | In Public Housing | Within 1 block of Public Housing |
| Within 1000ft of School | N/A | Unknown | Other: | |

## REVIEW INFORMATION

| SUPERVISOR SIGNATURE: | CAD#: | ELEMENT: | DATE: |
|---|---|---|---|
| FINDING: | RECOMMENDATION: | | |
| REASON: | | | |
| COMMANDER SIGNATURE: | CAD#: | ELEMENT: | DATE: |
| FINDING: | RECOMMENDATION: | | |
| REASON: | | | |
| ROC SIGNATURE: | CAD#: | ELEMENT: | DATE: |
| FINDING: | RECOMMENDATION: | | |
| REASON: | | | |
| CASE STATUS: OPEN  CLOSED | REASON: | | |

PD Form 901-hc (UFIR)

2591

## OFFICER INFORMATION

| NUMBER OF OFFICERS USING FORCE: | | CS#: | |
|---|---|---|---|
| LAST: | FIRST: | | MIDDLE: |
| CAD#: | RANK: | ELEMENT: | ASSIGNMENT: | PSA: |
| SUPERVISOR: | | CAD#: | DISTRICT: | DATE NOTIFIED: |
| DOB: | SEX: | RACE: | HEIGHT: | WEIGHT: |
| APPOINTMENT DATE: | | DUTY STATUS: On  Off | |
| UNIFORM: Full / Partial / Plain Clothes | | OFFICER INJURED? Yes  No | |

************************ DESCRIBE OFFICER INJURIES (Check all that apply) ************************

| OBSERVATIONS | COMPLAINTS |
|---|---|
| ABRASION | BURNING |
| BRUISING | COMPLAINT OF PAIN, NO VISIBLE PAIN |
| LACERATION | DIFFICULT BREATHING |
| STAB WOUND | NUMBNESS |
| UNCONSCIOUS | NONE |
| NONE | |

PHOTOS TAKEN:  Yes  No

## OFFICER INFORMATION

| NUMBER OF OFFICERS USING FORCE: | | |
|---|---|---|
| LAST: | FIRST: | MIDDLE: |

************************ TYPE OF FORCE USED ************************

| | | | |
|---|---|---|---|
| HANDS | ASP-CONTROL | FIREARM | |
| FEET-KICK | ASP-STRIKE | POINTED AT PERSON | DISCHARGED |
| FIRM GRIP | STUNGUN (ERT) | # OF SHOTS: | |
| CONTROL HOLDS | TASERS (ERT) | FIREARM TYPE | |
| JOINT LOCKS | BEANBAGS (ERT) | HANDGUN | SHOTGUN |
| PRESSURE POINTS | STUNBAGS (ERT) | RIFLE (ERT) | AUTOMATIC WEAPON (ERT) |
| FIST | FLASHBANGS (ERT) | OTHER | |
| TAKEDOWN – SOLO | STINGBALL | MOUNTAIN BIKE SLIDE STRIKE/TAKEDOWN (CERTIFIED) | |
| TAKEDOWN – TEAM | CS CHEMICAL AGENT (CDU) | CANINE | |
| OC AEROSOL | BATON-CONTROL (CDU) | OTHER FORCED USED: | |
| | BATON-STRIKE (CDU) | | |

WAS FIRST AID RENDERED?  Yes  No

| NON-ISSUED WEAPON USED: | QUALIFIED IN WEAPON USE: | DATE CERTIFIED: |
|---|---|---|



PD Form 901-hc (UFIR)  2

# SUBJECT INFORMATION

| # of SUBJECTS: | | | |
|---|---|---|---|
| LAST: | FIRST: | MIDDLE: | SSN: |
| ADDRESS: | CITY: | STATE: | ZIP: |
| PHONE (H): | EMPLOYMENT/SCHOOL: | | CERTIFIED: |
| DOB: | SEX: | RACE: | HEIGHT: | WEIGHT: |

*********************************** SUBJECT ACTION ***********************************

| COMPLIANT | ASSAULTIVE (PHYSICAL INJURY) |
|---|---|
| RESISTANT (PASSIVE) | ASSAULTIVE (SERIOUS PHYSICAL INJURY / DEATH) |
| RESISTANT (ACTIVE) | |

*********************************** SUBJECT ACTIVITY ***********************************

| ASSAULT ON POLICE | DISORDERLY CONDUCT | HOSTAGE | DANGEROUS ANIMAL |
|---|---|---|---|
| ATTEMPT ARREST | DEMONSTRATION | LANDLORD / TENANT DISPUTE | ROBBERY |
| ADW | DEFENDING AND ASSAULT | SUICIDE ATTEMPT | BURGLARY |
| ALCOHOL | DOMESTIC VIOLENCE | TRANSPORTING | FOOT PURSUIT |
| BARRICADE | DRUGS | TRAFFIC STOP | VEHICLE PURSUIT |
| CROWD CONTROL | DUI | SUSPICIOUS SITUATION | OTHER |

## WEAPON INFORMATION

| WEAPON: Yes No | FIREARM Type: | BLUNT WEAPON Type: | EDGED WEAPON Type: | OTHER WEAPON Type: |
|---|---|---|---|---|
| DISCHARGED: Yes No | # SHOTS FIRED: | WEAPON DESCRIPTION: | | |
| WEAPON RECOVERED? Yes No | | RECOVERY LOCATION: | | |
| SUBJECT INTERVIEWED? Yes No | | INTERVIEW DATE / TIME: | | RECORDED: Yes No |
| SUBJECT INJURED Yes No | IMPAIRMENT: | DESCRIBE INJURIES: | | |
| HOSPITAL TREATMENT RECEIVED: Yes No | HOSPITAL: | | DATE / TIME TAKEN: | |
| TAKEN BY AMBULANCE? Yes No | AMBULANCE #: | MEDIC #: | HOSPITAL STATUS: | |
| ESCORT PROVIDED? Yes No | PHYSICIAN NAME: | | Admitted / Released / NA | PHOTOS TAKEN? Yes No |
| ARREST DATE / TIME: | | | PDID: | |
| CHARGES: | | | | |

## OFFICERS AT SCENE

| # OFFICERS AT SCENE: | AGENCY(IES) (NON-MPD): | | |
|---|---|---|---|
| COMMANDING OFFICIAL: | | CAD#: | DISTRICT ASSIGNMENT: |
| LAST: | FIRST: | | MIDDLE: |
| RANK: | CAD#: | DISTRICT: | PSA: |
| DUTY STATUS? On Off | PD119? Yes No | INTERVIEW DATE / TIME: | RECORDED INTERVIEW? Yes No |
| TECHNICIAN NAME: | | CAD#: | |

## WITNESS INFORMATION

| # OF WITNESSES: | | | |
|---|---|---|---|
| LAST: | FIRST: | MIDDLE: | |
| ADDRESS: | CITY: | STATE: | ZIP: |
| PHONE (H): | EMPLOYMENT/SCHOOL: | | |
| DOB: | SEX: | RACE: | LOCAL CANVASS? Yes No |
| PD119? Yes No | INTERVIEW DATE / TIME: | | RECORDED INTERVIEW? Yes No |

## PROPERTY INFORMATION

| # OF PROPERTIES: | | |
|---|---|---|
| Property #: | WAS PROPERTY DAMAGED FROM USE OF FORCE? Yes No | ESTIMATED VALUE: $ |
| PROPERTY TYPE: | DESCRIPTION | |

PD Form 901-hc (UFIR)  3

7

2593

# BODY DIAGRAM

Report ID: _____                                                          Date: _____

CS#: _____          CCN: _____          PDID: _____

Body Diagram is:   Officer ☐         Officer #: ____         CAD#: _____
                   Subject ☐         Subject #: ____

Last Name: _____   First Name: _____   Middle Name: _____

| OBSERVATIONS | COMPLAINTS |
|---|---|
| ABRASIONS | BURNING |
| BRUISING | COMPLAINT OF PAIN, NO VISIBLE PAIN |
| GUN SHOT WOUND | DIFFICULTY BREATHING |
| LACERATION(s) | NUMBNESS |
| STAB WOUND | NONE |
| UNCONSCIOUS | |
| NONE | |

| HOSPITAL TREATMENT RECEIVED: Yes No | HOSPITAL: | DATE/TIME TAKEN: |
| TAKEN BY AMBULANCE? Yes No | AMBULANCE #: | MEDIC #: | HOSPITAL STATUS: |
| ESCORT PROVIDED? Yes No | PHYSICIAN NAME: | Admitted / Released / NA | PHOTOS TAKEN? Yes No |

PD Form 901-hc (UFIR)

2595

Case 1:06-cv-00002-JDB    Document 220-2    Filed 07/03/2008    Page 18 of 18