## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EMILE MAZLOUM,

     Plaintiff,

        v.

DISTRICT OF COLUMBIA
METROPOLITAN POLICE
DEPARTMENT, et al.,

     Defendants.

Civil Action No. 06-0002 (JDB)

## MEMORANDUM OPINION

A jury trial commenced in this case on April 23, 2008. At the close of plaintiff Emile Mazloum's case-in-chief, all defendants moved for judgment as a matter of law. The Court granted the Fed. R. Civ. P. 50(a) motion with respect to the assault and battery claims against Officers Phillips, Modlin, and Schneider but denied all of the other motions. At the close of the defense case, the defendants renewed their Rule 50 motions, which the Court took under advisement. The case went to the jury on May 2, 2008. On May 6, 2008, the jury returned a verdict finding: (1) defendant Michael Persons liable to Mazloum for battery in the amount of $5,000; (2) defendant Anthony Ramirez liable to Mazloum for violating 42 U.S.C. § 1983 in the amounts of $5,000 in compensatory damages and $25,000 in punitive damages; and (3) for the defendants on all remaining counts. The jury also answered a series of special interrogatories designed to aid the Court in its qualified immunity determination with respect to Officer Ramirez.

In the days following the verdict, both sides filed post-trial motions. Ramirez moved for judgment notwithstanding the verdict on the § 1983 claim and defendants Phillips, Modlin, and

Schneider moved for judgment as a matter of law with respect to the § 1983 claims against them, which were not tried and are currently on appeal before the D.C. Circuit challenging this Court's pre-trial denial of qualified immunity. For his part, Mazloum moved for entry of judgment against Ramirez on the battery claim pursuant to Fed. R. Civ. P. 49(b) and 59(e) or, alternatively, for a new trial on the battery claim. Those fully briefed motions are presently before the Court. Upon careful consideration, and for the reasons identified below, the Court will deny defendants' motions and grant in part and deny in part Mazloum's motion.

## BACKGROUND

The factual record elicited at trial mostly conformed to the parties' proffered showings at the summary judgment phase of this case. Suffice it to say, the parties presented dramatically different accounts of the events of March 12-13, 2005 to the jury.[1] Mazloum took the stand first. He testified that during the night in question he had one or two beers prior to arriving at the FUR Nightclub and perhaps had another drink once he was there. He claimed, however, that he was not intoxicated at any point during the evening. Mazloum explained that at some point he climbed onto the stage at the club from the dance floor and proceeded to dance there for several minutes. He then decided to descend from the stage by way of the stairs. At that point, Mazloum stated that he was accosted from behind by defendant Persons, a club employee monitoring access to the stage, and wrestled to the ground. Mazloum's friends Marwan Abi-Aad and Imad Alkadi, who were working as promoters at the nightclub that evening, attempted to intervene on his behalf to no avail, and at some point all of them fell to the ground.

---

[1] The discussion here is limited to the major developments at trial relevant to resolving the present motions. For a full factual account, see Mazloum v. Dist. of Columbia, 522 F. Supp. 2d 24 (D.D.C. 2007).

It was then that the off-duty officers joined the scrum.  Although they did not witness the onset of the altercation and at the time they intervened Persons had Mazloum pinned to the ground, the off-duty officers nonetheless identified Mazloum as the aggressor and decided to remove him from the club.[2]  They proceeded to drag Mazloum across the dance floor towards a tunnel leading to an exit.  That, Mazloum said, explained the strong smell of alcohol emanating from his person later in the night: the dance floor, he stated, was soaked with alcohol spilled by dancing patrons throughout the evening and his clothes absorbed some of that spillage while he was being dragged across the floor.

After Mazloum was already being dragged by the other off-duty officers -- and admittedly attempting to free himself -- Officer Ramirez became involved in the incident.  He had not witnessed any of the events prior to the other officers' intervention.  He produced a set of handcuffs and, with the aid of another officer, successfully placed them on Mazloum.  At that point, Mazloum testified that Ramirez punched him in the face and exclaimed: "Shut up, you fucking al-qaeda!"  The officers then proceeded to force Mazloum outside of the club and sit him on the sidewalk outside.  Screaming that he had done nothing wrong, Mazloum attempted to get up but was slammed to the ground by the officers.  According to Mazloum, Ramirez kicked him and slammed his head against the curb, causing him to incur significant injury.  Ramirez then once again referred to him as a "fucking al-qaeda," according to Mazloum.

On-duty Officers Acosta and Smith then arrived.  After consulting with individuals on the scene and questioning Mazloum, the officers released him without charge.  Mazloum indicated that

---

[2] The officers claimed that they identified themselves as members of the D.C. Metropolitan Police Department.  Mazloum disputed that assertion.

he wanted to file a complaint against the off-duty officers, but Acosta and Smith informed him that he would have to be arrested and taken to the police station to accomplish that.  Mazloum, however, insisted on filing a report and even went as far as to place himself in the back seat of the police cruiser so that he could be taken to the police station.  Acosta and Smith removed Mazloum from the vehicle and then departed from the scene.

The next day, after being treated for his injuries at a hospital in Virginia, Mazloum went to the police station to file a citizen complaint report.  There he saw and recognized Ramirez and proceeded to get his name and badge information.  Mazloum then lodged his official complaint. Two friends of Mazloum, Alkadi and Abi-Aad,  testified at trial and corroborated parts of Mazloum's account of the events.  Mazloum's case-in-chief then concluded by reading certain deposition excerpts into the record.

At the close of Mazloum's evidence, the Court granted defendants' Rule 50 motion on the assault and battery counts against the off-duty officers (aside from Ramirez).  The only evidence introduced against those defendants during Mazloum's case-in-chief was that they had "dragged" Mazloum across the floor in the process of removing him from the club.  The Court concluded that such a limited showing was insufficient as a matter of law to establish battery, particularly in light of the qualified privilege that officers enjoy while performing an arrest.  The remainder of Mazloum's claims survived defendants' Rule 50 motion.

Defendants sent several witnesses to the stand during the presentation of their case.  Persons testified that he had asked Mazloum to leave the stage area several times before the final incident occurred.  When Persons sought to remove him that final time, Mazloum moved aggressively towards him and he believed that Mazloum was poised to strike him, according to Persons's

testimony.  Persons then grabbed Mazloum, and in the ensuing struggle, Persons admitted to

striking Mazloum and pinning him to the ground, although he maintained that he did so only in

self-defense.

The off-duty officers then took the stand to testify to their roles in the incident.  They stated

that they used the minimal force necessary to remove an unruly, aggressive, and intoxicated[3] patron

who was engaged in a physical altercation with one of the club's hosts (Persons).  They denied

seeing Ramirez punch or kick Mazloum and also denied hearing Ramirez refer to Mazloum as a

"fucking al-qaeda."

Finally, Ramirez testified that he did not punch Mazloum in the face or refer to him as a

"fucking al-qaeda."  Ramirez did, however, admit to using a "sweep" maneuver to knock Mazloum

down after he refused to remain seated on the sidewalk curb outside the club as the officers had

commanded.  That maneuver, Ramirez claimed, is a standard police tactic for dealing with unruly

individuals resisting arrest, such as Mazloum, and does not constitute an unlawful or excessive use

of force.

After the Court held defendants' renewed Rule 50 motions in abeyance, the case went to the

jury.  Following three days of deliberations, the jury returned a verdict against Persons on the

battery count and against Ramirez on the § 1983 count.  The jury found for the defendants on all

other claims, including on the battery claim against Ramirez.  In addition, the jury answered several

specific factual interrogatories designed to aid the Court's qualified immunity determination.

---

[3] The parties' vigorously disputed Mazloum's alleged level of intoxication.  Several
defense witnesses claimed that Mazloum appeared intoxicated and that he smelled strongly of
alcohol.  Mazloum, for his part, insists that he was not impaired at all.  In fact, Mazloum takes the
off-duty officers to task for consuming alcohol themselves during the course of the evening.

## STANDARD OF REVIEW

A Court may "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal law." See Fed. R. Civ. P. 59(a).  The decision to grant a new trial falls within the sound discretion of the trial court.  See Hutchinson v. Stuckey, 952 F.2d 1418, 1420 (D.C. Cir. 1992).  "[M]indful of the jury's special function in our legal system and hesita[nt] to disturb its findings," Nyman v. FDIC, 967 F. Supp. 1562, 1569 (D.D.C. 1997), a court should only grant a new trial "'where the court is convinced the jury verdict was a seriously erroneous result' and where denial of the motion will result in a 'clear miscarriage of justice,'" Martinez v. Dist. of Columbia, 503 F. Supp. 2d 353, 355 (D.D.C. 2007) (quoting Nyman, 967 F. Supp. at 1569) (internal quotations omitted).  "Generally, a new trial may only be granted when a manifest error of law or fact is presented." In re Lorazepam & Clorazepate Antitrust Litig., 467 F. Supp. 2d 74, 87 (D.D.C. 2006).

Pursuant to Fed. R. Civ. P. 50(a), a court may grant judgment as a matter of law during or after "a jury trial . . . [if] the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." See Fed. R. Civ. P. 50(a)(1).  In entertaining a "motion for judgment as a matter of law, the court should review all of the evidence in the record." Reeves v. Sanderson Plumbing Prods., Inc., 540 U.S. 133, 150 (2000).  "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Id.  "Entry of judgment as a matter of law under Rule 50 is warranted only if 'the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached a verdict in plaintiff's favor.'" Alkire v. Marriott Int'l, Inc., 2007 WL 1041660 at *1 (D.D.C. Apr. 5, 2007) (quoting McGill v.

Munoz, 203 F.3d 843, 845 (D.C. Cir. 2000)).

## DISCUSSION

**I.    Defendants' Motion for Judgment as a Matter of Law and Judgment Notwithstanding the Verdict**

Defendants' motion breaks down into two constituent parts.  First, defendants Phillips, Modlin, and Schneider have moved for judgment as a matter of law on the outstanding § 1983 claim against them.  Second, defendant Ramirez has moved for judgment notwithstanding the verdict with respect to the jury's § 1983 finding against him.  The Court will address each issue in turn.

A.    Motion for Judgment as a Matter of Law by Phillips, Modlin, and Schneider

The Court can quickly dispense with the motion for judgment as a matter of law by defendants' Phillips, Modlin, and Schneider.  The crux of this motion is that the trial record precludes any verdict against these defendants on the basis of either excessive force or unlawful arrest with respect to the § 1983 claim.  Thus, they argue, this Court should enter judgment as a matter of law in their favor on the § 1983 claim.

Defendants' proposition is fatally flawed for several reasons.  To begin with, the § 1983 claim is currently on appeal before the D.C. Circuit.  At the summary judgment phase, this Court denied qualified immunity to the off-duty officers on the record presented.  Those defendants then availed themselves of the immediate interlocutory appeal made available under Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  An appeal is a jurisdictional event.  See Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982).  Hence, this Court lacks jurisdiction to enter any judgment on the § 1983 claim against defendants Phillips, Modlin, and Schneider.  Defendants attempt to side-step that conclusion by stating that if this Court "indicates a willingness to grant their post-trial

motion, . . . these defendants will ask the Court of Appeals to remand the case to this Court to allow a final judgment to be entered in their favor." <u>See</u> Defs.' Mot. at 1 n. 1. But as Mazloum correctly points out, defendants are therefore seemingly "seeking some form of advisory opinion from this Court," <u>see</u> Pl.'s Opp'n at 42, which is of course impermissible.[4]

Even if the Court were inclined to follow defendants' suggestion -- which it is not -- there is still another problem with their request. Defendants, in essence, ask the Court to enter judgment in their favor on a claim that was never tried before the jury in the first place. Indeed, all proceedings with respect to that claim were stayed by this Court pending the outcome of defendants' appeal. <u>See</u> <u>Mazloum v. Dist. of Columbia</u>, Memorandum and Order, Dckt. #158 at *6. Defendants may not now apply the trial record on the assault and battery claim to the § 1983 claim that was not before the jury, regardless of how similar the standards of liability may be.[5]

In fact, after Mazloum pointed out these deficiencies in his opposition brief, defendants made no serious attempt to refute them in their reply. Hence, defendants' motion for judgment as a matter of law will be denied.

------------------------

[4] Defendants' reliance upon <u>Smith v. Pollin</u>, 194 F.2d 349 (D.C. Cir. 1952), is misplaced. <u>Smith</u> permits a district court to consider a motion for a new trial on the basis of newly discovered evidence notwithstanding a pending appeal. <u>Id.</u> at 350. Thus, <u>Smith</u> contemplates a scenario where the claims have already been tried and a verdict entered prior to the discovery of new evidence. Here, by contrast, not only has there not been a trial or a verdict with respect to the § 1983 claim, there is no newly discovered evidence either -- the only "new" fact is the outcome of the trial on separate claims. As one judge put it, the D.C. Circuit "has not indicated a willingness to expand <u>Smith</u> beyond cases involving motions for new trials based on newly-discovered evidence," <u>see</u> <u>United States v. Cisneros</u>, 26 F. Supp. 2d 24, 58 (D.D.C. 1998), and the Court declines to do so here.

[5] Moreover, one need look no further than defendant Ramirez to acknowledge the possibility of different trial outcomes on battery and § 1983 claims based on the same factual record.

B.       Ramirez's Motion for Judgment Notwithstanding the Verdict

Ramirez contends that he is entitled to judgment notwithstanding the verdict because the jury's findings in his favor on the assault and battery claims preclude a § 1983 verdict on the basis of excessive force.  Because he insists as well that the record cannot sustain a § 1983 verdict against him on the basis of unlawful arrest, Ramirez asks that judgment be entered in his favor on the § 1983 claim notwithstanding the jury's verdict finding him liable for compensatory and punitive damages on that count.  At the very least, Ramirez argues, he is entitled to qualified immunity for his actions, which alone should serve as a sufficient basis for granting his motion.  As explained below, the Court disagrees.

To begin with, the alleged inconsistency between the battery verdict and the § 1983 claim verdict -- to which the Court will turn in more detail momentarily -- is only apparent if one views the § 1983 verdict as necessarily premised on the use of excessive force.  The verdict form for the § 1983 claim, however, framed liability in the disjunctive: "Did Mr. Mazloum prove by a preponderance of the evidence that Mr. Ramirez deprived Mr. Mazloum of his constitutional rights to be free from unlawful arrest or the use of excessive force under the Fourth Amendment of the U.S. Constitution and 42 U.S.C. § 1983?"  See Verdict Form at 2.  The jury's response to that question was simply "Yes."  Thus, it is possible that the jury could have found Ramirez liable under § 1983 because his arrest of Mazloum was unlawful, and not because he used excessive force.[6]

---

[6] Ramirez does not appear to contest that the off-duty officers' detention of Mazloum constitutes an arrest.  The record, moreover, supports the conclusion that Mazloum was arrested. He was "not free to leave" the off-duty officers' custody, see California v. Hodari D., 499 U.S. 621, 628 (1991) (internal quotations omitted), and the officers had certainly utilized physical force to detain him, see Beran v. United States, 1992 WL 182261 at *6 (D.D.C. July 13, 1992) (noting that plaintiff was arrested when "physical force was applied").  Indeed, any suggestion that the officers merely performed an investigative or Terry stop is belied by their failure to ask Mazloum

The question, then, is whether the trial record can support that conclusion as a matter of law. "It is well settled that an arrest without probable cause violates the Fourth Amendment." Martin v. Malhoyt, 830 F.2d 237, 262 (D.C. Cir. 1987) (citing Gerstein v. Pugh, 420 U.S. 103, 111 (1975)). Probable cause is determined on the basis of the "totality of the circumstances," see Illinois v. Gates, 462 U.S. 213, 230 (1983), which requires that the arresting officer "had enough information to warrant a man of reasonable caution in the belief that a crime has been committed and that the person arrested has committed it." Barham v. Ramsey, 434 F.3d 565, 572 (D.C. Cir. 2006) (internal quotations omitted). Consistent with those guidelines, the jury in this case was instructed to determine "whether the officers had information that would lead a reasonable person who possesses the same official expertise as the off-duty officers have to conclude that the person being arrested had committed or was about to commit a crime." See Jury Instructions at 45.

Employing that instruction, the Court concludes that a reasonable jury could have concluded from the trial record that Mazloum was unlawfully arrested in violation of the Fourth Amendment. At this stage, the evidence must be viewed in the light most favorable to Mazloum, as the standard for granting "a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion under Rule 50(a). Thus, the post-verdict motion for judgment can be granted only if the prior motion should have been granted." C. Wright & A. Miller, Fed. Prac. & Proc. § 2537 (3d ed. 2008); see also Hudson v. Dist. of Columbia, 517 F. Supp. 2d 40, 45 (D.D.C. 2007).

Hence, viewing the conflicting evidence in the light most favorable to Mazloum, the jury

---

any questions about the incident whatsoever. See United States v. Barber, 557 F.2d 628, 633 (8th Cir. 1977) ("The officers' purpose in going to the car was admittedly not investigative; in fact, they asked no questions of the three occupants.") (emphasis in original).

could rationally have concluded that the off-duty officers were not justified in their decision to

detain and arrest Mazloum because they lacked probable cause to do so.[7]  None of the officers

witnessed the start of the altercation.  None of them saw Mazloum commit any crime or engage in

any other unlawful behavior.  And, indeed, when they did become involved, Mazloum was pinned

to the ground below Persons (the larger man by far), which belies the conclusion that Mazloum

presented any immediate threat to the officers or other club patrons.  The jury, then, might

reasonably have decided that -- given the facts known to the officers at the time (as construed by

the jury) -- the officers could not have credibly determined that Mazloum had committed or was

about to commit a crime.  In fact, viewing the disputed evidence in the light most favorable to

Mazloum, he was the <u>victim</u>, a view apparently shared by the jury as demonstrated by its verdict

against Persons on the battery count.  It would be an odd thing to conclude that off-duty officers

have probable cause to arrest the <u>victim</u> of an assault or battery merely because the assailant was

employed as a bouncer (or "host") at the establishment in question.  Moreover, after the officers

intervened, they made no effort to ascertain what had occurred to instigate the scuffle; for example,

they failed to question any of the witnesses present.  Instead, they immediately decided to detain

and remove Mazloum without the benefit of any investigation whatsoever.  Based on that evidence,

the jury could have determined that the officers lacked probable cause to arrest Mazloum at that

time, thus rendering their decision to detain him unlawful.[8]

_____

[7] That conclusion, of course, would result only in a § 1983 verdict against Ramirez, since the § 1983 claim against the other off-duty officers was on appeal and not presented to the jury.

[8] The District makes too much of the jury's affirmative response to factual interrogatory #1, which asked whether "Mr. Mazloum had engaged in any conduct that warranted the involvement of the police" prior to the officers' intervention.  <u>See</u> Verdict Form Section III #1. The jury's response indicates only that police intervention was warranted due to the on-going

Defendants make the additional argument that the Court should not look to the officers' collective knowledge to determine whether probable cause existed, but rather should focus solely upon what Ramirez himself knew at the time. Because Ramirez concededly became involved at the point where Mazloum was no longer pinned to the ground and was already being dragged across the floor by the other officers, the argument goes, Ramirez cannot be held responsible for any probable cause deficiency that may plague the decisions by the other officers to take Mazloum into custody in the first instance. Thus, according to defendants, Ramirez was justified in producing his handcuffs and assisting in the arrest of Mazloum because he was merely aiding his fellow officers in what he believed was a lawful arrest. That argument is perplexing, however, because it is essentially just another way of articulating the collective knowledge doctrine. That is, Ramirez admittedly lacked personal knowledge of any facts that would give rise to probable cause to arrest Mazloum at the outset of the incident. Instead, he would have relied upon the determination of the other officers that probable cause was present.[9] But if the "collective knowledge" of all of the off-duty officers is still insufficient to establish probable cause for Mazloum's arrest, then Ramirez cannot escape responsibility for participating in the arrest by pointing out that he knew even less than the other officers involved. Focusing only on what Ramirez personally knew therefore does

---

altercation. It does not otherwise suggest that the officers were justified in detaining or arresting Mazloum without any further investigation.

[9] Ramirez also contends that because he saw Mazloum "actively resisting arrest," see Defs.' Reply at 4, he thereby acquired the requisite probable cause to arrest Mazloum. The Court disagrees. At the time Ramirez witnessed Mazloum struggling to free himself from the other off-duty officers, he had already been placed under arrest. Probable cause, however, is determined "at the time of arrest," see Lyles v. Micenko, 468 F. Supp. 2d 68, 73 (D.D.C. 2006), and "information subsequently obtained cannot fill the gap if probable cause is lacking," see Washington v. United States, 414 F.2d 1119, 1122 (D.C. Cir. 1969).

not advance his argument here.

In short, the trial record would permit a reasonable jury to conclude that Ramirez violated Mazloum's right to be free from unlawful arrest in violation of the Fourth Amendment and § 1983, particularly when viewing the evidence in the light most favorable to Mazloum (as the Court must for purposes of this motion). The battery and § 1983 verdicts are then not inconsistent. But Ramirez's motion fares even worse if the jury's verdict is construed as finding § 1983 liability premised on the use of excessive force. There is no question whatsoever that the record contained sufficient evidence to permit a reasonable fact-finder to conclude that Ramirez had utilized excessive force in arresting Mazloum. Indeed, Mazloum testified that Ramirez: (1) punched him in the face (at least once) while he was handcuffed; (2) repeatedly kicked him, which was corroborated at least in part by Ramirez's testimony that he "swept" Mazloum's legs; and (3) slammed his head against the sidewalk pavement while he was still handcuffed and held in police custody. Two other witnesses -- Alkadi and Abi-Aad -- confirmed Mazloum's account in varying degrees. To be sure, Ramirez and the other off-duty officers presented a dramatically different account and largely denied engaging in any of the questionable conduct that Mazloum alleged took place. But resolving conflicting testimony and making credibility determinations are quintessentially tasks for the jury. See United States v. Project on Government Oversight, 454 F.3d 306, 313 (D.C. Cir. 2006) ("Evaluation of the credibility of witnesses must be left to the fact-finder."). Ramirez's suggestion that "defendants have shown that the evidence is so one-sided that plaintiff's version is unsupportable," see Defs.' Reply at 3, is simply without merit. There is ample evidence that would have permitted a reasonable jury to reach a verdict in favor of Mazloum on the § 1983 claim based on excessive force, and thus the Court will deny Ramirez's motion for

judgment notwithstanding the verdict to the extent it rests upon insufficiency of the evidence.

Nevertheless, Ramirez offers two additional reasons to grant his motion.  First, he argues, he is entitled to qualified immunity notwithstanding the jury's finding of § 1983 liability.  Second, in his view, "[t]he combination of the jury's assault-and-battery verdict and special interrogatory responses demonstrates that . . . [Ramirez] is entitled to judgment as a matter of law on plaintiff's excessive force claim."  Id. at 3-4.  As explained below, neither argument is persuasive.

The Court instructed the jury to answer Section III of the verdict form only in the event that it found any of the off-duty officers liable under § 1981 or § 1983.  Because the jury found for Mazloum on the § 1983 count against Ramirez, it proceeded to answer the special interrogatories found in Section III.  Those special factual interrogatories were fashioned solely to aid the Court's determination of any qualified immunity question.  Without a jury resolution of factual circumstances to which to apply the applicable law, the Court would not be able to determine whether Ramirez was entitled to qualified immunity for his actions.  Armed with the jury's answers to the special factual interrogatories, however, the Court can now engage in the proper legal analysis.  See Halcomb v. WMATA, 526 F. Supp. 2d 20, 22 n. 2 (D.D.C. 2007) ("A trial court may also require the jury to answer special interrogatories in order to decide which version of the facts should be relied upon by the court in reaching its legal conclusion with respect to qualified immunity."); see also Johnson v. Breeden, 280 F.3d 1308, 1318 (11th Cir. 2002).

The jury made several specific factual findings relevant to the qualified immunity determination.  To begin with, the jurors found that although the off-duty officers identified themselves as members of the MPD, they also thought that Mazloum may not have heard them.  See Verdict Form Section III #7-8.  The jury also found that Mazloum resisted the officers'

attempts to remove him from the club.  Id. #9.  Moreover, the jury found that "Mr. Mazloum

behaved in an intoxicated and disorderly manner toward the off-duty officers after they intervened."

Id. # 11.  In response to the interrogatory asking whether the officers "dragged and hit Mazloum,"

the jury provided the following answer: "We find by a preponderance of the evidence that the off-

duty officers forced Mr. Mazloum across the floor and roughly handled him with excessive force."

Id. #10 (emphasis added).  Questions #12-14 are critical to the qualified immunity determination,

so the Court will reproduce them and the jury's response if full (the prompt to each question asks

whether the jury found each fact by a preponderance of the evidence):

> 12. Mr. Ramirez punched Mr. Mazloum after Mr. Mazloum was handcuffed?
>
> 13. Mr. Ramirez kicked Mr. Mazloum after Mr. Mazloum was handcuffed?
>
> 14. Mr. Ramirez slammed Mr. Mazloum's head on the sidewalk while Mr. Mazloum
>
> was handcuffed?

Id. #12-#14.  Rather than respond to each question with a "Yes" or "No" answer, the jury provided

the following collective response: "For 12, 13, 14, we find that Mr. Ramirez was overally [sic]

aggressive with Mr. Mazloum and Mr. Ramirez employed excessive force against Mr. Mazloum."

Id. (emphasis added).

There are two distinct inquiries to be addressed in the qualified immunity analysis.  The first

is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show that

officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If the

answer to that question is "yes," then the second question is "whether the [constitutional] right was

clearly established."  Id.  Thus, the "dispositive inquiry" on the second front "is whether it would be

clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at

202.

Applying that well-established legal standard, the Court concludes that Ramirez is not entitled to qualified immunity here.  Of course, given the uncertainty as to whether the jury's § 1983 verdict is based on excessive force or unlawful arrest, the analysis must cover both.  The pertinent facts, as elucidated by the jury's responses to the special factual interrogatories, establish that Ramirez utilized excessive force against Mazloum -- in fact, the jury twice used that exact phrase to describe Ramirez's conduct (and that of the other off-duty officers) towards Mazloum.[10] It is apparent that although the jury could not unanimously agree to the specifics of Ramirez's actions -- i.e., whether he had engaged in discrete acts of punching, kicking, or slamming Mazloum's head against the pavement -- all of the jurors nevertheless unanimously believed that Ramirez's conduct, by a preponderance of the evidence and in light of the factual scenario as construed by the jury, constituted an unconstitutional use of excessive force under the circumstances.  Remarkably, Ramirez disputes that conclusion because, he contends, the jury "expressly declined to find punching, hitting or kicking."  See Defs.' Reply at 4.  That rather plainly overlooks what the jury expressly did find: that Ramirez used excessive force against Mazloum under the circumstances.  It is clear that the jury credited at least some of Mazloum's testimony regarding Ramirez's conduct and disregarded much of Ramirez's testimony, in which he denied

---

[10] In this case, the question whether Ramirez employed excessive force is a mixed question of fact and law.  The parties presented significantly different factual accounts of what physical exchanges (if any) actually took place between Ramirez and Mazloum.  That is plainly a factual question.  But even the normally legal inquiry -- whether any use of force was reasonable under the circumstances -- contains a factual element here because the "circumstances" that Ramirez confronted are also bitterly disputed.  Thus, although the jury's use of the term "excessive force" may appear, at first glance, to be a legal conclusion, it is clear that the jury necessarily made the factual determinations that Ramirez used some force against Mazloum and that the circumstances did not warrant that use of force.

any unwarranted contact with Mazloum. Notwithstanding the jury's findings that Mazloum "behaved in an intoxicated and disorderly manner toward the off-duty officers after they intervened," see Verdict Form Section III #11, and that he had "resisted the off-duty officers' attempts to remove him from" the night club, id. #9, the jury nonetheless concluded that Ramirez's actions crossed the line separating reasonable use of force from excessive force. That is the only reasonable reading of Section III of the verdict form, and Ramirez's attempts to characterize the jury's responses in any other manner are unavailing.

The jury's findings are also consistent with the Graham v. Connor, 490 U.S. 386 (1989), guidelines for establishing excessive use of force. First, Graham suggests that the "severity of the crime at issue," id. at 396, should factor into the officer's use of force. Here, of course, Mazloum engaged in no criminal conduct. That weighs heavily in favor of finding that Ramirez's use of force was excessive. Second, the Court must examine whether Mazloum "pose[d] an immediate threat to the safety of the officers or others." Id. at 396. In this instance, Ramirez allegedly used violent force against Mazloum after he was already handcuffed and otherwise under the control of the off-duty officers. There is no evidence that Mazloum posed a risk to the officers or other patrons at that time. Moreover, Mazloum was "neither armed nor suspected of being armed," Jones v. Buchanan, 325 F.3d 520, 528 (4th Cir. 2003), which further belies any conclusion that he posed a serious threat to Ramirez (or the other officers) at the time. And as in Jones, where an officer allegedly assaulted a handcuffed plaintiff, "it is difficult to discern any legitimate law enforcement need for the force applied in this case," id. at 530 (internal quotation omitted), as shown by the evidence and found by the jury. Third, although the jury found that Mazloum resisted the officers' attempt to remove him from the club, it also noted that Mazloum may not have heard the officers

-17-

identify themselves as law enforcement officials.  More importantly, however, the jury found that "the off-duty officers forced Mr. Mazloum across the floor and roughly handled him <u>with excessive force</u>."  <u>See</u> Verdict Form Section III #10 (emphasis added).  Thus, at the time Mazloum was supposedly resisting arrest, the off-duty officers were already handling him with excessive force, in the eyes of the jury.  Significantly, as this Court has previously noted, "the D.C. Circuit has indicated that attempts to free oneself <u>after</u> the use of force in question has occurred are not relevant to the inquiry concerning the officer's initiation of force."  <u>See</u> <u>Mazloum</u>, 522 F. Supp. 2d at 34 (citing <u>DeGraff v. Dist. of Columbia</u>, 120 F.3d 298, 302 (D.C. Cir. 1997)).  In short, the <u>Graham</u> factors indicate that Ramirez's use of force was excessive under the Fourth Amendment.

Turning to the second prong of the qualified immunity analysis, then, the Court notes that it is axiomatic that individuals enjoy a clearly established right to be secure from excessive force exercised by police officers.  <u>See</u> <u>Graham</u>, 490 U.S. at 395.  Thus, the question here is whether a reasonable officer faced with the same factual scenario that Ramirez encountered would have known that his use of force was excessive under the Fourth Amendment.  Viewed through the lens of the jury's factual findings in this case, the Court concludes that a reasonable officer faced with similar circumstances would have known that the use of force employed by Ramirez would constitute unlawful excessive force.  In short, viewed in the light most favorable to Mazloum, the factual scenario is this: Mazloum, already the victim of a battery at the hands of Persons, was handcuffed and already in police custody at the time that Ramirez -- in the words of the jury -- employed "excessive force" against Mazloum.  <u>See</u> Verdict Form Section III #12-14.  As Mazloum aptly put it, that answer indicates that "the jurors unanimously found that (1) at least <u>some</u> act or acts of physical violence occurred . . . even if the jury could not agree unanimously on precisely

which ones, and (2) such acts, either by themselves or combined with Ramirez'[s] other relevant conduct, were objectively disproportionate to the circumstances."  See Pl.'s Opp'n at 32.

A reasonable officer should know that he cannot employ unprovoked, violent force against an individual in custody, particularly one who is handcuffed and largely defenseless.  Indeed, in Jones the Fourth Circuit noted that "[b]efore and after November 1999, courts have consistently applied the Graham holding and have consistently held that officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity."  325 F.3d at 532.  Indeed, Jones indicates that it is clearly established that "a police officer [is] not entitled to use unnecessary, gratuitous, and disproportionate force against a handcuffed, secured citizen," id. at 534, in the manner that Ramirez allegedly did in this case.  Whether Ramirez punched or kicked Mazloum, or slammed his head on the sidewalk, after Mazloum was handcuffed -- a question the jury did not precisely resolve -- it is clear that such force was not objectively reasonable under the circumstances present here.  Thus, the Court concludes that "the state of the law" at the time gave Ramirez "fair warning" that his conduct towards Mazloum constituted unconstitutional excessive force.  See Hope v. Pelzer, 536 U.S. 730, 741 (2002).  Accordingly, the Court will deny Ramirez's motion for relief on the basis of qualified immunity.

Similarly, to the extent that the jury's § 1983 verdict is premised upon unlawful arrest, the Court concludes that Ramirez is likewise not entitled to qualified immunity.  As demonstrated above, the Court finds that there was sufficient evidence from which a reasonable jury could have concluded that Ramirez (and the other officers) lacked probable cause to arrest Mazloum, thus running afoul of the Fourth Amendment's prohibition against arrests without probable cause.

Having established that a constitutional violation likely took place, the second prong of the qualified immunity analysis is easily satisfied. It is well-established that an officer cannot arrest an individual without probable cause. See Pembaur v. City of Cincinnati, 475 U.S. 469, 486 (1986) (noting that probable cause is required for a lawful arrest). Defendants' argument that the officers "in good faith believed that [Mazloum] was the aggressor in [the] scuffle with the bouncer," see Defs.' Mot at 14, is misplaced. The question is not whether the officers believed in "good faith" that Mazloum was the aggressor but whether it would be reasonable for a similarly-situated officer to so conclude. As indicated above, given the fact that none of the officers apparently witnessed the start of the altercation, coupled with facts indicating that Mazloum was pinned to the floor by Persons at the time of the officers' intervention, the Court concludes that there was sufficient evidence to permit a reasonable jury to conclude that probable cause was objectively lacking. Qualified immunity, then, is not available to Ramirez from the § 1983 claim premised on a jury finding that there was an unlawful arrest in violation of the Fourth Amendment.

Ramirez next contends that the jury's verdict in his favor on the battery claim necessarily precludes a finding of excessive force under § 1983. The jury's § 1983 verdict should therefore be set aside and judgment should be entered in his favor notwithstanding the verdict, according to Ramirez. The Court disagrees. To begin with, to the extent that the jury's § 1983 verdict was premised upon Ramirez's use of excessive force, there is arguably a conflict between the jury's battery verdict and its § 1983 verdict. But that does not necessarily suggest, as Ramirez contends, that the battery verdict is more "accurate" and should therefore take precedence over the § 1983 verdict. In fact, the converse is equally, if not more, true -- after all, in the responses to the special interrogatories, the jury explicitly found that Ramirez had used excessive force in his dealings with

Mazloum. That implies, if anything, that the <u>battery</u> verdict should be set aside.

In any event, to the extent that the jury's battery and § 1983 verdicts are irreconcilably inconsistent, Ramirez has not requested the proper post-trial relief to remedy any such inconsistency. This case presents the same situation as <u>Mosley v. Wilson</u>, 102 F.3d 85 (3d Cir. 1996). There, the defendant moved for post-verdict judgment as a matter of law on the basis of supposedly inconsistent jury verdicts. The Third Circuit, however, noted that the defendant "cite[d] no authority that authorizes a district court to grant judgment as a matter of law based on the jury's inconsistency on different claims." <u>Id.</u> at 89. Indeed, the court explained that it would be "'[n]either fair [n]or appropriate simply to excise the jury's . . . finding and to enter judgment for [defendant]' based on the jury's verdict on a different claim that rendered the verdicts inconsistent." <u>Id.</u> at 90 (quoting <u>Repola v. Morbank Indus. Inc</u>, 934 F.2d 483, 495 (3d Cir. 1991)). Drawing on Fed. R. Civ. P 49(b), the court found that the proper remedy to employ would be to order a new trial. <u>Id.</u> at 89-91. Just as in <u>Mosley</u>, here Ramirez has offered no authority that supports granting judgment as a matter of law solely on the basis of supposedly conflicting general verdicts. Similarly, he has not moved for a new trial, which the <u>Mosley</u> court correctly identified as the only proper remedy. Accordingly, Ramirez's motion to set aside the § 1983 verdict will be denied.

Finally, Ramirez contends that the jury's award of $25,000 in punitive damages must fail as a matter of law. He does not, however, offer any persuasive arguments to support that assertion. Based on the trial record, the Court concludes that a reasonable jury could have found, by clear and convincing evidence, that Ramirez's behavior towards Mazloum constituted a "willful disregard for" Mazloum's rights and was itself "outrageous . . . or reckless towards the safety of [Mazloum]." <u>See Standardized Civil Jury Instruction</u> No. 16-1 (2002). That is all that is required to render

punitive damages available in the District of Columbia.  As explained above, there was sufficient

evidence in the trial record -- including, but not limited to, Ramirez's alleged assault on Mazloum

while he was handcuffed -- that would permit a reasonable jury to conclude that Mazloum was

entitled to punitive damages.  The award of $25,000, moreover, is not per se excessive on the basis

of the trial record.  Ramirez's motion on this issue will accordingly be denied.

## II.     Mazloum's Motion for Entry of Judgment on the Battery Claim or, Alternatively, for a New Trial

Like Ramirez, Mazloum challenges the jury's verdict as internally inconsistent.  Pursuant to

Rules 49(b) and 59(e), he asks the Court to enter judgment in his favor on the battery claim or, in

the alternative, to order a new trial on that count.[11]  The basis for that request is Mazloum's

assertion that the jury's findings, as demonstrated in the special factual interrogatories of Section III

of the verdict form, conflict with its general verdict in Ramirez's favor on the battery count.

Specifically, Mazloum contends that the jury's conclusion in response to special interrogatories that

---

[11] Defendants complain that Mazloum's post-trial motion was untimely and should therefore be rejected.  Although Mazloum filed his post-trial motion within the ten day time period required by Rules 50(b) and 59(e), defendants contend that it was merely an impermissible "placeholder" motion because it was not accompanied by a memorandum in support of the motion until a later date in violation of LCvR 7(a).  See Defs.' Opp'n at 11.  The Court disagrees.  To begin with, Mazloum's motion itself set forth the basis for the requested relief, and "a Rule 59(e) motion need not be comprehensive . . . [but simply] apprise the court and the opposing party of the grounds upon which," Feldberg v. Quechee Lakes Corp., 463 F.3d 195, 197 (2d Cir. 2006), relief is sought.  The motion filed on May 20, 2008 put both the Court and defendants on notice concerning the basis for Mazloum's requested post-trial relief.  More importantly, however, the Court expressly permitted the parties to submit their accompanying memoranda apart from the motions themselves.  In its discretion, then, the Court authorized a slight departure from the requirements of the local rules in this instance.  See Professional Programs Group v. Dep't of Commerce, 29 F.3d 1349, 1353 (9th Cir. 1994) ("[T]he district court has broad discretion to depart from the strict terms of the local rules where it makes sense to do so and substantial rights are not at stake.").  Thus, the Court rejects defendants' argument that Mazloum's motion was untimely.

-22-

Ramirez employed "excessive force" against him is inconsistent with its general verdict on the battery claim. In Mazloum's view, then, the Court should set aside the general verdict on battery and enter judgment in his favor on the basis of the special factual findings. At the very least, Mazloum argues, he is entitled to a new trial on the battery count. As explained below, the Court agrees in part with Mazloum's argument and will accordingly enter a contingent order for a new trial on the battery claim.

In pertinent part, Fed. R. Civ. P. 49(b)(3) provides:

When the [jury's] answers are consistent with each other but one or more is inconsistent with the general verdict, the court may:
> (A) approve, for entry under Rule 58, an appropriate judgment according to the answers, notwithstanding the general verdict;
> (B) direct the jury to further consider its answers and verdict; or
> (C) order a new trial.

See Fed. R. Civ. P. 49(b)(3).[12] It is well-established that "[c]laims that a jury verdict is internally inconsistent 'impose a special obligation on the court to view the evidence in a manner that reconciles the verdicts if possible, and to grant a new trial if not." Hundley v. Dist. of Columbia, 494 F.3d 1097, 1102 (D.C. Cir. 2007) (quoting Smith v. Dist. of Columbia, 413 F.3d 86, 87 (D.C. Cir. 2005)). As the Supreme Court has explained, "[w]here there is a view of the case that makes the jury's answers to the special interrogatories consistent, they must be resolved that way."

---

[12] Fed. R. Civ. P. 49(b)(4) provides that when the special answers are inconsistent with one another and one or more is also inconsistent with a general verdict, the only post-trial relief available after the jury is dismissed is an order for a new trial. Here, although defendants at times vaguely suggest that the special answers themselves are inconsistent, the Court does not observe any such conflict. Defendants' argument appears to be that because the jury found that police intervention was warranted, probable cause to arrest Mazloum must have existed and Ramirez was free to handle Mazloum as he did. Moreover, there is also a suggestion by defendants that because the jury found that Mazloum may have resisted arrest, Ramirez's use of force was necessarily non-excessive. As previously explained, the Court rejects both of those contentions.

Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 119 (1963).  But where there is no way to harmonize the factual findings and the general verdict -- that is, there is an "inconsistency between the facts as found and the general verdict," see Walker v. New Mexico & S.P.R. Co., 165 U.S. 593, 598 (1897) -- Rule 49(b) authorizes a court to issue a judgment consistent with the answers or to order a new trial.

The question here, then, is whether the jury's factual findings in Section III are actually inconsistent with the general battery verdict.  The Court concludes that there is such an inconsistency.  In response to questions #12-14, the jury wrote that "Mr. Ramirez was overally [sic] aggressive with Mr. Mazloum and Mr. Ramirez employed excessive force against Mr. Mazloum." See Verdict Form Section III #12-14 (emphasis added).  Thus, the jury explicitly found that Ramirez used excessive force against Mazloum under the circumstances.  That assessment necessarily implies the sort of unlawful "touching" that would also constitute battery.

But the jury nevertheless found for Ramirez on the battery count.  This, therefore, presents one of the rare cases where "an inconsistent verdict . . . cannot reasonably be reconciled or sustained."  Hundley, 494 F.3d at 1102.  As in Hundley, "[t]he two answers cannot coexist; they make no sense in the context of the evidence presented in this case."  Id.  As the D.C. Circuit explained, an officer's use of excessive force not only violates the Fourth Amendment but also constitutes "an assault and battery under D.C. law."  Id. at 1101 (citing Dist. of Columbia v. Jackson, 810 A.2d 388, 392 (D.C. 2002)).  Hence, a factual finding of excessive force logically dictates a verdict against Ramirez on the common law battery claim as well.  But the jury did not reach that result with respect to battery in this case.  It is possible that the jury found for Ramirez on the battery claim because it was wary of awarding Mazloum double recovery for the same injury

given that it had also found for Mazloum on the § 1983 claim. In any event, it is apparent that the special factual findings and the battery verdict are inconsistent and that there is no ready way to reconcile them.

Ramirez contends that the jury's findings are not irreconcilably inconsistent, but he offers no coherent explanation that would support that contention. He incorrectly argues that the jury "rejected plaintiff's claim that defendant Ramirez punched, kicked or beat him while he was handcuffed," see Defs.' Opp'n at 6. The jury did not "reject" those claims. Instead, it answered the special interrogatories in a different manner than the Court and the parties originally anticipated, but nevertheless specifically and unanimously found that Ramirez utilized excessive force against Mazloum under the circumstances. Given that the legal standards for an unlawful battery and an unconstitutional use of excessive force overlap in this case, it is difficult to see how Ramirez can escape the conclusion that there is an apparent inconsistency here.[13]

In the alternative, Ramirez contends that entering judgment against him on the battery claim or ordering a new trial would be futile because "the jury has already entered an award of compensatory damages on [Mazloum's] excessive force claim . . . [and Mazloum] is not entitled to double recovery." See Defs.' Opp'n at 10. There is some merit to that position. Indeed, Mazloum himself concedes that he "does not now seek compensatory and punitive damages for battery in

---

[13] Ramirez argues that, just as the Court found that defendants Phillips, Modlin, and Schneider had a qualified privilege to remove Mazloum from the club, so too should Ramirez enjoy that protection here. But there was no evidence introduced against defendants Phillips, Modlin, and Schneider at trial that demonstrated that any of those defendants punched or kicked Mazloum -- only that they "dragged" him. There was, however, direct evidence introduced against Ramirez that he punched Mazloum in the face while Mazloum was handcuffed and was being taken out of the club by the officers. That fact places Ramirez's alleged use of force in an entirely different category than that of the other defendants and accordingly strips Ramirez of any qualified privilege.

addition to those already awarded for the Section 1983 claim." See Pl.'s Reply at 8. Nevertheless, Mazloum contends, he is "legally entitled to entry of judgment on the battery claim, in conformance with the interrogatory answers." Id. Such a judgment, he argues, would be helpful to him in the event that the § 1983 verdict is overturned on appeal (or the D.C. Circuit determines that Ramirez is entitled to qualified immunity). But because the jury did not award any damages on the battery count, entering judgment on that claim would necessarily require a trial on damages in any event -- the awarded compensatory and punitive damages cannot simply be transferred from the § 1983 claim to the battery claim in the event that the former is overturned. Thus, because a new trial would be required anyway, the Court concludes that entering judgment on the battery claim is not the appropriate remedy at this time.[14]

Instead, the Court will order a new trial on the battery claim contingent on the outcome of any appeals taken in this matter. If Mazloum's § 1983 jury verdict is overturned or vacated on appeal, he will be entitled to a new trial on the battery claim against Ramirez as well. If, however, the § 1983 verdict withstands appellate scrutiny, there will be no need to hold another trial solely on the battery count because Mazloum admits that he is presently seeking no additional independent damages for that claim. The interests of judicial economy strongly disfavor holding a largely duplicative trial in this matter if it is not necessary to do so. The Court believes that this

---

[14] Under the approach adopted by the Third Circuit in Mosley, there is some question whether the Court could enter judgment in favor of Mazloum on the battery count. To be sure, Rule 49(b) appears to sanction that action and Mosley itself did not deal with an inconsistency between special factual findings and a general verdict as contemplated by Rule 49. The Third Circuit's reasoning in Mosley, however, lends some support to the proposition that a trial court should not enter judgment in one party's favor when faced with such inconsistencies but should instead order a new trial. Ultimately, it is unnecessary to decide this question because the Court concludes that a new trial is the proper remedy here in any event.

contingent new trial order will serve both to protect Mazloum's legitimate interests and also to ensure that the parties and the Court are not burdened by needless litigation.

## **CONCLUSION**

For the foregoing reasons, the Court will deny defendants' motion and grant in part Mazloum's motion.  A separate Order accompanies this Memorandum Opinion.

_____/s/_____

JOHN D. BATES
United States District Judge

Dated:   September 15, 2008