UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EMILE MAZLOUM,

    Plaintiff,

       v.                                           Civil Action No. 06-0002 (JDB)

DISTRICT OF COLUMBIA, et al.,

    Defendants.

## MEMORANDUM OPINION

Now before the Court is plaintiff Emile Mazloum's motion for an award of attorneys' fees and costs against defendant Anthony Ramirez pursuant to 42 U.S.C. § 1988(b). Section 1988(b) provides that a court may, "in its discretion," award a "reasonable attorney's fee" and costs to a party that prevails in an action to enforce a provision of the civil rights laws, including 42 U.S.C. § 1983. See Sole v. Wyner, 551 U.S. 74, 77 (2007). Mazloum seeks $834,438.30 in attorneys' fees and $46,715.31 in costs pursuant to § 1988(b). Because Mazloum only prevailed in part on his § 1983 claims, the Court will reduce his request for fees by 60 percent and award him $333,775.32 in attorneys' fees. The Court awards Mazloum the full amount of requested costs.

This case arises out of an incident at Fur Nightclub in the District of Columbia in March 2005. Mazloum was involved in an altercation in the nightclub with several off-duty police officers, including Ramirez, as well as the Fur Nightclub bouncer, Michael Persons. Mazloum alleged that the incident was racially motivated -- he is of Lebanese heritage -- and filed a nine-count complaint against ten defendants. Ramirez was named as the defendant in seven of the counts. Many counts did not make it to trial -- the case went through several rounds of briefing on motions to dismiss and motions for summary judgment. The Court held a seven-and-a-half day

jury trial beginning April 24, 2008.  The jury found in favor of defendants on most counts, with two exceptions.  The jury found that Ramirez had violated § 1983 and awarded Mazloum $5,000 in compensatory damages and $25,000 in punitive damages.  It also found that Persons had assaulted Mazloum and awarded an additional $5,000 in compensatory damages against him.

**I. Degree of Mazloum's Success**

Ramirez does not contest that Mazloum was a "prevailing party" for the purposes of § 1988(b).  Instead, he focuses his opposition on the degree of Mazloum's success.  It simply does not make sense, Ramirez argues, to award nearly $900,000 in fees and costs for a $30,000 verdict.  Moreover, he points out that Mazloum only prevailed on one of his claims against Ramirez, and it is unfair to award attorneys' fees and costs for unsuccessful claims.

Ramirez's arguments are unsupported by the law.  There is no rule of proportionality when considering fees for prevailing parties under § 1988(b).  See City of Riverside v. Rivera, 477 U.S. 561, 574 (1986).  Furthermore, district courts have limited discretion when it comes to awarding attorneys' fees for unsuccessful alternative claims.  In Goos v. Nat'l Ass'n of Realtors, 68 F.3d 1380, 1386-87 (D.C. Cir. 1995), the D.C. Circuit outlined the only four instances in which a district court may deny requested fees based on alternative unsuccessful claims:

> First, where claims are groundless or not raised in good faith the attorney should get no award for hours spent on those claims, even if the claims are related to other, meritorious claims.  Second, where the claims do not share a common basis in fact or are not legally related, the court need not award fees if the claims prove unsuccessful.  Third, if the district court finds that the attorney failed to exercise billing discretion with respect to any of the hours, the court may reject those hours as not reasonably expended.  And finally, if the district court determines and explains why the total hours expended were not reasonable in relation to the results obtained -- regardless of the number of claims raised -- the court has discretion to reduce fees.

Id. at 1386-87.

None of those four reasons for reducing Mazloum's fee request apply here. Ramirez does not contend that any of Mazloum's other claims were frivolous or raised in bad faith. All claims share a common basis in fact -- they all stem from the incident at Fur Nightclub. Mazloum has exercised a significant degree of billing discretion -- he has excised all hours spent on unrelated claims and eliminated a substantial number of hours that are arguably redundant or excessive. Indeed, he has submitted contemporaneous records that would support over $2.2 million in attorneys' fees, yet has reduced his claim to $834,438.30. The fourth and final ground for reducing fees is inapplicable here as well. The test for whether hours expended were reasonable is whether a private attorney retained by a fee-paying client would have litigated the case the same way. See id. at 1386. Here, this case was aggressively litigated by both sides all the way through trial. It was inevitable that a large number of hours would be billed.

But a separate axiom of § 1988(b) is that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." Hensley v. Eckerhart, 461 U.S. 424, 440 (1983). In other words, there is a difference between a plaintiff who fully prevailed on one claim and seeks to recover fees for unsuccessful related claims (as was the issue in Goos) and a plaintiff who never fully prevails on a single claim. Mazloum falls into the latter category.

The complained-of wrong animating this litigation was that Ramirez, the other off-duty officers, and Persons used excessive force against Mazloum because he is of Lebanese heritage. Mazloum's ethnicity featured prominently throughout the trial and the extensive briefing in this case.[1] Mazloum consistently claimed that Ramirez had repeatedly called him a member of al

---

[1] Indeed, upon filing suit, Mazloum's counsel issued a press release entitled "District of Columbia Police and Nightclub Sued for Hate Crime Attack on Lebanese Arab Patron." See

Qaeda and a terrorist during the course of the incident at Fur Nightclub. See, e.g., Mazloum v. District of Columbia, 522 F. Supp. 2d 24, 31 (D.D.C. 2007); Pl.'s Pre-Trial Statement at 2, 3-4. Whether Ramirez in fact said those things was a focal point of the trial. Having lived through the pre-trial and trial proceedings, the Court has no doubt that the principal assertion propelling this action -- brought by the Washington Lawyers' Committee for Civil Rights and Urban Affairs -- was the claim of post-9/11 discrimination against Arabs.

Mazloum was not successful on any claim related to discrimination. The jury found that Mazloum had not "prove[n] by a preponderance of the evidence that Mr. Ramirez discriminated against Mr. Mazloum on the basis of his race." See Verdict Form at 2. Similarly, it found that Mazloum had not "prove[n] by a preponderance of the evidence that Mr. Ramirez discriminated against Mr. Mazloum on the basis of actual or perceived race, appearance, religion, or national origin." Id. Accordingly, the jury awarded Mazloum no damages on his claims under 42 U.S.C. § 1981 or the D.C. Human Rights Act. Hence, Mazloum did not prevail at all with regard to the primary issue in this case.

Nor did Mazloum fully prevail on his § 1983 excessive force claim. Although the jury found that Ramirez (but not the other officers) had used excessive force against Mazloum, it only awarded him $5,000 in compensatory damages and $25,000 in punitive damages. See Verdict Form at 2-3. Mazloum did not specify the damages he sought for this claim, and without that

---

Washington Lawyers' Committee for Civil Rights and Urban Affairs, Press Release dated Jan. 4, 2006 (available at: http://www.washlaw.org/news/releases/010406.htm). The press release stated that the case presented an example of the D.C. police force using excessive force, but "of much greater significance, this case points up a serious problem in the upsurge of civil rights violations against the Muslim and Arab community." Id.

metric the Court cannot precisely quantify the degree of his success.[2]  But with the benefit of having lived through pre-trial proceedings and the trial itself, the Court concludes that Mazloum was 40 percent successful in his excessive force claim against Ramirez.  Although Mazloum prevailed in part by obtaining $5,000 in compensatory damages and $25,000 in punitive damages, the damages he obtained fell well short of the amount he sought.  Indeed, his compensatory damages were not enough to cover his medical expenses.

In sum, Mazloum was wholly unsuccessful on his primary discrimination claim and only partially successful on his secondary excessive force claim.  In such an instance, the Court "may simply reduce the award [of attorneys' fees] to account for the limited success."  Hensley, 461 U.S. at 436-37.  "There is no precise rule or formula for making these determinations."  Id. at 436.  Courts routinely reduce the fee request by a percentage representing plaintiff's perceived success.  Here, the Court has determined that Mazloum was 40 percent successful in his excessive force claim against Ramirez.  Accordingly, his request for attorneys' fees will be reduced by 60 percent -- from $834,438.30 to $333,775.32.[3]  The Court will not, however, reduce Mazloum's request for costs.  Unlike fee awards, an award of costs is not intended to reflect the plaintiff's success.  Mazloum's request for $46,715.31 in costs will therefore be granted in full.

## II. Ramirez's Specific Challenges to Mazloum's Fee Request

In addition to the broader challenge described above, Ramirez targets certain specific

---

[2] Mazloum presented evidence at trial that he incurred $12,455.80 in medical costs as a result of the incident.  That figure represents only a portion of the compensatory damages he sought to recover.

[3] Counsel for Mazloum exercised billing discretion in reducing the requested fees from over $2.2 million to $834,438.30.  Notwithstanding that significant reduction, both figures are still based on the assumption that Mazloum fully prevailed on his § 1983 claim.

aspects of Mazloum's fee petition. See Opp'n at 10-23. He argues that fees and costs are unwarranted for certain of Mazloum's motions and for time spent on certain discovery because they relate to unsuccessful or partially-successful claims. Id. at 10-14, 22-23. But a reduction on that basis would double-count the limited nature of Mazloum's success. Courts have repeatedly cautioned that a losing party contesting attorneys' fees should either challenge specific claims or make a wholesale challenge, but not both. See, e.g., Hensley, 461 U.S. at 436-37 (permitting court to "identify specific hours that should be eliminated or . . . simply reduce the award to account for the limited success.") (emphasis added). Moreover, all of the motions and discovery identified by Ramirez share a common basis in fact, and courts should award fees for unsuccessful, related motions unless one of the exceptions set forth in Goos applies. See Goos, 68 F.3d at 1386-87. As discussed above, none of those exceptions applies here.

Ramirez also challenges certain fees are unreasonable. See Opp'n at 14-22. He argues that: (1) the $44,000 fee request for preparation of jury instructions should be reduced by half; (2) one attorney's billing rate is unreasonable; (3) certain "clerical" work was conducted by attorneys; and (4) "pervasive use of block billing" warrants further reduction by 25 percent. These arguments are unpersuasive as well. As to (1), the Court has already reduced the $44,000 request by 60 percent, and further reduction is unwarranted -- courts have approved a similar number of hours spent on jury instructions in similar kinds of cases. See, e.g., Rivera, 477 U.S. at 573 n.6. With respect to (2), it is well established that standard billing rates used by private attorneys are presumptively reasonable. See Thompson v. Kennickell, 836 F.2d 616, 620 (D.C. Cir. 1988). Here, the challenged attorney's rate is her standard billing rate. Next, on (3), Mazloum has agreed to drop

claims for some of these fees, which is reflected in the $834,438.30 request.[4]  As to the claims that Mazloum has not agreed to drop, he correctly points out that the examples of "clerical" work cited by Ramirez, see Opp'n at 16-18, are not clerical at all.  For instance, entries such as "[r]esearch standards under federal rules of evidence for offering evidence of prior conviction" do not, as Ramirez contends, reflect "clerical" work.

Finally, the Court has reviewed the billing entries that Ramirez contends are insufficiently detailed.  See Opp'n at 19.  Billing entries must provide "fairly definite information as to the hours devoted to various general activities."  Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980).  Ramirez recognizes that a "fee application need not present 'the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'"  See Opp'n at 19 (quoting Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (quoting Copeland, 641 F.2d at 891)).  But the entries Ramirez takes issue with do provide "fairly definite information as to the hours devoted to various general activities."  See Copeland, 641 F.2d at 891.  They describe activities like "prepare cross-examination of defense witnesses" and set forth the number of hours (in six-minute increments) spent on those activities.  Although the challenged entries set forth numerous activities per day, Mazloum need not set forth "the precise activity to which each hour was devoted."  See id.  Hence, this argument is unpersuasive as well.

## CONCLUSION

For the reasons stated above, Mazloum's motion for fees and costs will be granted in part.  Mazloum will be awarded his full request for costs -- $46,715.31.  Mazloum will also be awarded

---

[4] Mazloum initially sought $883,102.80 in attorneys' fees and $46,715.31 in costs. See Mem. at 23.  He then lowered his request for attorneys' fees to $834,438.30.  See Rep. at 25.

$333,775.32 in fees, which represents 40 percent of his request. A separate order accompanies this opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: September 16, 2009